IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT __ANCHORAGE__

HELEN WINTERS, )
through her power of attorney )
Carol Winters, )
)
                Plaintiff(s), )
)
vs. )
)
)
CHUGIAK SENIOR CITIZENS, INC., )
)
                Defendant(s). )
)

CASE NO. __3AN-06-6023 CI__

SUMMONS
AND
NOTICE TO BOTH PARTIES
OF JUDICIAL ASSIGNMENT

To Defendant: __Margaret C. Ingmanson c/o Chugiak Senior Citizens, Inc.__

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at __825 W. Fourth Avenue, Anchorage, AK__ within 20
                (address)
days* after the day you receive this summons. In addition, a copy of your answer must be sent to the plaintiff's attorney, __Nikole Nelson__ whose address is: __1016 W. 6th Ave., Suite 200, Anchorage, AK 99501__.

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

NOTICE OF JUDICIAL ASSIGNMENT

To: Plaintiff and Defendant

You are hereby given notice that this case has been assigned to Judge __Stowers__.

(SEAL)

__March 14, 06__
Date

CLERK OF COURT

EXHIBIT __B__
Page __1__ of __13__

By: __N. Lumpkin__
Deputy Clerk

* The State or a state officer or agency named as a defendant has 40 days to file its answer.

CIV-100 (5/02)(st.3)
SUMMONS

Civil Rules 4, 5, 12, 42(c), 55

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

HELEN WINTERS, )
through her power of attorney )
Carol Winters, )
)
    Plaintiff, )
)
vs. )
)
CHUGIAK SENIOR CITIZENS, INC., )
)     Case No. 3AN-06-_____ CI
    Defendant. )
)

COPY
Original Received:

MAR 14 2006

Clerk of the Trial Court

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES**

COMES NOW plaintiff, Helen Winters, through her power of attorney Carol Winters, and her counsel of record, alleging and requesting relief as follows:

INTRODUCTION

1. This action is brought against defendant Chugiak Senior Citizens Inc, for its retaliatory conduct and its wrongful attempted eviction of Helen Winters from the Chugiak Senior Center, both in violation of the Alaska Assisted Living Homes Act (AS 47.33.005 *et seq.*), the Alaska Human Rights Act (AS 18.80.200 *et seq.*), and the Alaska Uniform Landlord and Tenant Act (AS 34.03.010 *et seq.*).

PARTIES

2. Plaintiff Helen Winters is a 90-year-old resident of Chugiak, Alaska who is disabled. Plaintiff's adult daughter, Carol Winters, is plaintiff's power of attorney

3. Defendant manages the Chugiak Senior Center ("CSC"), an assisted living home licensed by the State of Alaska.

EXHIBIT B
Page 2 of 13

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to AS 22.10.020 (a), (g) and (i). Plaintiff's causes of action arise under, *inter alia*, the Alaska Assisted Living Homes Act (AS 47.33.005 *et seq.*), the Alaska Human Rights Act (AS 18.80.200 *et seq.*), and the Alaska Uniform Landlord and Tenant Act (AS 34.03.010 *et seq.*).

5. Venue is proper pursuant to AS 22.10.030 and Civil Rule 3(c).

## BACKGROUND

6. Plaintiff is a 90 year old woman who suffers from a number of maladies including but not limited to hypertension, congestive heart failure, severe osteoarthritis, osteoporosis, general anxiety disorder and macular degeneration. In addition, plaintiff is very hard of hearing. As a consequence, plaintiff must speak very loudly and must be spoken to very loudly in order to communicate. Plaintiff's conditions were disclosed to defendant prior to plaintiff's admission to the defendant's CSC in September of 2004.

7. Despite plaintiff's maladies, plaintiff is very independent of both mind and body given her age. In 2000 at the age of 85, as she could no longer drive, she moved from Maryland to Alaska to live near her adult daughter, Carol Winters. Carol Winters is a caring advocate in her mother's life and has daily contact with her mother and her mother's care providers.

8. Plaintiff has been a participant in the State of Alaska's Medicaid CHOICE Waiver Program since September 2001. This program allows those requiring help with the activities of daily living to remain in their own homes and communities by helping to fund such assistance. Kathy Huskey has been plaintiff's Care Coordinator since she began participating in the Waiver program in 2001.

EXHIBIT B
Page 3 of 13

Complaint for Injunctive and Declaratory Relief and for Damages        Page 2 of 10

9. On August 15, 2004, plaintiff suffered a fall in her home that sent her to the hospital for several days. She fractured her right arm and damaged her rotator cuff.

10. Unable to continue to live completely independently, plaintiff and her daughter decided to apply to the CSC; it seemed to them both the CSC's assisted living paradigm provided plaintiff with the right balance of assistance and independence.

11. Plaintiff and her daughter disclosed plaintiff's medical history and conditions to defendant at or near the time of application to CSC. In fact, plaintiff signed several releases so as to allow defendant to obtain her actual medical records. Moreover, the defendant conducted a pre-admittance evaluation on plaintiff before accepting her into CSC as a resident so as to assure itself that plaintiff would be eligible for residency at CSC. The defendant found plaintiff suitable for CSC and admitted her into the CSC as a resident on or about September 20, 2004.

12. At or about the time that defendant admitted plaintiff into CSC, defendant had plaintiff sign a number of form agreements that had been drafted by or for defendant, specifically, a Lease Agreement, a Resident Service Contract, and Plan of Care contract. These documents provided, *inter alia*, that the defendants would provide plaintiff with substantial physical assistance in her activities of daily living, self-care and medication management and that the relationship between plaintiff and defendant vis à vis the CSC would be governed by Alaska's Uniform Residential Landlord Tenant Act.

13. Since at or near the time of entering into the CSC, plaintiff and her daughter have made numerous complaints to the defendant about her care by the CSC's staff, including:

- administering the wrong medications;

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

EXHIBIT B
Page 4 of 13

Complaint for Injunctive and Declaratory Relief and for Damages          Page 3 of 10

- breaching confidentiality;
- interfering with her ability to exercise religious beliefs;
- failing to provide her medically prescribed low-salt diet;
- abusive and rough handling;
- rudeness and verbal abuse;
- contamination by cigarette smoke;
- lack of safety;
- lack of kindness and caring.

By and large, the defendant has ignored these complaints, whitewashed them, or blamed the plaintiff for any problems she might be having.

14  Plaintiff is informed and believes that defendant has a poor or non-existent training process for new staff, has high turnover, and exercises inadequate oversight of staff. Plaintiff contends that defendant has allowed a culture of indifference or abuse to develop at CSC especially with regard to elders who insist on having their persons and rights respected.

15.  Plaintiff and her daughter contacted Alaska's Long Term Care Ombudsman to complain about the defendant and the CSC because their complaints were not being adequately addressed by defendant.

16.  The Long Term Care Ombudsman is currently actively investigating plaintiff's complaints. There has been at least one meeting with plaintiff, her daughter, the Ombudsman, plaintiff's Care Coordinator and some of the staff at the CSC.

17.  On January 5, 2006 CSC served plaintiff with a letter purporting to terminate her Residential Services Contract and Lease Agreement with the CSC. A true

EXHIBIT B
Page 5 of 13

Complaint for Injunctive and Declaratory Relief and for Damages          Page 4 of 10

and correct copy of this termination letter is attached hereto as Exhibit 1. This letter claims that plaintiff poses a threat to others, that the level of care she requires is no longer available at the facility, that she has engaged in a pattern of conduct that is harmful to other residents or staff, and that her behavior is a threat to the peace and safety of the other residents and staff. All of the allegations are untrue.

18. Recently, the Long Term Care Ombudsman contacted the defendant and formally requested that it withdraw the Notice of Eviction of plaintiff or agree to a 90-day stay. The defendant refused, but agreed to a thirty-day stay so as to allow plaintiff to find "alternative" housing.

19. Plaintiff does not want "alternative" housing and there is no equivalent "alternative" housing available to her. Plaintiff wants to remain where she is and receive the care, dignity and services that the defendant is legally obligated to provide. Plaintiff's conditions are such that forcing her to move will harm her. Plaintiff Care Coordinator (Kathy Huskey), the Long Term Care Ombudsman (Bob Dreyer), her personal physician (Michael Jones, M.D.), and her daughter (Carol Winters) all believe it would be extremely detrimental to plaintiff health, both emotional and physical to require her to move. Plaintiff's Care Coordinator is so concerned with defendant's treatment of plaintiff that she filed a Report of Harm with Adult Protective Services.

20. Plaintiff believes she is being evicted in retaliation for her complaints regarding staff and her efforts to improve the quality of care to an appropriate level at the CSC. Plaintiff also believes that CSC may have a pattern and practice of evicting or threatening with eviction CSC residents who are demanding, i.e., those who insist that their persons and rights be respected, despite their being "old" and infirm.

EXHIBIT B
Page 6 of 13

21. Plaintiff remains in imminent danger of being evicted by defendant despite the efforts of her Care Coordinator (Kathy Huskey), the Long Term Care Ombudsman (Bob Dreyer), her personal physician (Michael Jones, M.D.), and her daughter (Carol Winters).

22. Since the aforementioned termination letter from defendant, plaintiff and/or others have continued to pay "rent" to the defendant on her behalf. The defendant has never refused or rejected plaintiff's "rent."

## COUNT I – VIOLATION OF THE ASSISTED LIVING HOMES ACT

23. Plaintiff repeats and incorporates by reference the allegations of facts and law in the above paragraphs.

24. This attempted eviction is a violation of the Alaska Assisted Living Homes Act (AS 47.33.005-AS 47.33.990) in that:

>   a) Ms. Winters as a resident of an assisted living home has the right to be treated with consideration and respect for personal dignity, individuality and privacy; AS 47.33.300(a)(2)
>
>   b) None of the statutory grounds for termination of the residential services contract exist; AS 47.33.360(a)
>
>   c) Ms. Winters, as a resident of an assisted living home may not be retaliated against for having made a complaint to the Long Term Care Ombudsman; AS 47.33.350(a)(1) and (4)
>
>   d) The attempted eviction violates the very purposes of the Act, that is, to establish assisted living homes to provide a "homelike" environment

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

EXHIBIT B
Page 1 of 15

for elderly persons that help the elderly person to "age in place" that is, to choose to remain in a familiar living environment and manage the risks associated with the physical or mental decline that can occur with increasing age. AS 47.33.005(1) and (2)(A).

## COUNT II – VIOLATION OF THE ALASKA HUMAN RIGHTS ACT

25. Plaintiff repeats and incorporates by reference the allegations of facts and law in the above paragraphs.

26. This attempted eviction is a violation of the Alaska Human Rights Act (AS 18.80.200 *et seq.*) in that plaintiff has a right to be free from discrimination in the lease or rental of property due to a physical or mental disability; (AS 18.80.200, .240(1) and (2)).

## COUNT III – VIOLATION OF ALASKA'S UNIFORM RESIDENTIAL LANDLORD TENANT ACT

27. Plaintiff repeats and incorporates by reference the allegations of facts and law in the above paragraphs.

28. The defendant's threatened eviction violates the Alaska Residential Landlord and Tenant Act in that:

a) The Lease Agreement and the Residential Services Contract by their own terms are subject to the Landlord and Tenant Laws of the State of Alaska.

b) The Chugiak Senior Center has continued to accept rent from plaintiff despite alleging that she has breached the Lease Agreement, Resident Services Contract and Resident Policies (House Rules). This constitutes a waiver of the defendant's right to terminate the aforementioned agreements for those alleged breaches. AS 34.03.240.

Complaint for Injunctive and Declaratory Relief and for Damages

EXHIBIT B
Page 8 of 13
Page 7 of 10

## COUNT IV- BREACH OF CONTRACT

29. Plaintiff repeats and incorporates by reference the allegations of facts and law in the above paragraphs.

30. Plaintiff and defendant are parties to several contracts including a Lease Agreement; a Resident Service Contract, and a Plan of Care contract. These contracts specifically require the defendant to abide by the Alaska Assisted Living Homes Act and Alaska's Uniform Residential Landlord-Tenant Act.

By its actions as stated in the above paragraphs, the defendant has breached its contracts with plaintiff including its duty of good faith and fair dealing.

## COUNT V - - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

32. Plaintiff repeats and incorporates by reference the allegations of facts and law in the above paragraphs.

33. The defendant's intentional or reckless conduct in attempting to retaliate and/or evict plaintiff, and its service on plaintiff of the aforementioned eviction notice when she was alone and without the benefit or support of her daughter and power of attorney, when defendant was and is fully aware of plaintiff's medical conditions (including but not limited to hypertension and a generalized anxiety disorder) and her overall fragility, amount to extreme and outrageous acts, were not justified and have caused plaintiff severe emotional distress, dangerously high blood pressure, a trip to the hospital emergency room, and additional medications for treatment.

## COUNT VI -- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

34. Plaintiff repeats and incorporates by reference the allegations of facts and law in the above paragraphs.

35. The defendant had a duty to refrain from conduct that would foreseeably result in emotional harm to plaintiff.

36. It was foreseeable that by retaliating against plaintiff and attempting to evict plaintiff and delivering to her (without her daughter's presence) a notice of eviction when it was aware that plaintiff suffers from hypertension and a generalized anxiety disorder, was extreme and outrageous and caused plaintiff severe emotional distress, dangerously high blood pressure, a trip to the hospital emergency room and additional medications for treatment.

WHEREFORE, plaintiff requests this Court:

(1) declare that by its actions as stated above the defendant has violated the Alaska Assisted Living Homes Act; the Alaska Uniform Residential Landlord--Tenant Act; and has breached its various contracts with the plaintiff;

(2) enter judgment in her favor in an amount to be determined at trial encompassing costs, damages for pain and sufferings, damages for mental anguish, punitive damages and the costs and expenses of litigation, and such other and further relief as may be just and necessary;

(3) order defendant to retract its notice of intent to evict and terminate Resident Services Contract and Lease Agreement;

EXHIBIT B
Page 10 of 13

Complaint for Injunctive and Declaratory Relief and for Damages   Page 9 of 10

(4) enjoin defendant from engaging in any further eviction proceedings against plaintiff and to otherwise comply with its contractual duties to plaintiff; and

(5) enjoin defendant from engaging in any further discriminatory or retaliatory practices against her or other CSC residents.

(6) because federal law precludes plaintiffs' counsel from claiming or collecting attorney's fees on their behalf, plaintiff reserves her right to recover attorney's fees, should she prevail in this action.

DATED: March 13, 2006

ALASKA LEGAL SERVICES CORPORATION

NIKOLE M. NELSON, BAR NO. 9906033
JAMES J. DAVIS, JR., BAR NO. 9412140
BARBARA K. BRINK, BAR NO. 8206009
1016 West Sixth Avenue, Suite 200
Anchorage, Alaska 99501

Attorneys for Plaintiff

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

EXHIBIT B
Page 11 of 13

Complaint for Injunctive and Declaratory Relief and for Damages    Page 10 of 10



## Chugiak Senior Center
*"Serving Seniors from Hiland to Eklutna"*

January 5, 2006

Helen Winters
Chugiak Senior Center
Assisted Living Program
22424 N Birchwood Loop, Apt 234
Chugiak AK 99567



PLAINTIFF'S
EXHIBIT
1

Dear Helen:

Since your admission to our program on September 20, 2004 we have worked closely with you to retain your residency in the program. However, almost from the beginning of your residency you have continued to engage in a pattern of behavior and conduct consisting of unnecessary yelling and verbal abuse of staff or other residents whenever you became agitated. We have addressed this pattern of unacceptable behavior on more than one occasion with you and your daughter, Carol Winters, and participated in several care conferences to discuss this behavior and the appropriateness of terminating the Residential Services Contract. Despite our efforts, your pattern of unacceptable behavior has not abated.

On Saturday, December 17, 2005 two staff members were assisting you when you became angry and again started yelling and being verbally abusive. Your anger became so intense that you struck a member of the staff by slapping her hand.

The safety of both residents and staff are a high priority, and the Assisted Living Program is responsible for providing an atmosphere that is not only safe, but also peaceful and enjoyable for residents and staff. Thus, the Residential Services Contract and Lease Agreement provide that the facility may involuntarily terminate the contract and lease for the following reasons: (1) a resident poses an immediate threat to others, or may need mental health services to prevent harm to others; (2) the level of care the resident needs is no longer available at the facility; (3) the resident has engaged in a pattern of conduct that is harmful to the other residents or staff; and (4) the resident's behavior is a threat to the peace and safety of other residents or staff. *See* Residential Service Contract at Section 11 & Lease Agreement at Section 12. Under AS 47.33.360(a) (2), (3), and (6) the facility may terminate a residential services contract when a resident engages in a documented pattern of conduct that is harmful to the other residents and staff of the facility, the resident violates the terms of residential services contract, or the facility can no longer provide for services in accordance with a resident's needs. Additionally, your Residential Service Contract (Section 36) and Lease Agreement (Section 3) require you to comply with the written policies and procedures of the facility, and our Resident Policies (House Rules), which you acknowledged receiving on September 24, 2004, provide that "physical, verbal or mental abuse or aggression by residents ... is unacceptable" and that "any infraction of this policy ... may result in eviction."

EXHIBIT B
Page 12 of 12

After due consideration of our prior efforts to address your pattern of unacceptable behavior and conduct, the incident on December 17, 2005 leaves us with no lesser alternative but to serve you with a thirty (30) day notice of termination of your Residential Services Contract and Lease Agreement. The reasons for the termination are that your continued pattern of behavior and conduct is detrimental to the safety and well-being of other residents and staff, and your unwillingness or inability to refrain from unnecessary verbal abuse and hitting of staff suggests you may need mental health services to prevent harm to others and/or the facility can no longer provide the level of services you need. Therefore, your residential services contract is being terminated under AS 47.33.360(a) (2), (3), and (6), and based on the provisions in the contract and lease agreement described above. This notice is effective January 4, 2006, so you must vacate the apartment that you currently occupy in the Chugiak Senior Center Assisted Living Program on or before February 4 2006.

You have the right to a conference that includes the facility administrator, yourself, your representative, advocate, and care coordinator, if any, and any appropriate care provider to discuss the appropriateness of terminating your Residential Services Contract. However, any request for a conference must be submitted in a timely manner. Under the Residential Services Contract the request must be made within 10 days of your receipt of this letter, and under the Lease Agreement you have 15 days after receipt of this notice to cure, or take reasonable steps to cure the grounds for terminating the contract and lease agreement. Because your eviction is based on your failure to comply with the provisions of the Residential Services Contract and Lease Agreement, we will allow you 15 days from the date of this eviction notice to request a conference regarding your eviction.

There are many small assisted living programs that can provide you with the services that you feel you need, and we will cooperate in making arrangements to assist with your relocation. If we can provide information concerning other living situations that are available locally please let us know.

Sincerely,

*Jan Freels*

Jan Freels
Project Director
Assisted Living Program Administrator

Cc: Carol Winters
    Richard Saville
    Bob Dreyer
    Donna Meyer, Attorney
    Linda Hendrickson
    Kathy Huskey

EXHIBIT B
Page 13 of 13