Donna M. Meyers
William E. Moseley
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska 99501
PHONE: 907-279-3581
FAX: 907-277-1331
dmm@delaneywiles.com
wem@delaneywiles.com

Attorneys for Defendant
Chugiak Senior Citizens, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

HELEN WINTERS, through her Power of     )
Attorney Carol Winters,                 )
                                        )
                  Plaintiff,            )
                                        )
        v.                              )
                                        )
CHUGIAK SENIOR CITIZENS, INC.,          )
                                        )
                  Defendant.            )
_____ )     Case No. 3:06-cv-00083-TMB

**QUALIFIED OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND INJUNCTION**

**I.      INTRODUCTION**

A preliminary injunction is not warranted in this case because defendant is

entitled to proceed with a forcible entry and detainer ("FED") action under Alaska law.

Contrary to plaintiff's argument, filing an FED action would not be wrongful or in

circumvention of this Court's authority. Rather, plaintiff is attempting to prevent

defendant from exercising a legal right and remedy available to landlords under Alaska

law.  In fact, it is plaintiff who is attempting to entangle and mire defendant's entitlement to bring an FED action into a lengthy, drawn-out lawsuit, by the legal maneuvering of plaintiff's counsel.

Additionally, plaintiff has not met the requirements for a preliminary injunction. Contrary to plaintiff's argument, she will not be faced with any more irreparable harm than defendant, if she is not evicted.  Furthermore, the injury that would be imposed on defendant is not inconsiderable, and it may not adequately be indemnified by bond. Last, plaintiff has not raised any serious or substantial questions going to the merits of the case, much less a showing of probable success on the merits.

Nevertheless, defendant will agree to an extension of the temporary restraining order as long as this case remains in Federal Court and until either the Court enters summary judgment on plaintiff's discrimination claims or, if summary judgment is not entered, until a trial on the merits, provided the Court orders the trial of the action on the merits to be advanced to occur within eight (8) months and consolidated with the hearing of plaintiff's application.  *See* Fed. R. Civ. P. 65(a)(2).  Defendant requests that a trial setting conference be held at the earliest opportunity and that a trial be scheduled to occur within eight (8) months.  Otherwise, plaintiff's motion should be denied.

## II.    FACTS

### A.    Chugiak Senior Center's Assisted Living Program.

Chugiak Senior Citizens, Inc., ("CSC") is a non-profit corporation that operates an assisted living program ("ALP").  The ALP provides supervision and/or assistance with activities of daily living and instrumental activities of daily living, coordinates services by outside agencies, and monitors the activities of residents for their well-being.  It is not a

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                    Page 2 of 23

skilled nursing facility, and does not offer skilled nursing services on a full-time basis. Indeed, CSC offers very limited nursing services during the day on Monday through Friday.  *See* Affidavit of Linda Hendrickson (Ex. A).

**B.    Helen Winters' Admission to CSC.**

Plaintiff became a resident in CSC's assisted living facility ("ALF") on September 20, 2004.  Among other documents, plaintiff, individually or through Carol Winters as her Power of Attorney, executed a Lease Agreement, a Resident Services Contract, and an Acknowledgment of Receipt of Resident's Rights that included an acknowledgment plaintiff received CSC's Resident Policies (House Rules).  *See* Affidavit of Linda Hendrickson (Ex. A); *see also* Exhibits B through D.

The Lease Agreement provided for a month-to-month tenancy and was made subject to the landlord and tenant laws of the State of Alaska.[1]  Under the Lease Agreement, plaintiff agreed to comply with the written policies and procedures of CSC.[2] Furthermore, plaintiff agreed not to make excessive noise at CSC that would disturb the peace and quiet of her neighbors, or cause or permit any nuisance to exist at CSC. Nuisance is defined as "an obnoxious, annoying person, thing or practice.  Something offensive or annoying to individuals or to the community, for which a legal remedy may be sought."

The Lease Agreement also provides CSC may involuntarily terminate the lease for the following reasons:

---

[1]*See* Lease Agreement (Ex. B), §§ 2, 3.
[2]*Id.,* at § 15.

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction                                              Page 3 of 23
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB

**Section 12.  Termination**

- Termination by Management:  The Management will not terminate a Resident's Residential Services Contract against the Resident's will; except:

    - For medical reasons.

    - The level of care needed is no longer available at this facility.

    - For engaging in a documented pattern of conduct that is harmful to the resident, other residents, or staff of the home.

    - For violation of the terms of the Residential Services Contract, including failure to pay costs incurred under the Contract.

    - When the Resident's physician orders emergency transfer out of the Facility.

    - When the Facility is closing.

        - When the Facility can no longer provide or arrange for services in accordance with Resident's needs and the Resident's *assisted living plan*.

        - A Resident's behavior is a threat to the peace and safety of other Residents or Self.

        - By mutual consent of the parties.

        - For cause, by either party, when the other party fails in any material way to perform its obligation under this Lease.

To invoke termination under this paragraph, the terminating party must notify the other party in writing of its intent to terminate this contract and state with reasonable specificity the grounds therefore.  The other party shall have 15 days after receiving the notice of intended termination to cure, or take reasonable steps to cure, the default complained of.

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction                              Page 4 of 23
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB

Plaintiff's Residential Service Contract lists the admission criteria to CSC and defines the services CSC agreed to provide Helen Winters.  Section 9 of the Residential Service Contract states the admission criteria and provides in part:

**Section 9.  Admission Criteria.**

The Manager may admit Residents for assisted living services who meet the following criteria:

1.      Accept only residents whose needs we can meet. This includes assessing resident needs, abilities and preferences, staffing ratios, physical spaces, etc.

* * *

5.      Admit and retain individuals whose on-going needs do not exceed medical or Nursing services allowed by AS 47.33.020

* * *

7.      Admit and retain individuals who do not have a tendency to wander, fall, act verbally or physically abusive or socially inappropriate.

8.      Admit and retain individuals whose behavior places little or no stress on self, other individuals or staff.

9.      Must be physically stable, with inactive chronic disease or transient, acute illness which requires continuing medical attention or it is determined that staff and staffing levels can meet the individuals needs.

The Manager shall not admit or retain a resident who:

1.      Desires/requires specialized medical care that is not available at the Facility;

2.      Requires continuous skilled nursing care;

* * *

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                    Page 5 of 23

    4.     [I]s believed to require special intervention, beyond the capacity of the Manager's staff to provide, to prevent active harm to self or others.

Additionally, plaintiff again agreed in the Residential Service Contract to comply with the written policies and procedures of CSC.[3]  CSC's Resident Policies – House Rules prohibit "[p]hysical, verbal, or mental abuse or aggression by residents or their visitors is unacceptable. . . . [and] [a]ny infraction of this policy. . .may result in eviction.[4]

Plaintiff's Residential Service Contract also defines the conditions under which a resident can be moved out of the ALF involuntarily.  Section 11 of the Contract states in pertinent part:

**Section 11.  Termination.**

If resident does not meet regulatory or manager's criteria for occupancy in the designated setting, move-out shall occur only after consultation with Resident, [Guardian], and/or [Guarantor].  The Manager shall provide Resident with 30 days' notice of a proposed move-out unless such delay might jeopardize the health, safety, and well-being of the Resident or others.  Resident, [Guardian], and/or [Guarantor] shall have the right to a conference with the Manager's staff responsible for occupancy decisions if a request is made within 10 days of receipt of the notice for move-out.

Residents may be involuntarily moved only if:

1.     She/he poses an immediate threat to self or others;

2.     She/he needs mental health services to prevent harm to self or others;

3.     She/he has breached the conditions of their Resident Contract Agreement and/or Resident Service Plan;

---

[3] *See* Assisted Living Program Resident Service Contract (Ex. C), § 36.

[4] See Ex. D, ¶9, p. 6.

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB
    Page 6 of 23

* * *

5.     The Manager can no longer meet the Resident's needs as defined in the Resident Service Plan, and the Manager determines in consultation with the Resident, [Guardian] and/or [Guarantor], physician, and/or care coordinator, that it is appropriate for the Resident to remain at the Facility; and

The Residential Service Contract also lists other conditions or obligations applicable to CSC and plaintiff. For example, the contract states CSC is required to give any notices required by the contract in writing and to deliver it personally or by or prepaid, first class mail to plaintiff unless she designated otherwise in writing.[5]

## C.     Plaintiff's History at CSC.

Shortly after plaintiff's admission to CSC's assisted living program, CSC informed Carol Winters that Helen's level of care exceeded the level of services CSC could provide and plaintiff should be placed in a smaller facility where she could receive 1 on 1 care. However, neither plaintiff nor Carol Winters wanted to seek alternative housing, so CSC continued to make efforts to provide the services plaintiff needed although her level of care exceeded the limits of what CSC could reasonably provide and had agreed to provide, and her care needs continue to exceed the limits of services CSC can offer residents. *See generally* Affidavit of Linda Hendrickson (Exh. A).

During plaintiff's resident contact and tenancy at CSC, she has also continuously engaged in a pattern of behavior and conduct consisting of unnecessary yelling and verbal abuse of staff and other residents. Her pattern of unacceptable behavior has been discussed with her, and CSC has participated in several care conferences to

---

[5] *See* Lease Agreement (Ex. C), § 31.

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                                    Page 7 of 23

discuss this behavior and the appropriateness of terminating the Resident Services Contract.  Despite these efforts,  plaintiff's pattern of unacceptable behavior has not abated, and is in violation of the Residential Services Contract, and Lease Agreement. Plaintiff's anger has become so intense that she actually struck a staff member in December 2005, which was one of the more recent events resulting in the decision to terminate the Residential Service Contract and Lease Agreement.   Her continuous unacceptable behavior has also disrupted the peaceful and enjoyable atmosphere for both other residents and staff, and her  conduct is detrimental to the safety and well-being of other residents and the staff.   Staff members have expressed such extreme frustration with Helen's outbursts, insults and extreme demands that some staff members have either quit or threatened to quit.  *Id.*

**D.     The Eviction.**

On January 5, 2006 CSC served Helen Winters with a Notice of Eviction.  The notice provided several reasons why CSC was terminating plaintiff's Lease Agreement and Residential Service Contract.  As required by the Residential Service Contract, the letter was sent directly to plaintiff by prepaid, first class mail at the address provided in the Residential Service Contract.[6]  The letter listed the following reasons for terminating the Lease Agreement and Residential Service Contract:

> (1)     she posed an immediate threat to others, or may need mental health services to prevent harm to others;
>
> (2)     the level of care she needs is no longer available at the facility;
>
> (3)     she has engaged in a pattern of conduct that is harmful to the other residents or staff;

---

[6]*Id.*

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                    Page 8 of 23

(4)    her behavior is a threat to the peace and safety of other residents or staff;

(5)    the Residential Services Contract was being terminated pursuant to AS 47.33.360(a) (2), (3), and (6) because she had engaged in a documented pattern of conduct harmful to the other residents and staff of the facility, she violated the terms of Residential Services Contract, and the facility could no longer provide for services in accordance with her needs; and

(6)    she had violated written policies and procedures of the facility, and CSC's Resident Policies (House Rules) prohibiting physical, verbal or mental abuse or aggression by residents.[7]

As required by AS 47.30.360(b) and the Residential Service Contract, CSC provided Helen Winters with 30 days notice on the proposed move out,[8] and informed Helen Winters of her right to a conference with CSC's administrative staff responsible for occupancy decisions, and any advocates chosen by Helen Winters. Helen Winters exercised her right to hold a conference, which was held on January 20, 2006.

Following the conference, CSC declined to retract the letter of eviction. However, CSC did offer Helen Winters additional time to find some alternative housing, and offered to further extend the move out date provided plaintiff could show a good faith effort was being made to find alternative housing.[9] Instead of demonstrating a good faith effort to find alternate housing, plaintiff filed a lawsuit seeking injunctive relief and damages.

---

[7]See Ex. E (Eviction Letter).
[8]The notice was effective January 4, 2006, and plaintiff was informed she had to vacate the apartment at CSC on or before February 3, 2006. *Id.*
[9]See Ex. E (1/30/06 Letter to Assistant Attorney General Timothy Twomey).

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction                    Page 9 of 23
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB

## III.    ARGUMENT

### A.    CSC Has Every Right To Evict Plaintiff Via A Forcible Entry And Detainer Action As A Matter Of Law.

Because plaintiff is plainly a tenant of CSC, the provisions of the Alaska Uniform Residential Landlord and Tenant Act apply.  AS 34.03.130 expressly permits a landlord to adopt rules and regulations concerning the tenant's use and occupancy of the premises.[10]  AS 34.03.120(a)(7) requires the tenant to not unreasonably disturb a neighbor's peaceful enjoyment of the premises.[11]  Pursuant to AS 34.03.220,  even if

---

[10]AS 34.03.130 provides in pertinent part:

> **Sec. 34.03.130.  Rules and regulations.**  (a) A landlord may adopt rules and regulations, which shall be posted prominently on the premises, concerning the tenant's use and occupancy of the premises.  A rule or regulation is enforceable against the tenant only if
>
> (1)    its purpose is to promote the convenience, safety, health, or welfare of the tenants in the premises, preserve the landlord's property from abusive use, or make a fair distribution of services and facilities held out for the tenants generally;
> (2)    it is reasonably related to the purpose for which it is adopted;
> (3)    it applies to all tenants in the premises in a fair manner
> (4)    it is sufficiently explicit in its prohibition, direction, or limitation of the tenant's conduct to fairly inform the tenant of what the tenant must or must not do to comply;
> (5)    it is not for the purpose of evading the obligations of the landlord; and
> (6)    the tenant has notice of it at the time the tenant enters into the rental agreement. . . .

[11]AS 34.03.120(6) provides in pertinent part:

> **Sec. 34.03.120.  Tenant obligations.**  (a)  The tenant . . . .
>
> . . .

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB

Page 10 of 23

rent is current, the landlord may evict a tenant for a material non-compliance with a reasonable rule and regulation or for a violation of AS 34.03.220.[12] Furthermore, even if rent is current, AS 34.03.290 permits a landlord or tenant to terminate a month-to-month tenancy for no specified reason by a written notice given to the other at least 30 days before the rental due date specified in the notice.[13] If the tenant remains in possession, then the landlord is authorized to bring an action for possession. *Id*. Additionally, AS

---

(6)     may not unreasonably disturb, or permit others on the premises with the tenant's consent to unreasonably disturb, a neighbor's peaceful enjoyment of the premises; . . . .

[12] AS 34.03.220 provides in pertinent part as follows:

**Sec. 34.03.220. Noncompliance with rental agreement; failure to pay rent.**

(a)     Except as provided in this chapter, . . .

(2)     if there is a material noncompliance by the tenant with the rental agreement, or if there is noncompliance with AS 34.03.120, . . . materially affecting health and safety, the landlord may deliver a written notice to quit to the tenant under AS 09.45.100 – 09.45.110 specifying the acts and omissions constituting the breach and specifying that the rental agreement will terminate upon a date not less than 10 days after service of the notice; . . . .

[13] AS 34.03.290 provides in pertinent part as follows:

**Sec. 34.03.290. Periodic tenancy and holdover.**

. . .

(b)     The landlord or the tenant may terminate a month to month tenancy by a written notice given to the other at least 30 days before the rental due date specified in the notice.

(c)     If the tenant remains in possession without the landlord's consent after expiration of the term of the rental agreement or after its termination under (a) or (b) of this section, the landlord may, after serving a notice to quit to the tenant under AS 09.45.100 – 09.45.105, bring an action for possession. . . .

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                    Page 11 of 23

34.03.090(a) authorizes the landlord, after serving a notice to quit on a person who is wrongfully in possession, to bring an action for possession.[14]

Because CSC's facility is an assisted living home, it is also governed by the provisions of AS 47.33.005 et seq. AS 47.33.060 expressly permits an assisted living home to establish house rules. House rules may address various issues, including physical, verbal or other abuse of other residents or staff (AS 47.33.060(c)(6)).[15] AS 47.33.360 permits the involuntary termination of a residential services contract. That section provides in pertinent part:

> **Sec. 47.33.360. Involuntary termination of contract.** (a) An assisted living home may not terminate a residential services

---

[14]AS 34.03.090(a) provides in pertinent part as follows:

> **Sec. 34.03.090. Landlord to supply possession of the dwelling unit.** (a) . . . The landlord may, after serving a notice to quit under AS 09.45.100 – 09.45.105 to a person who is wrongfully in possession,
>
> (1)    bring an action for possession against any person wrongfully in possession; and
>
> (2)    recover the damages provided in AS 34.03.290.

[15]AS 47.33.060(c)(7) provides in pertinent part:

> **Sec. 47.33.060. House rules.** (a) An assisted living home may establish house rules, subject to the limitations provided for under this chapter.
>
> (b)    An assisted living home shall give a copy of the house rules to a prospective resident or the prospective resident's representative before the prospective resident enters into a residential services contact with the home, and shall post the house rules in a conspicuous place in the home.
>
> (c)    House rules may address various issues, including . . .
>
> (7)    physical, verbal, or other abuse of other residents or staff.

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB

contract with a resident of the home against the resident's will, except

(1)    for medical reasons:

(2)    for engaging in a documented pattern of conduct that is harmful to the resident, other residents, or staff of the home;

(3)    for violation of the terms of the residential services contract, . . .

. . .

(6)    when the home can no longer provide or arrange for services in accordance with the resident's needs and the resident's assisted living plan.

CSC has several bases to evict plaintiff from its assisted living facility.  CSC is no longer able to provide the level of services  plaintiff needs, and she has continuously engaged in a pattern of behavior and conduct consisting of unnecessary yelling and verbal abuse of staff and other residents.  Her anger has become so intense that she actually has struck a member of the staff.  Her continuous unacceptable behavior disrupts the peaceful and enjoyable atmosphere for both other residents and staff.  Her pattern of unacceptable behavior has been discussed with her, and CSC has participated in several care conferences to discuss this behavior and appropriateness of terminating the Resident Services Contract.  Despite these efforts, plaintiff's pattern of unacceptable behavior has not abated, and is in violation of the Residential Services Contract.  Her continuous verbal, mental abuse and aggression towards staff and other residents is unacceptable and is grounds for termination of her contract.  Her conduct is

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                    Page 13 of 23

detrimental to the mental and physical safety and well-being of other residents and the staff.

In the instant case, the procedures for involuntary termination of plaintiff's contract have been fully complied with. Plaintiff was provided written notice of the contract termination 30 days before terminating the Residential Services Contract.[16] The notice stated the basis for the termination and also the resident's right to contest the termination. CSC participated in a case conference as required in AS 47.33.360, which did result in an agreement to extend plaintiff's tenancy. Nevertheless, plaintiff refuses to leave, and therefore is in wrongful possession of the premises under the Alaska statutes set forth above, and defendant is entitled to proceed with an FED action pursuant to AS 09.45.060-160.

**B.   Plaintiff Has Not Met The Requirements For A Preliminary Injunction.**

The standard for issuing preliminary injunctions is set forth in *Walczak v. BPL Prolong, Inc.,* 198 F.3d 725, 731 (9th Cir. 1999). There the court declared:

> The **standard** for a **preliminary injunction** balances the plaintiff's likelihood of success against the relative hardship to the parties. [citations omitted] To obtain a **preliminary injunction,** Walczak was required to demonstrate either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor. *See id.* These two alternatives represent "extremes of a single continuum," rather than two separate tests. [citations omitted] Thus, the greater the relative hardship to Walczak, the less probability of success must be shown. [emphasis in original]

---

[16] *See* Ex. __.

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                                        Page 14 of 23

198 F.3d at 731.[17]

### 1.    Plaintiff will not be faced with irreparable harm.

In the instant case, plaintiff has not shown she will be faced with irreparable harm.  There are many nursing homes in the Anchorage area which provide the level of care plaintiff requires.  Contrary to plaintiff's unsubstantiated and subjective claims and arguments, there is no question she could physically withstand a move to another facility, with assistance in moving.  Even plaintiff's physician, Michael Jones, M.D., does not express an opinion to a reasonable degree of medical certainty, but merely speculates that relocating plaintiff to another facility "could" result in emotional distress and some unstated, consequential physical harm to her.  Dr. Jones' statements are pure non-specific speculation.   If tenants were able to avoid vacating apartments based

---

[17]The standard for the granting of preliminary injunctions under Alaska law is similar.  In discussing the standard for preliminary injunctions, the court in *North Kenai Peninsula Road Maintenance Service Area v. Kenai Peninsula Borough,* 850 P.2d 636 (Alaska 1993), declared:

> We apply to preliminary injunctions a "balance of hardships" approach which entails a three part test:  1) the plaintiff must be faced with irreparable harm; 2) the opposing party must be adequately protected, and 3) the plaintiff must raise serious and substantial questions going to the merits of the case; that is, the issues raised cannot be "frivolous or obviously without merit." [citations omitted]  The "serious and substantial question" standard applies only where the injury which will result from the preliminary injunction is relatively slight in comparison to the injury which the person seeking the injunction will suffer if the injunction is not granted.  [citation omitted]  Where the injury from the preliminary injunction is "not inconsiderable and may not be adequately indemnified by a bond, a showing of probable success on the merits is required before a temporary restraining order or a preliminary injunction can be issued."

850 P.2d at 639.

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                                    Page 15 of 23

merely on the claim that it would be mentally and physically detrimental, it would be virtually impossible to evict anyone, especially from an assisted living home or nursing home.

### 2. The balance of hardships does not tip in plaintiff's favor.

CCS will not be adequately protected. Because CSC has provided plaintiff an eviction notice, and is declining to accept rent payments based upon the termination of tenancy, it is losing rent on the apartment. Furthermore, the bases for eviction are ongoing. The staff and other residents at CSC will continue to have to endure plaintiff's pattern of behavior and conduct consisting of unnecessary yelling and verbal abuse of staff and other residents. This is not a slight burden. Plaintiff's behavior is so bad that caregivers in the home do not want to assist her, and some have even threatened to quit if they have to assist her. Plaintiff's conduct creates substantial stress for the staff, other residents, and substantially interferes with other tenant's right to the quiet and peaceful enjoyment of their apartments. Plaintiff's pattern of behavior and conduct is substantial and is detrimental to the mental and physical safety and well-being of other residents and the staff. They should not be forced to endure it.

The balance of hardships does not tip in plaintiff's favor. The injury which will result to CSC from a preliminary injunction is not slight or inconsiderable for other reasons as well. Having plaintiff at CSC's facility imposes a substantial burden and stress upon the staff. Because of plaintiff's extremely high level of demands and needs, staff are frequently unable to provide timely assistance to other residents. Furthermore, because plaintiff frequently falsely accuses staff and threatens to report them for non-existent infractions, the staff are hesitant to assist plaintiff without other staff present, as

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                    Page 16 of 23

witnesses, further creating problems of staff shortage.  There is no way to adequately indemnify these problems by bond.

      **3.**      **Plaintiff has not raised serious and substantial questions going to the merits of the case, much less a showing of probable success on the merits.**

Contrary to plaintiff's claim, she would not be "virtually certain" to prevail on a motion to dismiss any FED filed against her or to consolidate a state district court FED action with the present case.  Contrary to plaintiff's claims, defendant could assert her unlawful discrimination claims in an FED proceeding, and those claims can be considered in an FED proceeding to the extent necessary to determine the question of possession.  In the instant case, defendant is fully entitled under Alaska law to evict plaintiff, and plaintiff has not established any unlawful discrimination or any probability of success on the merits to her claims.

An FED is the appropriate legal remedy when a tenant refuses to vacate after an eviction notice.  Furthermore, contrary to plaintiff's argument, defenses of discrimination can be raised and considered in a summary eviction proceeding when the discrimination arises out of the tenancy.  *See Josephinium Associates v. Kahli,* 45 P.3d 627, 631 (Wash. App. 2002).  In that case, a landlord brought an unlawful detainer action against a tenant for non-payment of rent.  The issue was whether the tenant could raise the defense of unlawful discrimination in the summary proceeding.  In concluding that it was appropriate, the court declared:

> An unlawful detainer action is a summary proceeding to determine the right to possession of property.  Its history is grounded in the preservation of peaceful and lawful remedies for the landlord, to avoid forcible evictions.  The

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB      Page 17 of 23

action is narrow, and the court's jurisdiction is limited to setting the right of possession. . . .

The unlawful detainer statute permits a tenant to assert "any legal or equitable defense or set-off arising out of the tenancy." . . . To protect the summary nature of the unlawful detainer action, defenses "arise out of the tenancy only when they affect the tenant's right of possession or are" 'based on facts which excuse a tenant's breach.'" Where a defense exists that arises out of the tenancy, the court must consider it. Conversely, where a defense or counterclaim is not necessary to determining the right to possession, the court has no jurisdiction to consider it in an unlawful detainer action. When the tenant's breach is failure to pay rent, the inquiry is "whether there is any legal justification for nonpayment."

45 P.3d at 631. In the course of its opinion, the court in *Josephinium Associates* declared that most jurisdictions permit unlawful discrimination to be asserted as a defense in summary eviction proceedings. *Id.* at page 632.

The Alaska Supreme Court has directly addressed the appropriate course of action when a tenant asserts several affirmative defenses and counterclaims in a forcible entry and detainer action. In *Chilton-Wren v. Olds,* 1 P.3d 693 (Alaska 2000), a landlord brought a forcible entry and detainer action against an apartment tenant, seeking eviction. The tenant asserted several affirmative defenses and counterclaims. In addressing the appropriate course of action in such a case, the court declared:

FED hearings exist to protect a landlord's right to possession and to prevent the use of self-help. They are designed to be uniquely expedited processes that ensure a fair hearing on the issue of possession. But they often lack many of the procedural aspects, such as the right to a jury, discovery, preparation time, and procedural continuances, that are needed for a "full and fair" trial on issues other than possession. The parties can choose to agree, with the court's approval, to modify the expeditious and summary nature of the FED action in order to fully and fairly litigate the

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                    Page 18 of 23

tenant's counterclaims.  If they do so, the litigation will have collateral effect.  However, barring such a court-approved agreement, the proper approach is to bifurcate the trials— litigating the counterclaims in the FED action only to the extent necessary to determine the question of possession and preserving the damages issues for a later jury trial.

Thus, regardless of the outcome of the FED action and the determinations made by the FED judge, a tenant should have the right to a full and fair litigation of his or her damages claims before a jury.  Absent an express waiver of the right to a jury trial or a court-approved agreement between the parties to change the streamlined nature of the FED action, collateral estoppel should not apply to these types of counterclaims.  The tenant should therefore be free to litigate these claims anew in a separate action before a jury.

1 P.3d at 698.

Accordingly, an FED action is an appropriate remedy available to CSC.  Plaintiff may assert her unlawful discrimination claims as a defense, and they may be considered to the extent necessary to determine the question of possession.  Contrary to plaintiff's argument, no way would she be "virtually certain" to prevail on a motion to dismiss any FED filed against her or to consolidate an FED action with the present case.  She has not raised "serious or substantial questions" as to the merits of the dispute, much less a showing of probable success on the merits.[18]

---

[18]Plaintiff cites *Kopanuk v. AVCP Regional Housing Authority,* 902 P.2d 813 (Alaska 1995), for the proposition that an FED proceeding is inappropriate where a discrimination claim is asserted.  Contrary to plaintiff's claim, *Kopanuk* does not assist her.  In that case, an FED action was brought against a home buyer who had equitable interest in the property.  In the course of its opinion, the court expressly declared the district court's jurisdiction depends upon whether an equitable interest exists, and that typically, a lease will not give rise to equitable interest in the lessee.  *Id.* at 816.  In that case, the home buyer was not a lessee, and his contract created equitable interest.  *Id.* at 816-17.  In the instant case, plaintiff plainly had a month-to-month lease agreement, and had no equitable interest in her apartment.  *Kopanuk* therefore has no application.

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                                    Page 19 of 23

Even more significant, plaintiff has failed to show any serious or any substantial questions, much less a probability of success, on her various alleged claims and defenses to an FED action.  Plaintiff has asserted rights under the Alaska Human Rights Act, the Americans with Disabilities Act, § 504 of the Rehabilitation Act of 1973, and the Fair Housing Act of 1988.  Plaintiff has not made the slightest showing that she has raised serious and substantial questions under these Acts, much less a showing of probable success on the merits.

For example, the Fair Housing Act makes it unlawful to discriminate against "any person in the terms, conditions, or privilege of the sale, or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling," on the basis of that person's handicap.  42 U.S.C. § 3604(f)(2)(A).  Discrimination prohibited by the Act includes the refusal to make accommodations and "rules, policies, practices or services, when such accommodations may be necessary to afford a handicapped individual an equal opportunity to use and enjoy a dwelling.  To prevail on a claim for failure to make a reasonable accommodation, the plaintiff must establish (1) that he or an associate of his is handicapped within the meaning of § 3602(h), that the defendant knew or should have known of this fact; (2) that an accommodation may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (3) that such an accommodation is reasonable; and (4) that the defendant refused to make the requested accommodation.  *See* 42 U.S.C. § 3604(f)(3)(B).[19]

---

[19]Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act contain similar requirements.  The Rehabilitation Act requires that federal grantees make reasonable accommodations for their handicapped residents.  Furthermore, the American with Disabilities Act is to be interpreted consistently with § 504 of the

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                    Page 20 of 23

The Fair Housing Act requires an accommodation for persons with handicaps if the accommodation is (1) reasonable, (2) necessary, (3) to afford handicapped persons equal opportunity to use and enjoy housing. The plaintiff bears the burden of proving each of these elements by a preponderance of the evidence. *See Bryant Woods Inn Inc. v. Howard County, Maryland,* 124 F.3d 579, 603-04 (4th Cir. 1997). In measuring the effects of an accommodation, the court may look not only to its functional and administrative aspects, but also to its costs. *Id.* Reasonable accommodations should not require accommodations which impose undue financial and administrative burdens or changes, adjustments or modifications to existing programs that would be substantial, or that would constitute fundamental alterations in the nature of the program. *Id.* Plaintiff has failed to raise serious questions as to any of these elements, much less demonstrated the probability of success on the merits. Plaintiff simply has failed to make the necessary showing for a preliminary injunction.

### 4.    Plaintiff has not given security.

Contrary to plaintiff's argument, Federal Civ. R. 65(c) plainly requires such security. Rule 65(c) provides:

> (c)    **Security.**    No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum that the court deems proper, for the payment of such cost and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

---

Rehabilitation Act. The ADA, like the Rehabilitation Act, does not require a defendant to fundamentally alter its program or incur undue financial or administrative burdens. 28 CFR § 35130(b)(7).

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction                              Page 21 of 23
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB

Because CSC has provided plaintiff an eviction notice, and is declining to accept rent payments based on the termination of tenancy, it is losing rent on the apartment. Additionally, this is a case which could involve substantial costs and fees, and the requirement should not be waived.

## IV.    CONCLUSION

For the foregoing reasons, a preliminary injunction is not warranted. Nevertheless, defendant will not oppose an extension of the temporary restraining order as long as this case remains in federal court and until either the court enter summary judgment on plaintiff's discrimination claims or, if summary judgment is not entered, until a trial on the merits, provided the court order the trial of the action on the merits to be advanced to occur within eight (8) months and consolidated with the hearing of plaintiff's application.  *See* Fed. Civ. P. 65(a)(2) and *Chilton-Wren v. Olds,* 1 P.3d 693 at 698 (Alaska 2000) (declaring the parties can choose to agree, with the court's approval, to modify the expeditious and summary nature of the FED action in order to fully and fairly

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                    Page 22 of 23

litigate the tenant's counterclaims).  Otherwise plaintiff's motion should be denied for the

foregoing reasons.

DATED at Anchorage, Alaska, this 19th day of April, 2006.

DELANEY WILES, INC.
Attorneys for Chugiak Senior Citizens, Inc.

s/Donna M. Meyers and William E. Moseley
Delaney Wiles, Inc.
1007 W. Third Avenue, Suite 400
Anchorage, Alaska  99501
Phone:      907-279-3581
Fax:          907-277-1331
E-mail:      dmm@delaneywiles.com
E-mail:      wem@delaneywiles.com
Alaska Bar Assoc. No. 9006011 (DMM)
Alaska Bar Assoc. No. 7811121 (WEM)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day
of April, 2006, a copy of **Qualified
Opposition To Plaintiff's Motion
For Temporary Restraining Order
And Injunction** was served electronically on:

Nikole M. Nelson
Alaska Legal Services Corporation
1016 West 6th Avenue, Suite 200
Anchorage, Alaska   99501

s/Donna M. Meyers and William E. Moseley
(115969)

Qualified Opposition to Plaintiff's Motion for
Temporary Restraining Order and Injunction
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB                    Page 23 of 23