Donna M. Meyers
William E. Moseley
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska  99501
PHONE:  907-279-3581
FAX:  907-277-1331
dmm@delaneywiles.com
wem@delaneywiles.com

Attorneys for Defendant
Chugiak Senior Citizens, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her Power of Attorney Carol Winters,<br><br>                     Plaintiff,<br><br>    v.<br><br>CHUGIAK SENIOR CITIZENS, INC.,<br><br>                   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 3:06-cv-00083-TMB |

## OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

### I.    INTRODUCTION

Plaintiff seeks remand of this case to state court pursuant to 28 U.S.C. §§ 1367(c) and 1441(c).[1]  Plaintiff's motion is meritless.  Contrary to plaintiff's argument, the court has no discretion to remand the federal claims asserted.  Furthermore, remand of the state claims is not appropriate under 28 U.S.C. § 1441(c), because

---

[1]    Plaintiff's memorandum in support at page 3.

they are not separate and independent, but instead derive from a common nucleus of operative facts. Remand of the state claims is also not appropriate under 28 U.S.C. § 1367(c)(1), (2) because the state law claims do not substantially predominate over the federal statutory ones. Rather, all the claims asserted share a common nucleus of operative fact. Adjudication of all the claims likely will require presentation of the same or similar evidence, testimony by the same witnesses, and determination of the same or similar facts. Furthermore, plaintiff's lawsuit does not raise any novel or complex issues of state law. Plaintiff's state law claims do not address issues of first impression that are numerous or of constitutional magnitude. Furthermore, since the court has no discretion to remand the federal claims, economy and convenience would be poorly served by severing the state claims and remanding them for a separate, duplicative trial in state court.

Plaintiff's motion has no legal basis in that the line of cases plaintiff relies upon for her argument that the court is authorized to remand this case, including the federal claims, have all been over-ruled and/or expressly rejected by courts within the Ninth Circuit. Recent case law and cases from courts within the Ninth Circuit addressing the court's power to remand pursuant to 28 U.S.C. § 1367(c) and 1441(c) undermine completely plaintiff's motion to remand.

## II.    STATEMENT OF FACTS

This is a case filed by a tenant of an assisted living facility who is attempting to force the facility to keep her as a tenant even though she continuously violates house rules, is abusive to other tenants and the staff, and her needs exceed the

level of services the assisted living facility provides.  Plaintiff brings this action even though there are literally hundreds of other assisted living facilities within the Anchorage area that could provide the more one-on-one level of care plaintiff demands and needs.  In essence, plaintiff is demanding that Chugiak Senior Citizens, Inc. (CSC) incur substantial costs, substantially alter its assisted living program and turn a blind eye to the needs and rights of its other tenants in order to permit her to continue to reside there for her and her daughter's convenience.

### A.    Chugiak Senior Center's Assisted Living Program.

Chugiak Senior Citizens, Inc., ("CSC") is a non-profit corporation that operates an assisted living program ("ALP").  Tenants of CSC reside in their own apartments within CSC's facility.  The ALP provides supervision and/or assistance with certain activities of daily living and instrumental activities of daily living, coordinates services by outside agencies, and monitors the activities of residents for their well-being.  It is not a skilled nursing facility, and does not offer skilled nursing services on a full-time basis.[2]  Indeed, CSC offers very limited nursing services during the day on Monday through Friday.  *See* Affidavit of Linda Hendrickson (Ex. A).

### B.    Helen Winters' Admission to CSC.

---

[2]    Assisted living homes are permitted by law to determine the level of services they want to offer and provide, and they are not required to accept residents exceeding those levels of service.  An assisted living facility may involuntarily terminate a residential services contract when the home can no longer provide or arrange for services in accordance with the resident's needs and the resident's assisted living plan.  *See* AS 47.33.360.

Plaintiff became a tenant in CSC's assisted living facility ("ALF") on September 20, 2004 and lives in her own apartment. Among other documents, plaintiff, individually or through Carol Winters as her daughter and Power of Attorney, executed a Lease Agreement, a Resident Services Contract, and an Acknowledgment of Receipt of Resident's Rights that included an acknowledgment plaintiff received CSC's Resident Policies (House Rules). *See* Affidavit of Linda Hendrickson (Ex. A); *see also* Exs. B through D.

The Lease Agreement provided for a month-to-month tenancy and was made subject to the landlord and tenant laws of the State of Alaska.[3] Under the Lease Agreement, plaintiff agreed to comply with the written policies and procedures of CSC.[4] Furthermore, plaintiff agreed not to make excessive noise at CSC that would disturb the peace and quiet of her neighbors, or cause or permit any nuisance to exist at CSC. Nuisance is defined as "an obnoxious, annoying person, thing or practice. Something offensive or annoying to individuals or to the community, for which a legal remedy may be sought."

The Lease Agreement also provides that CSC may involuntarily terminate the lease for the following reasons:

**Section 12. Termination**

- Termination by Management: The Management will not terminate a Resident's Residential Services Contract against the Resident's will; except:

---

[3]     *See* Lease Agreement (Ex. B), §§ 2, 3.

[4]     *Id.* at § 15.

- For medical reasons.

- The level of care needed is no longer available at this facility.

- For engaging in a documented pattern of conduct that is harmful to the resident, other residents, or staff of the home.

- For violation of the terms of the Residential Services Contract, including failure to pay costs incurred under the Contract.

- When the Resident's physician orders emergency transfer out of the Facility.

- When the Facility is closing.

- When the Facility can no longer provide or arrange for

    services in accordance with Resident's needs and the
    Resident's *assisted living plan*.

- A Resident's behavior is a threat to the peace and safety of other Residents or Self.

- By mutual consent of the parties.

- For cause, by either party, when the other party fails in any material way to perform its obligation under this Lease.

To invoke termination under this paragraph, the terminating party must notify the other party in writing of its intent to terminate this contract and state with reasonable specificity the grounds therefore.  The other party shall have 15 days after receiving the notice of intended termination to cure, or take reasonable steps to cure, the default complained of.

Plaintiff's Residential Service Contract lists the admission criteria to CSC and defines the services CSC agreed to provide Helen Winters. Section 9 of the Residential Service Contract states the admission criteria and provides in part:

**Section 9.  Admission Criteria.**

The Manager may admit Residents for assisted living services who meet the following criteria:

1.      Accept only residents whose needs we can meet. This includes assessing resident needs, abilities and preferences, staffing ratios, physical spaces, etc.

* * *

5.      Admit and retain individuals whose on-going needs do not exceed medical or Nursing services allowed by AS 47.33.020

* * *

7.      Admit and retain individuals who do not have a tendency to wander, fall, act verbally or physically abusive or socially inappropriate.

8.      Admit and retain individuals whose behavior places little or no stress on self, other individuals or staff.

9.      Must be physically stable, with inactive chronic disease or transient, acute illness which requires continuing medical attention or it is determined that staff and staffing levels can meet the individuals needs.

The Manager shall not admit or retain a resident who:

1.      Desires/requires specialized medical care that is not available at the Facility;

2.      Requires continuous skilled nursing care;

* * *

4.    [I]s believed to require special intervention, beyond the capacity of the Manager's staff to provide, to prevent active harm to self or others.

Additionally, plaintiff again agreed in the Residential Service Contract to comply with the written policies and procedures of CSC.[5]  CSC's Resident Policies – House Rules prohibit "[p]hysical, verbal, or mental abuse or aggression by residents or their visitors is unacceptable. . . . [and] [a]ny infraction of this policy. . .may result in eviction.[6]

Plaintiff's Residential Service Contract also defines the conditions under which a resident can be moved out of the ALF involuntarily.  Section 11 of the Contract states in pertinent part:

### Section 11.  Termination.

If resident does not meet regulatory or manager's criteria for occupancy in the designated setting, move-out shall occur only after consultation with Resident, [Guardian], and/or [Guarantor].  The Manager shall provide Resident with 30 days' notice of a proposed move-out unless such delay might jeopardize the health, safety, and well-being of the Resident or others.  Resident, [Guardian], and/or [Guarantor] shall have the right to a conference with the Manager's staff responsible for occupancy decisions if a request is made within 10 days of receipt of the notice for move-out.

Residents may be involuntarily moved only if:

---

[5]    *See* Assisted Living Program Resident Service Contract (Ex. C), § 36.

[6]    *See* Ex. D, ¶9, p. 6.

1.     She/he poses an immediate threat to self or others;

2.     She/he needs mental health services to prevent harm to self or others;

3.     She/he has breached the conditions of their Resident Contract Agreement and/or Resident Service Plan;

* * *

5.     The Manager can no longer meet the Resident's needs as defined in the Resident Service Plan, and the Manager determines in consultation with the Resident, [Guardian] and/or [Guarantor], physician, and/or care coordinator, that it is appropriate for the Resident to remain at the Facility; and

**C.     Plaintiff's History at CSC.**

Shortly after plaintiff's admission to CSC's assisted living program, CSC informed Carol Winters that Helen's level of care exceeded the level of services CSC could provide and plaintiff should be placed in a smaller facility where she could receive 1 on 1 care.  However, neither plaintiff nor Carol Winters wanted to seek alternative housing, so CSC continued to make efforts to provide the services plaintiff needed although her level of care exceeded the limits of what CSC could reasonably provide and had agreed to provide, and her care needs continue to exceed the limits of services CSC can offer residents.  *See generally* Affidavit of Linda Hendrickson (Exh. A).

During plaintiff's resident contact and tenancy at CSC, she has also continuously engaged in a pattern of behavior and conduct consisting of unnecessary yelling and verbal abuse of staff and other residents.  Her pattern of

unacceptable behavior has been discussed with her, and CSC has participated in several care conferences to discuss this behavior and the appropriateness of terminating the Resident Services Contract.  Despite these efforts, plaintiff's pattern of unacceptable behavior has not abated, and is in violation of the Residential Services Contract and Lease Agreement.   Plaintiff's anger has become so intense that she actually struck a staff member in December 2005, which was one of the more recent events resulting in the decision to terminate the Residential Service Contract and Lease Agreement.  Her continuous unacceptable behavior has also disrupted the peaceful and enjoyable atmosphere for both other residents and staff, and her conduct is detrimental to the safety and well-being of other residents and the staff.  Staff members have expressed such extreme frustration with Helen's outbursts, insults and extreme demands that some staff members have either quit or threatened to quit.  *Id.*

### D.    CSC's Right to Evict Plaintiff Via a Forcible Entry and Detainer Action

Because plaintiff is a tenant of CSC, the provisions of the Alaska Uniform Residential Landlord and Tenant Act apply, except as modified by the provisions of AS 47.33.005 et seq., which governs assisted living homes.   AS 34.03.130 expressly permits a landlord to adopt rules and regulations concerning the tenant's use and occupancy of the premises.[7]  AS 34.03.120(a)(7) requires the tenant to not

---

[7]      AS 34.03.130 provides in pertinent part:

> **Sec. 34.03.130.  Rules and regulations.**  (a) A landlord may adopt rules and regulations, which shall be posted prominently on the

unreasonably disturb a neighbor's peaceful enjoyment of the premises.[8]  Pursuant to

AS 34.03.220, even if rent is current, the landlord may evict a tenant for a material

non-compliance with a reasonable rule and regulation or for a violation of AS

34.03.220.[9]  Furthermore, even if rent is current, AS 34.03.290 permits a landlord or

---

premises, concerning the tenant's use and occupancy of the premises.  A rule or regulation is enforceable against the tenant only if

(1)    its purpose is to promote the convenience, safety, health, or welfare of the tenants in the premises, preserve the landlord's property from abusive use, or make a fair distribution of services and facilities held out for the tenants generally;
(2)    it is reasonably related to the purpose for which it is adopted;
(3)    it applies to all tenants in the premises in a fair manner
(4)    it is sufficiently explicit in its prohibition, direction, or limitation of the tenant's conduct to fairly inform the tenant of what the tenant must or must not do to comply;
(5)    it is not for the purpose of evading the obligations of the landlord; and
(6)    the tenant has notice of it at the time the tenant enters into the rental agreement. . . .

[8]    AS 34.03.120(6) provides in pertinent part:

**Sec. 34.03.120.  Tenant obligations.**  (a)  The tenant . . . .

. . .

(6)    may not unreasonably disturb, or permit others on the premises with the tenant's consent to unreasonably disturb, a neighbor's peaceful enjoyment of the premises; . . . .

[9]    AS 34.03.220 provides in pertinent part as follows:

**Sec. 34.03.220.  Noncompliance with rental agreement; failure to pay rent.**

(a)    Except as provided in this chapter,  . . .

tenant to terminate a month-to-month tenancy for no specified reason by a written notice given to the other at least 30 days before the rental due date specified in the notice.[10] If the tenant remains in possession, then the landlord is authorized to bring an action for possession. *Id.* Additionally, AS 34.03.090(a) authorizes the landlord, after serving a notice to quit on a person who is wrongfully in possession, to bring an action for possession.[11]

---

(2)    if there is a material noncompliance by the tenant with the rental agreement, or if there is noncompliance with AS 34.03.120, . . . materially affecting health and safety, the landlord may deliver a written notice to quit to the tenant under AS 09.45.100 – 09.45.110 specifying the acts and omissions constituting the breach and specifying that the rental agreement will terminate upon a date not less than 10 days after service of the notice; . . . .

[10]    AS 34.03.290 provides in pertinent part as follows:

**Sec. 34.03.290. Periodic tenancy and holdover.**

. . .

(b)    The landlord or the tenant may terminate a month to month tenancy by a written notice given to the other at least 30 days before the rental due date specified in the notice.

(c)    If the tenant remains in possession without the landlord's consent after expiration of the term of the rental agreement or after its termination under (a) or (b) of this section, the landlord may, after serving a notice to quit to the tenant under AS 09.45.100 – 09.45.105, bring an action for possession. . . .

[11]    AS 34.03.090(a) provides in pertinent part as follows:

**Sec. 34.03.090. Landlord to supply possession of the dwelling unit.** (a) . . . The landlord may, after serving a notice to quit under AS 09.45.100 – 09.45.105 to a person who is wrongfully in possession,

Because CSC's facility is an assisted living home, it is also governed by the provisions of AS 47.33.005 et seq., which to some extent modify the provisions of the Alaska Uniform Residential Landlord and Tenant Act.  AS 47.33.060 expressly permits an assisted living home to establish house rules.  House rules may address various issues, including physical, verbal or other abuse of other residents or staff (AS 47.33.060(c)(6)).[12]    AS 47.33.360 permits the involuntary termination of a residential services contract.  That section provides in pertinent part:

> **Sec. 47.33.360.  Involuntary termination of contract.**  (a) An assisted living home may not terminate a residential services contract with a resident of the home against the resident's will, except
>
> (1)    for medical reasons:

---

> (1)    bring an action for possession against any person wrongfully in possession; and
> (2)    recover the damages provided in AS 34.03.290.

[12]    AS 47.33.060(c)(7) provides in pertinent part:

> **Sec. 47.33.060.  House rules.**  (a) An assisted living home may establish house rules, subject to the limitations provided for under this chapter.
>
> (b)    An assisted living home shall give a copy of the house rules to a prospective resident or the prospective resident's representative before the prospective resident enters into a residential services contact with the home, and shall post the house rules in a conspicuous place in the home.
>
> (c)    House rules may address various issues, including . . .
>
> (7)    physical, verbal, or other abuse of other residents or staff.

(2)    for engaging in a documented pattern of conduct that is harmful to the resident, other residents, or staff of the home;

(3)    for violation of the terms of the residential services contract, . . .

. . .

(6)    when the home can no longer provide or arrange for services in accordance with the resident's needs and the resident's assisted living plan.

CSC has several bases to evict plaintiff from its assisted living facility. CSC is no longer able to provide the level of services plaintiff needs, and she has continuously engaged in a pattern of behavior and conduct consisting of unnecessary yelling and verbal abuse of staff and other residents. Her anger has become so intense that she actually has struck a member of the staff. Her continuous unacceptable behavior disrupts the peaceful and enjoyable atmosphere for both other residents and staff. Her pattern of unacceptable behavior has been discussed with her, and CSC has participated in several care conferences to discuss this behavior and appropriateness of terminating the Resident Services Contract. Despite these efforts, plaintiff's pattern of unacceptable behavior has not abated, and is in violation of the Residential Services Contract. Her continuous verbal, mental abuse and aggression towards staff and other residents is unacceptable and is grounds for termination of her contract. Her conduct is detrimental to the mental and physical safety and well-being of other residents and the staff.

### E.    The Eviction Notice.

On January 5, 2006, CSC served Helen Winters with a Notice of Eviction. The notice provided several reasons why CSC was terminating plaintiff's Lease Agreement and Residential Service Contract.   As required by the Residential Service Contract, the letter was sent directly to plaintiff as required under the Lease Agreement and Residential Service Contract by prepaid, first class mail at the address plaintiff provided in the Residential Service Contract.[13]  The letter listed the following reasons for terminating the Lease Agreement and Residential Service Contract:

(1)    she posed an immediate threat to others, or may need mental health services to prevent harm to others;

(2)    the level of care she needs is no longer available at the facility;

(3)    she has engaged in a pattern of conduct that is harmful to the other residents or staff;

(4)    her behavior is a threat to the peace and safety of other residents or staff;

(5)    the Residential Services Contract was being terminated pursuant to AS 47.33.360(a) (2), (3), and (6) because she had engaged in a documented pattern of conduct harmful to the other residents and staff of the facility, she violated the terms of Residential Services Contract, and the facility could no longer provide for services in accordance with her needs; and

(6)    she had violated written policies and procedures of the facility, and CSC's Resident Policies (House Rules) prohibiting physical, verbal or mental abuse or aggression by residents.[14]

---

[13]    *Id.*

[14]    *See* Ex. E (Eviction letter).

As required by AS 47.30.360(b) and the Residential Service Contract, CSC provided Helen Winters with 30 days notice of the proposed move out,[15] and informed Helen Winters of her right to a conference with CSC's administrative staff responsible for occupancy decisions, and any advocates chosen by Helen Winters. Helen Winters exercised her right to hold a conference, which was held on January 20, 2006. Following the conference, CSC declined to retract the letter of eviction. However, CSC did offer Helen Winters additional time to find some alternative housing, and offered to further extend the move out date provided plaintiff could show a good faith effort was being made to find alternative housing.[16]

In the instant case, the procedures for involuntary termination of plaintiff's contract have been fully complied with. Nevertheless, plaintiff refuses to leave, and therefore is in wrongful possession of the premises under the Alaska statutes set forth above.

Instead of demonstrating a good faith effort to find alternate housing, plaintiff filed a lawsuit seeking injunctive relief and damages. Plaintiff's amended complaint asserts nine claims, all based upon and supported by the same factual allegations. Plaintiff asserts claims for violation of the Assisted Living Homes Act, violation of the Alaska Human Rights Act, violation of Alaska's Uniform Residential Landlord Tenant Act, breach of contract, violation of the Americans with Disabilities Act, violation of §

---

[15]    The notice was effective January 4, 2006, and plaintiff was informed she had to vacate the apartment at CSC on or before February 3, 2006. *Id.*

[16]    *See* Ex. F (1/30/06 Letter to Assistant Attorney General Timothy Twomey).

504 of the Rehabilitation Act of 1973, violation of the Fair Housing Act of 1988, intentional infliction of emotional distress and negligent infliction of emotional distress. Plaintiff seeks damages for pain and suffering, damages for mental anguish, and punitive damages.

Defendant timely removed this action to federal court. Plaintiff now seeks to remand the entire case pursuant to 28 U.S.C. § 1367(c) and 1441(c).

### III.  ARGUMENT

#### A.     Plaintiff's Remand Argument is Legally and Factually Deficient.

None of the cases plaintiff cites support remand of this case to Alaska state court. In fact, the cases are either irrelevant to a motion to remand under 28 U.S.C. § 1367(c) or 1441(c), or have been overruled or expressly rejected by the Ninth Circuit.

There is no question this case was properly removed. It is well-established the Federal Courts have original jurisdiction over all civil actions arising under the laws of the United States. 28 U.S.C. § 1331. *Liveops, Inc. v. Teleo, Inc.,* 2006 WL 83058 (N.D. Cal.) at page 2.[17]  Furthermore, it is equally well-established the Federal Courts have supplemental jurisdiction over state law claims if the claims are "so related" to the federal claims that they "form part of the same case or controversy." *Id.*

---

[17]     A copy of the *Liveops* opinion is attached hereto for the court's convenience.

*Winters v. CSC/*Case No. 3:06-cv-00083-TMB
**Opposition to Plaintiff's Motion for Remand**                                    Page 16 of 35

Contrary to plaintiff's argument, this court's jurisdiction over the federal claims is mandatory, not discretionary, and they cannot be remanded. *See Brockman v. Merabank,* 40 F.3d 1013, 1017 (9th Cir. 1994) (declaring original jurisdiction is not discretionary, thus the district court can neither dismiss the entire case for lack of jurisdiction nor remand it); *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 787 (3d Cir. 1995) (declaring nothing in § 1367(c) authorizes a district court to decline to entertain a claim over which it has original jurisdiction and, accordingly, that section clearly does not sanction a district court's remand of the entire case to the state court); *Cabealo v. Davis,* 829 F. Supp. 923, 926 (S.D. Ohio 1993) (declaring § 1441(c) does not authorize the remand of claims arising under federal law which are properly removed and which fall within the district court's subject matter jurisdiction).

Contrary to plaintiff's argument, the severing of and remand of plaintiff's related state law claims is not warranted under § 1367(c) or 1441(c). The case law establishes plaintiff's state law claims are not separate and independent, nor do they substantially predominate over the federal claims. The case law further establishes there is no merit to plaintiff's unsubstantiated claim that her state law claims present novel issues of Alaska law which Alaska state courts should be allowed to decide. Furthermore, remand of the state law claims would result in a duplicative trial in state court, contravening economy, efficiency and convenience.

The proper analysis is set forth in *Mincy v. Staff Leasing, LP,* 100 F. Supp.2d 1050 (D. Ariz. 2000). In that case, plaintiffs filed a complaint against their former employer alleging violation of the Fair Labor Standards Act, violation of A.R.S. § 23-

353, and other state law causes of action for quantum merit, breach of express and implied contract, and breach of the covenant of good faith and fair dealing, all relating to the wage dispute. Defendants filed a Notice of Removal alleging jurisdiction based in part on federal question, and plaintiffs moved to remand, asserting the case should be remanded pursuant to 28 U.S.C. § 1441(c) and 28 U.S.C. § 1367(c) because the state claims predominated. [18]

---

[18]     Title 28 U.S.C. § 1367 reads in part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> . . . .
>
> (c)     The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
>
>     (1)     the claim raises a novel or complex issue of State law,
>     (2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> . . . .

*Id.* Title 28 U.S.C. § 1441(c) provides

> Whenever a *separate and independent* claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the

In rejecting plaintiff's motion to remand, the court discussed governing Ninth

Circuit case law, declaring in part:

> In *Executive Software v. U.S. District Court for Central District of California,* 24 F.3d 1545, 1551 (9th Cir. 1994), while mandating that the district court provide a reason for declining to exercise supplemental jurisdiction pursuant to § 1367(c), the Ninth Circuit held that "once it is determined that the assertion of supplemental jurisdiction is permissible under section 1367(a) and (b), section 1367(c) provides the only valid basis upon which the district court may decline jurisdiction and remand pendent claims." *Id.* This holding suggests that, under § 1367, the exercise of supplemental jurisdiction by a district court is mandatory rather than discretionary, absent reasons to decline jurisdiction, which are enumerated in § 1367(c). *Accord* Cherminsky, *Federal Jurisdiction* § 5.4 at 332 and n. 22 (3 ed. 1999) (section 1367 "changes the preexisting law in that it seems to make supplemental jurisdiction mandatory not discretionary;" quoting *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 167, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) "[t]he whole point of supplemental jurisdiction is to allow the district courts to exercise pendent jurisdiction over claims as to which original jurisdiction is lacking[ ]").

100 F. Supp.2d at 1052.

The *Mincy* court first noted that plaintiff's complaint included a claim under a

federal statute, therefore the court had original jurisdiction. Consequently, there

were no doubts as to the right of removal in the first instance. 100 F. Supp.2d at

1052. The court declared: "The presence of even one claim arising under federal

law is sufficient to satisfy the requirement that the case be within the original

---

> district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

> 28 U.S.C. § 1441(c) (emphasis added).

jurisdiction of the district court for removal." *Id.* The court noted that since plaintiffs chose to plead a federal cause of action, they subjected themselves to removal. *Id.* at 1053. The court also declared that once the court has original jurisdiction over a claim, there is no statutory authorization to remand such federal law claim to the state court. *Id.*

The court declared that it had discretion to remand the state law claims only if one of the four situations listed in § 1367(c) is present. In analyzing plaintiffs' argument that the state law claims predominated the sole federal claim, the court declared:

> Defendants, on the other hand, argue that the "question [of when state claims predominate federal claims] has been presented and resolved in the Ninth Circuit and other circuits by determining whether or not the claims asserted share a common nucleus of operative facts." (Resp. at 5.) Defendants are correct. Federal courts are reluctant to remand state claims, once they obtain original jurisdiction based on federal question, where all the claims derive from the same set of facts.

100 F. Supp.2d at 1053.

The court in *Mincy* also cited to *Smith v. K-Mart Corp.,* 899 F. Supp. 503 (E.D. Wash. 1995). The *Smith* court held that once a case is properly removed, remand should not be granted when:

> All of Plaintiffs' claims arise out of the "same nucleus of operative facts" giving this court supplemental pendent jurisdiction, which the court cannot reject <u>without a finding that one of the section 1367(c) factors applies, as well as a finding that remand would serve the interests of economy, convenience, fairness, and comity</u>. Plaintiffs have not established a proper basis for this court to remand the State law claims to State court.

899 F. Supp. at 506, quoted in *Mincy v. Staff Leasing, LP,* 100 F. Supp.2d at

553-54 (emphasis added).

The *Mincy* court held plaintiffs had not established a proper basis for remand

of the state claims, declaring:

> Nevertheless, under *New Rock Asset Partners,* as under other cases cited by Defendants, where, as here, all claims arise from the same set of facts, and the state law causes of action are not novel or complex, the state claims do not predominate the federal claim. . . .  In addition, Defendants' argument that accepting supplemental jurisdiction "avoids the pendency of dual law suits" is well taken and, as discussed prior, Plaintiffs gave no valid reason for the Court to refuse the exercise of supplemental jurisdiction.

100 F. Supp.2d at 1053-1054. [19]

The court in *Mincy* then addressed plaintiffs' argument that the court was

authorized to remand the entire case under 28 U.S.C. § 1441(c).  In the course of its

opinion rejecting plaintiff's argument, the court noted that 28 U.S.C. § 1441(c) was

amended in 1990.  Prior to the amendment, it read:

> Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

---

[19]    The *Mincy decision* cites more cases which repeat the same general rule: *White v. County of Newberry,* 985 F.2d 168 (4th Cir. 1992) (a district court could exercise supplemental jurisdiction over property owners' state claim asserted in an action involving a CERCLA claim arising from the same set of facts, though theories of recovery of damages were different under the federal and state laws); *In re City of Mobile,* 75 F.3d 605 (11th Cir. 1996) (jurisdiction proper when all causes of action result from a single wrong).

28 U.S.C. § 1441(c) (pre-1990), quoted at 100 F. Supp.2d at 1055.

Thus the amendment replaced the phrase "may remand all matters not otherwise within its original jurisdiction" with "remand all matters in which State law predominates."  In addressing plaintiffs' argument, the court declared:

> Plaintiffs maintain that though the meaning of the 1990 amendments has not yet been addressed in the Ninth Circuit, "every Court that has addressed this issue, with one exception, has read the amendments as broadening rather than narrowing the scope of the federal courts' discretion to remand," and that "[t]he almost unanimous view is that the amended remand clause of § 1441(c) now allows for remand of the entire case, federal claims included, where state law predominates . . . .  In support of this proposition, Plaintiffs cite *Alexander v. Goldome Credit Corp.*, 772 F. Supp. 1217, 1224 (M.D. Ala. 1991).  Plaintiffs continued to vigorously rely on *Alexander* during the oral argument.  Plaintiffs' reliance is misplaced.  As Defendants correctly note in their Response, *Alexander* is hardly representative of a "unanimous view," and it has not been followed in its circuit.  *See In re City of Mobile,* 75 F.3d at 608 (when a removable cause of action is not separate and independent from non-removable causes of action, § 1441(c) does not apply and the district court erred remanding the entire case; and "[w]here both federal and state causes of action are asserted as a result of a single wrong based on a common event or transaction, no separate and independent federal claim exists under section 1441(c)");  *see also Reneau v. Oakwood Mobile Homes,* 952 F. Supp. 724, 726 (N.D. Ala. 1997).  Although some district courts initially expressed the same view as the *Alexander* court, these cases, none of which was cited by Plaintiffs, have been overruled.  *See* note 9, supra, and the discussion below.

100 F. Supp.2d at 1055-56 (emphasis added).[20]

---

[20]    The other cases referenced in n. 9 include many of the cases plaintiff relies upon in the instant case, including *Holland v. World Omni Leasing, Inc.,* 764 F. Supp. 1442 (N.D. Ala. 1991).  The court noted that these cases have been "overruled and obliterated" by *City of Mobile, supra, and Reneau, supra,* 952 F. Supp. at 726.  Thus, the 11th Circuit rejected the argument that plaintiff was

The court in *Mincy* further cited to *Borough of West Mifflin v. Lancaster,* 45 F.3d 780 (3d Cir. 1995).  The court in *Borough of West Mifflin* stated:

> Title 28 U.S.C. § 1441(c) provides for removal or remand only where the federal question claims are "separate and independent" from the state law claims with which they are joined in the complaint.  However, where there is a single injury to plaintiff for which relief is sought, arising from an interrelated series of events or transactions, there is no separate or independent claim or cause of action under § 1441(c).  Suits involving pendent (now "supplemental") state claims that "derive from a common nucleus of operative fact", do not fall within the scope of § 1441(c), since pendent claims are not "separate and independent."  It is apparent, then, that § 1441(c) grants the district court only a limited authority to remand a case.  [[citations omitted.] . . . . In the case at bar, there is no allegation that the state claims are "separate and independent."  Plaintiffs recite only one set of facts as a basis for their state and federal claims. (Compl. ¶¶ 12-22.)  Consequently, § 1441(c) is not applicable.

100 F. Supp.2d at 1056.[21]

The court thus noted that the only means to achieve remand of a claim, which otherwise qualifies as a supplemental claim under § 1367, is by the district court refusing to exercise jurisdiction under § 1367(c), which the court refused to do.  *Id.* at 1057.  The court further declared that the Ninth Circuit has held that where a district court had original jurisdiction and a federal claim remained in the action, the

---

attempting to advance.  The court noted that "numerous courts in other jurisdictions" also have come to the conclusion that the court may remand only state law claims which are not intertwined with federal question claims.  100 F. Supp.2d at 1056, n. 9.

[21]    The court noted that *Moore v. DeBiase,* 766 F. Supp. 1311, 1321 (D. N.J. 1991), and the cases which have adopted its rationale (and upon which plaintiff relies in the instant case) have been overruled.  100 F. Supp.2d at 1056.

district court can neither dismiss the entire case for lack of jurisdiction or remand it. Rather, a district court's retention of the case is mandatory because original jurisdiction is not discretionary. The court declared federal courts have a virtually unflagging obligation to exercise the jurisdiction conferred upon them by the coordinate branches of government and duly invoked by litigants. *Id.* at 1057-58.

In this case, § 1441(c) is not applicable because there is a single alleged injury to plaintiff for which relief is sought. The pendent state claims derive from a common nucleus of operative fact, and do not fall within the scope of § 1441(c). Furthermore, the state claims do not predominate the federal claims since the claims all share a common nucleus of operative fact. All of plaintiff's claims are supported by the same factual allegations. *See* Amended Complaint.

The court in *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 789 (3ʳᵈ Cir. 1995), in rejecting a similar argument to the one made by plaintiff in this case, declared:

> As we have noted, the "substantially predominates" standard of § 1367(c)(2) comes from *Gibbs.* It is important to recognize that this standard was fashioned as a limited exception to the operation of the doctrine of pendent jurisdiction—a doctrine that seeks to promote judicial economy, convenience, and fairness to litigants by litigating in one case all claims that arise out of the same nucleus of operative fact. When a district court exercises its discretion not to hear state claims under § 1367(c)(2), the advantages of a single suit are lost. For that reason, § 1367(c)(2)'s authority should be invoked only where there is an important countervailing interest to be served by relegating state claims to the state court. This will normally be the case only where "a state claim constitutes the real body of a case, to which the federal claim is only an appendage." *Gibbs,* 383 U.S. at 727, 86 S. Ct. at 1140—only where permitting litigation of all claims in

the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.

Given the origin of the "substantially predominate" standard, a district court's analysis under § 1367(c)2) should track the Supreme Court's explication of that standard in *Gibbs*. We do not understand plaintiffs to suggest that there is a substantial quantity of evidence supporting their state claims that would not be relevant to the federal claims that the defendants, acting under color of state law, conspired to violate plaintiffs' constitutional rights by assaulting, wrongfully arresting, and maliciously prosecuting them. Thus, in the terminology of *Gibbs*, the state issues would not appear to "substantially predominate . . . in terms of proof." 383 U.S. at 726, 86 S. Ct. at 1139. Nor would they appear to "substantially predominate . . . in terms of . . . the comprehensiveness of the remedy sought." *Id.* The remedy sought based on the state claims is the same remedy sought based on the federal claims—damages for the same set of injuries to the plaintiffs. As we observed in *Sparks*, 661 F.2d at 33-34, the difficulty of avoiding duplicative recoveries is a factor tending to weigh against litigating related federal and state claims in different for a.

This leaves the issue of whether the state claims can be said to "substantially predominate . . . in terms of . . . the scope of the issues raised." *Id.* It is true that the state claims here outnumber the federal claims. The "substantially predominate" standard, however, is not satisfied simply by a numerical count of the state and federal claims the plaintiff has chosen to assert on the basis of the same set of facts. An analysis more sensitive to the relevant interests is required.

45 F.3d at 789. *See also Liveops, Inc. Teleo, Inc.*, 2006 WL 83058 (N.D. Cal.) at page 4 (rejecting plaintiff's argument that the state claims substantially predominated over the federal claim because there were seven state claims and only one federal claim, noting that economy and convenience would be poorly served by severing the state law claims); *Picard v. Bay Area Regional Transit District,* 823 F. Supp. 1519, 1527 (1993) (declaring plaintiff's state law claims do not substantially predominate

over their federal claims because the same conduct forms the basis of all the claims, and while different legal theories are involved, each will require virtually the same evidentiary presentation at trial); *McNery v. Nebraska Public Power District,* 309 F. Supp.2d 1109, 1118 (D. Neb. 2004) (declaring state law claims do not substantially predominate over the federal claim when the scope of the issues presented, the damages alleged, and the evidence required to prove the state and federal claims are substantially the same and citing to numerous other cases to the effect the district court lacks discretion to refuse supplemental jurisdiction and remand state claims arising from the same case or controversy as the federal claim).

In the instant case, the state claims do not substantially predominate plaintiff's federal claims in terms of proof. All claims arise from the same series of events. Virtually the same facts and witnesses will be involved in rebutting all of plaintiff's claims. All of plaintiff's claims are based upon the same alleged wrongful conduct. No way are plaintiff's state law claims more important, more complex, or more time-consuming to resolve, or in any way more significant than her federal claims. Contrary to plaintiff's unsupported argument, plaintiff's entire case does not rest on Alaska law. Rather, this case would be a run-of-the-mill landlord-tenant dispute but for plaintiff's discrimination claims, three of which are federal claims. Additionally, plaintiff's claim under the Alaska Human Rights Act will largely be decided by federal law, since the Alaska state courts look to federal case law in interpreting and applying provisions of the Alaska Human Rights Act. *See Wondzell v. Alaska Wood Products, Inc.,* 583 P.2d 860, 863 (Alaska 1978).

Plaintiff also argues, without any analysis or citation to authority, that plaintiff's state law claims present novel issues of Alaska law which Alaska courts should be allowed to decide. Plaintiff's argument does not withstand analysis. The court in *Schwarm v. Craighead,* 233 F.R.D. 655 (E.D. Cal. 2006), addressed this ground for remand. In that case, a debtor brought a suit against the operator of a privately-run bad-check diversion program, alleging that the operator was a debt collector who, under color of law, made unlawful threats, demanded unlawful fees and disregarded the requirements of California statutes which authorizes a district attorney to contract with a private entity for "check restitution/prosecution programs." Plaintiff asserted causes of action for violation of due process under the United States and California constitutions, violation of the Fair Debt Collection Practices Act, fraudulent misrepresentation and negligent misrepresentation. *Id.* at 657. In addressing its supplemental jurisdiction, the court declared:

> Under 28. U.S.C. § 1367(c)(1), a district court has discretion to decline to exercise supplemental jurisdiction over a claim "that raises a novel or complex issue of state law." After determining whether state claims properly fall under § 1367(c)(1), the "Court must decide that declining jurisdiction best serves the values of economy, convenience, fairness, and comity'" established in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1330, 16 L.Ed.2d 218 (1966). *See Jeffery v. Home Depot U.S.A., Inc.* 90 F. Supp.2d 1066, 1071 (S.D. Cal. 2000).

233 F.R.D. at 658. The court thus noted that even if the state claims properly fell under § 1367(c)(1), the exercise of discretion still is informed by whether remanding the pendent state claims comports with the underlying objective of

most sensibly-accommodating the values of economy, convenience, fairness and comity. *Id.* at n. 4.

In rejecting plaintiff's motion for remand, the court declared:

> First, the "factual predicate" for declining jurisdiction under § 1367(c)(1) does not clearly exist because although Counts 4 and 5 may involve novel issues of California law, raising an issue of first impression regarding the interpretation of California Penal Code §§ 1001.60-1001.67, it is not clear that these issues are complex. Courts have considered claims to be complex when they address issues of first impression that are numerous or of constitutional magnitude. *See, e.g., Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1037-38 (8th Cir. 1999) (affirming a district court's decision to decline to exercise jurisdiction under § 1367(c)(1) when the claims involved at least six "complex substantive and remedial issues of first impression"); *Castellano v. Bd. of Trustees of Police Officers' Variable Supplements,* 937 F.2d 752, 758-59 (2nd Cir. 1991) (declining supplemental jurisdiction and concluding that "it would be, at the very least, imprudent for us to determine a state constitutional claim of first impression"). In contrast, the court here faces a single, unexceptional question of statutory interpretation: whether DATS had statutory authorization under California law to seek fees from putative plaintiffs beyond the actual amount of bank charges incurred.

233 F.R.D. at 659.

The court in *Schwarm* went onto declare:

> Second, the values of economy, convenience, and fairness favor retention of supplemental jurisdiction over Counts 4 and 5 by this court. The state and federal claims share the operative facts regarding the substance of the communications between the defendant and the plaintiff, the nature of the contract between defendant and the Mendocino County, and the request for plaintiff's bank records by the defendant. Because economy and convenience are best served in the maintenance of a single suit, *see Rosado v. Wyman,* 397 U.S. 397, 405, 90 S.C. 1207, 25 L.Ed.2d 442 (1970), the common nucleus of operative facts

between the state claims and the federal claims arising out of §
1983 and the FDCPA favors the retention of jurisdiction.

In the instant case, plaintiff's claims are not complex.  Rather, but for plaintiff's
discrimination claims, it would be a run-of-the-mill landlord-tenant eviction case.
Contrary to plaintiff's unsupported claim, the case does not raise issues of first
impression that are numerous or of constitutional magnitude.   Rather, plaintiff
argues without any support that this case puts this court in the "untenable or at least
unenviable position of creating new Alaska state law concerning whether Alaska's
FED statutes can be used in the context of an assisted living facility."[22]  In light of the
numerous state statutory provisions set forth above governing assisted living
facilities and landlord-tenant relations, defendant disagrees there is no controlling
Alaska law on this issue.  In any event, in light of the stipulation entered into by the
parties, defendant has agreed to forego an FED action as long as this case remains
in federal court and until plaintiff's discrimination claims are dismissed.  Thus, this is
no longer a basis for remand in any event.

Even if there were a basis for remanding the state claims under § 1367(c), the
exercise of discretion of whether to remand is informed by whether remanding the
pendent state claims comports with the underlying objective of most sensibly
accommodating the values of economy, convenience, fairness and comity.  *Liveops,
Inc. v. Teleo, Inc.,* 2006 WL 83058 (N.D. Cal.) at page 4; *Picard v. Bay Area
Regional Transit District,* 823 F. Supp. 1519, 1527-28 (N.D. Cal. 1993) (declaring

---

[22]      Plaintiff's memorandum in support at page 1.

there is a strong judicial interest in having claims that are based on the same factual foundation heard in the same forum); *Borough of West Mifflin v. Lancaster, Inc.,* 45 F.3d 780, 789 (3rd Cir. 1995) (declaring that where the district court does not set forth a persuasive, reasoned elaboration for dismissing the state claims, we are inclined to believe that the dictates of judicial economy, convenience, fairness to the parties and comity are better served by recognizing pendent jurisdiction).

Here, the values of economy, convenience, and fairness favor retention of supplemental jurisdiction over the state law claims. The state and federal claims share a common nucleus of operative fact. Because economy and convenience are best served in the maintenance of a single suit, the common nucleus of operative fact between the state claims and the federal claims dictates retention of jurisdiction.

### B. None of Plaintiff's Authorities Support Remand.

Plaintiff's cited authorities are either irrelevant to her arguments under 28 U.S.C. § 1367(c) and 1441(c), or have been overruled or expressly rejected by the Ninth Circuit. Plaintiff cites *Quakenbush v. Allstate Ins. Co.,* 116 S.Ct. 746, 401 U.S. 37, 27 L.Ed.2d 1 (1996). Plaintiff presumably meant to cite *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 116 S.Ct. 1712 (1996). That case is completely inapposite to the present one. In that case, the court addressed the application of the Burford Abstention Doctrine, but did not discuss 28 U.S. § 1367 or 1441(c).[23] *Corcoran v.*

---

[23]    Burford allows a federal court to dismiss a case only if it presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar", or if its adjudication in a federal forum would be "disruptive of state efforts to establish a coherent policy with

*Ardra Ins. Co., Ltd.,* 842 F.2d 31 (2d Cir. 1988) is distinguishable on the same basis. That case also addresses the application of the *Burford* doctrine, but did not discuss 28 U.S.C. § 1367 or 1441(c).

Plaintiff's hopes are also misplaced in *Younger v. Harris,* 91 S. Ct. 746, 401 U.S. 37 (1971), which also has no application here. The issue in that case was whether the federal court could grant equitable relief against an ongoing prosecution in state court. The Supreme Court held that even if the California Criminal Syndicalism Act under which one of the plaintiffs was being prosecuted was unconstitutional, he was not entitled to federal court equitable relief against prosecution in state court where the injury which he faced was solely that incidental to every criminal proceeding brought lawfully in good faith.

Plaintiff also relies upon *Golden Eagle Insurance Co. v. Travelers Companies,* 103 F.3d 750, 754 (9th Cir. 1996), which is the only Ninth Circuit case cited by plaintiff. Unfortunately for plaintiff, that case was subsequently overruled by *Government Employees Insurance Co. v. Dizol,* 133 F.3d 1220 (9th Cir. 1998). In any event, the case is irrelevant to the issues at hand. In *Golden Eagle Insurance Co.,* an insurer had brought a declaratory judgment action in state court to determine if a general liability insurer had a duty to defend the insured in an underlying

---

respect to a matter of substantial public concern." This power to dismiss represents an extraordinary and narrow exception to a district court's duty to adjudicate a controversy property before it, and is certainly not invoked in this case. 116 S.Ct. at 1724-27. *See also Picard v. Bay Area Regional Transit District,* 823 F. Supp. 1519, 1526 (N.D. Cal. 1993).

construction defect case. The defendant liability insurer removed the case to federal court based on diversity of citizenship, seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. *Id.* at 910. The question was whether the district court should have remanded the case back to state court by exercising its judicial discretion not to hear it.

In *Dizol,* the Ninth Circuit overruled *Golden Eagle Insurance Co. v. Travelers Companies,* holding that when a district court has constitutional and statutory jurisdiction to hear a case brought pursuant to the Declaratory Judgment Act, the district court may entertain the action without *sua sponte* addressing whether jurisdiction should be declined. In any event, those decisions, which dealt with whether the district court can entertain declaratory judgment actions brought by insurers under the Declaratory Judgment Act, have absolutely no application to the case at hand.

Plaintiff also cites to *Cotton v. South Dakota,* 843 F. Supp. 564, 567 (D.S.D. 1994), but that case does not support the proposition it is cited for. In that case, the action was removed pursuant to 28 U.S.C. § 1441(b) and remand was governed by 28 U.S.C. § 1447(c), not 1441(c). In that case, remand of the entire case was required by 11th Amendment immunity. Of course, that is not at issue here, and *Cotton* has no relevance to the instant case.

Plaintiff then relies upon a host of other cases, none from within the Ninth Circuit, for the proposition that a federal court can remand an entire case, even including separate and independent federal claims, if state law is found to

predominate. Unfortunately for plaintiff, all of the cases cited by plaintiff have either been overruled or expressly rejected by the Ninth Circuit. *See Mincy v. Staff Leasing, LP,* 100 F. Supp.2d 1050, 1055-56 (D. Ariz. 2000) (noting the overruling of *Alexander v. Goldome Credit Corp.*, 772 F. Supp. 1217 (N.D. Ala. 1991), *Holland v. World Omni Leasing, Inc.,* 764 F. Supp. 1442 (N.D. Ala. 1991), *Moore v. DeBiase,* 766 F. Supp. 1311 (D.N.J. 1991) and the district court decisions initially expressing the same view). All of the other decisions cited by plaintiff rely upon one or more of these overruled decisions. For example, *Eastus v. Blue Bell Creameries, L.P.,* 97 F.3d 100 (5th Cir. 1996); *Hayduk v. United Parcel Service, Inc.,* 930 F. Supp. 584, 599 (S.D. Fla. 1996), relied upon *Alexander v. Goldome, Moore v. DeBiase,* and *Holland v. World Omni Leasing, supra. Id.* at 106, n. 5. *Administaff, Inc. v. Kaster,* 799 F. Supp. 685, 689 n. 9 (W.D. Tex. 1992); *Moralez v. Meat Cutters Local 539,* 778 F. Supp. 368, 370 (E.D. Mich.); and *McKinney v. City of Grosse Pointe Park,* 72 F. Supp.2d 788 (E.D. Mich. 1999) have also been rejected. *See Majeske v. Bay City Board of Education,* 177 F. Supp.2d 666, 672 (E.D. Mich. 2001) (acknowledging the overriding principle, repeatedly emphasized by the Supreme Court, that in the absence of extraordinary circumstances, federal courts have a virtually unflagging obligation to exercise the jurisdiction conferred upon them by the coordinate branches of government and duly invoked by litigants, and declaring that the case there could not be remanded to state court because a viable federal question claim was pleaded). Plaintiff also relies upon other cases which relied upon overruled cases. *See Moralez v. Meat Cutters Local 539,* 778 F. Supp. 368, 370 (E.D. Mich.)

(which relied upon *Alexander v. Goldome Credit Corp., supra,* and *Moore v. DeBiase*, and *Holland v. World Omni Leasing, Inc., supra*).  Last, plaintiff cites to *Neal v. Fairman,* 1992 WL 370454 (N.D. Ill. 1992), which relied upon *Alexander v. Goldome Credit Corp.* and *Moralez v. Meat Cutters Local 539, supra.*  Plaintiff also cited to *Libertyville Comm. High School v. North Chicago Unit School Dist.,* 1993 WL 22488 (N.D. Ill. 1993) which in turn relied upon *Neal v. Fairman, supra.*

## IV.    CONCLUSION

Defendant requests the court to deny plaintiff's motion to remand for the foregoing reasons.

DATED at Anchorage, Alaska, this 16th day of May, 2006.

DELANEY WILES, INC.
Attorneys for Chugiak Senior Citizens, Inc.

s/Donna M. Meyers and William E. Moseley
Delaney Wiles, Inc.
1007 W. Third Avenue, Suite 400
Anchorage, Alaska  99501
Phone:       907-279-3581
Fax:            907-277-1331
E-mail:       dmm@delaneywiles.com
E-mail:       wem@delaneywiles.com
Alaska Bar Assoc. No. 9006011 (DMM)
Alaska Bar Assoc. No. 7811121 (WEM)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day
of May, 2006, a copy of **Opposition to
Plaintiff's Motion for Remand**
was served electronically on:

Nikole M. Nelson
Alaska Legal Services Corporation
1016 West 6th Avenue, Suite 200
Anchorage, AK  99501

Jim Davis
Alaska Legal Services Corporation
1016 W. 6th Avenue, Suite 200
Anchorage, AK  99501


s/Donna M. Meyers and William E. Moseley
(116614)