IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her power of attorney Carol Winters,<br><br>  Plaintiff,<br><br>vs.<br><br>CHUGIAK SENIOR CITIZENS, INC.,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 3:06-cv-00083-TMB<br>)<br>) |

**MOTION TO COMPEL**

**I.   INTRODUCTION**

Defendant Chugiak Senior Center, Inc. ("CSC") is withholding critical discovery from plaintiff, Helen Winters. The parties have met and conferred but have unable to resolve their disagreement. Ms. Winters now files this motion to compel CSC to produce all documents that are responsive to her Request for Production Nos. 1, 3, 5, 6, 7, 8, 20 and 23 and to fully respond to Interrogatory Nos. 2, 3, 4 and 13. As detailed below, CSC's objections and its withholding of data are inappropriate. This Court should grant Ms. Winters' motion.

**II.  FACTS**

As detailed in previous briefing before this Court, Ms. Winters brought this lawsuit in response to CSC's threats to evict her from its assisted living facility. *See generally* Plaintiff's Am. Compl. Ms. Winters alleges that CSC is evicting her because of her repeated complaints to the Long-Term Care Ombudsman. *Id.* at para. 14. She

further alleges that CSC fails to properly train and/or supervise its staff and such failure has resulted in Ms. Winters being maltreated and abused by CSC's staff. *Id.* at 6-9.

Ms. Winters' complaint avers that CSC has violated various laws including, *inter alia*, the Assisted Living Homes Act; the Alaska Human Rights Act; the Alaska's Residential Landlord Tenant Act; the American's with Disabilities Act, §504 of the Rehabilitation Act of 1973; the Fair Housing Act of 1988. *Id.* at 8, 10-11. She further claims that CSC's actions amount to a breach of contract and have caused her emotional distress. *Id.* at 6, 11-12. Several of Ms. Winters' claims hinge on CSC's liability for the actions of it employees. *See, e.g. id.* at para. 13-14.

Ms. Winters propounded her only set of discovery to CSC on July 14, 2006. *See,* Affidavit of Nikole Nelson in Support of Plaintiff's Motion to Compel (hereinafter, "Nelson Aff.") at para. 2, Exh. 1. CSC first responded by engaging in patent and blatant stonewalling. For example,

- CSC contended that it could not tell Ms.Winters *any* of the facts supporting its affirmative defense of "indispensable party" because of the "attorney-client privilege."[1]

- CSC refused to disclose *any* other complaints made by any other residents of CSC's assisted living facility claiming that the word "complaint" was too vague to warrant a response.[2]

- CSC produced nothing but an "employee manual" when asked for documents reflecting its employee training and recruitment program.[3]

---

[1] Nelson Aff. at para. 3, Exh. 2, p.11.
[2] Nelson Aff. at para. 3, Exh. 2, p. 14.
[3] Nelson Aff. at para. 3, Exh. 2, p. 14.

In the teeth of CSC's stonewalling, Ms. Winter's counsel endeavored to meet and confer with CSC's counsel in accord with FRCP 37(a)(2)(A) and local rule 37.1. To that end Ms. Winters' counsel sent CSC a letter on August 19, 2006 identifying each and all of CSC's discovery deficiencies. *See* Nelson Aff. at para. 4, Exh. 3. In accord with this Court's suggestion, Ms. Winters' counsel invited CSC's counsel to a face-to-face meeting so as to work out their discovery dispute. *Id.*

The parties had a face-to face meeting on August 24, 2006. Nelson Aff. at para. 5. It lasted for nearly three hours. *Id.* CSC's counsel agreed to remediate some of their most egregious and unsupportable discovery objections but demurred as to whether CSC would produce the data sought vis à vis this Motion to Compel. *Id.* CSC's counsel stated that they needed to further confer with their client. *Id.*

In a phone call on August 28, CSC's counsel informed Ms. Winter's counsel that CSC was unwilling to supplement its responses vis à vis the data sought by this Motion to Compel. *Id.* at para. 6.

Ms. Winters genuinely wanted to avoid involving this Court in yet another discovery dispute. Thus, Ms. Winters' counsel sent CSC's counsel a letter on August 30, seeking some kind of compromise. Nelson Aff. at para. 7, Exh. 4. By letter of August 30, CSC's counsel effectively informed Ms. Winters' counsel of CSC's ultimate refusal to produce the sought after data. Nelson Aff. at para. 8, Exh. 5. Ms. Winters' counsel nonetheless sent two follow-up letters, again requesting that CSC supplement its responses. Nelson Aff. at para. 9, Exhs. 6 & 7. These engendered no movement by CSC. Nelson Aff. at para. 10. Seeing no solution in sight, Ms. Winters' counsel informed CSC's counsel that a Motion to Compel seemed imminent. Nelson Aff. at

para. 9, Exh. 6.  Ms. Winters' counsel requested that CSC sign the "Good-Faith Certificate" as required by Local Rule 37.1.  *Id.*  Defendant's counsel did not respond.  Nelson Aff. at para. 10.

## II. ARGUMENT

### A. THE DISCOVERY MS. WINTERS SEEKS IS HIGHLY RELEVANT AND MANY OF CSC'S OBJECTIONS BORDER ON THE SPURIOUS.

1. Interrogatories Nos. 2, 3 and 4/Requests for Production Nos. 7 & 8.

These discovery requests seek data concerning other persons that have lived at CSC's assisted living program during the time that Ms. Winters has also resided there. and data concerning which other residents may have been evicted or otherwise asked to leave.  Nelson Aff. at para. 2, Exh. 1, pp. 8-9.

This data is obviously relevant to the present litigation.  Ms. Winters alleges that CSC has a pattern of forcing out residents who complain about the care they receive. Plaintiff's Am. Compl. at para. 11.  Gaining information regarding other residents who have been previously threatened with eviction and/or evicted is important to proving her case.  Furthermore, the other residents of the CSC who have lived there since the time Ms. Winters moved in are obviously percipient witnesses to CSC's treatment of Ms. Winters.  Without question, their names and contact information is germane to the present litigation.

CSC provided nothing to Ms. Winters claiming that the information could not be disclosed because of the Health Insurance Portability and Privacy Act of 1996 (hereinafter "HIPAA").  Nelson Aff. at para. 8, Exh. 5, pp. 1,3.  As set-forth below in subsection B, CSC's HIPAA objections are unfounded.

### 2. Interrogatory No. 13/Request for Production No. 3.

These discovery requests asked CSC for data concerning other complaints about CSC's assisted living program. Nelson Aff. at para. 2, Exh.1 at pp. 7, 11. Complaints regarding mistreatment at the assisted living facility are, of course, highly relevant to this case in that they would demonstrate that CSC was on notice, and therefore negligent in not taking steps to prevent its staff's mistreatment of other elders at the facility, including Ms. Winters. Also, to the extent that those residents who complained were later asked to leave or threatened with eviction, it would substantiate Ms. Winters' allegations that CSC has a pattern of retaliation.

CSC produced no information to Ms. Winters. Nelson Aff. at para. 3, Exh. 2, pp. 12, 14-15. Instead CSC claimed that the requests were too vague, were "overly broad" (*id.*) and, unilaterally and without any authority, would be limited to complaints related only to CSC's wrongful evictions. Nelson Aff. at para. 3, Exh. 2, pp. 12, 14-15; Nelson Aff. at para. 8, Exh. 5, p. 2. Complaints concerning abuse of other residents would not be disclosed, according to CSC's unilateral rewriting of Ms. Winters' discovery requests. *Id.*

Ms. Winters' requests are *plainly* not limited only to complaints that alleged or complained of wrongful eviction. Nelson Aff. at para. 2, Exh. 1, pp. 7, 11. Other complaints, such as those alleging mistreatment by staff, would also be highly relevant to this case.

### 3. Request for Production No. 1.

This request asked for documents concerning CSC's hiring, training and recruitment policies vis à vis its employees. Nelson Aff. at para. 2, Exh. 1, pp. 11-12.

CSC's position is that it will only provide CSC's policies within the last 5 years, and only insofar as they address the handling of evictions. Nelson Aff. at para. 8, Exh. 5, p. 2.

Again, CSC's unilateral limitation of Ms. Winters' request is untenable. The request is clearly broader, for example, seeking CSC's policies concerning staff training, or the lack thereof. Nelson Aff. at para 2, Exh. 1, p. 11. This data is highly germane to this action and is clearly within the scope of the request.

### 4. Request for Production No. 5.

This request asks for correspondence to or from CSC and/or the Long-Term Care Ombudsman's Office ("LTCO") or its counsel. Nelson Aff. at para. 2, Exh. 1, p. 12.

CSC objected stating that the request was "overbroad" and "vague." Nelson Aff. at para. 3, Exh. 2, p. 15. CSC now insists that it will limit this request to only to:

(1) CSC's "management" (and not the 34 other employees that are identified by CSC as "clients" in this litigation [*see* FN 5 *supra*; Nelson Aff. at para. 11, Exh. 8]);

(2)  2001 – present;

(3) documents concerning Ms. Winters (as compared to other cases wherein the LTCO might have been or is investigating the CSC); and

(4) evictions.

*See* Nelson Aff. at para. 8, Exh. 5, p. 2.

CSC's self-created limitations are, again, frivolous. Data to or from the LTCO concerning abusive staff or the maltreatment of other elders, by CSC management or

other of its employees, would also be relevant to the plaintiff's case and is clearly within the scope of the request.

### 5. Request for Production No. 6.

This request asks CSC to produce all documents, including emails, to and from CSC and the Municipality of Anchorage regarding CSC's assisted living program. Nelson Aff. at para. 2, Exh. 1, p. 12. CSC produced to Ms. Winters only its contract with the MOA; it claims that there is not a single other document responsive to this request. Nelson Aff. at para. 8, Exh. 5, p. 3. It seems beyond reason that, during the course the CSC's decade-long relationship with the MOA (which owns the Chugiak Senior Center) that there is not one single written document or email between the two entities.

### 5. Request for Production No. 20.

This request, as limited by Ms. Winters' meet and confer letter of August 30,[4] seeks the personnel files for the CSC employees that worked with Ms. Winters. Nelson Aff. at para. 2, Exhs. 1, p. 14 & Exh. 4, p.1. Ms. Winters' case hinges in part on the claim that CSC staff is untrained, unsupervised, was not properly screened for the environment in which they work, and that CSC has been negligent in the hiring, training, and supervision of these employees. *See* Plaintiff's Am. Compl. at paras. 13-14. Thus, CSC's training, CSC employees evaluations and any previous complaints made about any CSC employees who have cared for Ms. Winters are highly relevant.

---

[4] In an effort to resolve the issue Ms. Winters limited the scope of her original request so that it sought only the personnel files for those employees who cared for Ms. Winters and excluding any data from the personnel files relating to solely personal matters (*i.e.* rates of pay) and/or personal issues relating to the employee (*i.e.* requests for Family Leave Act time.). *See* Nelson Aff. at para. 8, Exh. 5, p.1.

Various courts have held that the confidential personnel records of employees whose action or inaction has a direct bearing on the plaintiff's claims or the defendants' affirmative defenses are subject to disclosure. *See, e.g. Cason v. Builders*, 159 F. Supp. 2d. 242, 247 (W.D.N.C. 2001)(compelling production of employees' personnel files who alleged harassed plaintiff); *Byers v. Ill. State Police*, 2002 U.S. Dist. LEXIS 9861 (N.D. Ill. May 31, 2002)(same); *In re B & H Towing, Inc.* 2006 U.S. Dist. LEXIS 42758 (S.D. W. Va. June 23, 2006)(mandating disclosure of personnel records of allegedly negligent federal employees).

CSC provided Ms. Winters with nothing. It claims that all of the sought after data is confidential. *See* Nelson Aff. at paras. 3,8, Exh. 2, p. 19-20 & Exh. 5, p. 3.

### Request for Production No. 23.

This request seeks all data concerning discussions by anyone at CSC regarding Ms. Winters. Nelson Aff. at para. 2, Exh. 1, p. 15. The relevance of this request is obvious.

CSC objected claiming the request was overbroad and burdensome. Nelson Aff. at para. 3, Exh. 2, p. 20, 21. CSC's present position is that it will limit this request to communications by CSC's *management* (and not the 34 other employees that are identified by CSC as "clients" in this litigation.)[5]

---

[5] This Court needs to be aware of the problematic position that CSC has adopted in this case. CSC claims that the attorney/client privilege applies to *all* of CSC employees (current and former). Nelson Aff. at para. 11, Exh. 8. CSC thus refused to give plaintiff even the contact data for any and all of CSC employees and its former employees. *Id.* This is untenable. This despite the fact that all of CSC's staff are potential percipient witnesses to the maltreatment and abuse that Ms. Winters' has suffered.

Furthermore, to the extent that certain of these individuals were involved in the alleged abuse of Ms. Winters there is clearly a conflict for defendant's counsel here; it purports to represent CSC (which would argue that even if the abuse happened CSC

CSC's purported limitation is baseless.  Any communications that anyone on CSC's staff has had vis à vis Ms. Winters are relevant and likely to lead to admissible evidence. This data should be produced, especially in light of the fact that CSC is claiming that the attorney-client privilege applies to each and every current and former employee of CSC such that Ms. Winters' counsel is prohibited from contacting these employees and gathering the documents themselves without going through CSC's counsel.  Nelson Aff. at para. 11, Exh. 8.

### B.  CSC'S RELIANCE ON HIPAA IS MISPLACED.

CSC claims that it is unable to respond to Ms. Winters' Interrogatories Nos. 2, 3 & 4 and Requests for Production Nos. 7 & 8 because the information sought is protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d *et seq*.  CSC's reading of HIPAA is plain wrong.

The "Standards for Privacy of Individually Identifiable Health Information" ("Privacy Rule") of HIPAA establishes a set of national standards for the protection of health information.  HIPAA applies only to health plans, health care providers, and health care clearinghouses who transmit health information in electronic form in connection with transactions for which the Secretary of Health and Human Services has adopted standards under HIPAA.  45 C.F. R. §§ 106.102, 160.103.   As of today, CSC has failed to produce any information that demonstrates that they are, indeed, a "covered entity" within the meaning of HIPAA.

Assuming arguendo, the CSC is a "covered entity," HIPAA does not prohibit disclosure of *all* information for *any* reason.   In fact, it mandates that covered entities

---

was not negligent and the employee acted outside the scope of employment) *and* the putative abusive employees (who will attempt to shift liability on to CSC).

maintain written policies and procedures that describe when and how a covered entity may disclose information. 45 C.F.R. §164.520.

Furthermore, HIPAA only covers "protected health information." 45 C.F.R. § 160.103. Here, again, CSC has never articulated why the names, contact information, and other non-health related documents pertaining to CSC residents who have been threatened with eviction or actually evicted, would fall within the meaning of "protected health information."

But, again, assuming arguendo that such information falls within the meaning of "protected health information," HIPAA allows disclosure of protected health information in judicial proceedings. 45 C.F.R. §164.512.

In an attempt to allay CSC's HIPAA related concerns, Ms. Winters' counsel explicitly agreed to limit her requests so as to exclude any data concerning the other residents' health, and/or medical care, seeking only the names and most recent contact information as well as documents relating to any eviction. *See* Nelson Aff. at para. 7, Exh. 4, p.1. CSC still refuses to produce anything.

It should also be noted that in spite of the fact that CSC claims that the names, contact information and documents relating to residents who have been threatened with eviction is protected by HIPAA, the CSC readily admits that it has already at least partially disclosed this very information to a third-party – the state's Long-Term Care Ombudsman. *See* Nelson Aff. at para. 3, Exh. 2, pp. 6-8, 17. As well disclosing the names and contact information of CSC residents who presumably who testify favorably for CSC in CSC's Preliminary Witness list. *See* Nelson Aff. at para. 11, Exh. 8, pp 3, 4.

Such previous disclosure negates any argument CSC may have concerning the confidentiality of this data.

Since the information sought by Ms. Winters is highly relevant to her case, the so-called "protected" information has already been disclosed to a third-party, and because Ms. Winters is seeking the minimum information necessary to prove up her case, CSC should be ordered to immediately produce the requested information.

### C. Ms. Winters Has Made A Good Faith Attempt To Resolve this Matter Without Court Intervention.

As set forth above, the Ms. Winters' counsel have collectively spent hours making numerous attempts to resolve this matter short of involving this court including: sending multiple letters, meeting with the CSC's counsel for nearly 3 hours, and compromising on the scope of the Ms. Winters' discovery requests – to no avail. Nelson Aff. at paras. 7, 9, Exhs. 4, 6 & 7.  By letter of August 30, Ms. Winters' counsel requested that CSC's counsel sign the "Good-Faith Certificate" as required by local Rule 37.1.  Nelson Aff. at para. 9, Exh. 6.  CSC's counsel did not respond to the request and did not sign the certificate.  Nelson Aff. at para. 10. There is no question that the Ms. Winters has made a good-faith effort to resolve this matter, but unfortunately the parties are at an impasse and cannot proceed without court intervention.

**CONCLUSION**

For all the foregoing reasons, Ms. Winters' motion to compel should be granted, defendant should be required to fully answer and produce the requested data.