Donna M. Meyers
William E. Moseley
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska  99501
PHONE:  907-279-3581
FAX:  907-277-1331
dmm@delaneywiles.com
wem@delaneywiles.com

Attorneys for Defendant
Chugiak Senior Citizens, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her Power of Attorney Carol Winters, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CHUGIAK SENIOR CITIZENS, INC., | ) ) ) |
| Defendant. | ) ) |
| _____ | )    Case No. 3:06-cv-00083-TMB |

## DEFENDANT CHUGIAK SENIOR CENTER, INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS

Defendant, Chugiak Senior Citizens, Inc. ("CSC"), by and through counsel of

record, Delaney Wiles, Inc., responds to Plaintiff's First Set Of Discovery Requests to

Chugiak Senior Center, Inc., dated July 14, 2006, as follows:



PLAINTIFF'S EXHIBIT
tabbies
2

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)                Page 1 of 23

## GENERAL OBJECTIONS

1.    CSC objects to each of plaintiff's discovery requests to the extent they seek testimony protected by the attorney work product privilege or the attorney client privilege or are otherwise protected against discovery.

2.    CSC objects to the scope of each discovery request to the extent they seek testimony not relevant to this action, nor are reasonably calculated to lead to the discovery of admissible evidence, or are otherwise beyond the scope of permissible discovery in this action.

3.    CSC objects to each discovery request to the extent they are overly broad, unduly burdensome, oppressive, redundant, vague and/or ambiguous.

4.    CSC objects to plaintiff's general definitions and instructions with regard to the discovery requests to the extent they seek to impose on defendant obligations greater than or different from those imposed under Alaska Rule of Civil Procedures 26, 33, 34 and 36 or by the Court.

5.    CSC objects to each discovery request to the extent they call for legal conclusions or opinions.

6.    CSC objects to each discovery request to the extent they call for information that is contained in documents already produced by CSC, which speak for themselves and are the best evidence of their contents.

7.    CSC hereby incorporates by reference its general objections into each of its responses to plaintiff's requests for admissions, interrogatories, and requests for production.  Other more specific objections are stated in the responses to the specific

)ELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
NCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)                    Page 2 of 23

discovery requests, without in any way waiving or limiting any of these general objections.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**    Please admit that CSC, Inc. has no documentation that reflects Ms. Winters' physical condition has deteriorated since she first moved into the Chugiak Senior Center.

**RESPONSE:**    Denied.

**REQUEST FOR ADMISSION NO. 2:**    Please admit that CSC, Inc. has no documentation that reflects that Ms. Winters' need for assistance has increased since she first moved into the Chugiak Senior Center.

**RESPONSE:**    Denied.

**REQUEST FOR ADMISSION NO. 3:**    Please admit that CSC, Inc. has no documentation that reflects that CSC, Inc.'s staff is unable to perform any duties or services requested by Ms. Winters.

**RESPONSE:**    Denied, to the extent that CSC has documentation that reflects it is unable to continuously provide the level and service of care plaintiff expects, demands and needs.  Moreover, the current level and frequency of care CSC is providing places an undue burden on CSC, requires CSC to alter the essential nature of its assisted living program to accommodate plaintiff as a resident, and raises safety concerns for plaintiff and other residents.

ELANEY WILES, INC.
SUITE 400
007 WEST 3RD AVENUE
NCHORAGE, ALASKA
(907) 279-3561

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)                    Page 3 of 23

**REQUEST FOR ADMISSION NO. 4:**    Please admit that CSC, Inc. has no documentation that reflects that CSC, Inc.'s staff is unable to perform any duties or services set forth in Ms. Winters' Plan of Care.

**RESPONSE:**    Denied, as qualified by the explanation in Response to Request For Admission No. 3.

**REQUEST FOR ADMISSION NO. 5:**    Please admit that CSC, Inc. was provided with Ms. Winters Plan of Care at or around the time Ms. Winters became a resident of the Chugiak Senior Center.

**RESPONSE:**    CSC can neither admit nor deny this request because it fails to identify any of several Plans of Care that were prepared for plaintiff at various times.

**REQUEST FOR ADMISSION NO. 6:**    Please admit that CSC, Inc.'s staff regularly performs all duties and services identified in Ms. Winters' Plan of Care.

**RESPONSE:**    CSC can neither admit nor deny this request because it fails to identify any of several Plans of Care that were prepared for plaintiff at various times.

**REQUEST FOR ADMISSION NO. 7:**    Please admit that CSC, Inc.'s staff regularly performs all duties and services identified in the Plans of Care for all of the other residents of the Chugiak Senior Center who have said Plans of Care.

**RESPONSE:**    Denied, to the extent that CSC has documentation that reflects it is unable to continuously provide the level and service of care plaintiff expects, demands and needs.    Moreover, the current level and frequency of care CSC is

ʹELANEY WILES, INC.
SUITE 400
007 WEST 3ʀᴅ AVENUE
NCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)                Page 4 of 23

providing places an undue burden on CSC, requires CSC to alter the essential nature of its assisted living program to accommodate plaintiff as a resident, and raises safety concerns for plaintiff and other residents.

**REQUEST FOR ADMISSION NO. 8:**    Please admit that Ms. Winters is not the only resident of the Chugiak Senior Center's assisted living program who participates in the State of Alaska's Medicaid Choice Waiver program.

**RESPONSE:**        Admitted.

**REQUEST FOR ADMISSION NO. 9:**    Please admit that a prerequisite for admission to the State of Alaska's Medicaid Choice Waiver program is that a participant requires nursing home level of care.

**RESPONSE:**        Admitted.

**REQUEST FOR ADMISSION NO. 10:**    Please admit that when you admitted plaintiff as a resident, you thought that her ability to care for herself would improve over time.

**RESPONSE:**        Admitted.

**REQUEST FOR ADMISSION NO. 11:**    Please admit that you have no documentation supporting your claim that, when you admitted plaintiff as a resident, you thought that her ability to care for herself would improve over time.

**RESPONSE:**        Denied.

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)

**REQUEST FOR ADMISSION NO. 12:**  Please admit that, aside from plaintiff, you have never admitted any other person as a resident with the expectation that his or her ability to care or him or herself would improve over time.

**RESPONSE:**    Denied.

### INTERROGATORIES

**INTERROGATORY NO. 1:**    Please identify by name, last known address and phone number any employees or independent contractors that worked at the assisted living program at Chugiak Senior Center from September 1, 2004 to the present date.

**RESPONSE:**    Objection, not relevant nor reasonably calculated to lead to discoverable information, and overbroad.  The request is also objectionable as it also invades the privacy interests of current and former employees of CSC.  Without waiving the foregoing objections, CSC will provide a list of employees who have worked as program assistants or certified nurse's aides for CSC's Assisted Living Program from September 1, 2004 to the present date.  The only independent contractor to CSC is Glenda Kish, RN, and her address and telephone number will be provided in a supplemental response.

**INTERROGATORY NO. 2:**    Please identify by name, last known address and phone number any persons that lived in the assisted living program at the Chugiak Senior Center from September 1, 2004 to the present date.

**RESPONSE:**    Objection, not relevant nor reasonably calculated to lead to

)ELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)                    Page 6 of 23

discoverable information, and the request invades the privacy interests of the residents who have lived in the assisted living program at CSC from September 1, 2004 to the present date. Without waiving the foregoing objections, CSC has produced a partial list of resident's names to the Long Term Care Ombudsman's Office and that information is available from the LTCO.

**INTERROGATORY NO. 3:**     Please identify by name, last known address and phone number any persons who lived in the assisted living program at the Chugiak Senior Center from September 1, 2004 to the present date and were asked to leave, threatened with eviction, or actually evicted by CSC, Inc.

**RESPONSE:**     CSC objects to producing any identifying information on former or current residents who received counseling on whether the assisted living program at CSC was an appropriate setting to meet their needs on the basis that the information sought is not relevant nor reasonably calculated to lead to discoverable information. Furthermore, the request invades the confidentiality and privacy interests of those former and current residents. Without waiving the foregoing objections, CSC has never threatened any resident with eviction, but rather has notified residents that CSC could no longer meet their needs, and CSC counseled those residents on whether other living accommodations and settings were more appropriate, and assisted those residents in finding a more appropriate living environment. Without waiving the foregoing objections, CSC has provided the LTCO's office with a list of former residents who were advised that CSC could no longer meet their needs.

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)                    Page 7 of 23

**INTERROGATORY NO. 4:**    Please identify by name, last known address and phone number any persons who lived in the assisted living program at the Chugiak Senior Center from September 1, 2004 and who had any of his or her contracts with CSC, Inc. (*e.g.*, Resident Services Contact and/or Lease Agreement and/or Plan of Care Contract) terminated or threatened to be terminated by CSC, Inc.

**RESPONSE:**    See Response to Interrogatory No. 3.


**INTERROGATORY NO. 5:**    Please identify the number of people that have lived in the assisted living program at the Chugiak Senior Center who were, during their residency, also participants in the State of Alaska's Medicaid CHOICE Waiver Program.

**RESPONSE:**    Objection, not relevant nor reasonably calculated to lead to discoverable information and unduly overbroad and burdensome to answer.  Without waiving the foregoing objections, CSC will provide census information regarding the number of Medicaid CHOICE Waiver Program participants for the last few years.


**INTERROGATORY NO. 6:**    Please identify by name and last known address and phone number all Care Coordinators that have coordinated the care for any persons that have ever resided at the Chugiak Senior Center's assisted living program.

**RESPONSE:**    Objection, not relevant nor reasonably calculated to lead to discoverable information, and unduly overbroad and burdensome to answer.  Without waiving the foregoing objections, CSC's Assisted Living Program has been in existence for almost 15 years and there have been a number of care coordinators for residents

ELANEY WILES, INC.
SUITE 400
007 WEST 3rd AVENUE
NCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)

over the years, and CSC does not routinely maintain a roster of all care coordinators that have ever provided care coordination services for residents living at CSC's Assisted Living Program.  CSC would have to review each former and current resident's file for the last 15 years to determine whether the resident had a care coordinator and to identify the care coordinator by name and address which would be unduly burdensome, expensive and an overbroad task given the unlikely benefit such an ordeal would yield, taking into account the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.  Without waiving the foregoing objections, there is an attached list of care coordinators, but the list does not comprise all of the care coordinators who have ever coordinated care for any resident who ever resided at CSC's Assisted Living Program.

**INTERROGATORY NO. 7:**    Please set forth all facts that support CSC, Inc.'s contention that plaintiff's needs have increased since she was first admitted to Chugiak Senior Center including the date of such increase(s), the nature of such increase and the witnesses to such increases.

**RESPONSE:**    Objection, requests information protected by the attorney work product privilege.  Without waiving the foregoing objections, CSC has produced numerous documents indicating and describing to the extent to which plaintiff's needs have increased since her admission to CSC, and those documents reflect the time period of such increases, the nature of the increased services required and witnesses to such increases.  Specifically, the documents include, but are not limited to the Progress

ELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)                    Page 9 of 23

Notes and Care Conference Summaries.

**INTERROGATORY NO. 8:**    Please set forth all facts which show how plaintiff's damages, if any, were caused or contributed by her own negligence.

**RESPONSE:**    Objection, requests information protected by the attorney work product privilege.  Without waiving the foregoing objections, plaintiff engages in voluntary conduct when she unnecessarily yells at or berates CSC's staff or other residents and imposes unreasonable demands on CSC's staff when they provide plaintiff assistance with activities of daily living.  Thus, plaintiff's own conduct has caused and contributed to CSC's decision and actions to terminate plaintiff's Resident Contract and Lease Agreement.

**INTERROGATORY NO. 9:**    Please set forth all facts which show how plaintiff's damages, if any, might be due to the conduct of others, over whom CSC, Inc. had no responsibility or duty to control.

**RESPONSE:**    Objection, requests information protected by the attorney work product privilege.  Without waiving the foregoing objections, plaintiff's power of attorney, Carol Winters, and her care coordinator, Kathy Huskey, were advised early on of CSC's concerns about whether CSC was an appropriate living environment for plaintiff given her excessive demands and needs, but Ms. Huskey and Carol Winters were unwilling or outright refused to take reasonable measures to find an alternative living environment that was more appropriate for plaintiff's demands and needs. Additionally, although Ms. Huskey suggested a psychological evaluation of plaintiff,

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)          Page 10 of 23

neither Ms. Huskey nor Carol Winters ever obtained a psychological evaluation of plaintiff, which might have yielded a medical or psychological diagnosis that might have resulted in appropriate treatment for plaintiff to ameliorate some of plaintiff's excessive demands and needs.

**INTERROGATORY NO. 10:**    Please set forth all facts which show how plaintiff's claims might be barred by estoppel and/or waiver.

**RESPONSE:**    Objection, requests information protected by the attorney work product privilege.  Without waiving the foregoing, see Responses to Interrogatory Nos. 8 and 9.

**INTERROGATORY NO. 11:**    Please set forth all facts supporting the idea that there may be an indispensable party to this lawsuit.

**RESPONSE:**    Objection, requests information protected by the attorney work product privilege.  See Response to Interrogatory No. 9.

**INTERROGATORY NO. 12:**    Please set forth all facts which show how plaintiff, or any other persons, may have misrepresented data or acted fraudulently so as to induce defendant to enter into one or more contracts with plaintiff.

**RESPONSE:**    Objection, requests information protected by the attorney work product privilege.  Without waiving the foregoing, neither plaintiff, Carol Winters, nor Kathy Huskey provided full disclosure of all plaintiff's needs and demands at the time of plaintiff's admission.

)ELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)    Page 11 of 23

**INTERROGATORY NO. 13:**    Please identify by date and substance any complaints made by any other persons concerning CSC, Inc. and/or the assisted living program at the Chugiak Senior Center.

**RESPONSE:**    Objection, this request is vague regarding what plaintiff means by "any complaints" since it does not refer to any particular subject matter of the complaint, and furthermore the request is unduly broad given the absence of any time limit in the request.

**INTERROGATORY NO. 14:**    Please identify all of plaintiff's needs that CSC, Inc. alleges it is incapable of meeting.

**RESPONSE:**    Plaintiff demands and needs an unreasonable amount of time and effort from CSC's staff in order for the staff to provide plaintiff with assistance in her activities of daily living.  CSC is capable of providing plaintiff with assistance in her activities of daily living, but it is unable to continue providing the excessive amount of resources that plaintiff is demanding in order for CSC to provide that assistance. CSC's staff must spend at least double the amount of time to provide assistance to plaintiff in her activities of daily living than the staff provides any other resident.  For example, CSC's staff spend on average an hour giving plaintiff a shower because her obsessive/ compulsive behavior requires the staff to perform many tasks for plaintiff that are not required for other residents.

**INTERROGATORY NO. 15:**    Please identify by date and substance all

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
<u>Winters v. Chugiak Senior Citizens</u>/Case No. 3:06-cv-0083 (TMB)              Page 12 of 23

incidents of behavior and/or conduct by the plaintiff that support CSC, Inc.'s assertion that plaintiff is verbally abusive to staff and other residents.

**RESPONSE:**      CSC has provided plaintiff with documents of care conferences and progress notes with comments by the staff describing incidents where plaintiff was verbally abusive to staff and other residents.  Plaintiff is referred to those documents for the dates and descriptions of each incident.

**INTERROGATORY NO. 16:**      Please set forth all facts which support CSC, Inc.'s claim that, when you accepted plaintiff as a resident, you thought that her ability to care for herself would improve.

**RESPONSE:**      CSC objects to providing a summary of all facts supporting its belief that plaintiff's ability to care for herself would improve.  In general, the purpose of assisted living is to provide assistance to residents to encourage them to be more independent.  Specifically, when plaintiff was accepted as a resident, Carol Winters represented that plaintiff's ability to care for herself would improve as her shoulder healed.  Moreover, the physical therapists working with plaintiff were providing therapy to plaintiff in order to improve her ability to care for herself.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Please   produce   all   DOCUMENTS RELATING TO the personnel policies and procedures of CSC, Inc. including but not limited to all information/directives/manuals/internal directives regarding hiring, screening, training, retention, recruitment and dismissal of staff, employees,

)ELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
,NCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)                  Page 13 of 23

independent contractors and employee contracts.

**RESPONSE:**     Objection, the request is vague as to what is meant by "documents relating to" and it is overbroad to the extent that there is no specific time limit.  CSC, Inc. has been in existence for more than 50 years and its assisted living program has existed for approximately 15 years.   Without waiving the foregoing objections, please see the attached documents Employee Handbook.

**REQUEST FOR PRODUCTION NO. 2:** Please     produce     all   DOCUMENTS RELATING TO the resident policies and procedures of CSC, Inc. including but not limited to all information/directives/manuals/internal directives regarding admission, retention, care of, dismissal, transfer and eviction of residents.

**RESPONSE:**     Objection, the request is vague as to what is meant by "documents relating to" and it is overbroad to the extent that there is no specific time limit.  Without waving the foregoing objections, CSC has already produced several documents which contain information responsive to this request, including but not limited to the Resident Service Contract, Lease Agreement, and Resident Rights.

**REQUEST FOR PRODUCTION NO. 3:** Please     produce     all   DOCUMENTS RELATING TO any complaints of residents of, or applicants to, CSC, Inc.'s assisted living program, against CSC, Inc. or anyone that worked at CSC, Inc., from the opening of the CSC's assisted living program, to the present date.

**RESPONSE:**     Objection, the request is vague as to what is meant by "documents relating to" and it is overbroad to the extent that there is no specific time

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)                    Page 14 of 23

limit.  Additionally, this request is objectionable because it is vague regarding what plaintiff means by "any complaints" since it does not refer to any particular subject matter of the complaint.  Without waiving the foregoing objections, any complaints by plaintiff are within the possession of plaintiff, and any information regarding any lawsuits are a matter of public record and therefore accessible to plaintiff.

**REQUEST FOR PRODUCTION NO. 4:**  Please produce all documents, including e-mails, sent or received by anyone working for, CSC, Inc. that refer or relate to the plaintiff, Carol Winters or this lawsuit.

**RESPONSE:**      Objection, this request seeks information that is protected from discovery by the attorney client privilege and work product doctrine.  Without waiving the foregoing objections, there are e-mails between Linda Hendrickson and the LTCO, Bob Dryer.

**REQUEST FOR PRODUCTION NO. 5:**  Please produce all documents, including e-mails, sent to, received from, or relating to the Long Term Care Ombudsman's Office and/or its counsel.

**RESPONSE:**      Objection, this request is vague and unreasonably overbroad because it is not limited to documents between CSC and the LTCO's office and/or its counsel and the request does not limit the subject matter of the documents being requested  CSC would not necessarily have any documents between third parties and the LTCO's office and/or its counsel.  Without waiving the foregoing, CSC will produce documents it or its counsel exchanged with the LTCO and/or its counsel concerning

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)                    Page 15 of 23

plaintiff.

**REQUEST FOR PRODUCTION NO. 6:** Please produce all documents, including e-mails, sent to or received from the Municipality of Anchorage or any of its employees concerning CSC, Inc.'s assisted living program.

**RESPONSE:** Objection, the request is vague and unduly broad. The request is not limited to any time period nor any subject matter regarding CSC's Assisted Living Program. Any documents sent to the Municipality of Anchorage ("MOA") or any of its employees and documents the MOA sent concerning CSC, Inc.'s Assisted Living Program would be available from the MOA. Without waiving the foregoing objections, CSC has already produced several documents relating to its contract with the MOA.

**REQUEST FOR PRODUCTION NO. 7:** Please produce all DOCUMENTS RELATING TO any persons who lived in the assisted living program at the Chugiak Senior Center from September 1, 2004 to the present date and were asked to leave, threatened with eviction, or actually evicted by CSC, Inc.

**RESPONSE:** See Response to Interrogatory No. 3. Additionally, this request is overly burdensome because it would require CSC to research each resident's file to determine whether there were any discussions between CSC's staff and the resident or the resident's guardian or care coordinator about whether CSC's assisted living program remained an appropriate setting for that particular resident.

)ELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
.NCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)          Page 16 of 23

**REQUEST FOR PRODUCTION NO. 8:** Please    produce    all    DOCUMENTS RELATING TO any persons who lived in the assisted living program at the Chugiak Senior Center from September 1, 2004 to the present date and had his or her Resident Services Contract and/or Lease Agreement and/or Plan of Care Contract terminated or threatened to be terminated by CSC, Inc.

**RESPONSE:**        See Response to Interrogatory No. 4.

**REQUEST FOR PRODUCTION NO. 9:** Please produce any CSC, Inc. Minutes, Motions or Board actions concerning plaintiff and/or Carol Winters.

**RESPONSE:**        There are no responsive documents.

**REQUEST FOR PRODUCTION NO. 10:**        Please produce all DOCUMENTS that refer or relate to CSC, Inc.'s contention that plaintiff's medical needs have increased since she was first admitted to Chugiak Senior Center.

**RESPONSE:**        See Response to Interrogatory No. 14.

**REQUEST FOR PRODUCTION NO. 11:**        Please produce all DOCUMENTS that refer or relate to CSC, Inc.'s contention that you thought plaintiff's ability to care for herself would improve *after* she was admitted to Chugiak Senior Center.

**RESPONSE:**        See Response to Interrogatory No. 16.

**REQUEST FOR PRODUCTION NO. 12:**        Please produce all DOCUMENTS which reflect or relate to how plaintiff's damages, if any, were caused or contributed by her own negligence.

)ELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
.NCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)                Page 17 of 23

**RESPONSE:**        See Response to Interrogatory No. 8.

**REQUEST FOR PRODUCTION NO. 13:**        Please produce all DOCUMENTS which refer or relate to how plaintiff's damages, if any, might be due to the conduct of others, over whom CSC, Inc. had no responsibility or duty to control.

**RESPONSE:**        See Response to Interrogatory No. 9.

**REQUEST FOR PRODUCTION NO. 14:**        Please produce all DOCUMENTS which refer or relate to how plaintiff's claims might be barred by estoppel and/or waiver.

**RESPONSE:**        See Response to Interrogatory No. 9.

**REQUEST FOR PRODUCTION NO. 15:**        Please produce all DOCUMENTS which refer or relate to how there may be an indispensable party to this lawsuit.

**RESPONSE:**        See Response to Interrogatory No. 11.

**REQUEST FOR PRODUCTION NO. 16:**        Please produce all DOCUMENTS which refer or relate to how plaintiff, or any other persons, may have misrepresented data or acted fraudulently so as to induce defendant to enter into one or more contracts with plaintiff.

**RESPONSE:**        See Response to Interrogatory No. 12.

**REQUEST FOR PRODUCTION NO. 17:**        Please produce all DOCUMENTS RELATING TO CSC, Inc.'s operating agreement and/or articles of incorporation, including any amendments thereto.

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)

**RESPONSE:**        Objection, the request is vague as to what is meant by "all documents relating to".  Without waiving the above objections, CSC will produce its articles of incorporation, including any amendments thereto.

**REQUEST FOR PRODUCTION NO. 18:**        Please produce all of CSC, Inc.'s annual reports, including any amendments thereto, from CSC, Inc.'s formation to the present.

**RESPONSE:**        Objection, the request is overbroad and burdensome in that CSC, Inc. has been in existence for over 50 years, and it would require many hours of manpower to research the archives to find all of CSC, Inc.'s annual reports form the time of CSC, Inc.'s formation to the present.  Without waiving the foregoing objections, CSC will produce its annual reports, and any amendments thereto, from the year 2000 to the present.

**REQUEST FOR PRODUCTION NO. 19:**        Please produce all DOCUMENTS RELATING TO any and all meetings of CSC, Inc.'s shareholders, owners, members, and/or managers regarding the plaintiff.

**RESPONSE:**        There are no responsive documents that are not protected by the attorney client privilege and/or work product doctrine.

**REQUEST FOR PRODUCTION NO. 20:**        Please produce all DOCUMENTS (including personnel files) RELATING TO any and all workers of CSC, Inc. that provided care to the plaintiff from September 2004 to present.

**RESPONSE:**        CSC objects to producing personnel files on all workers who

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)

provided care to plaintiff from September 2004 to the present.    The requested information is not relevant and is not reasonably calculated to lead to the discovery of relevant information.    Moreover, the personnel files contain private information regarding CSC's former and current employees and CSC has an obligation to protect the confidentiality and privacy of its former and current employees.

**REQUEST FOR PRODUCTION NO. 21:**      If you claim that CSC's staff is unable to perform any duties or services requested by Ms. Winters' Plan of Care, please produce all documents that form the basis for your claim.

**RESPONSE:**      See Response to Interrogatory No. 14.

**REQUEST FOR PRODUCTION NO. 22:**      Please produce all documents reflecting any internal discussions had by anyone at CSC, Inc. concerning plaintiff.

**RESPONSE:**      Objection, this request is vague and incomprehensible in that it seeks documents reflecting anyone's internal discussions concerning plaintiff.  To the extent that the request seeks documentation of internal meetings held within CSC, Inc., there were staff meetings and CSC is researching whether there are any minutes regarding those meetings.

**REQUEST FOR PRODUCTION NO. 23:**      Please produce all documents reflecting any discussions by anyone at CSC, Inc. with anyone outside CSC, Inc. concerning plaintiff, except for communications had with counsel.

**RESPONSE:**      Objection, the request is overbroad and burdensome to the

)ELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)                    Page 20 of 23

extent that it requires CSC to produce documents of discussions concerning plaintiff "by anyone at CSC, Inc." with others outside of CSC, regardless of whether CSC has knowledge or possession of such documents. Without waiving the foregoing objections, CSC has already produced e-mails between Linda Hendrickson and the LTCO, Bob Dryer.

**REQUEST FOR PRODUCTION NO. 24:**    Please produce all documents that refer or relate to the Long-Term Care Ombudsmen's office.

**RESPONSE:**    Objection, this request is vague and unduly broad and burdensome in that it does not refer to any particular matter or time period. Without waiving the foregoing objections, CSC has produced documents referring to the LTCO's office involvement in this case, as well as e-mails between Ms. Hendrickson and the LTCO, Bob Dryer.

**REQUEST FOR PRODUCTION NO. 25:**    Please produce all documents that support the idea that forcible entry and detainer actions can be used against residents of the assisted living facility managed by CSC, Inc.

**RESPONSE:**    Objection, CSC is not required to provide plaintiff with a summary of the law that supports forcible entry and detainer actions against residents of an assisted living facility. Without waiving the foregoing objection, CSC notes that AS 47.33 *et seq.* does allow CSC to terminate a resident's service contract.

**REQUEST FOR PRODUCTION NO. 26:**    Please    produce    the    resume

ELANEY WILES, INC.
SUITE 400
007 WEST 3RD AVENUE
NCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
<u>Winters v. Chugiak Senior Citizens</u>/Case No. 3:06-cv-0083 (TMB)

and/or curriculum vitae for Linda Hendrickson.

**RESPONSE:**        See attached resume for Linda Hendrickson.


DATED at Anchorage, Alaska, this 16th of August, 2006.

DELANEY WILES, INC.
Attorneys for Chugiak Senior Citizens, Inc.


By: _____
Donna M. Meyers
Alaska Bar No.:  9006011

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th
day of August, 2006, a copy of
the above was served via fax and
US mail, postage prepaid on:

Barbara Brink/Nikole Nelson/Jim Davis, Jr.
Alaska Legal Services Corporation
1016 West 6th Avenue, Suite 200
Anchorage, Alaska   99501


_____
Donna K. Daniels (119347)

Defendant Chugiak Senior Center, Inc.'s Responses
To Plaintiff's First Set of Discovery Requests
Winters v. Chugiak Senior Citizens/Case No. 3:06-cv-0083 (TMB)                    Page 23 of 23

## Care Coordinators

1.  Theresa Swedo
    Post Office Box 672009
    Chugiak, Alaska   99657
    PHONE:  907-244-9896

2.  Kate Hanson
    PHONE:  332-5283

3.  Laura Reed
    Care Coordination
    Post Office Box 876730
    Wasilla, Alaska   99687
    PHONE:  907-745-0818
    ANCHORAGE PHONE:  907-632-0767

4.  Grace Wilson-Laudum
    Amazing Care
    7237 Deuben, No. A
    Anchorage, Alaska   99504
    PHONE:  907-929-8326

5.  Audra Bosch
    Alzheimer's Resource
    PHONE:  907-561-3313

6.  Marlena A. Hillemeier
    PHONE:  907-745-5417
    PHONE:  907-745-5454

7.  Lordette
    PHONE:  907-746-2037

8.  Caludia Eaves
    Post Office Box 772154
    Eagle River, Alaska   99577
    PHONE:  907-694-4799

9.  Kirsten Smart
    Post Office Box 220922
    Anchorage, Alaska   99582
    PHONE:  907-279-9072

10.    Juan San Miguel
       4501 Diplomacy Drive
       OFFICE:  907-729-6363

11.    Lisa Stanley -- CC
       Alzhiemer's Resource
       PHONE:  907-561-3313

12.    JoAnn Wise
       2615 Drake
       Anchorage, Alaska  99508
       PHONE:  907-274-5258

13.    Gail Kurth
       Elder Care Choices
       PHONE:  907-696-6920

14.    Maria Johnson
       PHONE:  907-522-2290

15.    Kathy Huskey
       10244 Colville
       Eagle River, Alaska
       PHONE:  907-696-3387

/120667

# Chugiak
# Senior Center

*"Serving Seniors from Hiland to Eklutna"*

### 22424 N. Birchwood Loop Road
### Chugiak, Alaska 99567



# Employee Handbook

## MISSION STATEMENT

The Chugiak Senior Center exists to provide quality service and
facilities to meet the needs of seniors in our community through
effective stewardship and program development.

*Revised June 2004*

# I.   POSITION CLASSIFICATION PLAN

## A. Classes of Employees

1. **Full-time employee:** An employee in a continuing authorized position who works a normal workweek of 32 hours or more.

2. **Part-time employee:**

   **Part-time 1:**  Employees who are scheduled to work at least 25 hours per week, but less than 32.

   **Part-time 2:**  (and all others):
   - Employees who are scheduled less than 25 hours per week.
   - On call employees who are not normally scheduled to work
   - Title V employees.
   - Temporary employees who are hired on a temporary basis.

   Employees who fall into the part-time 2 category are not eligible for benefits.

## B. Position Descriptions

The executive director or his or her designee shall develop and maintain current descriptions for each position.  The description shall include a position title, a description of the duties and responsibilities of the position, signatures of the employee, supervisor, human resource director and the executive director; criteria for recruiting and selection purposes and any other necessary specifications.  A copy of a position description will be furnished to each employee.  A copy will also be included in the employee's personnel file.  Job descriptions will be periodically reviewed and updated.

# II.   HIRING

## A. Background Checks

All new employees shall obtain an Alaska State Trooper criminal background check and shall be fingerprinted. Any offer of employment shall be contingent upon, and subject to clearance by the State of Alaska and the Federal Bureau of Investigation. In addition, CSCI will check the references of all applicants considered for employment. Applicants will be required to sign a release authorizing such a background check and be free from criminal history.

After attaining full-time employment and successfully completing the 90-day full-time probationary period the cost of fingerprinting will be reimbursed.

Full-time employees are required to obtain an Alaska State Topper criminal background recheck every two years and fingerprinting every six years at the expense of CSCI.

**B. Citizenship**

Employees must have a social security account number. Employees will also be required to show proof of citizenship, permanent resident alien status or authorization by the Immigration and Naturalization Service to work in the United States in accordance with the requirements of the Immigration Reform and Control Act of 1986.

**C. TB Testing**

All employees will be screened for tuberculosis within 30 days of employment and annually. Screenings will be provided at the expense of CSCI. If found contagious, an employee may not work until released by a physician.

**D. Appointment Policies**

1. **Equal Employment Opportunity Policy**: CSCI is committed to providing a work environment that is free from discrimination. CSCI prohibits discrimination in employment against any employee or job applicant because of a person's race, color, creed, religion, ancestry, sex, national origin, disability, age, marital status, or any other legally protected status. CSCI prohibits the harassment of any employee or job applicant on the basis of a protected status.

   If you believe that you or someone else has been subject to discrimination or harassment prohibited by this policy, you immediately should report it to the following individuals:

   - Executive Director
   - Human Resource Coordinator
   - Department Supervisor

2. **Nepotism**: Two members of an immediate family shall not be employed at the same time if it will result in one family member being in the direct line of supervision of the other, or if compliance with federal or state confidentiality statutes is endangered. Under this circumstance, Chugiak Senior Citizens, Inc. reserves the right to transfer or terminate the employee whose transfer or termination will, in the sole discretion of CSCI, cause the least disruption or burden to its operations.

3. **CSCI Employee Preference**: It is the policy of CSCI to promote internally whenever it is in the best interest of CSCI.

4. **Transfers**: Employees may be transferred from one department to another when a vacancy occurs with the approval of their supervisor and the executive director. No employee, however, shall be transferred to a position, except as a trainee, unless they possess the minimum qualifications.

3

5. **False Statements:**  An applicant who knowingly makes a false statement on an employment application shall be disqualified from consideration for a vacant position. An employee who knowingly makes a false statement on an employment application may be subject to disciplinary action, which could include termination of employment.

6. **Prior Employees:**  An applicant who has previously been employed by CSCI, who resigned without sufficient notice as prescribed in these policies, may be disqualified from subsequent employment.

## III.  EMPLOYMENT PRACTICES

### A. Absences

It is the responsibility of the employee to notify their supervisor, as soon as possible, in the event they are unable to report for work on time. Failure to do so will be treated as unexcused absences and may construe cause for immediate termination of employment.

### B. Personnel Records

The human resource coordinator shall establish a personnel file and a medical file for each employee. The personnel file shall consist of records such as: the application for employment; copies of documents relating to employment; written performance evaluations; records of promotions and other personnel actions; and written disciplinary records.

- Access to employee personnel files will be limited.
- Personnel files will be treated confidentially.
- Employees shall have reasonable access to their personnel files and may review the file and make copies of documents at their own expense.
- Employees shall not be allowed unsupervised access to their personnel files.
- A copy of any material placed in an employee's personnel file after the employee's hire date shall be given to the employee at their request.
- An employee has the right to respond in writing to any document in their personnel file and to have the response included with the document.

### C. Outside Employment

CSCI has no desire to unduly restrict an employee's outside activities except to the extent it may impact CSCI or employee job performance.  Nevertheless, conflicts of interest must be avoided for employee protection and that of CSCI.  In order to avoid potential conflicts of interest, outside employment or "moonlighting" (holding a job elsewhere in addition to your job with CSCI) must be approved in writing by the executive director in advance.  Such employment is permitted only if employee job performance is not adversely affected by such employment, as determined by the employee's supervisor.

**D. Personal Property**

CSCI is not liable for the personal possessions of employees that are lost, stolen or damaged.

**E. Employee Development Policy**

CSCI promotes employee development and encourages staff to enroll in educational courses that will enhance their employability or assist in obtaining a degree or certification related to their employment at CSCI.

If funds are budgeted and available, CSCI may reimburse a "full-time" employee's tuition and fees for courses approved by the supervisor and the executive director. Employees will bear the expense of all materials, and fees. The executive director shall approve the request for tuition reimbursement at least ten days prior to registration for the course.

Participant employees must sign an agreement verifying that they are not receiving tuition reimbursement from any other source. Further, they must agree that if employment with CSCI terminates within six months of completion of course work for reasons within their control, reimbursements shall be repaid to CSCI or may be deducted from the employee's final check.

The reimbursement will only occur once the course is completed with a grade of "C" or better (transcripts or other reporting documents must be attached to the request).

If an employee is seeking tuition reimbursement, they must write a proposal to their supervisor stating what courses/degree program they are entering. The initial proposal should include long-term goals and the time frame for meeting them.

An employee must not use work hours to complete course work other than what is required by CSCI.

**F. Hours of Work/Workweek**

CSCI's regular work week is established as the seven-day period from Sunday through Saturday. Normal working hours are Monday through Friday from 8:30 a.m. to 5:00 p.m. Department managers may schedule other shifts as deemed appropriate for their department.

**G. Overtime**

For purposes of overtime pay, positions are classified into exempt and non-exempt status.

1. **Exempt Employees:** The executive director will determine the exemption status of each position in accordance with the Fair Labor Standards Act and the Alaska Wage and Hour Act. Overtime pay is not normally provided to employees considered exempt under the criteria established by the Fair Labor Standards Act and the Alaska Wage and Hour Act.

5

2. **Non-Exempt Employees:** Non-exempt employees are paid time and a half pay for all work in excess of eight hours per day or 40 hours in a work week. Time sheets will reflect actual hours worked. At the request and convenience of the employee, and in accordance with the Alaska Wage and Hour Act, workdays of up to 10 hours maybe scheduled, however total week hours may not exceed 40 hours without overtime compensation.

3. **Overtime** is deemed unauthorized unless it has been approved in advance by the employee's supervisor. In the case of an emergency, verbal authorization is required by the supervisor.

## H. Evaluations

Evaluations may be performed for new employees after completion of a 90-day probationary period, and thereafter annually on the employee's anniversary date. An evaluation report and a successful performance appraisal will be required prior to increase of wages, change in leave accruals, promotion, or transfer. Additionally, a performance evaluation may be performed for each employee upon termination of employment.

# IV. BENEFITS AND COMPENSATION

## A. Holidays

Full-time and part-time I employees shall receive holiday pay for authorized holidays. Full-time employees shall receive regular compensation of no more than eight hours. Part-time employees shall be compensated.

### Authorized holidays for CSCI employees are:

| | | | |
|---|---|---|---|
| **New Years Day** | January 1 | **Labor Day** | First Monday in September |
| **Martin Luther King, Jr. Day** | Third Monday in January | **Veterans Day** | November 11 |
| **President's Day** | Third Monday in February | **Thanksgiving Day** | Fourth Thursday in November |
| **Seward's Day** | Last Monday in March | **Day After Thanksgiving** | Fourth Friday in November |
| **Memorial Day** | Last Monday in May | **Christmas Day** | December 25 |
| **Independence Day** | July 4 | **Personal Holiday** | One day within the fiscal year |

**Weekend Holidays:** If an authorized holiday falls on Sunday, the following Monday will be recognized as the holiday. If an authorized holiday falls on Saturday, the proceeding Friday will be recognized as the holiday.

6

**Alternate Holiday:** A full-time employee who works on an authorized holiday as part of their regular workweek will be given an alternate day off or holiday pay in addition to their regular compensation, at the discretion of the employee and with prior approval from their supervisor. Holidays and discretionary holiday pay will not be considered as productive time for the computation of overtime.

**B. Employee Benefits**

Chugiak Senior Center offers a variety of employee benefits for its employees. These benefits include medical, dental and life insurance, flexible spending accounts and the ability to defer a part of your salary for retirement. Details regarding these employee benefit plans, such as eligibility requirements, are available in summary plan descriptions available from human resources. Employees are not eligible to participate or receive benefits until completion of a 90-day probationary period.

**Note:** The benefits, requirements, and tax advantages found in employee benefit plans are generally based on federal law. A change in federal law regarding employee benefit plans may affect the employee benefit listed here. In addition, CSCI reserves the right to terminate or amend the employee benefit plans at any time. If you have any questions regarding the employee benefit plans, contact the human resource director.

# V. LEAVE POLICIES

**A. Annual Leave**

Annual Leave (use of annual leave is subject to proper authorization) allows employees a period of extended leave for rest and recreation as well as personal and emergency purposes. Accrued annual leave must be used prior to any leave without pay.

1. **Accrual:** Annual leave will begin accruing on the first day of employment but is not earned until completion of a 90-day period. Annual leave accrues at the end of each payroll period only. Employees accumulate annual leave in each payroll period based on their years of continuous service as follows:

   a) **Full Time:** Accrual per payroll period when scheduled 32 to 40 hours per week:

| 0-2 Yrs. | 3-5 Yrs. | 6-10 Yrs. | 11+ Yrs. |
|---|---|---|---|
| 3.70 Hrs. | 4.16 Hrs. | 5.08 Hrs. | 6.00 Hrs. |

7

b) **Part Time 1:** Accrual per payroll period when scheduled 20 to 31 hours per week:

| 0-2 Yrs. | 3-5 Yrs. | 6-10 Yrs. | 11+ Yrs. |
|----------|----------|-----------|----------|
| 2.77 Hrs. | 3.12 Hrs. | 3.81 Hrs. | 4.50 Hrs. |

2. <u>Use of Annual Leave</u>: Annual leave may not be used until it has been accrued. Annual leave is accrued only at the end of each payroll period. Annual leave is not considered as hours worked in the computation of overtime.

3. <u>New Employees</u>: New employees are not eligible to use annual leave during the first 90 days of employment.

4. <u>Maximum Accrual</u>: An employee may accrue a maximum of 240 hours of annual leave.

5. <u>Leave Cash Out</u>: Annual leave may not be cashed out unless an employee has accrued the maximum allowable hours of annual leave, the employee may then cash out up to 10 days of annual leave with prior approval of their supervisor and the executive director. Annual leave may be cashed out only if funds are available.

6. <u>Authorization</u>: Annual leave must be approved in advance by an employee's supervisor. If leave without pay is to be included with annual leave, separate authorization must also be obtained. In cases of emergency, the executive director may waive advance notice.

7. <u>Separation from Employment</u>: When employment is terminated, accrued annual leave will be paid to the employee with the employee's final paycheck. Only employees who have completed 90 days of employment will be paid annual leave at separation. The accrued annual leave will be based at the employee's current wage rate.

## B. Sick Leave

Eligible employees are given sick leave (use of sick leave is subject to proper authorization). Sick leave allows employees compensation for time lost due to illness. Sick leave may only be taken for time off due to a personal illness and management may require that an employee who misses work due to an illness provide a note from a physician releasing the employee back to work. Sick leave may not be used as additional time off for any reason other than illness. Sick leave is not considered as hours worked in the computation of overtime. Employees absent for three days or more are required to present a medical release to return to work.

1. **Accrual:** Employees accumulate annual leave in each payroll period as follows: full time employees scheduled 32+ hours a week are given 1.24 hours of sick leave per payroll period with a maximum accrual of 64 hours; Part Time 1 employees scheduled 20-32 hours a week are given 0.93 hours of sick leave per payroll period with a maximum accrual of 32 hours.

2. **Leave Cash Out:** Sick leave is not earned leave and therefore is not a terminal benefit. Sick leave may not be transferred to another employee.

3. **New Employees:** New employees are not eligible to use sick leave during the first 90 days of employment.

**C. Leave of Absence Without Pay**
A full-time employee may be granted a leave of absence without pay for a period not to exceed twelve months if such leave can be scheduled without adversely affecting CSCI operation. Requests for leave of absence shall be submitted in writing to the employee's supervisor, must provide strong justification, and are subject to the supervisor and executive director's approval. Benefits will not accrue during leave of absence without pay.

**D   Leave Benefits - Voluntary Leave Donation Program**
Purpose
1. There are occurrences brought about by serious and prolonged medical conditions that cause employees to exhaust available leave and therefore be placed on leave without pay. It is recognized that such employees forced to go on leave without pay could be without income at the most critical point in their work life. Employees who want to assist their fellow workers by donating leave can do so through the Voluntary Leave Donation Program. The intent of this policy is to allow one employee to assist another in case of a prolonged medical condition that results in exhaustion of all earned leave.

General Guidelines
1. Leave shall be donated, at the discretion of the Executive Director, on a one-to-one personal basis. Establishment of a leave "bank" for use by unnamed employee is expressly prohibited.
2. The donation and receipt of leave shall be completely voluntary, and anyone who interferes with an employee's right to choose whether to donate or receive leave shall be subject to disciplinary action on the basis of personal misconduct.
3. Individual leave records are confidential, and only individuals may reveal their donation or receipt of leave.
4. The employee donating leave cannot receive remuneration for the leave donated.
5. Non-qualifying conditions: The policy will not ordinarily apply to short-term or sporadic conditions or illnesses. Each case must be examined and decided based on its conformity to policy intent and must be handled consistently and equitably.
6. The Finance Department shall provide leave donation forms and answer any questions pertaining to the Voluntary Leave Donation Program.
7. All accrued leave time must be used prior to employee use of donated leave.

8. Employee must complete and forward a leave donation form to the finance department. All leave donation forms must be signed by the Executive Director.
9. The minimum amount that can be donated is eight hours.

### D. Military Leave and D-MAT Leave (FEMA)
CSCI will grant military leave as necessary in compliance with all applicable state and federal regulations. If you need a military related leave of absence, contact your supervisor or the human resources coordinator as soon as you learn of your need for such leave.

### E. Jury Duty
A full-time employee called to serve as a juror is entitled to court leave. The employee must provide appropriate proof of service. The employee receives regular pay during such absence, but must transfer to CSCI any compensation received for such duty. Court leave does not affect annual or sick leave accrual.

### F. Emergency Leave
The executive director may grant leave without pay for personal emergencies such as attending a funeral or for sickness or death in the employee's immediate family. Accrued annual leave must be used before leave without pay is granted.

### G. Family and Medical Leave
CSCI provides family and medical leave pursuant to the Family Medical Leave Act (FMLA). Please contact your supervisor or the human resource coordinator as soon as you learn of your need for such leave.

## VI. PERSONNEL ACTIONS

### A. Promotions and Transfers
Promotional appointments are subject to a probationary period of three consecutive months of service. Employees may be transferred from one department to another when a suitable vacancy occurs and at the discretion of the executive director

### B. Layoffs
An employee will be notified in writing, whenever possible, at least ten working days prior to layoff.

### C. Suspension
A supervisor, with concurrence of the executive director, may suspend an employee without pay for a period of up to ten working days as a disciplinary measure. Such action must be documented in writing, identifying the reasons for and the period of the suspension.

### D. Other Disciplinary Action
A supervisor may discipline an employee for work related performance or other misconduct while at work. Disciplinary action may include documented verbal

counseling, or verbal and written warnings. The employee's written; signed response to all verbal or written reprimands will be placed in the employee's.

### E. Resignation

CSCI requests at least ten working days' notice of an employee's intention to resign. The notice must be in writing and contain the employee's reasons for resigning. Failure to comply with this section shall be noted in the employee's personnel file and may impact CSCI's willingness to rehire the employee in the future.

### F. Termination

Employment with CSCI is at-will. Accordingly, the employment of any employee may be terminated for any reason at any time, with or without notice. Any representation to the contrary is not binding upon CSCI, unless signed in writing by the executive director and the employee.

Employees may be subject to discipline for many reasons, including, among other, any performance failure or misconduct, including failure to comply with the company policies. Each situation that potentially warrants discipline will be reviewed by the employee's immediate supervisor. CSCI reserves the right to discipline any employee at any time for any reason and to determine the particular discipline to be imposed in any given case, including but not limited to disciplinary actions such as verbal warning, written warning, suspension, or termination of employment, that may be taken in any order.

### G. Exit Interview

All employees who voluntarily or involuntarily terminate employment with CSCI may request or may be requested to have an exit interview to be conducted with their supervisor or the executive director. The completed exit interview will be kept in the employee's personnel file.

11

## H. Employee Misconduct

The examples listed below are only examples of conduct which is prohibited and are not meant to be an exhaustive list. CSCI reserves the right to impose disciplinary action up to and including dismissal for other acts of misconduct not listed herein.

1. No employee may accept any reward, gift or other form of remuneration from any vendor, contractor, firm or person having or proposing a business relationship with CSCI.

2. No employee may discriminate in employee decisions or employment activities on the basis of race, color, sex, national origin, sexual orientation, age or religion.

3. No employee may engage in partisan political activity during regular working hours or on CSCI premises. No employee may solicit contributions for any political party or candidate from any other CSCI employee during regular working hours.

4. Information gained as a result of employment with CSCI is confidential. Disclosure of confidential information is strictly prohibited.

5. No employee may speak to the public media or any individual or group as an official spokesperson of CSCI without prior approval of the executive director.

6. No employee may, while on duty, deliberately or carelessly engage in conduct which endangers the employee's safety or the safety of other employees or which might result in damage to CSCI property or violates a safety rule or a normal safety practice.

7. No employee may behave in a careless or negligent manner while using CSCI property or monies, nor shall any employee appropriate CSCI assets for personal use (theft).

8. No employee may be inattentive to their work assignments, fail to start work at the designated time, or leave the work premises without proper authorization; nor shall any employee be absent from work without prior permission or without following specific directions concerning unexpected absences.

9. Employees who fail to notify their supervisor that they will be absent will be subject to disciplinary action. Additional disciplinary action will be taken for repeated violations including termination.

10. Inappropriate conduct or behavior directed toward or in the presence of clients or other personnel is prohibited.

11. An employee is expected to dress in a manner that is appropriate to his or her position with CSCI and to present a clean, neat and professional appearance while on the job. Anyone coming to work dressed in an inappropriate or potentially offensive manner may be asked to go home and change. Talk to your supervisor if you have any questions.

12. Personal vehicles will not be used for CSCI business unless approved by the executive director. Even if the executive director approves the use of a personal vehicle. If the vehicle is not insured, or is unsafe in any manner, it must not be used for CSCI business under any circumstances.

13. The parking areas around the building are reserved for residents and visitors. Employees should part their vehicles in designated parking lots unless they have a handicapped license or handicapped window display.

14. In accordance with the municipal ordinance, AMC 16.65, effective December 31, 2000, smoking in all public places and work places is prohibited. Smoking is permitted outside the building at a distance of 50 feet.

## VII. HARASSMENT POLICY

CSCI is committed to providing a work environment that is free from discrimination and disrespectful and offensive behavior. Disrespectful and offensive behavior, including inappropriate or degrading remarks and conduct, has the potential of being perceived as harassment or discrimination. Harassment and discrimination is prohibited and will not be tolerated by CSCI.

### A. Definition of Harassment

Disrespectful and offensive behavior includes unwelcome remarks and physical conduct that denigrates or shows hostility toward an individual's race, color, creed, religion, ancestry, national origin, sex disability, age or marital status. Sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when:

1. Submission to this conduct is made either explicitly or implicitly a term or condition of an individual's employment;

2. Submission to or rejection of this conduct is used as a component or basis for employment decisions affecting an individual; or

3. The conduct has the purpose or effect of substantially interfering with an individual's work performance or of creating an intimidating or hostile environment.

Harassment may be verbal, physical, written or visual. Conduct that may constitute harassment includes, but is not limited to, sexual or suggestive comments or jokes, sexual propositions, sexist remarks, unwanted sexual advances, patting or

unnecessary touching, unwanted staring or leering, pressure for sexual favors in return for special treatment on the job, or unfavorable treatment or harassment not of a sexual nature directed toward an individual because of his or her sex, race, religion, or other protected characteristic.

**B. Complaint Procedure**

If you believe that you or someone else has been subject to sexual or other harassment or discrimination prohibited by this policy, you should immediately report it to:

Your supervisor or the executive director.

These individuals are responsible for receiving, investigating, and resolving harassment and discrimination complaints.

It is not sufficient to report a complaint of harassment or discrimination to any person other than one of these designated individuals.

**C. Investigation and Action**

Upon receipt of a complaint, CSCI will promptly and fairly investigate the complaint. The report and investigation will be kept confidential to the extent consistent with the need for a thorough investigation and response.

When it is determined that an employee had violated this policy, CSCI will take appropriate disciplinary action, up to and including termination of employment. When it is determined that a non-employee has violated this policy, CSCI will take action reasonably calculated to end the harassment.

**D. Non-Retaliation Policy**

CSCI strictly prohibits any acts of reprisal or retaliation against any employee who in good faith reports an allegation of harassment or discrimination or who in good faith participates in any investigation of such a report.

Any person who violates this non-retaliation policy may be subject to discipline, up to an including termination of employment.

**E. Disclaimer**

Nothing in this policy is intended to create a contract between CSCI and any employee. CSCI reserves the right to change all matters contained in this policy to interpret the provisions of this policy, and to vary from this policy when such variance is appropriate.

## VIII. DRUG FREE WORKPLACE POLICY

As required under the Drug Free Workplace Act, CSCI prohibits the unlawful manufacture, distribution, dispensing, possession or use of a controlled substance which is not prescribed for the individual in whose possession or use of a substance is discovered in any CSCI's workplace. Any employee who violates this policy is subject to disciplinary action, which could include termination.

14

# IX. GRIEVANCE PROCEDURES

## A. Policy

It is the policy of CSCI to work toward constructive solutions to problems that may arise in the work place. Good morale is dependent upon such problems being addressed in an atmosphere of courtesy and cooperation. The purpose of this grievance procedure is to secure, at the lowest possible administrative level, equitable solutions to problems that may arise from time to time. The goal at each step of this grievance procedure shall be to reach a mutually satisfactory resolution, if possible. Grievance proceedings will be kept as informal and as confidential as may be appropriate. Grievance procedures may not apply to matters of employee termination.

All grievances will follow the appropriate chain of command. The personnel officer shall be available to advise and assist all employees regarding personnel policy interpretation and compliance and the use of this grievance procedure.

## B. Procedure

1. **Informal Resolution**: An employee who feels there is a problem in the work place should, as a first step, discuss the matter with their immediate supervisor to attempt to resolve the issue. If the matter is not resolved to the satisfaction of the employee, they may proceed to the next step. The employee shall meet with the personnel officer to discuss the grievance. The personnel officer may consult with the executive director or other management personnel. If the matter is not resolved to the satisfaction of the employee, they may proceed to the next step.

2. **Formal Grievance**:
   If the employee is not satisfied with the results of the informal resolution attempt, a formal grievance may be filed. The grievance must be in writing. It should contain sufficient detail to identify and clarify the relief sought by the employee. Copies of any documents relating to the grievance or to informal resolution efforts should be attached.

   a. A formal grievance must be presented to the appropriate supervisor of the employee within five working days of an employee's attempt at an informal resolution. The supervisor must respond to the grievance in writing within ten working days.

   b. If the employee is dissatisfied with the response of the appropriate supervisor, they may submit the grievance to the executive director within five working days of receiving the supervisor's response. The employee shall submit the original grievance, the response, the suggested remedy or solution to the grievance, and any other relevant information.

   c. The executive director must consider the grievance within ten working days. The employee and CSCI management shall be invited to present evidence to the executive director. Evidence may be presented through testimony of the employee, management personnel, and other CSCI employees and by written documents. Both parties shall be entitled to

15

question witnesses, as shall the executive director. After the grievance hearing is closed (to be determined by the executive director), the executive director shall retire and deliberate privately on the case. The executive director will prepare a memorandum of decision that includes the determination to accept or reject the grievance and/or its remedy, if any. Copies of this memorandum will be issued to all individuals involved directly in the grievance (not necessarily the witnesses).

Any aggrieved party may appeal to CSCI's Board of Directors. The appeal must be made within five working days of the executive director's decision and the executive director's decision shall be forwarded to the Board of Directors. The Board of Directors shall act on the grievance at the earliest possible date. The decision of the Board of Directors is final.

3. **Time Limits:** If a grievance is not initiated within the time limits established in this section, the grievance shall be considered denied. Any grievance not taken to the next step of the grievance procedure shall be considered as settled on the basis of the last response made. If the appropriate CSCI official fails to respond to a grievance within the appropriate time limit, it is the employee's responsibility to initiate the next step in these procedures. Time away from work by the employee or the supervisor due to illness, annual leave, travel and the like will not be counted in the response time.

16

*3950 Wickersham Way  Home:  (907) 357-8342*
*Wasilla, Alaska 99654  Cell:  (907) 841-0623*
*lshendrickson@hotmail.com*

# Linda Hendrickson

---

**Experience**       **2003 – Present   Executive Director, Chugiak Senior Center, Chugiak, Alaska**

**2001 – 2002       Hope Community Resources, Anchorage, Alaska**

**Care Coordinator / Case Manager**

- Oversight of 18 clients and their service plans including two face-to-face visits per month.
- Composing goals, objectives, methodology and recording outcomes for client's plan of care.
- Expediting access to appropriate agencies for clients' needs.
- Crisis intervention.
- Maintain state, federal and agency regulation.
- Advocacy for clients in fair-hearing sessions.
- Participated in "team approach" goals.
- Worked with doctors, nurses and other health professionals to search for best possible approach to health concerns of assisted living clients.

**1996 – 2002        CRISTA Senior Community, Shoreline, Washington**

**Director of Resident Services**

- Restructured staffing responsibilities to lower overtime by 50% in the first year.
- Established on premises a 'central supply' to ensure cost effective operation for CRISTA and lower cost for resident.
- Revised resident service fee system from point-to-fee for service menu.
- Created and implemented in-house training curriculum for front line staff according to state regulations.
- Hired, trained and evaluated 31 frontline staff.
- Conducted all assessments for potential residents of 90-bed facility.
- Continuously reviewing and revising policies and procedures to meet new, and changing state and federal regulations.
- Responsible for all documentation and oversight of compliance with state and federal regulation.

**1986-1996        CRISTA Senior Community, Shoreline, WA**

**Services Manager  (Cristwood,  independent senior apartments)**

- Worked closely with administrator to set up ancillary departments of the new facility such as beauty salon and personal services.
- Instrumental in creating systems to ensure policies, procedures and communications were universal for each department.
- Increased revenue in one service department by 50% in first year of operation.

1981-1986          **Teen Challenge, Seattle, Washington**

<u>**Treatment Counselor Volunteer**</u>

- Monitored and documented progress of 16 residents.
- Worked on in-take committee for two years, assessing potential clients for admission to the program.

**Education**      **2002**          **Assisted Living Administrator, Anchorage, Alaska**

**2000**          **Miami, Florida AASHA, Miami, Florida**

<u>**Certificates**</u>

- RHP Retirement Housing Professional
- Care Coordinator / Case Manager
- Psychotropic Pharmaceuticals / Geriatrics
- Dementia / Alzheimer's
- Certified Nursing Assistant
- Nurse Delegation
- Fundamentals of Care
- Medical Terminology
- Medication Assist in the Boarding Home / Assisted Living
- Regulation Compliance in Assisted Living / Boarding Home
- Documentation is the Key to Compliance
- WACs and REGs Boarding Home / Assisted Living
- The Eden Alternative / Alzheimer's / Dementia
- Gentle Care / Alzheimer's / Dementia
- The Law and Human Resources

**1999**          **North Texas University, Dallas, Texas**

- RHP Retirement Housing Professional certificate

**1997**          **Shoreline Nursing Institute, Shoreline, Washington**

- Certified Nursing Assistant

**1984-1985**          **Seattle Community, Seattle, Washington**

- Treatment Certificate Class III