Donna M. Meyers
William E. Moseley
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska  99501
PHONE:  907-279-3581
FAX:  907-277-1331
dmm@delaneywiles.com
wem@delaneywiles.com

Attorneys for Defendant
Chugiak Senior Citizens, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her Power of Attorney Carol Winters, )<br><br>Plaintiff, )<br><br>)<br><br>CHUGIAK SENIOR CITIZENS, INC., )<br><br>Defendant. )<br>_____ ) | **OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**<br><br><br>Case No. 3:06-cv-00083-TMB |

## I.    INTRODUCTION

Chugiak Senior Citizens, Inc. ("CSC") opposes plaintiff's motion to compel discovery.  The court should deny plaintiff's motion because: (i) plaintiff has failed to meet her burden of producing factual or legal authority establishing she is entitled to the discovery she seeks; and (ii) CSC has already provided plaintiff with all requested information that is not privileged or that is either relevant or reasonably calculated to lead to discovery of admissible evidence.

## II.    FACTS AND PROCEEDINGS

Plaintiff's entire case arises from defendant's alleged wrongful attempted eviction of her from CSC's assisted living facility.  *See* Dkt. 1, Ex. C, ¶ 1 (Amended Complaint for Injunctive and Declaratory Relief and for Damages).  Although plaintiff alleges numerous claims, they all relate to her alleged wrongful threatened eviction.  *Id.*, ¶¶ 24, 26, 29, 32, 34, 36, 38, 40, and 43.  Thus, the main issue in this case is whether there are valid grounds to terminate plaintiff's residency from CSC.

Plaintiff's discovery requests go far beyond this issue.  Rather than litigate whether there are valid grounds to evict plaintiff from CSC, plaintiff is attempting to turn the case into an exhaustive and costly indictment of CSC since it began operating the Assisted Living Program approximately 12 years ago.[1]  Plaintiff's voluminous discovery constitutes a burdensome fishing expedition into every aspect of CSC's business, its other residents and employees.  No party has a right to conduct a general fishing expedition into the records of another party, regardless of burden or relevancy.  Notwithstanding plaintiff's extremely broad and burdensome discovery requests, plaintiff has done nothing to demonstrate how her requests are relevant to any claim asserted in her amended complaint.  Plaintiff has not shown a legitimate need for any of the requested information at issue, much of which is personal and sensitive information.  Because plaintiff's requests are so overly broad and encompass information irrelevant to plaintiff's claims, defendant requests the court to exercise its broad discretion and deny plaintiff's motion.

---

[1] Plaintiff's strategy is curious, since plaintiff's daughter testified plaintiff loves it at CSC and doesn't want to move.  Carol Winters Depo. at p. 36, lines 7-20; p. 111, line 4 to p. 112, line 20; p. 113, lines 10-25, Ex. A.  Plaintiff has also publicly stated this position. *See, e.g.*, Ex. B ("Mother loves the Chugiak Senior Center and feels it is her home.").

CSC is a non-profit corporation that offers a limited level of care to its tenants in an assisted living program.  It has 22 available apartments to rent out.  There are three program assistants available per each eight-hour shift to assist all residents with certain activities of daily living.  It does not provide one-on-one care, and residents live in their own apartments.  CSC is not a skilled nursing facility.  CSC has informed plaintiff directly and – through her daughter, Carol Winters, who has power of attorney[2] – that plaintiff's needs exceed the level of services CSC can safely provide and that plaintiff should be placed in a facility that, unlike CSC, can provide one-on-one care for her own safety.  But both plaintiff and her daughter have refused to consider safer, more appropriate residential options.   Furthermore, plaintiff has consistently engaged in a pattern of abusive behavior consisting of unwarranted yelling, verbal abuse and even striking a staff member.  Dkt. 25, Exhibit A (Affidavit of Linda Hendrickson).

On July 14, 2006, plaintiff served its extremely broad and voluminous discovery requests on CSC.  Dkt. 56, Ex. 1.  CSC timely responded to plaintiff's requests.  Dkt. 56, Ex. 2 at 22-23.  Even though the discovery requests were objectionable, CSC responded substantively to the interrogatories and requests for production.  *Id*. at 3-22.  After CSC served its responses on plaintiff, the parties conducted a discovery conference on August 23, 2006, at which CSC explained it could not disclose information or documents protected by privacy rights and by statutory privileges.  *See* Supplemental Responses to Plaintiff's First Set of Discovery Requests, Ex. C at 1 n.1.  Moreover, CSC supplemented its responses to plaintiff's requests, in an attempt to satisfy plaintiff's objectionable discovery requests, on September 8, 2006.  *Id*. at 1-12.  In those responses, CSC

---

[2] *See* Dkt. 1, Ex. C, ¶ 2 (Amended Complaint).

provided additional information and documents, despite the objectionable nature of plaintiff's requests. CSC also provided a second set of supplemental responses.[3]

### III.    ARGUMENT

**A.    The Court Should Deny Plaintiff's Motion Because Plaintiff Has Failed To Meet Her Burden To Demonstrate She Is Entitled To The Discovery She Seeks.**

In *State Farm Mut. Auto. Ins. Co. v. Superior Court,* 804 P.2d 1323, 1326 (Ariz. App. 1991), the court held the trial court had abused its discretion in granting overbroad and burdensome discovery requests. The court declared:

> Under the 1984 Amendments to Rule 26, judges are encouraged to take an active role to identify and remedy discovery abuse. Rule 26, Arizona Rules of Civil procedure (State Bar Committee Notes, 1984 Amendments). Discovery abuse has become a major problem in civil litigation because of its expense and extortionate effect. *See Comm'n on the Courts,* Report of the Task Force on court Productivity, p. 63 (1989). The Commission on the Courts found that:

> . . . a 'discovery industry' has developed, and it is flourishing. The result has been a dramatic increase in the cost of civil litigation and a growing concern over that phenomenon. The public, the bench, and even lawyers who reap the rewards of discovery-induced increases in fees are expressing concern about the escalating cost involved. The cost of legal services, excluding the cost of in-house counsel and government attorneys, increased 244% between 1973 and 1983 and the trend continues unabated. Even most lawyers agree that the expense of the discovery process is disproportionate to the value of the information is yields. Thus, it is not surprising that the national legal community's concerns that the discovery process is in fact abused by 'wild fishing expeditions' are shared by Arizona attorneys and lay people as well.

> *Id.* at 66. (Footnotes omitted.) Discovery in civil cases should be controlled and managed by the court from the onset, not perfunctorily relegated to the parties for resolution.

---

[3]See CSC's Second Supplemental Responses to Plaintiff's First Set of Discovery Requests, Ex. D.

804 P.2d at 1326.[4]

Broad fishing expeditions, regardless of relevancy to a party's claims or defenses, are no longer permitted. In *Archer Daniels Midland Co. v. AON Risk Services, Inc. of Minn.,* 187 F.R.D. 578, 589 (D. Minn. 1999), the court declared:

> Notwithstanding the liberality of discovery, however, it is not without bounds. As our court of Appeals has observed:
>
> **This often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues of the case.**
>
> *Hofer v. Mack Trucks, supra* at 380.
>
> Therefore, despite the liberality of discovery, '"we will remain reluctant to allow any party to 'roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" [citations omitted.]
>
> Even when dealing with requests for relevant information, the Rules recognize that discovery may be limited when the benefits to be obtained are outweighed by the burdens and expenses involved. According to Rule 26(b)(2), Federal Rules of Civil Procedure, we are directed to limit discovery upon a determination that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden of expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the

---

[4]The concern expressed by the Arizona court applies here as well. Any increase in fees and charges charged by CSC to cover its increased operating costs may make it impossible for some of its residents to afford to stay at CSC.

litigation, and the importance of the proposed discovery in resolving the issues.

These considerations are not talismanic.  Rather, they are to be applied in a common sense, and practical manner.   [citations omitted.]

187 F.R.D. at 589.  *See also Marchello v. Chase Manhattan Auto Fin. Corp.,* 219 F.R.D. 217, 218 (D. Conn. 2004) (requiring a threshold showing of relevance and declaring that discovery may not be had where the burden or expense of the proposed discovery outweighs its likely benefit); *Sackman v. Liggett Group, Inc.,* 173 F.R.D. 358, 361 (E.D.N.Y. 1997) (requiring a threshold showing of relevance be made and declaring the issue of relevance is determined from the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery); *Whacker v. Gehl Co.,* 157 F.R.D. 58-59 (requiring a threshold showing of relevance and declaring a trial court is afforded wide discretion in its handling of discovery matters).

The court should deny plaintiff's motion because plaintiff has failed to meet her burden of producing factual or legal authority establishing she is entitled to the discovery she seeks.  Plaintiff has filed a motion to compel discovery responses without articulating or producing any legal or factual authority in support of her motion.  Plaintiff has not shown how any of her very broad requests are relevant to her claims asserted in her amended complaint.

Local Rule 7.1(d) requires a movant to include materials in support of his motion.  Failure to provide support subjects the motion to summary ruling by the court.  "If the failure is by the moving party, it may be deemed an admission that the motion is without merit."  Local Rule 7.1(d).  Moreover, a party moving to compel is required to provide the factual and legal basis upon which the motion rests.  *See McBryar v. Int'l Union of United*

*Auto Aerospace & Agr. Implement Workers of America*, 160 F.R.D. 691, 695 (S.D. Ind. 1993). Here, plaintiff has failed to provide legal authority demonstrating she is entitled to relief. Plaintiff has failed to discuss the parameters of discovery under Federal Rules of Civil Procedure 26, 33, 34 and 36. In addition, plaintiff has failed to mention the grounds controlling a motion to compel under Fed. R. Civ. P. 37(a). Because plaintiff has failed to meet her burden of producing any legal or factual authority in support of her motion, the court should deny plaintiff's motion.

**B.    The Court Should Deny Plaintiff's Motion Because CSC Has Already Provided Plaintiff With All Requested Information That Is Not Privileged Or That Is Either Relevant Or Reasonably Calculated To Lead To Discovery Of Admissible Evidence**

The court should deny plaintiff's motion because plaintiff seeks information that is neither relevant to her claims asserted in her amended complaint nor reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). Defendant has already provided extensive discovery in its supplemental disclosures and discovery responses. To date, CSC has already produced over 2,200 pages of documents.[5]

---

[5]Plaintiff disingenuously accuses CSC of stonewalling by misrepresenting CSC's discovery responses and disclosures, and minimizing the plethora of documents CSC has produced to date. For example, plaintiff misrepresents CSC's response to Plaintiff's Interrogatory No. 11. Plaintiff alleges CSC "contended it could not tell Ms. Winters *any* of the facts supporting its affirmative defense of "indispensable party" because of the "attorney client privilege". See Dkt. 56, at 2. Plaintiff purposefully omits the remainder of CSC's response to Interrogatory No. 11, which refers plaintiff to its response to Interrogatory No. 9, and that response asserts an objection based on the attorney work product privilege, but also without waiving the objection, it describes CSC's contentions that plaintiff's damages, if any, might be due to the conduct of plaintiff's daughter, Carol Winters, and plaintiff's care coordinator, Kathy Huskey. However, plaintiff would have this Court believe CSC did not provide any facts supporting its affirmative defense of "indispensable party".

Although plaintiff's discovery requests seek information and documents outside the scope of discovery, CSC has attempted to provide plaintiff with non-privileged information. Although plaintiff's interrogatories and requests for production were objectionable, CSC took the high road by responding substantively and providing requested documents to the degree that information was not objectionable or privileged. For example, despite plaintiff's objectionable discovery requests, CSC provided plaintiff a list of care coordinators and an employee handbook, among other documents in its

---

Additionally, plaintiff disingenuously portrays CSC as "stonewalling" because it could not provide a response to plaintiff's unduly overbroad Request For Production requesting "all DOCUMENTS RELATING TO any complaints of residents of, or applicants to, CSC, Inc.'s assisted living program, against CSC, Inc., or anyone that worked at CSC, Inc., from the opening of the CSC's assisted living program, to the present date." Dkt. 56, Ex. 2 at 14. Plaintiff suggests CSC refused to disclose any other complaints merely because it considered the word 'complaint' to be to vague to warrant a response". Dkt. 56, at 2. CSC's objection went much further than what plaintiff is representing to the Court. CSC objected because the word "complaint" did not refer to any particular subject matter of the complaint nor was the request limited in any temporal manner that was reasonably related to the subject matter of the litigation. Even though Request For Production No. 3 requested all documents relating to any complaints from the existence of CSC's assisted living program, CSC had already indicated the program had been in existence for more than a decade. Dkt. 56, Ex. 2 at 14. Thus, CSC's response to Request For Production No. 3 put plaintiff on notice that CSC was objecting to the request as being overbroad because it lacked any reasonable time reference and subject matter. As worded, Request For Production No. 3 sought documents relating to any type of complaints, no matter how trivial or unrelated to plaintiff's complaints, and regardless of whether such complaints were made on day one of CSC's assisted living program or over the next 12 years the program has been in existence.

Plaintiff also disingenuously accuses CSC of stonewalling by misrepresenting its response to Plaintiff's Request For Production No. 1. Dkt. 56, at 2. Even though CSC only produced the employee manual in response to that specific request, CSC also objected to the request because it was so overbroad. Plaintiff did not request documents reflecting CSC's employee training and recruitment program in existence during the time period of plaintiff's admission to CSC, but rather the request sought any and all documents relating to hiring, screening, training, retention, recruitment and dismissal of staff, employees, independent contractors and employee contracts that ever existed over the time period of CSC, Inc.'s existence. However, plaintiff would have this Court believe CSC merely produced a "employee manual" without anything more being said in response to Request For Production No. 1.

original discovery responses. *See* Dkt. 56, Ex. 2, p. 24-43. Further, in an attempt to resolve this discovery dispute without involving the court, CSC supplemented its discovery responses on September 8th. *See* Ex. C at 12. In that document, CSC supplemented its answers to interrogatories. *Id*. at 2, 3. CSC also provided supplemental documents responsive to plaintiff's requests for production, including Exs. A through G, totaling 129 pages. *See* Ex. C.[6] Although it was not required to do so, CSC also described by document number those documents in its initial disclosures and in supplemental disclosures that were most responsive to plaintiff's individual requests. *See* Ex. C. CSC subsequently provided additional supplemental responses to plaintiff's discovery requests. *See* Ex. D. Because CSC has already gone beyond its duty to respond to plaintiff's objectionable discovery requests, to the extent it could do so without violating privileges and without waiving its numerous objections, the court should deny plaintiff's motion.

### 1.    The information sought is not relevant nor reasonably calculated to lead to the discovery of admissible evidence

The court should deny plaintiff's motion because plaintiff has failed to establish the information and documents she seeks are within the scope of discovery. As discussed above, under Local Rule 7.1(d), plaintiff had the burden to establish the information and documents she seeks are discoverable. Plaintiff has failed to meet this burden. The information and documents plaintiff seeks are neither relevant to the claims asserted in her amended complaint, nor reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). This is so because each and every one of

---

[6]The exhibits to CSC's supplemental disclosures are not attached only because the undersigned counsel does not wish to burden the Court file any more than what is necessary. However, if the Court would like CSC to file the documents, it will do so.

plaintiff's claims depends on whether CSC can ask plaintiff to live elsewhere due to needs CSC cannot safely meet. However, the information and documents sought in plaintiff's motion do not relate, even tangentially, to this discrete issue.

Instead, the information and documents plaintiff seeks in the discovery requests at issue are outside of the scope of discovery because they do not relate to plaintiff's claims. Plaintiff seeks an injunction against CSC to force CSC to retain plaintiff as a resident even though plaintiff's needs exceed those CSC can safely meet. *See* Amended Complaint at p. 11. Plaintiff has also alleged breach of contract and numerous statutory violations, all of which relate to whether CSC can rightfully ask plaintiff to leave. *Id.* at ¶¶23-38. Finally, plaintiff has alleged CSC intentionally, or negligently, inflicted emotional distress on plaintiff in informing plaintiff CSC cannot meet her needs and that she must seek other housing. *Id.* at ¶¶39-43. Thus, the gravamen of plaintiff's case is: whether CSC can rightfully ask plaintiff to leave because her needs exceed CSC's ability to safely provide for them. However, none of plaintiff's claims relate, even tangentially, to the information or documents she seeks from CSC in the instant motion.

## 2. The information sought on other residents is not directly relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff seeks numerous types of irrelevant information and documents, many of them privileged. Plaintiff's interrogatories 2, 3 and 4 and requests for production 7 and 8 all relate to information concerning other residents of CSC's assisted living facility. Plaintiff's Request for Production Nos. 7 and 8 request "all" documents "relating to any persons" who have lived in the assisted living program from September 1, 2004 and who have been asked to leave, threatened with eviction or actually evicted. This document

encompasses medical records, eviction notices stating medical reasons for eviction, and other highly private and confidential information.

The Court should deny the motion to compel because CSC would violate the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") confidentiality provisions by disclosing information on its' former or current residents.  In addition, the Court should deny the motion because plaintiff's discovery requests are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence regarding whether CSC can ask plaintiff to leave its facility.

First, the court should deny plaintiff's motion because HIPAA protects CSC's residents from disclosure of confidential information by CSC.  Contrary to plaintiff's claim that HIPAA does not apply to CSC[7], CSC is a "covered entity" under 45 C.F.R. § 160.103 because it furnishes and bills electronically for healthcare services it provides to residents in the assisted living program.  Under HIPAA, "health care means care, services, or supplies related to the health of an individual."  45 C.F.R. § 160.103.  The term "health care" under HIPAA includes rehabilitative, maintenance, service, assessment, or any procedure with respect to the physical or mental condition, or functional status of an individual.  45 C.F.R. § 160.103(1).  Because CSC provides residents with therapeutic, rehabilitative, maintenance, care, counseling, services, assessments, and/or procedures regarding their physical and functional status, CSC falls within the definition of a health care provider as it is broadly defined under HIPAA.  Moreover, HIPAA applies because

---

[7] *See* Dkt. 56 at 9.  When plaintiff's counsel requested more information to test CSC's reliance on HIPAA by asking for a copy of CSC's Notice of Privacy Practices, CSC promptly provided a copy of the notice.  *See* Ex. F.  However, plaintiff wants the Court to believe CSC did nothing in response to plaintiff's counsel's letter concerning CSC's reliance on HIPAA.  *See* Dkt. 56 at 3 and, Dkt. 56, Ex. 7.

CSC transmits health information in electronic form regarding healthcare services provided to residents who are participants in the Medicaid CHOICE Waiver Program. As such, the "privacy rule" protects CSC's residents against disclosure of any information pertaining to their health. *See* 42 U.S.C. § 1320d-6. Numerous courts have upheld the privacy provisions of this statute. *See, e.g., United States v. Sutherland*, 143 F.Supp.2d 609, 612-13 (W.D. Va. 2001); *Giangiulio v. Ingalls Mem. Hosp.*, 850 N.E.2d 249, 263-65 (Ill. App. Ct. 2006); *Hill v. East Baton Rouge Parish Dept. of Emergency Med. Svcs.*, 925 So.2d 17, 21-23 (La. Ct. App. 2005).

HIPAA prevents covered entities from disclosing "individually identifiable health information" and provides penalties for doing so. The Act provides:

> (a) **Offense**
> <u>A person who knowingly and in violation of this part</u> –
> …
> (3) <u>discloses individually identifiable health information to another person, shall be punished as provided in subsection (b) of this section</u>
>
> **(b)      Penalties**
>
> A person described in subsection (a) of this section shall –
> (1) be fined not more than $50,000, imprisoned not more than 1 year, or both;
> (2) if the offense is committed under false pretenses, be fined not more than $100,000, imprisoned not more than 5 years, or both; and
> (3) if the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm, be fined not more than $250,000, imprisoned not more than 10 years, or both.

42 U.S.C. § 1320d-6. This provision prevents disclosure of "individually identifiable health information" and provides penalties for such violations.

Regulations promulgated under HIPAA define "individually identifiable health information":

(1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and

(2)  <u>Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual</u>; and

(i)  That identifies the individual; or

(ii)  With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

45 C.F.R. § 160.103.

As discussed above, HIPAA applies to CSC because CSC is a "covered entity" as defined under the Act.  Under HIPAA and regulations promulgated thereto, CSC would violate the Act's privacy rule if it were to disclose the information sought here by plaintiff.  Specifically, CSC and its officers would subject themselves to severe monetary fines and imprisonment for disclosing the documents and information requested by plaintiff: "all" documents "relating to any persons" who have lived in the assisted living program from September 1, 2004 and who have been asked to leave, threatened with eviction or actually evicted.  *See* Dkt. 56, Ex. 2 at 16-17 (Plaintiff's Request for Production Nos. 7 and 8).  This request seeks "individually identifiable health information" because plaintiff specifically seeks information "that identifies the individual," and all information relating to individuals, which could presumably include information past, present, or future physical or mental health information.  *See* 45 C.F.R. § 160.103.

Plaintiff appears to argue that by disclosing only the names and contact information of individuals who have lived at CSC while plaintiff has lived there, CSC would not be violating HIPAA.  Plaintiff states she seeks "only the names and most recent contact information as well as documents relating to any eviction."  *See* Motion to Compel at 10.   However, based on the clear definition of "individually identifiable health

information," by disclosing the names and contact information of CSC residents, and documents relating to any eviction, CSC would be disclosing information relating to the residents' past, current or future physical or mental condition. *See* 45 C.F.R. § 160.103. Therefore, the Court should deny plaintiff's motion based on the rule preventing disclosure of "individually identifiable health information" in HIPAA's "privacy rule."

In addition to the fact that CSC would violate HIPAA by disclosing the information and records sought by plaintiff, the Court should also deny the motion because plaintiff has made no showing of relevancy to any of her claims asserted in her complaint. Many of the residents are elderly or have disabilities and have a privacy interest in their residency at CSC. Furthermore, the fact other residents may have been asked to leave or threatened with eviction has no bearing on whether there are grounds to evict plaintiff from CSC, or to any of her stated claims.[8] Plaintiff has made no showing of relevancy.

Here, plaintiff has neither set forth any compelling need for the information pertaining to the other residents, nor has she made a showing that the information she seeks is material to her claim sufficient to outweigh the other resident's privacy interest.

Interrogatory No. 13 and Request for Production No. 3 seek information concerning "any" complaints and "all documents relating to any complaints of residents of, or applicants to, [CSC's] assisted living program, against [CSC], from the opening of [CSC's] assisted living program, to the present date." *See* Dkt. 56, Ex. 2 at 12 and 14. Plaintiff's request is not limited in time or to complaints similar to plaintiff's, i.e., alleging

---

[8]With respect to plaintiff's request for the identity of any residents who have been asked to leave or threatened with eviction, the request is not limited to those grounds stated in CSC's notice of eviction to plaintiff. There are several statutory grounds for eviction, including non-payment. *See* AS 47.33.360. Some of the grounds do not apply to plaintiff, but have applied to other residents, such as eviction for non-payment.

wrongful eviction. It possibly includes complaints about meals, building temperatures or building maintenance. Plaintiff's request for all complaints is not only burdensome and oppressive, but it has no bearing on plaintiff's claim in this lawsuit that CSC cannot assert its right to ask plaintiff to reside elsewhere due to her intensive needs.[9]

Plaintiff's Request No. 1 asks for "all documents relating to the personnel policies and procedures of CSC, Inc." The request is not limited in time or to policies relating to plaintiff's claims, i.e., wrongful eviction, but include every conceivable personnel policy and procedure of CSC. Not only is the request burdensome and oppressive, but plaintiff has made absolutely no showing of relevancy to justify such an overly broad and burdensome request.[10]

In Request for Production No. 5, plaintiff requests "all documents, including e-mails, sent to, received from, or relating to the Long-Term Care Ombudsman's Office (LTCO) and/or its counsel." In Request for Production No. 6, plaintiff requests "all documents, including e-mails, sent to or received from the Municipality of Anchorage or any of its employees concerning CSC, Inc.'s assisted living program." Again, the requests are not limited to documents pertaining to plaintiff or eviction of residents. They are not limited in time, subject matter, or in any other way. The requested documents

---

[9]In its correspondence dated August 30, 2006, counsel for CSC, in a spirit of compromise, nevertheless advised it would supplement its response to the extent there have been any written complaints since 2001 that alleged or complained of wrongful eviction. *See* Dkt. 56, Ex. 5 at 2.

[10]CSC supplemented its response by voluntarily providing any policies within the last five years addressing complaint handling and eviction. *See* Dkt. 56, Ex. 5 at 2 and Ex. C, attached hereto.

have no bearing on plaintiff's claims asserted in her complaint.  Plaintiff has made no showing of relevancy to justify such an overly broad and burdensome request.[11]

In Request for Production No. 3, plaintiff requested "All documents reflecting any discussions by anyone at CSC, Inc. with anyone outside of CSC, Inc. concerning plaintiff, except for communications had with counsel."  CSC has already voluntarily produced documents generated or received by its management.  Plaintiff's request, however, encompasses all employees who have worked at CSC, Inc. since September 2004, including over 61 program assistants, kitchen help, housekeeping and janitorial and maintenance staff.  The request encompasses not only current employees, but past employees.  It would be burdensome and time-consuming to canvass all past and present employees to respond to plaintiff's request, and the burden and expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy and the importance of the proposed discovery in resolving the issues.  The request is burdensome and oppressive, and plaintiff has made no showing of relevancy to justify her overrbroad and burdensome request.

> **3.**   **The personnel documents and files being sought are not directly relevant or reasonably calculated to lead to the discovery of admissible evidence**

In Request for Production No. 20 plaintiff requests "all documents (including personnel files) relating to any and all workers of CSC, Inc. that provided care to plaintiff."  The request is extremely broad because employees rotate between the three residency halls at CSC on a regular basis, and virtually all approximately 61 past and present

---

[11]CSC supplemented its response by voluntarily providing any responsive documents by and between CSC management and the LTCO from 2001 to the present relating to plaintiff and the eviction of residents and/or termination of resident services contracts. *See* Ex. C at 7.

program assistants or aides who worked at CSC starting in September 2004 provided care or assistance to plaintiff at one time or another.  The personnel files each range from approximately ½ inch to an inch or more in volume and contain highly personal information.  See Ex. E, ¶ 2 at 2 (Affidavit of Marla Nelson).  Not only has plaintiff made no showing of particularized relevancy to her claims, plaintiff's discovery requests violates the privacy right specifically provided in the Alaska Constitution.  Plaintiff has also failed to demonstrate a countervailing state interest in discovery and has failed to establish the discovery she seeks would proceed in the least intrusive manner.

In *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Electric Transit Inc.,* 2006 WL 1525809 (N.D. Ca.), plaintiff sought to compel the production  of information from personnel files of certain AIG employees.  The court noted it may deny motions to compel that would not aid in the exploration of a material issue, where discovery sought would impose an undue burden on the responding party or where its benefits are outweighed by its burdens.  *Id.* at page 2.  The court went onto declare:

> In California, if a responding party asserts a privilege to protect an employee's personnel file (including all of its contents), courts will balance the compelling need for the discovery against the employee's fundamental right of privacy.  *Cutter v. Brownbridge,* 183 Cal. App.3d 836, 843, 228 Cal. Rptr. 545 (1986) (overruled on other grounds).  When compelled discovery intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it may lead to relevant information.  *Board of Trustees v. Super. Ct.,* 119 Cal. App.3d 516, 525, 174 Cal. Rptr. 160 (1981).  Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed without a careful balancing of the need for the information against the privacy interest.  *Id.* (citing *City of Santa Barbara v. Adamson,* 237 Cal.3d 123, 130, 164 Cal. Rptr. 539, 610 P.2d 436 (1980)).  In conducting its balancing, courts should consider whether the information is relevant and, if so, whether less intrusive means could yield the information sought.  *El Dorado Sav. & Loan Assn. v. Super. Ct.*, 190 Cal. App.3d 342, 346, 235 Cal. Rptr. 303 (1987).

2006 WL 1525809 at pages 2-3.

Similarly, in *Zito v. Sports Authority, Inc.*, 2000 WL 1337666 (Conn. Super.), 28

Conn. L. Rptr. 51, the court declared:

> The disclosure of such information [contained in a personnel file] must be carefully tailored to a legitimate and demonstrated need for such information in any given case. Where disclosure of the personnel file would place in the hands of a [party] irrelevant or personal and sensitive information concerning [another], the entire file should not be disclosed. No [party] has the right to conduct a general 'fishing expedition' into the personnel records of [another] because discovery of matters contained in a personnel file involves careful discrimination between material that relates to the issues involved and that which is irrelevant to those issues, the judicial authority should exercise its discretion in determining what matters should be disclosed.
>
> . . .
>
> In a civil case, an "[i]n camera review by the court reasonably satisfies the plaintiff's need for information necessary to establish his case while respecting [the] defendant's limited expectation of privacy in his personnel file as reflected in the implicit policy of General Statutes § 31-128f that the documents in such files not be cavalierly divulged by an employer. *Id.* (civil case adopted criminal standard for personnel file disclosure).
>
> . . .
>
> The court hereby orders an in camera review of Warner's employment file in its entirety to determine what, if anything, therein is clearly material and relevant to the issue involved. The court will ultimately determine what matters within the file will be disclosed.

*See also Johnson v. Nissan North America, Inc.*, 146 S.W.3d 600, 606 (Tenn. App. 2004)

(declaring personnel files of an entire class of employees should not be produced, even

in an employment discrimination proceeding, absent a compelling showing of relevance);

*Whittingham v. Amherst College*, 164 F.R.D. 124, 127 (D. Mass. 1995)(acknowledging

"personnel files contain perhaps the most private information about an employee within

the possession of an employer," and denying plaintiff's motion to compel employee files

without any particularized showing the information sought is relevant to plaintiff's claims).

In *Gerhring v. Case Corp.,* 43 F.3d 340 (7th Cir. 1994), a former employee brought

an action against his employer under the Age Discrimination and Employment Act arising

out of his discharge.  The district court curtailed discovery from Case's personnel files,

which Gerhring believed unduly hampered his case.  On appeal, the 7th Circuit Court of

Appeals declared:

> After examining the personnel files Gerhring wanted to use the
> district judge concluded that the other employees' circumstances
> were not close enough to Gerhring's to make comparisons
> productive.  Turning over the files, however, would invade the
> privacy of the other employees, and the district judge feared that
> Gerhring wanted to use this evidence not for purpose of comparison
> but to put Case's personnel practices on trial.  The judge concluded
> that the privacy interests coupled with her determination to keep the
> trial focused squarely on Gerhring's claim, justified limiting counsel's
> ability to root through the personnel files.  The judge followed up with
> similar evidentiary rulings at trial.  District judges have substantial
> discretion to make such decisions to curtail the expense and
> intrusiveness of discovery and trial.

43 F.3d at 342.

The Alaska Supreme court has also recognized a privacy right in an employee's

personnel records.  In *Jennings v. Jones*, 788 P.2d 732, 737-38 (Alaska 1990), the court

considered whether the Municipality of Anchorage and municipal police officers were

required to produce personnel files.  First, the court recognized that the right to privacy

provided in the Alaska Constitution was more fundamental than the federal right to

privacy:

> Unlike the federal right to privacy, which originates from a broad
> interpretation of the due process clause of the fourteenth
> amendment or emanations from the ninth amendment, the <u>Alaska
> Constitution expressly protects the right of privacy for Alaska</u>

citizens.  We have discussed previously that one who asserts a right to privacy must exhibit a subjective expectation of privacy 'that society is prepared to recognize as reasonable.'

788 P.2d at 737-38.

The *Jennings* court also recognized: "[i]t is plausible for an employee to expect that the details contained within his personnel file are confidential and not subject to public scrutiny."  Id. at 738.  The court went on to adopt the following analysis to determine whether disclosure of personnel records was proper:

>    (1)    does the party seeking to come within the protection of the right to confidentiality have a legitimate expectation that the materials or information will not be disclosed?
>
>    (2)    is disclosure nonetheless required to serve a compelling state interest?
>
>    (3)    if so, will the necessary disclosure occur in that manner which is least intrusive with respect to the right to confidentiality?

*Id.*[12]

Here, CSC has objected to plaintiff's requests for the records of CSC residents and to personnel files of approximately 61 CSC employees.  *See* Dkt. 56, Ex. 2 at 16-17 and 19-20, respectively; *see also* Ex. E, ¶2 (Affidavit of Marla Nelson).  CSC's employees have a legitimate expectation of privacy in their personnel files.[13]  As noted by the *Jennings* court, personnel files contain the most intimate details of an employee's work history.[14]  *Id.*  Employee personnel files also contain private personal information relating to an employee's family, health, and medical history. For example, CSC employee

---

[12]This right to privacy also applies to plaintiff's request for information on the other residents at CSC, in addition to relevancy and HIPAA issues.

[13]Similarly, other residents have a legitimate expectation of privacy in their resident files, which contain personal health information and other sensitive personal information.

[14]The same can be said for residents' charts.

personnel files can include highly sensitive and personal information, on an employee's medical history, banking and finances, and family, including medical information on family members. Id.

Regarding the second factor, unlike the situation in *Jennings*, there is no state interest implicated here because, unlike in that case, CSC is a private entity, rather than the municipal government.   In *Jennings*, the court emphasized the numerous state interests at issue because the case involved the fair functioning of the municipal police force.   *Id*.   First, the court noted there is probably no more compelling justification for public access to documents than "preserving democratic values and fostering the public's trust in those charged with enforcing the law."   *Id*.   The court went on to note numerous state interests weighing in favor of disclosure, none of which is present in the case at issue: *e.g.*, ensuring the judiciary did not blindly bow to executive privilege; Alaska's stated policy against shielding official information from disclosure; the desire to provide a remedy to a person injured by a public employee; and ensuring truth in legal proceedings.   *Id*. at 738-39.   Plaintiff has not established a single state interest at issue in the discovery she seeks, much less a compelling state interest.   Because no state interest is involved in the discovery, there is no reason to proceed in the analysis.   The analysis proceeds to the third factor only if a compelling state interest requires disclosure.

Regarding the third factor, even if the court were to consider this factor, plaintiff has not demonstrated the discovery she seeks would occur in the least intrusive manner with respect to the privacy rights of CSC's employees and other residents.   CSC could potentially be liable to its residents and to its employees if CSC discloses the confidential

resident information and employee personnel files plaintiff seeks.[15]  However, plaintiff has not established the discovery she seeks would protect the privacy interests of CSC's residents, CSC's employees, or CSC.  Here, plaintiff has neither set forth a compelling need for the numerous resident and personnel files sought, nor made a showing that the documents are material to her claims sufficient to outweigh the residents' and employees' privacy interest.

In conclusion, the analysis adopted in *Jennings* leads to the inevitable result that the privacy right established in the Alaska Constitution protects from disclosure the residents' records and employee personnel files.[16]  Plaintiff has not established any direct relevancy of the resident and personnel files or information to any issues in the litigation by identifying how information on other residents who were asked or counseled to leave CSC or information on all employees who provided care to plaintiff relates to plaintiff's claim she is being wrongfully evicted.  Plaintiff also completely fails to establish any compelling need for the resident and employee information, which would outweigh the residents' and employees' privacy rights.

---

[15]Because an employer faces potential liability exposure for releasing sensitive data from employee files, courts recognize the employer's standing to assert the privacy rights of its employees.  *See e.g. Montana Human Rights Division v. City of Billings*, 649 P.2d 1283, at 1288 (Mont. 1982).  Even the mere fact that a judge authorizes the discovery of such sensitive data may not immunize an employer from invasin of privacy claims by employees.  Cf.  *Amente v. Newman*, 653 S.2d 1030 (Fla. 1995)(special concurrence cautioning the mere fact that the judge authorizes the discovery of records of non-party patients would not immunize the parties from invasion of privacy claims by the patients).

[16]In the event the court were to order the personnel files produced, courts typically review personnel files *in camera*, to insure that only those portions of the pertinent personnel files which are clearly relevant to the party's claims are produced, subject to an appropriate confidentiality order as the circumstances require.  *See R.W. Jones v. Jennings,* 788 P.2d 732 at 737 (Alaska 1990).

## CONCLUSION

In conclusion, the court should deny plaintiff's motion because plaintiff has failed to meet her burden of producing factual or legal authority establishing she is entitled to the discovery she seeks.    Plaintiff has failed to establish the direct relevancy of the information sought to the issues in the litigation.    Accordingly, the court should deny plaintiff's motion at this time.

DATED at Anchorage, Alaska, this 26th day of September, 2006.

DELANEY WILES, INC.
Attorneys for Chugiak Senior Citizens, Inc.

s/Donna M. Meyers and William E. Moseley
Delaney Wiles, Inc.
1007 W. Third Avenue, Suite 400
Anchorage, AK  99501
Phone:      907-279-3581
Fax:      907-277-1331
E-mail:      dmm@delaneywiles.com
E-mail:      wem@delaneywiles.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of September, 2006, a copy of **CSC's Opposition to Plaintiff's Motion to Compel** was served electronically on:

Jim Davis, Jr./Barbara Brink /
Nikole Nelson/Sonja D. Kerr
Alaska Legal Services Corporation
1016 West 6th Avenue, Suite 200
Anchorage, Alaska   99501

s/Donna M. Meyers (121841)