IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her power of attorney Carol Winters,<br><br>    Plaintiff,<br><br>vs.<br><br>CHUGIAK SENIOR CITIZENS, INC.,<br><br>    Defendant. | Case No. 3:06-cv-00083-TMB |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

**I.    PRELIMNARY STATEMENT**

Plaintiff Helen Winters is a frail 90 year old woman who is severely hearing impaired, has vision problems, as well as a significant heart condition. Plaintiff's Am. Compl. at para. 6. She avers that she has been abused and retaliated against by defendant Chugiak Senior Center, Inc. ("CSC") for complaining about her mistreatment. *Id*. at para. 20. Ms. Winters filed a nine count complaint against CSC in March of 2006 alleging that its mistreatment of her violated various laws. *Id.* at pp. 6-11.

Ms. Winters needs some basic discovery to prove up her claims. To that end she has sent one set of discovery to CSC in this case. *See* Affidavit of Nikole Nelson in Support of Plaintiff's Motion to Compel filed with this Court on September 8, 2006 (hereinafter "Nelson Aff.") at para. 2; Exh. 1. In response, CSC responded by refusing to produce even basic data to Ms. Winters (*e.g.*, the facts supporting CSC's affirmative defenses). *Id*. at para. 3; Exh. 2, p.11. Ms. Winters was not deterred. She insisted that CSC play by the rules

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 1 of 15

and provide her with the requested discovery. *Id*. at para. 4; Exh. 3. After lengthy "meet and confers," CSC reluctantly produced other data to Ms. Winters. *Id.* at para. 5. But unfortunately, as of today, CSC is still refusing to produce to Ms. Winters a raft of other basic and non-privileged information (*e.g.*, materials concerning the training or lack thereof it provides to its staff) that she has requested in discovery. *Id.* at para. 6.

Ms. Winters was thus forced to file this immediate motion to compel. In response to Ms. Winters' motion, CSC filed a 23-page opposition memorandum. CSC's opposition can be summarized by the following two predicates: 1) the rules of discovery are supposed to be strictly construed and nothing should be produced during discovery unless the moving party can prove, before seeing the data, that the data is going to be relevant and probably admissible in court; and 2) Ms. Winters' "entire case" is not really about the nine claims raised in her complaint but, rather, is about only one issue, CSC's alleged wrongful attempted eviction of Ms. Winters. CSC argues that since Ms. Winters' "entire case" is really only about one issue, the scope of discovery allowed to Ms. Winters must, also, necessarily be small.

As explained below, both of these predicates are false ones: the rules of discovery are not as conjured by CSC. Ms. Winters' complaint avers claims far beyond simply claiming wrongful eviction. The data that Ms. Winters seeks through her discovery is not beyond the scope of her complaint, is not barred from disclosure by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and it is not privileged according some inchoate "right of privacy." While CSC now claims it would be unduly "burdensome" and "oppressive" to comply with its discovery obligations (by, for example, producing the training materials it provides to its staff), CSC has failed to proffer to this Court any

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 2 of 15

evidence showing how or why complying with Ms. Winters' requests would unduly burden or oppress it.  Ms. Winters' motion should be granted in its entirety.

## II. ARGUMENT AND AUTHORITIES

### A.    The Nature of Plaintiff's Complaint

It is a legal maxim that a pleader is the master of her own complaint.  *Holmes Group, Inc. v. Vornado Air Circulation Sys.,* 535 U.S. 826, 831 (2002).  This maxim is lost on CSC; its opposition to Ms. Winters' motion to compel effectively rewrites Ms. Winters' complaint.  As CSC understands the complaint on which this litigation is founded, "plaintiff's entire case arises from defendant's alleged wrongful attempted eviction," (Defendant's Opposition to Plaintiff's Motion to Compel (hereinafter "Opp.") at p. 1) "the main issue in this case is whether there are valid grounds to terminate Ms. Winters' residency from CSC," *id*., and "each and every one of plaintiff's claims depends on whether CSC can ask plaintiff to live elsewhere. *Id.* at 10. [1]

Contrary to CSC's summary, Ms. Winters' entire case does not "arise from defendant's alleged wrongful attempted eviction."  In fact, Ms. Winters' complaint avers a number of wrongs including, *inter alia,* administering the wrong medications; breaching confidentiality; interfering with her ability to exercise religious beliefs; failing to provide her medically prescribed low-salt diet; abusive and rough handling; rudeness and verbal abuse; contamination by cigarette smoke; lack of safety; and lack of kindness and caring. *See, e.g.,* Am. Compl. at paras. 13, 24(a) & (c); 30-32.  Ms. Winters seeks relief under the Assisted

---

[1] Had CSC reviewed Ms. Winters' complaint before proffering this summary to the Court, it would have learned that the issue of "whether there are valid grounds to terminate Ms. Winters' residency from CSC" is *not* even *before* this Court.  That is, this issue was not raised in Ms. Winters' complaint and CSC has failed to file any counterclaim seeking the adjudication of this issue.  *See* Plaintiff's Am. Compl.; Defendant's Answer to Am. Compl.

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 3 of 15

Living Homes Act; violations of the Alaska Human Rights Act; violations of the Alaska's Residential Landlord Tenant Act; violations of the American's with Disabilities Act, violations of the Rehabilitation Act of 1973; and violations of the Fair Housing Act. *Id*. at pp. 6-10.

It is critical to review what this case is really about because, obviously, what is "relevant" depends on the nature of the case at bar. CSC's mischaracterization of plaintiff's case is nothing more than an attempt to justify CSC's baseless obstinacy in the discovery process.

### B.     The Rules of Discovery

CSC's opposition also hinges on a somewhat unique notion of discovery[2] – that a party seeking initial discovery has the burden of proving that the party is entitled to it. Opp. at 6.[3]

However, case law in this Circuit suggests otherwise. Courts have repeatedly held that the rules of discovery are to be liberally construed and that all unprivileged data that is relevant, or potentially relevant, must be produced, if requested, during discovery. *See, e.g. Baker v. Limber*, 647 F. 2d 912 (9th Cir. 1981)(federal rules provide that any party to a civil action is entitled to all information relevant to the subject matter of the action unless the information is privileged.); *Dobbs. v. Lamonts Apparel*, 155 F.R.D. 650 (D. AK.

---

[2] CSC makes other specious arguments. For example, CSC claims that plaintiff failed to comply with Local Rule 7.1(d). That rule provides only that a moving party is to provide "proper materials" when submitting a motion to prevent threadbare motions by litigants. In this case, plaintiff offered an affidavit of counsel, complete with eight lengthy exhibits, establishing the efforts to conduct responsible discovery and to work with CSC, consistent with Rule 37.

CSC also claims that Ms. Winters did not mention the grounds for a motion to compel pursuant to Rule 37. This argument is without merit. In her opening memorandum, Ms. Winters provided a logical, and factually based explanation to the Court as to why the discovery is necessary for her to have a fair day in Court.

[3] "[P]laintiff's motion should be denied because Ms. Winters has failed to meet her burden of producing factual or legal authority establishing she is entitled to the discovery she seeks." Opp. at 6.

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 4 of 15

1994)(holding that a grant of discovery that is attacked on relevancy grounds will be reversed only if the information sought could not reasonably be expected to lead to the discovery of admissible evidence.); *In re Exxon*, 102 F.3d 429 (9th Cir. 1996); *Adriana International Corp. v. Lewis and Co.*, 913 F. 2d 1406 (9th Cir. 1990). Indeed, this is precisely what CSC argued to this Court in a motion it filed in August.[4]

The rules of discovery do not, as far as Ms. Winters understands them, bar discovery until and unless the party seeking discovery first proffers "factual or legal authority establishing she is entitled to the discovery." Opp. at 6. In fact, the opposite is true. A request for discovery should be considered relevant and the *party resisting discovery* has the burden to establish a lack of relevance. *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D.208, (D.C. Kan. 2002); *Thompson v. Dep't. of Housing and Urban Devl.*, 199 F.R.D. 168 (D.C. Md. 2001); *see* Civil Rule 26(b)(1) (permitting parties to obtain discovery regarding "any matter, not privileged, that is relevant to the claim or defense of any party.")

The only time when a burden is placed on the propounding party is where that party seeks to exceed the initial discovery available and seeks supplemental discovery. Rule 26(b)(2). That is not the case here. In fact, courts have repeatedly upheld the wide scope of initial discovery and no initial "burden" is imposed upon a party seeking the typical initial discovery.[5]

---

[4] In its August 15, 2006 Motion to Compel CSC stated "A party has a duty to accurately and completely respond to a discovery request. A party who fails to provide information or provides evasive or incomplete responses to discovery requests has failed to properly discharge its duty." Civil Rule 33 state 'Each interrogatory shall be answered separately and <u>fully</u> under oath." Defendant's Motion to Compel at 4 (emphasis in original)(cites omitted).

[5] The broad and flexible provisions in Rules 26 to 37 for discovery were one of the most significant changes in civil procedure when the federal courts made changes in 1938. Notwithstanding modest amendments to the rules since then, the federal discovery rules still rest on a premise that before trial every party to a civil action

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 5 of 15

While in an appropriate case, a court might restrict a party's right to initial discovery, a court must be careful not to deprive a litigant of discovery that is reasonably necessary for her to have a fair day in Court. *See*, F.R.C.P. Rule 26, *Advisory Committee Note to 1983 Amendment*.[6] The liberal discovery rules are intended to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *U.S. v. Procter & Gamble Co.*, 78 S.Ct. 983, 356 U.S. 677, 2 L.Ed. 2d 1077 (1958). The underlying purpose of modern discovery is to enable parties to obtain the fullest possible knowledge of the issues and facts before trial. *Hoyt v. Connare*, 202 F.R.D. 71 (D. N.H. 1996). Relevant discovery does not even have to be eventually admissible at trial, as long is it appears reasonably calculated to lead to the discovery of admissible evidence. "Broad discovery is thus not a mere procedural rule. Rather, it has become, at least in our era, procedural institution perhaps of virtually constitutional foundation." Hazard, *From Whom No Secrets Are Kept*, 1998, 76 Texas L. Rev. 1665, 1694.

CSC's theory of discovery would turn the well-settled law on its head. While CSC portends to cite this Court to case law supporting its conception of how discovery should work, a careful analysis of those cases show that they provide absolutely no support for CSC's position.[7] CSC's premise should be rejected.

---

is entitled to the disclosure of all relevant information, unless the information is privileged. *Hickman v. Taylor*, 67 S. Ct. 385, 329 U.S. 495, 91 L. Ed. 451 (1947).

[6] The 2000 Amendments to the civil rules adopted the language of "relevant to the claim or defense of any party." That is still a very broad standard. The Committee Note adopted at the time acknowledge, "[t]he dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision." The Note specifically explains that information that might not be directly pertinent could be relevant to claims or defenses, such as "other incidents of the same type" could be discoverable. *Id.* The Note also references information that could be used to impeach a likely witness.

[7] In fact, the cases cited by CSC hold only that a party seeking discovery of privileged materials or that is excess of that allowed by the civil rules has the burden of proving the relevance and necessity of such

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 6 of 15

C.   **What Plaintiff Seeks, Why It Should Be Produced, and What CSC Has Heretofore Provided**

CSC not only mischaracterizes Ms. Winters' complaint it also mischaracterizes the data which Ms. Winters seeks. An accurate summary might be helpful to this Court.

**First,** Ms. Winters seeks data concerning other persons that have lived at CSC during the same time that Ms. Winters has (and, who thus, may be percipient witnesses) and data concerning other residents that CSC may have been evicted. Nelson Aff. at para. 2, Exh. 1, pp. 8-9. (Interrogatories Nos. 2, 3 and 4/Requests for Production Nos. 7 & 8).

The relevance of this data is manifest: have other witnesses seen any abuse or misconduct of Ms. Winters, does CSC have a pattern of evicting "demanding" residents?

What has CSC produced? As of today, nothing. CSC relies on HIPAA as justifying its stonewalling. As detailed below, its position is specious.

**Second,** Ms. Winters seeks data concerning other complaints about CSC's assisted living program. Nelson Aff. at para. 2, Exh.1 at pp. 7, 11. (Interrogatory No. 13/Request for Production No. 3.)

---

extraordinary requests. *Archer Daniels Midland Co. v. AON Risk Services, Inc.* 187 F.R.D. 578 (D. Minn. 1999)(party seeking leave to take depositions and serve interrogatories in excess of those allowed by federal civil rules has burden of demonstrating relevance and need); *Marchello v. Chase Manhatten Auto Fin. Corp.,* 219 F.R.D. 217 (D. Conn. 2004)(a party seeking discovery of surveillance tapes covered by work product privilege has burden of demonstrating a substantial need for the materials as well as establishing that an undue hardship will result if the materials are not disclosed); *Sackman v. Liggett Group, Inc.* 173 F.R.D. 358 (E.D.N.Y. 1997)(a party seeking discovery of materials covered by work product privilege has burden of establishing relevance); *Whacker v. Gehl Co.,* 157 F.R.D. 58 (W.D. Miss. 1994)(court granted plaintiff's motion for a protective order preventing disclosure of 5 years worth of income tax returns of an expert witness because defendant could not demonstrate how such records could possibly lead to relevant information.) The situations represented by these cases, the *only* legal support CSC cites for its argument on this issue, could not be farther afield from the situation at bar; Ms. Winters simply seeks responses to her first and only set of discovery and the information sought is not privileged.

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 7 of 15

Again, the relevance of this data is straightforward. Have other residents complained about retaliation? Abusive staff? Rough handling? Refusal to comply with dietary needs? Invasions of privacy?

What has CSC produced? After abandoning its position that the word "complaint" was too confusing, CSC now says it will only produce data if the complaints were put in writing and only if the complaints pertained to wrongful evictions. Nelson Aff. at para. 8; Exh. 5 at p. 2. CSC's self-created limitations are without basis.

**Third,** Ms. Winters seeks data concerning CSC's hiring, training and recruitment policies vis à vis its employees. Nelson Aff. at para. 2, Exh. 1, pp. 11-12. (Request for Production No. 1).

The relevance of this data is again clear: Ms. Winters claims that CSC staff is untrained and unprofessional and have hurt her on repeated occasions because of their lack of skill and training in the field.

What has CSC produced? Again, aside from an employee manual that has nothing to do with staff training, CSC has produced nothing. CSC contends, without proffering any evidence, that producing data reflecting how it trains its staff, etc. is "overbroad" (Opp. at n. 5, page 8) and "oppressive." *Id.* at 15.

**Fourth**, Ms. Winters seeks the correspondence to or from CSC and/or the Long-Term Care Ombudsman's Office ("LTCO") and/or the Municipality of Anchorage. Nelson Aff. at para. 2, Exh. 1, p. 12. (Request for Production No. 5); Exh. 1, p. 12. (Request for Production No. 6.)

The relevance of this data is plain: the LTCO has been investigating CSC for abusing Ms. Winters. What has CSC been telling the LTCO and vice versa? Whereas the

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 8 of 15

Municipality of Anchorage *owns* the physical facility at which CSC operates, and it exercises ultimate supervision over its management of that facility. Has the Municipality received complaints about the facility? Does the Municipality have concerns about CSC's management? What has CSC been telling the Municipality about Ms. Winters?

CSC's response? CSC claims, incredibly enough, that all of the requested data is "irrelevant." *Id.* at 16.[8]

**Fifth,** Ms. Winters seeks communications between and amongst CSC staff concerning her. Nelson Aff. at para. 2, Exh. 1, p. 15. (Request for Production No. 23). The relevance of these communications is so obvious it need not even be stated.

CSC's response? CSC claims, again, that all of the requested data is irrelevant. *Id.* at 16.[9] Again, CSC's position is nothing short of incredible.

**Sixth,** Ms. Winters seeks non-personal data from the personnel files for any CSC employees that worked with Ms. Winters. Nelson Aff. at para. 2, Exhs. 1, p. 14 & Exh. 4, p.1. (Request for Production No. 20).[10]

It is assumed that each and all of these employees have job performance reviews in their personnel files. It is assumed that the employees' personnel files will contain information regarding each employee's qualifications for the job and what if any training the

---

[8] An alternative specious argument raised by CSC is that this request will be limited by CSC only to "CSC management" (whoever they are), despite the fact that CSC has claimed in this case that each and every employee at CSC is a "client" vis a vis this lawsuit and cannot be spoken to by Ms. Winter's counsel. Nelson Aff. at para. 11, Exh. 8.

[9] Here again, CSC has attempted (without legal support) to limited its request to "CSC management," this despite the fact that the actions of CSC's other employees are without question relevant to this dispute.

[10] In the parties' "meet and confer" Ms. Winters made it clear that she was limiting her request only the personnel files for those employees who cared for Ms. Winters and was excluding any data from the personnel files relating to solely personal matters (*i.e.* rates of pay) and/or personal issues relating to the employee (*i.e.* requests for Family Leave Act time.). *See* Nelson Aff. at para. 8, Exh. 5, p.1.

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 9 of 15

employees have received. It is assumed that if any of these employees were disciplined, evidence of such discipline will be contained in their personnel files. This type of data is highly germane where, as here, Ms. Winters' is claiming that some of her caregivers at CSC have mistreated her and that CSC was negligent in its oversight of such employees.

CSC's response is, again, to produce nothing. CSC claims, in short, that every single piece of paper in every single personnel file for every person that ever cared for Ms. Winters is "confidential" and/or "private." Opp. at 17. As shown below, the law is quite to the contrary.

### D. HIPAA is not a Blanket Underwhich CSC Can Conceal Relevant Data

CSC asserts that HIPAA prohibits Ms. Winters from having any kind of access to information about other residents at CSC. Opp. at 10-13. It also claims that providing Ms. Winters with this information would violate the "privacy rights" of the other residents. Neither argument is correct.

First, as stated in Ms. Winters opening motion (Motion to Compel at p.10), HIPAA covers only "protected health information." 45 C.F.R. § 160.103. CSC cites absolutely no authority that justifies its refusal to produce the names, contact information and other non-health related data pertaining to CSC residents that Ms. Winters seeks.

Even assuming *arguendo* that such information was "protected health information" pursuant to HIPAA, HIPAA does not preclude disclosure of such information in a litigation setting. In fact, HIPAA expressly allows disclosure of information in a judicial proceeding either by Court order, or by discovery and sometimes by imposing a protective order on the

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 10 of 15

recipient of the information.[11]  §164.512(e) unequivocally permits health care providers and other covered entities to disclose even protected health information without patient consent in judicial proceedings.  *See, e.g. Northwestern Mem. Hosp. v. Ashcroft,* 362 F.3d 923, 925 (7th Cir. 2004); *Nat'l Abortion Fed'n v. Ashcroft,* 2004 U.S. Dist. LEXIS 4530, 2 (S.D.N.Y. 2004).

In *Bayene v. Provost*, 359 F. Supp. 2d 234, 237 (N.D.N.Y. 2005), 2005 U.S. Dist. Lexis 40889 (N.D. N.Y. 2005)[12], the court noted that at least one purpose of HIPAA was that protected information, that could be evidentially used in litigation, would be made available during the discovery process.  In fact, in the very cases cited by CSC for the proposition that CSC residents are protected against disclosure of *any* information pertaining to their health, the courts permitted disclosure of the sought after information for litigation purposes.[13]  *See, e.g. United States v. Sutherland*, 143 F. Supp. 2d 609 (W.D.Va. 2001)(permitting the disclosure of patient records for litigation purposes so long as patients

---

[11] 45 C.F.R. 164.512 provides:

> Permitted disclosures.  A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

[12] Although the case was dismissed, it does not appear the Court considered the records and HIPAA dispute in its decision.

[13] The only case cited by Defendants in which the Court upheld the denial of such information is *Hill v. East Baton Roughe Parish Dept. of Emergency Med. Svcs.*, 925 So. 2d 17, 21-23 (La. Ct. App. 2005) and that case involved a newspaper inquiry into 911 tapes, which is radically different than the situation here.

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 11 of 15

were notified before obtaining the records); *Giangiulio v. Ingalls Mem. Hosp.* 850 N.E. 2d 249 (Ill. App. 2006)(ordering disclosure of name, contact information and non-medical information of hospital patient and employees who were potential witnesses to the actions that formed the basis of a former patient's negligence suit against the hospital.)

### E. Contrary to CSC's Claims, You Cannot Withhold Everything in a Personnel File Simply Because it is in a Personnel File

CSC is also refusing to provide Ms. Winters with any data in the employment files for the CSC employees that have provided her care and/or allegedly mistreated and/or abused her. CSC contends that these personnel records are information which is not "directly relevant," "not reasonably calculated" to lead to admissible evidence and "too broad." Opp. at 16-22. As a backup to this argument, CSC asserts a general claim that the requested personnel records are protected due to "privacy concerns" of the employees.

None of CSC's arguments hold water. First, inasmuch as Ms. Winters' case hinges on the fact that CSC staff is untrained, unsupervised, was not properly screened for the environment in which they work, and that CSC has been negligent in the hiring, training, and supervision of these employees, the training, evaluations and previous complaints made about any CSC employee that cared for Ms. Winters are highly relevant.

Second, the case law concerning the "privacy" rights at issue simply do not support CSC's refusal. Ms. Winters cited various cases in her opening brief that support her request for this data. *See, e.g. Cason v. Builders*, 159 F. Supp. 2d. 242, 247 (W.D.N.C. 2001)(compelling production of employees' personnel files who allegedly harassed plaintiff); *Byers v. Ill. State Police*, 2002 U.S. Dist. LEXIS 9861 (N.D. Ill. 2002)(same); *In re B & H Towing, Inc.* 2006 U.S. Dist. LEXIS 42758 (S.D. W. Va. 2006)(mandating

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 12 of 15

disclosure of personnel records of allegedly negligent federal employees). CSC did not distinguish one of these cases all of which hold that even the confidential personnel records of employees whose action or inaction has a direct bearing on a plaintiff's claims or a defendants' affirmative defenses are subject to disclosure.

Instead, CSC in an effort to justify its outright refusal to produce the sought after personnel records, CSC resorts to selectively quoting from cases where courts ultimately ordered disclosure or from cases that are easily distinguished from the case at bar. Opp. at 16-20.

For instance, in both *Jennings v. Jones*, 788 P. 2d 732 (Alaska 1990) and *Zito v. Sports Authority Inc.*, 2000 Conn. Super. LEXIS 2320 (Conn. Super. 2000) the courts ordered that employee personnel files should be produced after finding that an *in camera* review was sufficient to assure that sensitive and irrelevant employee information was not disclosed.

Whereas, *Johnson v. Nissan North America, Inc*. 146 S.W. 3d 600, 606 (Tenn. App. 2004) and *Gerhring v. Case Corp.*, 43 F. 3d 340, 342 (7th Cir. 1994) both involve plaintiffs seeking access to *all* of their co-workers files in hopes of finding evidence of pattern of discrimination by management. *Johnson*, 146 S.W.3d at 603. *Gerhing*, 43 F.3d at 342. They were *not* seeking access to the alleged wrongdoers files. *Johnson*, 146 S.W.3d at 603. *Gerhing*, 43 F.3d at 342.

Ms. Winters' case could not be more different.[14] She alleges that she has been the victim of abuse and neglect at the hands of the employees of CSC and that CSC is ultimately

---

[14] Moreover, no individual employee has come to this Court requesting protection; rather, only CSC is asserting the asserted 'privacy' right. As a corporate entity, CSC does not have the privacy rights accorded to

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 13 of 15

liable for this abuse since it has failed to properly train and supervise its staff, and/or to hire staff with appropriate background. Plaintiff's Am. Compl. at paras. 13-14.

Access to CSC's employees' personnel files is highly relevant as the sought after files should contain information about the various employees' prior work history, any disciplinary actions, as well as evidence of any training the employees were given. Clearly, the information sought is relevant and critical to Ms. Winters' case and the plaintiff's self-imposed limitation on the scope of her request should suffice to protect the privacy interests of the CSC employees implicated.

**CONCLUSION**

For all the foregoing reasons, Ms. Winters' motion to compel should be granted, defendant should be required to fully answer and produce the requested data.

---

an individual and therefore, lacks standing to assert such claims. Before this Court, CSC has set forth no affidavit, no document asserting from an individual employee that the individual employee is claiming a privacy right. While CSC put forth the affidavit of Marla Nelson (Opp. at Exh. 5), Ms. Nelson herself does not assert a privacy claim in the affidavit on her own behalf. *Id.* Instead, she merely states in conclusory fashion that personnel records of CSC are generally protected. *Id.* She makes no claim that any employee has raised privacy concerns to her, or that any employee has even been notified that some of the basic personnel records are being sought. *Id.* CSC obviously knows which employees have had more involvement with Ms. Winters and could clearly have communicated with them on this point. At a minimum, one would expect at least an affidavit from one employee asserting a privacy right. CSC has failed to establish either factually or legally that a privacy right protects Ms. Winters from gathering the personnel records.

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 14 of 15

DATED: October 4, 2006		ALASKA LEGAL SERVICES CORPORATION
Attorneys for Plaintiff
Helen Winters
through her power of attorney Carol Winters


s/Nikole Nelson
ALASKA LEGAL SERVICES
1016 West 6th Avenue, Suite 200
Anchorage, Alaska 99501
PHONE: (907) 222-9431
FAX: (907) 279-7417
E-mail: nnelson@alsc-law.org
Alaska Bar No. 9906033

I, Nikole Nelson, certify that on October 4, 2006 a copy of the foregoing document was served electronically on Donna Meyers, at Delaney, Wiles, Hayes, Gerety, Ellis & Young, Inc.

s/Nikole Nelson

Plaintiff's Reply Memorandum in Support
of Motion to Compel
Case No. 3:06-cv-00083-TMB
Page 15 of 15