IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS,<br>through her power of attorney<br>Carol Winters,<br><br>　　　Plaintiff,<br><br>vs.<br><br>CHUGIAK SENIOR CITIZENS, INC.,<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:06-cv-00083-TMB<br>)<br>) |

**MEMORANDUM IN OPPOSITION TO RULE 35 EXAMINATION**

Defendant Chugiak Senior Citizens, Inc. (hereinafter "CSC") has moved this Court for an order under F.R.C.P. Rule 35 forcing plaintiff, Helen Winters, to submit to an oral psychiatric examination. Ms. Winters opposes this motion because CSC has failed to show that good cause for such examination exists, the proposed examination is likely to be futile, and the proposed exam will cause Ms. Winters undue hardship given the fragile state of her health.

**FACTS AND PROCEDURAL HISTORY**

Ms. Winters is a 91 year old woman with various disabilities, including a substantial bilateral (both ears) hearing impairment, vision impairment, a history of congestive heart failure, as well as a generalized anxiety disorder. *Affidavit of Carol Winters in Support of Plaintiff's Memorandum in Opposition of Rule 35 Examination* (hereinafter "Winters Aff."), paras. 2-3, Exh. 1.

On September 20, 2006, CSC's counsel by letter requested that Ms. Winters "undergo a psychiatric independent medical evaluation." *Affidavit of Donna Meyers in*

*Support of Plaintiff's Motion to Compel Rule 35 Mental Exam* (hereinafter "Meyers Aff."), para.4. Exh. A.  The letter stated that the evaluation would be completed at the Chugiak Senior Center, in Ms. Winters' unit and by Dr. Geeseman, a local psychiatrist. *Id.* CSC did not state how long the evaluation would take but indicated that Dr. Geeseman was "mindful of Winters' age and health" and that she was willing to "breakdown the evaluation into time periods convenient for Ms. Winters." *Id.* CSC also stated in this letter that if Ms. Winters was not willing to undergo the examination, it would file a Rule 35 motion. In response, Ms. Winters' counsel promptly declined on September 21, 2006. *Meyers Aff.*, para. 5, Exh. B. Counsel thereafter had further discussion. Ms. Winters' counsel contacted CSC's counsel on September 28, 2006 to further discuss the Rule 35, in an effort to ascertain Dr. Geeseman's suitability as an examiner and the purpose and type of evaluation. *Meyers Aff.* paras. 7-8, Exh. C. In response to this inquiry, CSC's counsel stated by letter dated October 2, 2006 that the purpose was to determine "whether Helen Winters has a diagnosable mental health condition, and is so what if any treatment is available." *Meyers Aff.* para. 9, Exh. D, p.1. The letter seemed to indicate that there would not be any standardized testing, but merely an oral clinical visit of some type by Dr. Geeseman. *Id.* Ms. Winters' counsel has requested and CSC has refused any effort to clarify from Dr. Geeseman the specific nature of the examination she intends to conduct with Ms. Winters. This memorandum is filed to explain both factually and legally why the Court should deny the Rule 35 exam.

**ARGUMENT**

The primary case on independent medical examinations is *Schlagenhauf v. Holder,* 379 U.S. 104, 118-19, 85 S. Ct. 234, 143, 13 L.Ed 2d 152 (1964) which explains that there is to be "discriminating application" by the trial court judge as to the imposition of Rule 35 examinations. F.R.C.P. Rule 35 is designed to provide independent medical examinations when such examinations are necessary to obtain critical facts in a judicial proceeding. In order to prevail CSC must establish not only that Ms. Winters has placed her mental or physical condition in controversy but also that there is good cause for the court to order the examination. F.R.C.P. Rule 35(a).

Putting aside the issue of whether Ms. Winters put her psychiatric state in controversy by simply asserting two tort claims alleging that she suffered severe emotional distress as a result of CSC actions[1], CSC has clearly failed to establish that there is good cause to subject a 91 year old disabled woman to a futile exam that is may jeopardize her health, especially whereas here the only information to which CSC is entitled could be gained through other less invasive sources.

**I.    CSC Has Not Established Good Cause for the Examination.**

In *Schlagenhaulf v. Holder*, the U.S. Supreme Court stated unequivocally that there must be an "affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." 379 U.S. at 104; 85 S. Ct. at 242; 13 L. Ed. 2d at 152.  CSC claims that it has satisfied the "good cause" prong of this test because CSC asserts the proposed general psychiatric exam is the only way to

---

[1] Certainly, there is case law that suggests otherwise.  *See, e.g. Robinson v. Jacksonvile Shipyards, Inc.*, 118 F.R.D. 525 (D.C. Fla. 1988); *EEOC v. Old Western Furniture Corporation*, 1995 U.S. Dis. LEXIS 21778 (W.D. Tx 1995).

determine the "veracity of plaintiff's claims." *Memorandum in Support of Defendant's Motion to Compel Rule 35 Mental Exam,* pg. 9.  However, a close review of CSC's arguments on these issues reveals that they are without merit. There is simply is no legitimate reason to subject Ms. Winters to this exam.

    A.    **The Proposed Exam Is Unlikely to Yield Any Facts Critical to This Adjudication.**

In her initial complaint, Ms. Winters asserted two state law tort claims of Intentional Infliction of Emotional District and Negligent Infliction of Emotional Distress. *Compl*. paras. 40, 43.  Ms. Winters there alleged that she suffered "severe emotional distress" as a result of CSC's actions, this damage was demonstrated by the "dangerously high blood pressure, a trip to the hospital emergency room, and additional medications for treatment" that she experienced.  *Id*.  CSC contends that by making such allegations she has put her general mental state in controversy and it is now entitled to a generalized psychiatric exam.

However, general "boilerplate" assertions of emotional distress or a request for damages for emotional distress does not in and of itself entitle a defendant to a Rule 35 mental exam of plaintiff. *See, e.g. O'Sullivan v. MN*, 176 F.R.D. 325 (D.MN 1997).  It has long been the law that where a plaintiff seeks damages only for past emotional disturbance and not future damages (as Ms. Winters is alleging in this case) a mental examination is not required. *See, e.g. Coca-Cola Bottling Co. of Puerto Rico v. Negron Torres* , 255 F. 2d 149 (1st Cir. 1958); *Turner v. Imperial Stores*, 161 F.R.D. 89 (D.C. Cal. 1995)(denying a Rule 35 psychiatric exam where a former employee claimed emotional distress but did not allege a specific psychiatric injury or disorder resulting from the employer's actions).  Therefore, in order to prevail in its request for a

psychiatric exam of Ms. Winters, CSC must do better than simply point out that Ms. Winters is seeking damages for an emotional injury. *See, e.g. Neal v. Siegel-Robert*, 171 F.R.D. 264 (D.C. Mo. 1996) (Where a former employee was not complaining of any definable psychological symptoms as a result of the employer's actions, a Rule 35 examination was denied). *Smith v. J.I. Case Corp.*, 163 F.R.D. 229 (D.C. Pa. 1995) (in a products liability case, even though the plaintiff submitted a claim of mental damages based upon embarrassment, he was not require to undergo a psychiatric examination).

Here, CSC argues that its need for the psychiatric exam is twofold: (1) to disprove that Ms. Winters' suffered any mental anguish at the hands of CSC; and (2) to measure the extent of her damages. But, it is obvious that the proposed general psychiatric exam (even if one could be validly conducted given Ms. Winters' advanced age and multiple disabilities including substantial hearing loss) will shed no light whatsoever on whether Ms. Winters suffered emotional distress when she was threatened with eviction nearly a year ago or on the extent of her damages. Here, the damage done to Ms. Winters can and should be objectively measured based on her physical condition of increased blood-pressure, and the impact on her heart and related objectively measurable conditions.

CSC tries to cloud the issue by pinning its need for the exam on the fact that Ms. Winters suffers from a pre-existing generalized anxiety disorder. This pre-existing disorder, CSC maintains, somehow changes the analysis and gives CSC license to conduct a psychiatric examination. This is a dangerous argument and if adopted would mean that any plaintiff with any mental health condition would *ipso facto* be required to undergo a psychiatric examination whenever any type of lawsuit was brought on their behalf. Certainly, that is not the purpose of Rule 35. Rule 35 is designed to allow an

examination about the condition that is in controversy *as a result of the alleged wrong*. Here, Ms. Winters had a generalized anxiety disorder before she entered CSC; she has not alleged that CSC's actions or inactions have caused this condition. The existence of this disorder before the events, does not allow CSC to demand a far-reaching psychiatric examination to determine "whether Helen Winters has a diagnosable mental health condition and if so, what treatment is available." *Meyers Aff.* para.9, Exh. D.

### B.  The Relevant Information Is Readily Available From Other Sources.

Another factor courts look to in determining whether a defendant has met its burden of proving "good cause" for a Rule 35 exam is the availability of evidence from other sources. *See, e.g. Shumaker v. West*, 196 F.R.D. 454 (D.C.W. Va. 2000); *Pearson v. Norfolk-Southern Ry. Co.*, 178 F.R.D. 580 (D.C. Ala. 1998). Courts regularly deny Rule 35 exams where the relevant information is available from other sources and conducting an exam will cause the plaintiff hardship. For example, in *Shumaker v. West*, 196 F.R.D. 454 (D.C.W. Va. 2000), the court denied the defendant's request for a Rule 35 exam of a disabled plaintiff. There the court noted that the information sought by the defendants was available through psychological tests and other information, including information already in the defendant's possession. Likewise, in *Pearson v. Norfolk-Southern Ry. Co.*, 178 F.R.D. 580 (D.C. Ala. 1998) a personal injury action brought on behalf of a minor child, the court held that the defendants did not show good cause for a Rule 35 exam where they had access to other evidence, including medical records, school records, and opportunities to interview the child's relatives.

Here, CSC asserts the need to obtain a psychiatric exam in order to disprove that

Ms. Winters' has suffered emotional damages at the hands of CSC. In the present case, the information purportedly sought by psychiatric exam of Ms. Winters is available from other sources, most of which CSC already has access. CSC has the ability to observe and monitor Ms. Winters twenty-four hours, seven days a week. All of the various doctors, nurses, and aides that work at the Chugiak Senior Center have the opportunity to observe and interact with Ms. Winters daily. Furthermore, CSC has immediate access to her medical records. Assessing the toll CSC's actions have had on Ms. Winters can be easily done by reviewing her medical records and by having Dr. Geeseman interview staff and caregivers of Ms. Winters.

A general oral psychiatric examination by Dr. Geeseman is extremely unlikely to uncover "the extent of any damages" that Ms. Winters has suffered. Ms. Winters is old, she has a poor memory, she cannot communicate well, and the oral examination will do nothing but upset her. *Winters' Aff.* at paras 6-8. If CSC is intent on obtaining the "extent of any damages" it would be better served by interviewing caregivers and medical providers both those who worked with Ms. Winters before the alleged wrongdoing of eviction and those that have worked with her since. This would be much more useful than interviewing Ms. Winters.

To the extent that CSC is asserting that the point of the exam is to assess any exacerbation of Ms. Winters' generalized anxiety disorder by the CSC's wrongdoing, this is also unlikely to be determined by Dr. Geeseman's oral psychiatric examination. Ms. Winters does not have a previous evaluation so the two cannot be compared.

In fact, as set-out more fully below, given Ms. Winters' substantial hearing loss

subjecting her to an oral psychiatric examination may only cloud the matter rather than elucidate anything.

### II. Ms. Winters' Hearing Impairment Will Render Meaningless A Completely Oral Exam

CSC acknowledges that the psychiatric examination will be completely "oral" in nature, despite the fact that Ms. Winters has a substantial hearing loss. *Meyers Aff.*, para. 8 Exh. D, p.1. Ms. Winters hearing loss will impact her ability to communicate in this setting and will cause miscommunication between the examiner and herself. Ms. Winters does not sign and cannot be accommodated. *Winters Aff.* at paras. 3-4.

F.R.C.P. 35 requires that before the Court orders any examination, the Court must be convinced that the examiner is "suitably licensed or certified." CSC has failed to establish before the Court that Dr. Geeseman has any particular experience or expertise in interviewing an individual with a substantial hearing impairment. Not only will the oral examination be compromised by Ms. Winters' communication difficulties due to her substantial hearing loss, but as set-out above Dr. Geeseman will not gather any objective data which can be submitted to the Court to "prove" or disprove anything. CSC's proposal oral examination by Dr. Geeseman will not serve its purported purpose. It should be denied on this basis alone. *See, e.g.* Advisory Committee Notes to 1991 Amendments to Rule 35, 134 F.R.D. at 651 ("The court is thus expressly authorized to assess the credentials of the examiner to assure that no person is subjected to a court-ordered examination by an examiner whose testimony would be of such limited value that it would be unjust to require the person to undergo the invasion of privacy associated with the examination.").

### III. The Court Should Deny the Rule 35 IME Because of Exceptional Circumstances.

Even if good cause is shown for Rule 35 exam, denying the exam is still within the court's discretion. *Curtis v. Express, Inv*., 868 F. Supp. 467 (D.C.N.Y. 1994); *Stinchcomb v. U.S*., 132 F.R.D. 29 (D.C. Pa. 1990); *Matthews v. Watson,* 123 F.R.D. 522 (E.D. Pa. 1989); *Shirsat v. Mutual Pharmaceutical*, 169 F.R.D. 68 (1996); *Matthews v. Watson*, 123 F.R.D. 522 (E.D. Pa. 1989).[2]  The Court can and should take notice of the very unusual and exceptional circumstances at issue here – the age and frailty of Ms. Winters, the lack of any objective measures to be employed by Dr. Geeseman, the necessity of Dr. Geeseman to depend upon oral examination which is unlikely to yield valid results where Ms. Winters has a substantial hearing problem – and deny the request for the exam.

However, if the Court orders any Rule 35 examination of Ms. Winters, the Court must ensure that CSC takes the utmost care to protect Ms. Winters' fragile health.

### CONCLUSION

For all the foregoing reasons, this Court must deny CSC's motion to compel a Rule 35 exam.

DATED: Oct. 18, 2006             ALASKA LEGAL SERVICES CORPORATION
                                 Attorneys for Plaintiff
                                 Helen Winters
                                 through her power of attorney Carol Winters

---

[2]     F.R.C.P. Rule 26[c] vests the Court with authority to protect a person from whom discovery is sought. The court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c).The Court may deny the discovery or limit the terms and conditions of discovery, including limiting the discovery to a method of discovery other than that selected by the party seeking discovery. F.R.C.P. Rule 26(c) (1), (2) and (3).

        s/Nikole Nelson
        ALASKA LEGAL SERVICES
        1016 West 6th Avenue, Suite 200
        Anchorage, Alaska 99501
        PHONE: (907) 222-7431
        FAX: (907) 279-7417
        E-mail: nnelson@alsc-law.org
        Alaska Bar No. 9906033

        s/Sonja D. Kerr
        ALASKA LEGAL SERVICES
        1016 West 6th Ave., Suite 200
        Anchorage, Alaska 99501
        PHONE: (907)-222-7431
        FAX: (907)-279-7417
        E-mail: nalaof608@yahoo.com
        Alaska Bar No. 0409051

I, Sonja D. Kerr, certify that on October 18, 2006 a copy of the foregoing document was served electronically on Donna Meyers, at Delaney, Wiles, Hayes, Gerety, Ellis & Young, Inc.

        s/Sonja D. Kerr