Donna M. Meyers
William E. Moseley
Clay A. Young
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska  99501
PHONE:  907-279-3581
FAX:  907-277-1331
dmm@delaneywiles.com
wem@delaneywiles.com
cay@delaneywiles.com

Attorneys for Defendant
Chugiak Senior Citizens, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her Power of Attorney Carol Winters,<br><br>      Plaintiff,<br><br> v.<br><br>CHUGIAK SENIOR CITIZENS, INC.,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:06-cv-00083-TMB |

**REPLY TO MEMORANDUM IN OPPOSITION TO RULE 35 EXAMINATION**

There is no credible dispute over whether plaintiff's mental condition is "in controversy", and plaintiff's objections to the requested mental examination are insufficient to deny defendant's motion.[1]  Defendant has shown "good cause" for the Rule

---

[1] CSC seeks a ruling on the pending motion to compel because Dr. Geeseman is only available to conduct the examination sometime during the first two weeks in November, as she will be out of town for most of the remainder of November.  If a ruling on the

35 examination and plaintiff's claim that the examination will be futile is not supported by any credible evidence nor does such a claim justify denying a Rule 35 exam where good cause is shown for the exam.  Finally, there are no exceptional circumstances sufficient to overcome plaintiff's obligation to submit to an examination.

> A. **There is No Credible Dispute That CSC Has Shown Good Cause For A Rule 35 Exam.**
>
> > 1. **Plaintiff's Separate Tort Claims For Emotional Distress And Claim for Ongoing Emotional Distress Establish Good Cause for the Exam.**

Plaintiff attempts to minimize the extent to which she has put her mental condition in controversy.  Dkt. 89 at 3-6.  Notwithstanding her argument to the contrary,[2] plaintiff has asserted more than just "boilerplate" assertions of emotional distress.  Plaintiff placed her psychiatric state directly "in controversy" by asserting tort claims for intentional infliction of emotional distress ("IIED") and negligent inflection of emotional distress ("NIED").  Unquestionably, the courts recognize separate tort claims for IIED and NIED as being distinct from claims merely alleging mental suffering under some other tort.  *See Lahr v. Fullbright & Jaworski, LLP*, 164 F.R.D. 204, 209 (N.D. Tex. 1996)(collecting cases

---

motion is delayed until December, and the Court orders the examination, Dr. Geeseman's examination will occur too close to significant pretrial deadlines and trial, and therefore any delay on a ruling is likely to interfere with the existing trial date.

[2]Plaintiff relies on case law that is inopposite. Dkt. 89 at 3, n. 1.  *Robinson v. Jacksonville Ship Yards, Inc.*, 118 F.R.D. 525 (D.C. Fla. 1988) is a case alleging a Title VII hostile work environment sexual harassment claim.  The court held such claims by themselves do not put the plaintiff's mental condition in controversy, even when backpay claims are alleged for lost days due to the stress of the hostile work environment.  The court reasoned the focus of the question of sexual harassment is on the defendant's conduct, and not the plaintiff's perception or reaction to the defendant's conduct.  *Id.* at 531. Moreover, the court held a backpay award is not a compensatory damage claim for harm that is suffered, but it is a "make whole" equitable relief for discriminatory practices.  *Id.* (Citations omitted).  Thus, *Robinson* did not involve claims for IIED or NIED, which are alleged in the case *subjudice*.

in which federal courts have ruled a claim for IIED places the plaintiff's mental condition "in controversy").

None of the cases cited by plaintiff dictate a different conclusion. Dkt. 89 at 4-5. *See O'Sullivan v. Minn.*, 176 F.R.D. 325 (in a case involving allegations of unlawful termination, gender discrimination, retaliation for exercise of the constitutional right to free expression, and various state statutory and constitutional claims, the court denied a Rule 35 mental examination, but also noted such examinations are typically granted when a cause of action is asserted for intentional or negligent infliction of emotional distress or there is an allegation of a specific mental or psychiatric injury or disorder); *Coca-Cola Bottling Co. of Puerto Rico v. Negron Torres*, 255 F.2d 149, 153 (1st Cir. 1958)(court denied a Rule 35 *physical* examination where the plaintiff was not seeking damages for any present suffering but only for past physical injury and emotional disturbance from discovering a putrified body of a small mouse in a bottle of soft drink from which plaintiff was drinking); *Turner v. Imperial Stores*, 161 F.R.D. 89 (D.C. Cal. 1995)(noting the plaintiff did not bring a cause of action for intentional or negligent infliction of emotional distress or allege a specific psychiatric injury or disorder resulting from the employer's conduct, the court denied a Rule 35 mental examination); *Neal v. Siegel-Robert, Inc.*, 171 F.R.D. 264, 266-267 (E.D. Mo. 1996)(where the plaintiff was not complaining of any definable psychological symptoms, but rather was suffering from basic complaints that are within the understanding of the jury, such as loss of respect and feeling down, the court held the plaintiff had not placed his mental condition in controversy and defendant had not shown good cause for a mental examination); *Smith v. J.I. Case Corp.*, 163 F.R.D. 229, 230-231 (D.C. Pa. 1995)(court held the plaintiff was not required to submit to

a psychiatric examination where the plaintiff "does not even allege to have suffered emotional distress in the Amended Complaint" and had not pled mental damages as a separate tort claim).

Here, unlike the cases plaintiff relies on, plaintiff has asserted separate tort claims for emotional distress in her IIED and NIED claims and has not merely asserted a generalized damage claim for emotional distress.³

### 2. Substantially Equivalent Information That Could Be Obtained From A Rule 35 Exam Is Not Readily Available From Other Sources.

Even if the Court considers whether CSC has access to other in the determining whether there is "good cause" for a Rule 35 examination, plaintiff has failed to demonstrate CSC has access to substantially equivalent information that CSC could obtain from a Rule 35 mental examination. Indeed, plaintiff's argument that relevant information is readily available from other sources is undercut by plaintiff's unwillingness to execute a medical release that would have allowed CSC to obtain plaintiff's medical records. See Dkt. 49 at 8. Here, unlike the cases relied on by plaintiff, CSC does not have ample evidence relating to plaintiff's mental condition. *See Shumaker v. West*, 196 F.R.D. 454, 457 (S.D. W.Va. 2000)[ noting the defendant had a number of psychological tests and other information relating to the plaintiff's Post Traumatic Stress Disorder ("PTSD")]; *see also Pearson v. Norfolk-Southern RY Co.*, 178 F.R.D. 580 (D.C. Ala. 1998)(court held the defendant had not shown a need for the examination because the court, over the objection of plaintiff, had permitted the defendant to obtain "all of the

---

³ Plaintiff has also alleged ongoing emotional distress. *See*, e.g. Dkt. 1, Exhibit C, ¶ 19 at 5 (claiming detriment to plaintiff's emotional health if she is required to move.)

juvenile court records and school records of [plaintiff], including 'copies of all social, medical, psychiatric, psychological testing [and] evaluation'").

Here, plaintiff's mental condition has not only been placed in issue through her IIED and NIED claims, but her mental condition is also an issue because it is one of the grounds on which CSC seeks to terminate plaintiff's Residential Services Contract and Lease Agreement. CSC issued the notice to terminate plaintiff's contract in part because it believes plaintiff is in need of mental health services and that need has resulted in plaintiff needing a bunch of services that CSC cannot provide.[4]

The glaring problem with plaintiff's argument that CSC should obtain information regarding her mental condition from other sources is that CSC does not have unfettered access to plaintiff's medical records or her medical providers. While plaintiff claims CSC should simply interview her caregivers and medical providers, she has refused to provide CSC with a medical release that would allow CSC to interview her medical providers. Even so, interviewing plaintiff's medical providers would not provide substantially equivalent information Dr. Geeseman could obtain from a general psychiatric examination.

> **B.  Plaintiff's Contention That An Oral Examination Would Be Futile Is Not Supported By Credible Evidence, And In Any Event, It Is Argument Of Admissibility Rather Than Discoverability.**

Plaintiff's concern about the Rule 35 mental examination being "oral" in nature overstates the potential impact of her hearing impairment on the utility of the psychiatric examination. Presently, plaintiff communicates orally on a day-to-day basis with her caregivers and others. There is no evidence that plaintiff is unable to communicate at all, and to the extent that she communicates with her caregivers, her daughter and others,

---

[4] *See* Dkt. 1, Exhibit B at 2.

Reply to Memorandum in Opposition to Rule 35 Examination                                                  Page 5 of 9
*Winters v. CSC/*Case No. 3:06-cv-00083-TMB

she is capable of communicating with Dr. Geeseman.  Surely, if plaintiff is unable to communicate orally with Dr. Geeseman because of her hearing impairment, she can communicate with Dr. Geeseman by other means, such as through the use of written language by either writing on a chalk board or using some other medium.  Although plaintiff claims she "cannot be accommodated",[5] she has not produced any expert testimony demonstrating that communication with Dr. Geeseman is impossible.

Dr. Geeseman is not required to have any "particular experience or expertise in interviewing an individual with a substantial hearing impairment", and plaintiff has not produced any expert evidence or legal authority such expertise is required.  To the extent plaintiff claims Dr. Geeseman's findings will be affected by communication difficulties, such argument goes to the weight of Dr. Geeseman's conclusions, rather than whether CSC is entitled to the Rule 35 examination.  Plaintiff's objections to Dr. Geeseman's qualifications and to the usefulness of the Rule 35 examination are more properly addressed through plaintiff's cross-examination of any testimony Dr. Geeseman might offer on the basis of her Rule 35 examination.  *See e.g., Shirsat v. Mutual Pharmaceutical Co., Inc.*, 169 F.R.D. 68, 71 (E.D. Pa. 1996)(noting it is for the court and the jury to assure "that the evaluatory framework of Rule 35 is not misused or abused") (*quoting Tomlin v. Holecec et al.*, 150 F.R.D. 628, 633 (D. Minn. 1993)).

### C. Plaintiff Has Failed to Demonstrate There Are Exceptional Circumstances to Deny the Exam.

Plaintiff claims that even if there is good cause for the requested Rule 35 exam, the court should deny the exam because of "exceptional circumstances".  *See* Dkt. 89 at 9.  However, none of the alleged "exceptional circumstances" are sufficient to overcome

---

[5]Dkt. 89 at 8.

the good cause CSC has demonstrated for ordering the exam.[6] Plaintiff's age and frailty are not "exceptional circumstances" that justify denying the exam. There is no evidence plaintiff's age and frailty would lead to any more of an adverse affect on plaintiff than if she were being examined by a physician for a health related problem. Indeed, plaintiff's age and frailty is less likely to be factors during the requested oral examination with Dr. Geeseman. The exam will be a physically, non-invasive exam that does not involve any physical diagnostic testing, and it will occur within the comfort of plaintiff's current home which eliminates any physical or emotional stress associated with traveling to a health care provider's office and being examined in an unfamiliar sterile examination room. There is also no "exceptional circumstance" arising from plaintiff's claim that there is a lack of objective measures Dr. Geeseman could employ. First, the assertion that Dr. Geeseman could not employ any objective measures is not supported by any expert or credible testimony. Moreover, plaintiff fails to cite any legal or expert authority that the use of subjective measures or the reliance upon an oral examination renders a

---

[6] The cases plaintiff relies on do not support her argument that there is sufficient evidence of unreasonable hardship or exceptional circumstances sufficient to deny a Rule 35 exam. In *Matthews v. Watson*, 123 F.R.D. 522-(E.D. Pa. 1989), the court rejected the plaintiff's vague claims of physical and financial hardship and ordered him to travel from Maryland to Philadelphia to submit a Rule 35 exam. In *Curtis v. Express, Inc.*, 868 F. Supp. 467, 469 (D.C. N.Y. 1994), the court did not deny a Rule 35 exam based on a finding of unreasonable hardship or exceptional circumstances; the court denied the exam because the plaintiff, unlike Helen Winters, was not asserting a separate tort claim for emotional distress, and was only presenting a claim for past mental suffering, as opposed to ongoing emotional distress. *Shirsat v. Mutual Pharmaceutical Co., Inc.*, 169 F.R.D. 68 (E. D. Pa. 1996) also does not support plaintiff's argument for the court to exercise its discretion in favor of denying a Rule 35 exam. In *Shirsat*, the court recognized it had discretion whether to order a Rule 35 exam even if good cause was shown. 169 F.R.D. at 70. However, the court not only ordered the exam but it also denied plaintiff's request to impose certain restrictions on the exam, based on plaintiff's allegations concerning the proposed psychiatrist's lack of neutrality and plaintiff's difficulty with English. *Id*. at 70-71.

psychiatric exam meaningless. Finally, Dr. Geeseman is not proposing to use any unorthodox or potentially harmful techniques in her examination. *See Shirsat v. Mutual Pharmaceutical Co., Inc.*, 169 F.R.D. 68, 71 (E.D. Pa. 1996)(where the allegations were the examiner was not neutral and plaintiff had difficulty with English, the court rejected plaintiff's request to impose certain restrictions on a Rule 35 exam, such as the presence of an observer, since there was no evidence the examiner would use any unorthodox or potentially harmful techniques during the examination).

## CONCLUSION

For the reasons stated in CSC's supporting memorandum and this reply, there is good cause shown to warrant the requested Rule 35 exam, and the court should enter an order compelling plaintiff to submit to the exam.

DATED at Anchorage, Alaska, this 23rd day of October, 2006.

DELANEY WILES, INC.
Attorneys for Chugiak Senior Citizens, Inc.

s/Donna M. Meyers
Delaney Wiles, Inc.
1007 W. Third Avenue, Suite 400
Anchorage, AK  99501
Phone:	907-279-3581
Fax:	907-277-1331
E-mail:	dmm@delaneywiles.com
E-mail:	wem@delaneywiles.com
E-mail:	cay@delaneywiles.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd
day of October, 2006, a copy of
**REPLY TO MEMORANDUM IN
OPPOSITION RULE 35 EXAMINATION**
was served electronically on:

Jim Davis, Jr./Barbara Brink/
Nikole Nelson/Sonja Kerr
Alaska Legal Services Corporation
1016 West 6th Avenue, Suite 200
Anchorage, Alaska   99501

s/Donna M. Meyers (123500)