Donna M. Meyers
Clay A. Young
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska  99501
PHONE:  907-279-3581
FAX:  907-277-1331
dmm@delaneywiles.com
cay@delaneywiles.com

Attorneys for Defendant
Chugiak Senior Citizens, Inc.


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


| | |
|---|---|
| HELEN WINTERS, through her Power of Attorney Carol Winters,<br><br>    Plaintiff,<br><br>  v.<br><br>CHUGIAK SENIOR CITIZENS, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

_____ )    Case No. 3:06-cv-00083-TMB

**DEFENDANT CHUGIAK SENIOR CITIZENS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 1 RE:  COUNT I; AND STATEMENT OF FACTS AND STANDARDS FOR SUMMARY JUDGMENT COMMON TO MOTIONS[1]**

## I.    INTRODUCTION

The issue in this case is whether plaintiff, a tenant in defendant's assisted

living home, can force defendant to keep her as a tenant even though her needs

---

[1] CSC is filing several motions for summary judgment.  The Statement of Facts and Standards for Summary Judgment are common to all.

exceed the level of services the assisted living home can safely provide, she continuously violates house rules, and is abusive to other tenants and the staff. Plaintiff brings this action even though there are literally hundreds of other assisted living facilities within the Anchorage area that could provide the 24-hour supervision and one-on-one level of care plaintiff demands and needs. Plaintiff is demanding that Chugiak Senior Citizens, Inc. (CSC) substantially alter its assisted living program for her, turn a blind eye to the needs and rights of its other tenants in order to permit her to continue to reside there for her and her daughter's convenience, and in the process incur substantial costs.

## II.  STATEMENT OF FACTS

### A.  Chugiak Senior Center's Assisted Living Program.

Chugiak Senior Citizens, Inc., ("CSC") is a non-profit corporation that operates an assisted living program ("ALP").[2]  It offers a limited level of care to its residents.[3]  Tenants of CSC reside in their own apartments within CSC's facility, where they can have complete privacy.[4]  The ALP provides supervision and/or assistance with certain activities of daily living and instrumental activities of daily living, coordinates services by outside agencies, and monitors the activities of residents for their well-being.[5]  CSC's program and budget permits a 7:1 resident to staff ratio.  It is not a skilled nursing facility, and does not offer skilled nursing

---

[2]    Ex. A at ¶ 2 (Affidavit of Linda Hendrickson).
[3]    *Id.*
[4]    *Id.* at ¶ 3.
[5]    *Id.* at ¶ 3.

services on a full-time basis.[6]   Indeed, CSC offers very limited nursing services during the day on Monday through Friday.[7]   *See* Affidavit of Linda Hendrickson (Ex. A).

**B.    Helen Winters' Admission to CSC.**

Plaintiff became a tenant in CSC's assisted living facility ("ALF") on September 20, 2004 and lives in her own apartment.[8]   Although she had a broken arm from a fall when she was granted residency it was everyone's expectation that her ability to care for herself would increase after her arm healed.   Among other documents, Plaintiff, individually or through Carol Winters as her daughter and Power of Attorney, executed a Lease Agreement, a Resident Services Contract, and an Acknowledgment of Receipt of Resident's Rights that included an acknowledgment Plaintiff received CSC's Resident Policies (House Rules).[9]

The Lease Agreement provided for a month-to-month tenancy and was made subject to the landlord and tenant laws of the State of Alaska.[10]   Under the Lease Agreement, Plaintiff agreed to comply with the written policies and procedures of

---

[6]      Assisted living homes are permitted by law to determine the level of services they want to offer and provide, and they are not required to accept residents exceeding those levels of service.   An assisted living facility may involuntarily terminate a residential services contract when the home can no longer provide or arrange for services in accordance with the resident's needs and the resident's assisted living plan.   *See* AS 47.33.360.   As a result, the cost of residing in an assisted living home is substantially less than at a skilled nursing facility.

[7]      Ex. A at ¶ 3.

[8]      Ex. A at ¶ 4.

[9]      *See* Ex. A at 2; *see also* Ex. B at 1-5 (Lease Agreement); Ex. C at 1-10 (Residential Services Contract); Ex. D at 1-7 (Acknowledgment of Receipt of Resident's Rights).

10      Ex. B at §§ 2, 3.

DEFENDANT CHUGIAK SENIOR CITIZENS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 1 RE:   COUNT I; AND STATEMENT OF FACTS AND STANDARDS FOR SUMMARY JUDGMENT COMMON TO MOTIONS

CSC.[11]  Plaintiff agreed not to make excessive noise at CSC that would disturb the peace and quiet of her neighbors, or cause or permit any nuisance to exist at CSC.[12] Nuisance is defined as "an obnoxious, annoying person, thing or practice. Something offensive or annoying to individuals or to the community, for which a legal remedy may be sought."[13]

The Lease Agreement also provides that CSC may involuntarily terminate the lease for the following reasons:

### Section 12.  Termination

- Termination by Management:   The Management will not terminate a Resident's Residential Services Contract against the Resident's will; except:

  - For medical reasons.

  - The level of care needed is no longer available at this facility.

  - For engaging in a documented pattern of conduct that is harmful to the resident, other residents, or staff of the home.

  - For violation of the terms of the Residential Services Contract, including failure to pay costs incurred under the Contract.

  - When the Resident's physician orders emergency transferout of the Facility.

  - When the Facility is closing.

---

[11]    *Id.* at § 3.
[12]    *Id.* at § 15.
[13]    *Id.*

DEFENDANT CHUGIAK SENIOR CITIZENS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 1 RE:   COUNT I; AND STATEMENT OF FACTS AND STANDARDS FOR SUMMARY JUDGMENT COMMON TO MOTIONS

- When the Facility can no longer provide or arrange for services in accordance with Resident's needs and the Resident's *assisted living plan*.

- A Resident's behavior is a threat to the peace and safety of other Residents or Self.

- By mutual consent of the parties.

- For cause, by either party, when the other party fails in any material way to perform its obligation under this Lease.

To invoke termination under this paragraph, the terminating party must notify the other party in writing of its intent to terminate this contract and state with reasonable specificity the grounds therefore. The other party shall have 15 days after receiving the notice of intended termination to cure, or take reasonable steps to cure, the default complained of.[14]

Plaintiff's Residential Service Contract lists the admission criteria to CSC and defines the services CSC agreed to provide Helen Winters.[15] Section 9 of the Residential Service Contract states the admission criteria and provides in part:

**Section 9.   Admission Criteria.**

The Manager may admit Residents for assisted living services who meet the following criteria:

1.     Accept only residents whose needs we can meet. This includes assessing resident needs, abilities and preferences, staffing ratios, physical spaces, etc.

---

[14]     Ex. B at § 12.
[15]     Ex. C at 1-10.

. . .

5.    Admit and retain individuals whose on-going needs do not exceed medical or Nursing services allowed by AS 47.33.020

. . .

7.    Admit and retain individuals who do not have a tendency to wander, fall, act verbally or physically abusive or socially inappropriate.

8.    Admit and retain individuals whose behavior places little or no stress on self, other individuals or staff.

9.    Must be physically stable, with inactive chronic disease or transient, acute illness which requires continuing medical attention or it is determined that staff and staffing levels can meet the individuals needs.

The Manager shall not admit or retain a resident who:

1.    Desires/requires specialized medical care that is not available at the Facility;

2.    Requires continuous skilled nursing care;

. . .

4.    [I]s believed to require special intervention, beyond the capacity of the Manager's staff to provide, to prevent active harm to self or others. [16]

Plaintiff agreed in the Residential Service Contract to comply with the written policies and procedures of CSC.[17]  CSC's Resident Policies – House Rules prohibit

---

[16]    Ex. C at § 9.

[17]    Ex. C at § 36.

DEFENDANT CHUGIAK SENIOR CITIZENS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 1 RE:  COUNT I; AND STATEMENT OF FACTS AND STANDARDS FOR SUMMARY JUDGMENT COMMON TO MOTIONS

"[p]hysical, verbal, or mental abuse or aggression by residents or their visitors is unacceptable. . . . [and] [a]ny infraction of this policy. . .may result in eviction.[18]

Plaintiff's Residential Service Contract also defines the conditions under which a resident can be moved out of the ALF involuntarily.[19]  Section 11 of the Contract states in pertinent part:

> **Section 11.  Termination.**
>
> If Resident does not meet regulatory or Manager's criteria for occupancy in the designated setting, move-out shall occur only after consultation with Resident, [Guardian], and/or [Guarantor].  The Manager shall provide Resident with 30 days' notice of a proposed move-out unless such delay might jeopardize the health, safety, and well-being of the Resident or others.  Resident, [Guardian], and/or [Guarantor] shall have the right to a conference with the Manager's staff responsible for occupancy decisions if a request is made within 10 days of receipt of the notice for move-out.
>
> Residents may be involuntarily moved only if:
>
> 1.    She/he poses an immediate threat to self or others;
>
> 2.    She/he needs mental health services to prevent harm to self or others;
>
> 3.    She/he has breached the conditions of their Resident Contract Agreement and/or Resident Service Plan;
>
> . . .
>
> 5.    The Manager can no longer meet the Resident's needs as defined in the Resident Service Plan, and

---

[18]    *See* Ex. D, ¶ 9, p. 6.
[19]    Ex. C at § 11.

the Manager determines in consultation with the Resident, [Guardian] and/or [Guarantor], physician, and/or care coordinator, that it is appropriate for the Resident to remain at the Facility[.][20]

## C.    Plaintiff's History at CSC.

Shortly after Plaintiff's admission to CSC's assisted living program, CSC informed Carol Winters that Helen's level of care exceeded the level of services CSC could safely provide and Plaintiff should be placed in a smaller facility where she could receive 1-on-1 care for her own safety.[21]   However, neither Plaintiff nor Carol Winters wanted to seek alternative housing, so CSC attempted to make efforts to provide the services Plaintiff needed although her level of care exceeded the limits of what CSC could reasonably provide and had agreed to provide, and her care needs continue to exceed the limits of services CSC can safely offer residents.[22]   During plaintiff's tenancy at CSC, she has also continuously engaged in a pattern of behavior and conduct consisting of unnecessary yelling and verbal abuse of staff and other residents.[23]   Her pattern of unacceptable behavior has been discussed with her, and CSC has participated in several care conferences to discuss this behavior and the appropriateness of terminating the Resident Services Contract.[24]   Despite these efforts, plaintiff's pattern of unacceptable behavior has not abated, and is in violation of the Residential Services Contract and Lease

---

[20]    Ex. C at § 11.
[21]    Ex. A at ¶ 5.
[22]    *Id.*
[23]    *Id.* at ¶ 6.
[24]    *Id.*

DEFENDANT CHUGIAK SENIOR CITIZENS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 1 RE:  COUNT I; AND STATEMENT OF FACTS AND STANDARDS FOR SUMMARY JUDGMENT COMMON TO MOTIONS

Agreement.[25]   Plaintiff's anger has become so intense that she actually struck a staff member in December 2005, which was one of the more recent events resulting in the decision to terminate the Residential Service Contract and Lease Agreement.[26]   Her continuous unacceptable behavior has also disrupted the peaceful and enjoyable atmosphere for both other residents and staff, and her conduct is detrimental to the safety and well-being of other residents and the staff.[27] Staff members have expressed such extreme frustration with Plaintiff's outbursts, insults and extreme demands that some staff members have either quit or threatened to quit.[28]

### D.   CSC's Right to Terminate Plaintiff's Residential Services Contract and Lease Agreement Via a Forcible Entry and Detainer Action.

Because Plaintiff is a tenant of CSC, the provisions of the Alaska Uniform Residential Landlord and Tenant Act apply, except as modified by the provisions of AS 47.33.005—47.33.990, which governs assisted living homes.   Alaska Statute 34.03.130 expressly permits a landlord to adopt rules and regulations concerning the tenant's use and occupancy of the premises.[29]   Alaska Statute 34.03.120(a)(7)

---

[25]     *Id.*
[26]     *Id.*
[27]     *Id.*
[28]     *Id.*
[29]     AS 34.03.130 provides in pertinent part:

> **Sec. 34.03.130.   Rules and regulations.**   (a) A landlord may adopt rules and regulations, which shall be posted prominently on the premises, concerning the tenant's use and occupancy of the premises.   A rule or regulation is enforceable against the tenant only if

requires the tenant to not unreasonably disturb a neighbor's peaceful enjoyment of the premises.[30]  Pursuant to AS 34.03.220, even if rent is current, the landlord may discharge a tenant for a material non-compliance with a reasonable rule and regulation or for a violation of AS 34.03.220.[31]  Furthermore, even if rent is current,

---

(1)     its purpose is to promote the convenience, safety, health, or welfare of the tenants in the premises, preserve the landlord's property from abusive use, or make a fair distribution of services and facilities held out for the tenants generally;

(2)     it is reasonably related to the purpose for which it is adopted;

(3)     it applies to all tenants in the premises in a fair manner;

(4)     it is sufficiently explicit in its prohibition, direction, or limitation of the tenant's conduct to fairly inform the tenant of what the tenant must or must not do to comply;

(5)     it is not for the purpose of evading the obligations of the landlord; and

(6)     the tenant has notice of it at the time the tenant enters into the rental agreement. . . .

[30]    AS 34.03.120(6) provides in pertinent part:

**Sec. 34.03.120.  Tenant obligations.**  (a)  The tenant . . . .

. . .

(6)     may not unreasonably disturb, or permit others on the premises with the tenant's consent to unreasonably disturb, a neighbor's peaceful enjoyment of the premises; . . . .

[31]    AS 34.03.220 provides in pertinent part as follows:

**Sec. 34.03.220.  Noncompliance with rental agreement; failure to pay rent.**

(a)     Except as provided in this chapter, . . .

(2)     if there is a material noncompliance by the tenant with the rental agreement, or if there is noncompliance with AS 34.03.120, . . . materially affecting health and safety, the landlord may deliver a written notice to quit to the tenant under AS 09.45.100 – 09.45.110 specifying the acts and omissions constituting the breach and specifying that the rental agreement will terminate upon a date not less than 10 days after service of the notice; . . . .

DEFENDANT CHUGIAK SENIOR CITIZENS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 1 RE:  COUNT I; AND STATEMENT OF FACTS AND STANDARDS FOR SUMMARY JUDGMENT COMMON TO MOTIONS

AS 34.03.290 permits a landlord or tenant to terminate a month-to-month tenancy for no specified reason by a written notice given to the other at least 30 days before the rental due date specified in the notice.[32]  If the tenant remains in possession, then the landlord is authorized to bring an action for possession.  *Id.*  Additionally, AS 34.03.090(a) authorizes the landlord, after serving a notice to quit on a person who is wrongfully in possession, to bring an action for possession.[33]

Because CSC's facility is an assisted living home, it is also governed by the provisions of AS 47.33.005-47.33.100, which to some extent modify the provisions of the Alaska Uniform Residential Landlord and Tenant Act.  Alaska Statute 47.33.060 expressly permits an assisted living home to establish house rules.

---

[32]    AS 34.03.290 provides in pertinent part as follows:

> **Sec. 34.03.290.  Periodic tenancy and holdover.**
>
> . . .
>
> (b)    The landlord or the tenant may terminate a month to month tenancy by a written notice given to the other at least 30 days before the rental due date specified in the notice.
>
> (c)    If the tenant remains in possession without the landlord's consent after expiration of the term of the rental agreement or after its termination under (a) or (b) of this section, the landlord may, after serving a notice to quit to the tenant under AS 09.45.100 – 09.45.105, bring an action for possession. . . .

[33]    AS 34.03.090(a) provides in pertinent part as follows:

> **Sec. 34.03.090.  Landlord to supply possession of the dwelling unit.**  (a) . . . The landlord may, after serving a notice to quit under AS 09.45.100 – 09.45.105 to a person who is wrongfully in possession,
>
> (1)    bring an action for possession against any person wrongfully in possession; and
>
> (2)    recover the damages provided in AS 34.03.290.

House rules may address various issues, including physical, verbal or other abuse of other residents or staff.  AS 47.33.060(c)(7).[34]  Alaska Statute 47.33.360 permits the involuntary termination of a residential services contract.  That section provides in pertinent part:

> **Sec. 47.33.360.  Involuntary termination of contract.**  (a) An assisted living home may not terminate a residential services contract with a resident of the home against the resident's will, except
>
> > (1)    for medical reasons:
> >
> > (2)    for engaging in a documented pattern of conduct that is harmful to the resident, other residents, or staff of the home;
> >
> > (3)    for violation of the terms of the residential services contract, . . .
>
> . . .
>
> > (6)    when the home can no longer provide or arrange for services in accordance with the resident's needs and the resident's assisted living plan.

---

[34]    AS 47.33.060(c) provides in pertinent part:

> **Sec. 47.33.060.  House rules.**  (a) An assisted living home may establish house rules, subject to the limitations provided for under this chapter.
>
> (b)    An assisted living home shall give a copy of the house rules to a prospective resident or the prospective resident's representative before the prospective resident enters into a residential services contact with the home, and shall post the house rules in a conspicuous place in the home.
>
> (c)    House rules may address various issues, including . . .
>
> > (7)    physical, verbal, or other abuse of other residents or staff.

CSC has several bases to terminate plaintiff's Residential Services Contract and Lease Agreement. CSC is no longer able to provide the level of services plaintiff needs, and she has continuously engaged in a pattern of behavior and conduct consisting of unnecessary yelling and verbal abuse of staff and other residents. [35] Her anger has become so intense that she actually has struck a member of the staff. [36] Her continuous unacceptable behavior disrupts the peaceful and enjoyable atmosphere for both other residents and staff. [37] Her pattern of unacceptable behavior has been discussed with her, and CSC has participated in several care conferences to discuss this behavior and appropriateness of terminating the Resident Services Contract. [38] Despite these efforts, plaintiff's pattern of unacceptable behavior has not abated, and is in violation of the Residential Services Contract. [39] Her continuous verbal, mental abuse and aggression towards staff and other residents is unacceptable and is grounds for termination of her contract. [40] Her conduct is detrimental to the mental and physical safety and well-being of other residents and the staff. [41]

---

[35] Ex. A at ¶¶ 5, 6.
[36] *Id.* at ¶ 6.
[37] *Id.*
[38] *Id.* at ¶ 6.
[39] *Id.*
[40] *Id.*
[41] *Id.*

E.    **The Termination Letter.**

On January 5, 2006, CSC served Helen Winters with a letter notifying her that CSC was terminating its contract and lease agreement with her. [42]    The letter provided several reasons why CSC was terminating Plaintiff's Lease Agreement and Residential Service Contract. [43]    As required by the Residential Service Contract, the letter was sent directly to Plaintiff as required under the Lease Agreement and Residential Service Contract by prepaid, first class mail at the address plaintiff provided in the Residential Service Contract. [44]    Copies of the letter were simultaneously mailed to the plaintiff's daughter (Carol Winters), care coordinator (Kathy Huskey), advocate (Long Term Care Ombudsman Bob Dreyer), and to Richard Saville, an employee with the Division of Certification Licensing. [45]    The letter listed the following reasons for terminating the Lease Agreement and Residential Service Contract:

(1)    she posed an immediate threat to others, or may need mental health services to prevent harm to others;

(2)    the level of care she needs is no longer available at the facility;

(3)    she has engaged in a pattern of conduct that is harmful to the other residents or staff;

(4)    her behavior is a threat to the peace and safety of other residents or staff;

---

[42]    Ex. E at 1-2 (CSC Letter, Dated January 5, 2006).
[43]    *Id.*
[44]    *Id.*
[45]    *Id.* at 2.

(5)    the Residential Services Contract was being terminated pursuant to AS 47.33.360(a) (2), (3), and (6) because she had engaged in a documented pattern of conduct harmful to the other residents and staff of the facility, she violated the terms of Residential Services Contract, and the facility could no longer provide for services in accordance with her needs; and

(6)    she had violated written policies and procedures of the facility, and CSC's Resident Policies (House Rules) prohibiting physical, verbal or mental abuse or aggression by residents.[46]

As required by AS 47.33.360(b) and the Residential Service Contract, CSC provided Helen Winters with 30 days notice of the proposed move out,[47] and informed Helen Winters of her right to a conference with CSC's administrative staff responsible for occupancy decisions, and any advocates chosen by Helen Winters.[48] Helen Winters exercised her right to hold a conference, which was held on January 20, 2006. Following the conference, CSC declined to retract the letter of eviction. However, CSC did offer Helen Winters additional time to find some alternative housing, and offered to further extend the move out date provided Plaintiff could show a good faith effort was being made to find alternative housing.[49]

CSC has fully complied with the procedures for involuntary termination of Plaintiff's contract. Nevertheless, Plaintiff refuses to leave, and therefore is in wrongful possession of the premises under the Alaska statutes set forth above.

---

[46]    *Id.* at 1-2.
[47]    The notice was effective January 5, 2006, and plaintiff was informed she had to vacate the apartment at CSC on or before February 4, 2006. *Id.*
[48]    *Id.* at 1-2.
[49]    *See* Ex. F (1/30/06 Letter to Assistant Attorney General Timothy Twomey).

DEFENDANT CHUGIAK SENIOR CITIZENS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 1 RE: COUNT I; AND STATEMENT OF FACTS AND STANDARDS FOR SUMMARY JUDGMENT COMMON TO MOTIONS

And, instead of demonstrating a good faith effort to find alternate housing, plaintiff filed a lawsuit seeking injunctive relief and damages and obtained an ex parte TRO.  Plaintiff's amended complaint asserts nine claims, all based upon and supported by the same factual allegations.  Plaintiff asserts claims for violation of the Assisted Living Homes Act, violation of the Alaska Human Rights Act, violation of Alaska's Uniform Residential Landlord Tenant Act, breach of contract, violation of the Americans with Disabilities Act, violation of § 504 of the Rehabilitation Act of 1973, violation of the Fair Housing Act of 1988, intentional infliction of emotional distress and negligent infliction of emotional distress.  Plaintiff seeks damages for pain and suffering, damages for mental anguish, and punitive damages.[50]

### III.    Standards for Summary Judgment.

The standards for summary judgment are well-settled.  Federal Rule of Civil Procedure 56 dictates that "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."  Fed. R. Civ. P. 56(a); *see also* Fed. R. Civ. P. 56(b) (providing the same standard for parties defending a claim).  Summary judgment is appropriate if the court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[50]    *See* Docket No. 1, Ex. C (Amended Complaint).

DEFENDANT CHUGIAK SENIOR CITIZENS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 1 RE:  COUNT I; AND STATEMENT OF FACTS AND STANDARDS FOR SUMMARY JUDGMENT COMMON TO MOTIONS
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                                    Page 16 of 23

matter of law."  Fed. R. Civ. P. 56(c).  The court will construe all evidence and draw all evidentiary inferences in favor of the non-moving party.  10A Charles Alan Wright *et al., Federal Practice & Procedure* § 1717, R 349 & n. 5 (3d ed. 1998) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)).

A dispute over a "genuine" material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* act."  *Id.* at 247-48 (emphasis in original).  The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  However, mere allegations of factual dispute, without more, will not defeat an otherwise proper motion.  *Angel v. Seattle-First Nat'l. Bank,* 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.").

## IV.    ARGUMENT

### Defendant is Entitled to Summary Judgment on Count I – Violation of the Assisted Living Homes Act.

Plaintiff alleges defendant's threatened actions violate the Alaska Assisted Living Homes Act (AS 47.33.005 – .990) because none of the statutory grounds for

termination exists under AS 47.33.360(a) and plaintiff may be not be retaliated against for having made a complaint to the  long-term care ombudsman under AS 47.33.350(a)(1) and (4).[51]

Plaintiff's Count I is meritless because the Alaska Assisted Living Homes Act expressly permits the involuntary termination of a residential services contract.  That section provides in pertinent part:

> **Sec. 47.33.360.  Involuntary termination of contract.**  (a) An assisted living home may not terminate a residential services contract with a resident of the home against the resident's will, except
>
> (1)     for medical reasons;
>
> (2)     for engaging in a documented pattern of conduct that is harmful to the resident, other residents, or staff of the home;
>
> (3)     for violation of the terms of the residential services contract,  . . .
>
> (6)     when the home can no longer provide or arrange for services in accordance with the resident's needs and the resident's assisted living plan.

AS  47.33.360(a).   CSC lawfully terminated plaintiff's contract pursuant to AS 47.33.360(a).  Specifically, CSC terminated plaintiff's contract because of plaintiff's medical condition, because plaintiff engaged in a documented pattern of conduct that was harmful to herself and others, for violating the terms of the residential

---

[51]      Dkt. No. 1, Ex. C, (Amended Complaint, Count I).

services contract, and because CSC could not longer provide for plaintiff's services in accord with the resident's assisted living plan.[52]

The facts set out in the Statement of Facts, supported by the attachments, correspondence, affidavit, and other supporting materials, clearly establish CSC had, and has, sufficient and valid reasons to terminate plaintiff's Residential Services Contract and Lease Agreement.  Her needs exceed the level of services the center can reasonably provide without making unreasonable accommodations, straining staff, and potentially short changing other residents.  Ms. Winters' behavior independently justifies her termination for much the same reasons; the Center simply cannot be required to put up with her behavior and her needs any longer.  It is a non-profit corporation, and it has a limited budget.  It is not in CSC's best interest, nor other residents', nor the community's, nor Helen Winters', to keep her there.  It is only in her daughter's best interest.  Hers is not a statutorily protected, or even recognized, interest.

Plaintiff's retaliation argument also lacks merit.  AS 47.33.350(a)(1) and (4) provides as follows:

> **Sec. 47.33.350.  Retaliation against home resident.**  (a) An assisted living home may not take retaliatory action against a resident of that home if the resident or the resident's representative
>
> (1)    exercises a right provided by this chapter or by other law; . . .

---

[52]    Ex. A at ¶¶ 5-6.

(4)     claims a violation of this chapter before a state or federal agency having jurisdiction over the home or its employees.

There are no cases interpreting this section.  However, there are cases addressing retaliation under the Fair Housing Act (FHA) and the Alaska Whistle Blower's Act which provide guidance.  In *Hall v. Meadowood Limited Partnership,* 7 Fed. Appx. 687 (9th Cir. 2001),[53] a tenant appealed from a district court's grant of summary judgment in favor of the landlord on claims of disability discrimination and retaliation under the FHA.  7 Fed. Appx. at 689.  In addressing plaintiff's retaliation claim, the court declared:

> To make out a prima facie case of retaliation under the FHA, Hall must establish (1) that he engaged in a protected activity, (2) an adverse housing consequence casually linked to that activity and (3) resulting damage.  *San Pedro Hotel Co., Inc. v. City of Los Angeles,* 159 F.3d 470, 477 (9th Cir. 1998).  Once Hall has established a prima facie case of retaliation, the burden of production shifts to Meadowood to articulate some legitimate, nondiscriminatory reason for the adverse action.  *Tarin v. County of Los Angeles,* 123 F.3d 1259, 1264 (9th Cir. 1997).  If Meadowood is successful, in order to defeat summary judgment, Hall must create a triable issue of fact as to whether Meadowood's preferred rationales were mere pretexts for discrimination.  *Id.*
>
> Assuming that Hall established a prima facie case of retaliation, Meadowood has preferred a legitimate, nondiscriminatory reason for declining to offer Hall continued living arrangements, namely, his rude, disruptive behavior in the Meadowood complex and his documented "outbursts of anger" in the rental offices.  Because Hall points to nothing in the record, other than his own conclusory statements, to refute Meadowood's explanations for

---

[53]     A copy of this opinion is attached hereto as Ex. G.

DEFENDANT CHUGIAK SENIOR CITIZENS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 1 RE:  COUNT I; AND STATEMENT OF FACTS AND STANDARDS FOR SUMMARY JUDGMENT COMMON TO MOTIONS

its decisions, we affirm the district court's grant of summary judgment with respect to Hall's claim for unlawful retaliation.

7 Fed. Appx. 687 at 689-90; *see also Walker v. City of Lakewood,* 272 F.3d 1114, 1128 (9th Cir. 2001) (setting forth the same standard for a claim of retaliation in violation of the FHA and California Fair Employment and Housing Act); *Lincoln v. Interior Regional Housing Authority,* 30 P.3d 580, 586-87 (Alaska 2001) (adopting the same standard for determining a violation of the Alaska Whistle Blower Act).

Here, plaintiff has failed to demonstrate that 1) that she engaged in a protected activity, (2) suffered an adverse housing consequence casually linked to that activity and (3) suffered resulting damage. Assuming *arguendo* plaintiff made such an demonstration, it is undisputed that CSC articulated a legitimate, nondiscriminatory reason for the adverse action, i.e., CSC attempted to terminate the lease agreement because "Helen's level of care exceeded the level CSC could provide" and because of plaintiff's yelling and verbal abuse of staff and other residents.[54] Thus, just like in *Hall*, CSC is entitled to summary judgment because CSC has proferred legitimate, nondiscriminatory reasons for its actions.

Plaintiff claims the termination of her Residential Services Contract was in retaliation for her having made complaints to the LTCO, in effect. In order to establish this claim, plaintiff must show the termination was pretextual. She must show that the termination was in response to, and because of those complaints. However, it is clear that valid grounds to terminate her Residential Services Contract

---

[54] Ex. A at ¶¶ 5, 6.

<u>did</u> exist; and existed even before she made her complaints in July of 2005. If making a complaint is allowed to "trump" the statute and the contract and lease agreement, then the statute and contracts will have been rendered meaningless. but there is a more fundamental reason why plaintiff's retaliation claim fails: there is <u>no</u> admissible, or indeed any, evidence that the complaint caused or led to the termination or the termination was a response to the complaints.

## V.  CONCLUSION

CSC requests the Court enter partial summary judgment on the claims in Count I of the Amended Complaint, with prejudice.

DATED at Anchorage, Alaska, this 19th day of December, 2006.

> DELANEY WILES, INC.
> Attorneys for Chugiak Senior Citizens, Inc.
>
> s/Donna M. Meyers
> Clay A. Young
> Delaney Wiles, Inc.
> 1007 W. Third Avenue, Suite 400
> Anchorage, Alaska  99501
> Phone:      907-279-3581
> Fax:        907-277-1331
> E-mail:     dmm@delaneywiles.com
> E-mail:     cay@delaneywiles.com
> Alaska Bar Assoc. No. 9006011 (DMM)
> Alaska Bar Assoc. No. 7410117 (CAY)

**CERTIFICATE OF SERVICE**

I hereby certify that on 19th day
of December, 2006, a copy of foregoing
**Defendant's Memorandum in Support
of Motion for Summary Judgment as to
Count I** was served electronically on:

Jim Davis/Jr./Barbara Brink/
Nikole M. Nelson/Sonja Kerr
Alaska Legal Services Corporation
1016 West 6th Avenue, Suite 200
Anchorage, AK  99501


s/Donna M. Meyers
125552