Donna M. Meyers
Clay A. Young
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska  99501
PHONE:  907-279-3581
FAX:  907-277-1331
dmm@delaneywiles.com
cay@delaneywiles.com

Attorneys for Defendant
Chugiak Senior Citizens, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her Power of Attorney Carol Winters, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHUGIAK SENIOR CITIZENS, INC., )<br>)<br>Defendant. )<br>_____ ) | Case No. 3:06-cv-00083-TMB |

**DEFENDANT CHUGIAK SENIOR CITIZENS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 3 RE:  COUNT III**

## I.    INTRODUCTION

This motion seeks dismissal of Count III in plaintiff's Amended Complaint. CSC incorporates the Statement of Facts and Standards for Summary Judgment contained in its Motion for Summary Judgment as to Count I herein, and respectfully refers the Court to them.

## II.    ARGUMENT

### Summary Judgment is warranted on Count III – Violation of Alaska's Uniform Residential Landlord Tenant Act.

Plaintiff alleges in Count III that the Alaska Uniform Residential Landlord Tenant Act governs, and that defendant's threatened eviction violates that Act because defendant has continued to accept rent from plaintiff despite alleging that she has breached the lease agreement, resident's service contract and resident policies.[1]  Plaintiff alleges this acceptance of rent constitutes a waiver of CSC's right to terminate the aforementioned agreements for those alleged breaches.[2]  Plaintiff's allegations are groundless.

Alaska Statute 34.03.240 provides in pertinent part as follows:

### Sec. 34.03.240  Waiver of landlord's right to terminate.

Acceptance of rent with knowledge of a default by the tenant or acceptance of performance by the tenant that varies from the terms of the rental agreement or rules or regulations subsequently adopted by the landlord constitutes a waiver of the right of the landlord to terminate the rental agreement for that breach, unless otherwise agreed after the breach has occurred.

AS 34.03.240.

First, although the Alaska Uniform Residential Landlord Tenant Act governs the lease agreement, plaintiff's relationship is also governed by the Alaska Assisted

---

[1]Dkt. No. 1, Exh. C at ¶¶ 27-29 (Amended Complaint); *see also* Dkt. No. 103 at ¶ 111, pg. 2 (Plaintiff's Proposed Description of the Substance of Claims, Relief Sought and Facts In Controversy).
[2]*Id.* at ¶ 29.

Living Homes Act, 47.33.005-.990.    Alaska Statute 47.33.360 governs the involuntarily termination of a residential services contract.  Significantly, nothing in that section, or in the Alaska Assisted Living Homes Act, contains any provision for a waiver defense.

Second, even if AS 34.03.240 applied in this case, there was no waiver under the provision.  CSC has not accepted rent from plaintiff for any time period following notice that it would terminate the Lease Agreement and Residential Service Contract, except during the time period when the parties expressly agreed that acceptance of rent would not constitute a waiver under AS 34.03.240.  During her residency at CSC, plaintiff has always received an invoice every month for rent due in the current month.[3]  Specifically, CSC's accounting records show plaintiff was invoiced on January 31, 2006 for rent due for the month of January, and plaintiff paid the rent for January on February 3, 2006.[4]  The Notice of Termination of plaintiff's Lease Agreement and Residential Service Contract was dated January 4, 2006, and became effective February 3, 2006.[5]  However, on January 26, 2006, plaintiff's Care Coordinator requested an extension of time for plaintiff to remain at CSC.[6]  CSC granted plaintiff a 30-day extension of time, allowing her to remain at CSC until March 5, 2006, and giving her the option of requesting additional time if she could

---

[3] *See* Ex. K (Affidavit of Linda Hendrickson, ¶ 3, pg. 2).
[4] *Id.*, ¶3, pg. 2.
[5] *Id.*
[6] *Id.*

show good faith efforts were being made to find alternative housing.[7]  Plaintiff then received an invoice on February 28, 2006 for the February rent, which plaintiff paid on March 1, 2006.[8]  Plaintiff did not receive an invoice in March for the rent due in March.[9]

On April 26, 2006, the parties then entered into a stipulation stating that any future rental payments would "not constitute a future waiver of any right or remedy available to Chugiak Senior Citizens, Inc. to terminate plaintiff's lease agreement and resident services contract."[10]  The Court approved the stipulation on April 27, 2006.[11]  Plaintiff did not receive another invoice for rent until April 28, 2006 for her rent in March and then she received another invoice on April 30, 2006 for her rent in April.[12]  CSC accepted plaintiff's payment for the March and April rent on May 3, 2006.[13]

The history of plaintiff's rent payments exposes the fallacy of plaintiff's waiver argument.  CSC granted plaintiff an extension of time to remain at CSC which ended March 5, 2006.  Thereafter, CSC did not accept rent from plaintiff again until after the parties' April 26, 2006 stipulation that plaintiff's rental payments would "not constitute a future waiver of any right or remedy available to Chugiak Senior

---

[7]*Id.*
[8]*Id.*, ¶ 4, pg. 2.
[9]*Id.*
[10]Dkt. No. 20 at 2.
[11]Dkt. *No. 22.*
[12]*See* Ex. K at 2 (Affidavit of Linda Hendrickson, ¶ 5).
[13]*Id.*

Defendant Chugiak Senior Citizens, Inc.'s Memorandum in Support of Motion for Summary Judgment No. 3 Re:  Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                                    Page 4 of 8

Citizens, Inc. to terminate plaintiff's lease agreement and resident services contract."[14]  In fact, CSC did not accept any rent payments from plaintiff until after the Court approved the parties' stipulation on April 27, 2006.[15]  Pursuant to the Court's order, CSC continues to accept rent from plaintiff without waiver of its rights and remedies to terminate the Lease Agreement and Residential Services Contract.[16]

Additionally, plaintiff's claim fails because both the resident's service contract and lease agreement, which were duly executed by Carol Winters, plaintiff's daughter and power-of-attorney, contain non-waiver provisions.   The resident's service contract provides in § 32:

> ### Section 32.  Non-Waiver
>
> The failure of either party at any time to enforce a provision of this Contract shall in no way constitute a waiver of the provision, nor in any way affect the validity of this contract or any part hereof, or the right of the party thereafter to enforce each and every provision hereof.[17]

Similarly, the lease agreement duly executed by Carol Winters, as plaintiff's power-of-attorney, provides in § 22:

> ### Section 22.  Non-Waiver
>
> The failure of either party at any time to enforce a provision of this Lease shall in no way constitute a waiver of the provision, nor in any way affect the validity of this contract or any part

---

[14]Dkt. No. 20.
[15]Dkt. No. 22; *see also* Ex. K (Affidavit of Linda Hendrickson)
[16]Dkt. No. 22.
[17]Ex. C at pg. 9, § 32.

Defendant Chugiak Senior Citizens, Inc.'s Memorandum in Support of Motion for Summary Judgment No. 3 Re:  Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                                    Page 5 of 8

hereof, or the right of the party thereafter to enforce each and every provision hereof.[18]

Plaintiff's claim would fail even if the agreements between the parties did not contain non-waiver provisions.  In *McCall v. Fickes,* 556 P.2d 535 (Alaska 1976), the Alaska Supreme Court held that where a 30-day eviction notice is provided, the lessor accepting late rental payments with knowledge of a lessee's defaults did not bar resort to a forcible entry and detainer action.  *Id.* at 540-41.  There, like here, the rental agreement established a month-to-month tenancy.  *Id.* at 537.  The landlord provided a 30-day eviction notice.  *Id.*  The tenant argued that the landlord's acceptance of late rent payments constituted a waiver of the landlord's right to terminate the rental agreement under AS 34.03.240.  *Id.* at 538.

The landlord countered the tenant's reliance on AS 34.03.240 by citation to other sections of the Uniform Act, including AS 34.03.290(b) and (c).  *Id.* at 538.  Those sections provide respectively:

> The landlord or the tenant may terminate a month to month tenancy by a written notice given to the other at least 30 days before the rental due date specified in the notice.
>
> If the tenant remains in possession without the landlord's consent after the expiration of the term of the rental agreement or after its termination, the landlord may bring an action for possession . . .

*Id.* at 538-39 (quoting AS 34.03.290(b) and (c)).

---

[18]Ex. B at pg. 5, § 22.

The court in *Fickes* declared:

> Thus, we are faced with the question whether the provisions of AS 34.03.240, dealing with the waiver of a landlord's right to terminate, precluded Fickes from terminating the month-to-month tenancy in the case at bar.   Month-to-month tenancies are traditionally terminable at will for any reason; the entire thrust of the arrangement is to allow either party to end it on short notice without incurring any additional liabilities.  Parties who desire firm commitments for extended periods of time can bargain for longer fixed terms in order to assure continued presence on the premises.    Further, the Uniform Act treats month-to-month tenancies separately from arrangements involving longer fixed terms.  From this separation we think it a reasonable inference that such tenancies constitute a special class, not necessarily governed by all provisions of the Uniform Act.

556 P.2d at 539.  The court in *Fickes* went onto hold:

> In short, we hold that AS 34.03.240 should be so interpreted that waiver of the 'right to terminate' a rental agreement refers to rights which arise as a consequence of a breach, and does not concern rights of termination which exist regardless of whether or not a tenant breached a condition of the agreement.  Since Fickes always had the right to terminate the agreement with the McCalls, even without cause, by giving a month's notice, he did not waive this right by accepting the late rental payment.

556 P.2d at 540.  In its opinion, the Court also referenced the commissioner's comments to AS 34.03.240, to the effect that if the breach of a continuing duty is involved, acceptance of rent or performance will not bar the landlord's remedy for a later breach.  *Id.* at 538 n.6.

In the instant case, plaintiff's violation of the lease provision was continuous, and acceptance of rent did not bar the landlord's remedy for a later breach. Additionally, AS 47.33.360 provides a basis for involuntary termination of a

residential services contract, regardless of whether or not the tenant breached a condition of the agreement.  Accordingly, CSC did not waive its rights under AS 47.33.360 to terminate the contract by accepting any rental payments.

### III.    CONCLUSION

CSC requests the court to enter partial summary judgment on the claims in Count III of the Amended Complaint, with prejudice.

DATED at Anchorage, Alaska, this 19th day of December, 2006.

> DELANEY WILES, INC.
> Attorneys for Chugiak Senior Citizens, Inc.
>
> s/Donna M. Meyers
> Clay A. Young
> Delaney Wiles, Inc.
> 1007 W. Third Avenue, Suite 400
> Anchorage, Alaska  99501
> Phone:      907-279-3581
> Fax:        907-277-1331
> E-mail:     dmm@delaneywiles.com
> E-mail:     cay@delaneywiles.com
> Alaska Bar Assoc. No. 9006011 (DMM)
> Alaska Bar Assoc. No. 7410117 (CAY)

**CERTIFICATE OF SERVICE**

I hereby certify that on 19th day
of December, 2006, a copy of foregoing
**Defendant's Memorandum in Support of
Motion for Summary Judgment No. 3 Re:
Count III** was served electronically on:

Jim Davis/Jr./Barbara Brink/
Nikole M. Nelson/Sonja Kerr
Alaska Legal Services Corporation
1016 West 6th Avenue, Suite 200
Anchorage, AK  99501

s/Donna M. Meyers
(125562)