Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 251475 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Woolcott v. E.I. DuPont de Nemours & Company, Inc.W.D.N.Y.,1997.Only the Westlaw citation is currently available.

United States District Court, W.D. New York.
Richard **WOOLCOTT**, Plaintiff,
v.
**E.I.** Dupont De **NEMOURS** & COMPANY, INC., Defendant.
**No. 95-CV-0721E(F).**

April 29, 1997.

Former employee sued former employer under Americans with Disabilities Act (ADA) and New York law, alleging that former employer discriminated against him on basis of his alcoholism. On cross-motions for summary judgment, the District Court, Elfvin, J., held that: (1) former employee failed to establish prima facie case of disability discrimination; (2) former employer did not violate reasonable accommodation requirements; and (3) former employee's intoxication on the job and his subsequent breaches of rehabilitation and work-rule agreements were legitimate nondiscriminatory reasons for decision to terminate him.

Plaintiff's motion for summary judgment denied; defendant's motion granted.
West Headnotes
**[1] Civil Rights 78 €══1226**

78 Civil Rights
  78II Employment Practices
    78k1215 Discrimination by Reason of Handicap, Disability, or Illness
      78k1226 k. Alcohol or Drug Use. Most Cited Cases
  (Formerly 78k174)
Former employee failed to establish prima facie case of disability discrimination based on his alcoholism, where employer requested that

employee submit to breath alcohol test due to his erratic attendance, deteriorating job-performance, and otherwise unacceptable behavior, employer provided employee with work-rule agreements and opportunities for paid-time off for treatment when testing revealed unacceptable results, and employee was terminated only after multiple failures to comply. Americans with Disabilities Act of 1990, § 104(c)(2, 4), 42 U.S.C.A. § 12114(c)(2, 4); N.Y.McKinney's Executive Law § 296.

**[2] Civil Rights 78 €══1226**

78 Civil Rights
  78II Employment Practices
    78k1215 Discrimination by Reason of Handicap, Disability, or Illness
      78k1226 k. Alcohol or Drug Use. Most Cited Cases
  (Formerly 78k174)
While ADA, in proper circumstances, protects individual's status as an alcoholic, alcoholics are not exempt from reasonable rules of conduct, and employer need not tolerate alcoholic's misconduct such as sporadic attendance or on-the-job intoxication; ADA does not protect alcoholic from consequences of his misconduct. Americans with Disabilities Act of 1990, § 104(c), 42 U.S.C.A. § 12114(c).

**[3] Civil Rights 78 €══1226**

78 Civil Rights
  78II Employment Practices
    78k1215 Discrimination by Reason of Handicap, Disability, or Illness
      78k1226 k. Alcohol or Drug Use. Most Cited Cases
  (Formerly 78k174)
Employer reasonably accommodated employee's alcoholism prior to terminating him, where employer provided time off for treatment, and employee did not make any accommodation request prior to his acts of misconduct. Americans with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT    H
Page    1    of  8

Not Reported in F.Supp.                                    Page 2

Not Reported in F.Supp., 1997 WL 251475 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Disabilities Act of 1990, §§ 102(b)(5)(A), 104(c), 42 U.S.C.A. §§ 12112(b)(5)(A), 12114(c); 29 C.F.R. Pt. 1630.2, App. § 1630.2(*o*); N.Y.McKinney's Executive Law § 296.

**[4] Civil Rights 78 ☞1226**

78 Civil Rights
   78II Employment Practices
      78k1215 Discrimination by Reason of Handicap, Disability, or Illness
         78k1226 k. Alcohol or Drug Use. Most Cited Cases
     (Formerly 78k174)
ADA's requirement that employer reasonably accommodate alcoholic employee requires no more than that such employee be given unpaid time off to participate in treatment program, and it does not encompass duty on part of employer to tolerate further misconduct or to await uncertain results of alcoholic employee's treatment program. Americans with Disabilities Act of 1990, §§ 102(b)(5)(A), 104(c), 42 U.S.C.A. §§ 12112(b)(5)(A), 12114(c); 29 C.F.R. Pt. 1630, App. § 1630.2(*o*).

**[5] Civil Rights 78 ☞1225(4)**

78 Civil Rights
   78II Employment Practices
      78k1215 Discrimination by Reason of Handicap, Disability, or Illness
        78k1225 Accommodations
         78k1225(4) k. Requesting and Choosing Accommodations; Interactive Process; Cooperation. Most Cited Cases
     (Formerly 78k173.1)
It is responsibility of disabled individual to inform employer of need for accommodation, and, if employee fails to request accommodation, employer cannot be held liable for failing to provide one. Americans with Disabilities Act of 1990, § 102(b)(5)(A), 42 U.S.C.A. § 12112(b)(5)(A).

**[6] Civil Rights 78 ☞1225(2)**

78 Civil Rights
   78II Employment Practices
      78k1215 Discrimination by Reason of

Handicap, Disability, or Illness
        78k1225 Accommodations
         78k1225(2) k. What Are Reasonable Accommodations; Factors Considered. Most Cited Cases
     (Formerly 78k173.1)

**Civil Rights 78 ☞1225(4)**

78 Civil Rights
   78II Employment Practices
      78k1215 Discrimination by Reason of Handicap, Disability, or Illness
        78k1225 Accommodations
         78k1225(4) k. Requesting and Choosing Accommodations; Interactive Process; Cooperation. Most Cited Cases
     (Formerly 78k173.1)
Asking for second chance and to be absolved of one's past misconduct is not request for accommodation under ADA, which neither envisions nor requires that employee be given another opportunity despite his misconduct for which he was reprimanded or terminated. Americans with Disabilities Act of 1990, § 102(b)(5)(A), 42 U.S.C.A. § 12112(b)(5)(A).

**[7] Civil Rights 78 ☞1226**

78 Civil Rights
   78II Employment Practices
      78k1215 Discrimination by Reason of Handicap, Disability, or Illness
         78k1226 k. Alcohol or Drug Use. Most Cited Cases
     (Formerly 78k174)
Even assuming former employee had established prima facie case of disability discrimination based on his alcoholism, employee's intoxication on the job and his subsequent breaches of rehabilitation and work-rule agreements were legitimate nondiscriminatory reasons for employer's decision to terminate employee. Americans with Disabilities Act of 1990, § 104(c), 42 U.S.C.A. § 12114(c); N.Y.McKinney's Executive Law § 296.

Joseph E. O'Donnell, Collins, Collins & Kantor, Buffalo, NY, for Plaintiff.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT    H
Page   2   of   8

Not Reported in F.Supp., 1997 WL 251475 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

James R. Grasso, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, for Defendant.

MEMORANDUM and ORDER

ELFVIN

**\*1** Woolcott alleges that his former employer (" DuPont"), the defendant herein, discriminated against him on the basis of his disability-*viz.,* his alcoholism-in violation of the Americans with Disabilities Act of 1990-42 U.S.C. § 12101 *et seq.* ( "the ADA")-and section 296 of New York's Executive Law. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 & 1367(a) and 42 U.S.C. §§ 2000e-5(f) & 12117(a) and venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f) & 12117(a). Presently before this Court is Woolcott's motion seeking a summary judgment as to liability and DuPont's motion seeking a summary judgment of dismissal. The former will be denied and the latter granted.

Unless otherwise noted, the following facts are drawn from the statements of facts the parties properly submitted pursuant to Rule 56 of the Local Rules of Civil Procedure for the United States District Court for the Western District of New York ("LRCvP"). Woolcott was hired by and began to work for DuPont October 10, 1988 in its Yerkes plant ("Yerkes") as a product operator and in 1989 he became an electrical technician. Affidavit of Joseph E. O'Donnell, Esq., sworn to November 22,1996, Exh E, Transcript of Woolcott Deposition ( "Woolcott Tr"), pp. 11-14. Prior to Woolcott's hire, DuPont plants such as Yerkes each had a substance abuse policy embodied in a local-*i.e.,* a plant specific-Substance Abuse Program ("LSAP"). As part of the conditions of employment, the Yerkes LSAP prohibits all employees from being in the workplace with alcohol in their system at a level at or above a blood-alcohol concentration ("BAC") of .04 percent as measured by a breath analyzer (" breathalyser"). Woolcott received a copy of the Yerkes LSAP when he was hired and was aware that employees were prohibited from being in he workplace with a BAC of .04 percent or greater and that he could be terminated for reporting to work with a such a BAC. Woolcott Tr, pp. 21, 23-24. In June 1989 DuPont issued regulations entitled " Causes for Disciplinary Action Including Discharge"

which pertinently state the following:
" \* \* \* Employee actions contrary to these regulations will subject the employee to disciplinary action, including dismissal.

"Any one of the following acts is cause for disciplinary action which could include dismissal:

8) Reporting for work under the influence of drugs or intoxicants.

10) Absence from work without notice or permission from supervision unless the cause of absence prevents giving notice." Affidavit of James R. Grasso, Esq., sworn to November *22,* 1996, Exh E.

Plaintiff concedes that he received a copy of the regulations and read and understood such in 1989. *Ibid.;* Woolcott Tr, p. 26. In February 1993 DuPont instituted a formal company-wide Employee Assistance Program ("EAP") and, in July 1993, issued a company-wide policy manual entitled "Administration of Local Substance Abuse Programs" ("the ALSAP") which modified and provided guidelines for administering the Yerkes LSAP.[FN1] Grasso Afft, Exh P, excerpts of Deposition of Robert Hughes, DuPont Plant Manager, p. 25; Grasso Afft, Exh O, excerpts of Deposition of James E. Potts, DuPont Senior Engineer, p. 38. Pursuant to the ALSAP a DuPont employee who reports to work under the influence of alcohol or otherwise violates the company's substance-abuse policies may be terminated immediately or, in lieu of termination, may be placed in a rehabilitation program. Grasso Afft, Exh F. If an employee is placed in the company's rehabilitation program, he remains subject to discipline for conduct in violation of company rules. *Ibid.* The foundation of DuPont's rehabilitation program is a progressive series of agreements which impose increasingly severe consequences for violations thereof and which hold

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT H
Page 3 of 8

Not Reported in F.Supp.                                                                 Page 4

Not Reported in F.Supp., 1997 WL 251475 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

employees accountable for their actions. *Ibid.*

> FN1. The ALSAP eliminated a one-year
> waiting period for a new employee to
> receive paid leave of absence for treatment
> of substance (such term encompassing all
> mood-and mind-altering substances) abuse,
> eliminated fixed caps on time given for
> treatment thereby allowing the affected
> employee's health-care plan or the
> company's Employee Assistance Plan to
> determine the proper period for treatment
> and clarified language used in the LSAPs.
> Pertinently, the ALSAP also indicated that
> the cut-off level indicating a positive- *i.e.,*
> unfavorable-test of an employee's BAC "
> should be no greater than .04" percent.
> Grasso Afft, Exh F, ALSAP, Testing
> Protocol, p. 12.

**\*2** Beginning in July 1993 Woolcott began to miss
work intermittently due to excessive use of alcohol
during the previous day or days. Woolcott Tr, pp.
29-30. On August 21,1993 he received a verbal
warning for leaving the plant frequently for long
periods of time during his work-shift. Grasso Afft,
Exhs C & G. On September 23 he received another
verbal warning for continuing to leave work early
and overstating hours on his time card and he was
informed that his work-performance was
unsatisfactory. *Ibid.* On October 20 he received a
third warning for leaving work without permission
and he was again apprised that his work was
deficient. *Ibid.* On October 27 Woolcott was absent
from work without notice or permission.[FN2] *Ibid.*
Upon arriving at work on the following day he was
unable to satisfactorily explain the absence and his
supervisor-Paul E. Brown-noted that he smelled of
alcohol. *Ibid.;* Woolcott Tr, pp. 32-35; Grasso
Afft, Exh Q, excerpts of Brown Deposition ("
Brown Tr"), pp. 44-50. Woolcott voluntarily
agreed to be tested for alcohol and he was given
two breathalysers which yielded BACs of .210 and
.193, respectively. Woolcott Tr, pp. 37-39;
Grasso Afft, Exhs C & G. Woolcott was referred to
the EAP that morning whereupon he spent
approximately two hours with the Yerkes EAP
consultant-Mark Fruhlinger-during which time

Fruhlinger assessed his condition and recommended
that Woolcott enter DuPont's EAP and an alcohol
detoxification center and, subsequently, an inpatient
alcohol rehabilitation program. Grasso Afft, Exh
N, excerpts of Fruhlinger Deposition ("Fruhlinger Tr
"), pp. 44-63; Woolcott Tr, pp. 4145. Woolcott
agreed with all of Fruhlinger's recommendations
and voluntarily entered the EAP. *Ibid.;* Grasso
Afft, Exh H. Fruhlinger arranged for a taxicab to
come to Yerkes and take Woolcott to First Step, an
inpatient detoxification treatment center where he
was treated until November 1. Brown Tr, p. 55;
Fruhlinger Tr, pp. 60-63; Woolcott Tr, p. 4647.
Woolcott had no personal expenditures for such
treatment. *Id.,* p. 49. From November 1 through
November 14 Woolcott received inpatient treatment
for his alcoholism at the Reflections rehabilitation
program at the Lockport Memorial Hospital for
which treatment DuPont paid ninety percent of the
cost and Woolcott the remainder. Woolcott Tr, p.
58. Plaintiff was paid his full salary from October
28 through November 14. *Id.,* p. 112. On
November 14-the same day that he was released
from the program-DuPont arranged for Woolcott to
begin outpatient rehabilitation treatment at Beacon
Center and he continued to receive such through
March 1994. *Id.,* pp. 56-60. On November 15,
feeling "like a new individual * * * [and] good
about [him] self" and wanting to return to work,
Woolcott reported to Yerkes at 7:30 a.m. *Id.,* pp.
54, 76-77. Upon his arrival at work Woolcott was
informed that he could only return to work subject
to the terms of a Substance Abuse Treatment
Rehabilitation Agreement ("the Rehabilitation
Agreement") which required, *inter alia,* that
Woolcott "[h]ave no drugs or alcohol in [his]
system for non-medical reasons while in the
workplace", that he participate in and comply with "
the prescribed aftercare treatments" and that he
submit to unannounced follow-up testing to confirm
the "absence of drugs or alcohol in [his] system for
non-medical reasons while in the workplace" and
expressly cautioned him that his failure to meet any
of the requirements could "result in corrective
action and/or * * * a 90 day Rehabilitative Leave of
Absence without pay or service credit" Grasso Afft,
Exh I; Woolcott Tr, pp. 76-78. Woolcott accepted
such terms and signed the Rehabilitation
Agreement. *Id.,* p. 77. Woolcott was also placed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT H
Page 4 of 8

Not Reported in F.Supp., 1997 WL 251475 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

on probation and given a probationary write-up which he acknowledged and which noted his attendance problems, his declining performance and his violation of company regulations regarding his having reported to work under the influence of alcohol on October 28 and expressly warned him that his "[f]ailure to comply with the terms of [his] probation [would] likely result in [his] discharge." Grasso Afft, Exh G. On December 1, 1993 Woolcott violated the terms and conditions of his Rehabilitation Agreement y testing positive for alcohol in his system while at work.[FN3] Woolcott Tr., p. 91; Grasso Afft, Exh J. As a result of such, Woolcott was offered placement on a ninety-day unpaid rehabilitative leave of absence in lieu of termination. Woolcott Tr., pp. 91-92; Grasso Afft, Exh J. Woolcott agreed to the terms enumerated in a Substance Abuse Treatment 90 Day Rehabilitative Agreement Leave of Absence Agreement ("the December Agreement") which required him, *inter alia,* to "follow fully the out-patient treatment [program] as dictated by* * * Beacon Center", to " abstain from use of drugs or alcohol for non-medical reasons", to "provide urine samples" for analysis "[u]pon the request of supervision" and to call the Yerkes on-site Medical office "each work day between 7:30 and 8:00 [a.m.]" to determine if a urine sample was to be submitted that day and expressly warned him that a violation "of *any one* of the conditions [in the December Agreement] could lead either to extension beyond the 90 day minimum period or immediate termination at any time during the leave period." *Ibid.* On January 4, 1994 Woolcott failed to call in on time and later that day failed to present himself to provide a urine sample; on January 6 he failed to call in on time and, although he called after 9:00 indicating that he was waiting to see a doctor at Erie County Medical Center ("ECMC"), he failed to call DuPont back later that afternoon as requested and failed to provide verification that he had been admitted to the ECMC;[FN4] on January 11 he was advised that the sample he had submitted January 5 had tested positive for the presence of alcohol;[FN5] on January 12 and 13 he failed to call to check in as required; on January 13 DuPont was informed that Woolcott had admitted himself to First Step for alcohol detoxification care. As a result of the repeated violations of the December Agreement,

including a positive substance-abuse test, Woolcott was offered and accepted, "as a last chance in lieu of termination", having his unpaid leave of absence extended for another ninety-day period commencing January 19, 1994 during which time he was to comply with the same conduct mandated by the December Agreement. Grasso Afft, Exh K ("the Last Chance Agreement"); Woolcott Tr., pp. 92-93. On March 17 Woolcott called in but failed to report for a follow-up test scheduled for later that day and failed to offer any explanation for such; on March 18 Woolcott failed to call in and DuPont learned that Woolcott had failed to report for a scheduled out-patient appointment on March 16; after he had admitted that he had had several drinks throughout the week, on March 23 Woolcott was terminated. Grasso Afft, Exh L; Woolcott Tr., pp. 100-109.

> FN2. Woolcott claimed at his deposition that the correct date that he missed work was actually October 26. Although such difference is not material, Woolcott's position is not supported in the record. Grasso Afft, Exhs F, & H; Grasso Supplemental Affidavit, sworn to December 4, 1996, Exh F; Plaintiff's Statement of Facts not in Dispute (Supplemental), ¶ 9.

> FN3. The parties have not directed the undersigned to evidence of a quantified result of Woolcott's BAC while at work on December 1, 1993.

> FN4. Woolcott did, however, provide on the following day written verification of a January 6 visit to ECMC. Woolcott testified at his deposition that his statement that he was waiting to see a doctor was false and that he actually had been taken by the police to ECMC and placed in the psychiatric ward for observation for twelve hours as a result of being intoxicated. Woolcott Tr., pp. 95-97. Neither the plaintiff nor the defendant explains such discrepancy in their statements of facts submitted pursuant to LRCvP 56. For

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT ____H____
Page __5__ of __8__

Not Reported in F.Supp.                                                                                    Page 6

Not Reported in F.Supp., 1997 WL 251475 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

present purposes, such discrepancy is not material.

FN5. There is no evidence of a quantification of the test results of the January 5 sample.

*3 Rule 56(c) of the Federal Rules of Civil Procedure requires that a motion for summary judgment be denied unless the court determines, after reviewing all the evidence presented, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Celotex Corp. v. Catrett,* 477 U.S. 317,322-323 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 585-588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party seeking a summary judgment must demonstrate the absence of a genuine issue respecting any material fact. *Celotex,* at 325. A genuine issue of fact requires such evidence that a reasonable jury could thereupon return a verdict for the non-moving party and, when determining whether a genuine factual issue exists, the court must consider the substantive evidentiary burdens assigned to each party. *Anderson,* at 248, 254. All reasonable inferences must be drawn and all ambiguities must be resolved favorably to the non-moving party. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223 (2nd Cir.1994). Nevertheless, summary judgment must be granted against a non-moving party in instances when such party fails to adequately establish a genuine issue of material fact. *Celotex,* at 322. The non-moving party may not rest upon unsubstantiated allegations, conclusory assertions or mere denials of the adverse party's pleading, but must set forth and establish specific facts showing that there is a genuine issue of fact for trial. FRCvP 56(e). A metaphysical or other whimsical doubt concerning a material fact does not establish a genuine issue necessitating a trial. *Matsushita Elec. Industrial Co.,* at 586. The "mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson,*

at 252. The court's task is not to decide factual issues but rather to determine whether there is any genuine issue of fact to be tried. *Gallo,* at 1224. Although granting such a motion would not be appropriate where it is established that the employer's intent is genuinely at issue, unsubstantiated allegations and conclusory assertions are not sufficient to withstand a properly supported motion for a summary judgment, especially "[g]iven the ease with which [employment discrimination] suits may be brought and the energy and expense required to defend such actions." *Meiri v. Dacon,* 759 F.2d 989, 998 (2nd Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

Courts evaluate discrimination claims predicated upon the ADA using the burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for examining Title VII employment discrimination claims and later refined in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252-253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) "(*Burdine* "), and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502,506-511 (1993) ("*Hicks* "). *Price v. S-B Power Tool,* 75 F.3d 362,364-65 (8th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 274 (1996) ; *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 57-58 (4th Cir.1995); *Glidden v. County of Monroe,* 950 F.Supp. 73, 75 (W.D.N.Y.1997); *Duprey v. Prudential Ins. Co. of America,* 910 F.Supp. 879, 883 (N.D.N.Y.1996). FN6 The analysis is neither rigid nor mechanized and the general requirements of proof must be flexibly tailored to the facts of each case. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). The plaintiff must first establish a *prima facie* case of disability discrimination which requires him to make a modest showing (1) that he is a member of a protected class–*to wit,* that he is a "qualified individual with a disability" within the meaning of the ADA (42 U.S.C. §§ 12102(2) & 12111(8))–, (2) that he was performing his duties in a satisfactory manner–i.e., meeting his employer's legitimate expectations–but nevertheless suffered an adverse or detrimental employment decision made by his employer and (3) that the adverse employment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 251475 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

decision was made under circumstances giving rise to a reasonable inference of discrimination. 42 U.S.C. § 12112(a); *Ennis,* at 58; *Duprey,* at 884. If the plaintiff succeeds in establishing his *prima facie* case, "the burden of production" shifts to the employer to present clear, legitimate non-discriminatory rationale for its conduct. *Hicks,* at 507; *Glidden,* at 75; *Duprey,* at 883. If the employer adequately articulates such, any inference or presumptions of disability discrimination vanish and the plaintiff retains the ultimate burden of proving that the proffered rationale is pretextual and that the employer was discriminatorily motivated. *Hicks,* at 509-511; *Glidden,* at 75. To demonstrate such pretext and defeat an employer's properly supported summary judgment motion in an employment discrimination action, a plaintiff must establish through direct, statistical or circumstantial evidence the existence of a genuine issue of material fact as to whether the employer's asserted rationale is false or unworthy of belief *and* whether it is more likely than not that improper animus towards the plaintiff's purported disability was the real reason for the discharge. *Hicks,* at 515; *Duprey,* at 883.

> FN6. Inasmuch as Woolcott's state-law claim is governed by the same standards as is an ADA claim, the claims are considered simultaneously. *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1177 (2nd Cir.1996); *Tomka v. Seller Corp.,* 66 F.3d 1295, 1304 fn. 4 (2nd Cir.1995).

*4 [1][2] DuPont contends that Woocott has failed to establish a *prima facie* case. This Court agrees. Although DuPont does not contend that alcoholism is not a recognized disability-*i.e.,* a physical or mental impairment substantially limiting an individual's major life activities [FN7]-protected under the ADA in proper circumstances, it correctly points out that an individual is not statutorily shielded if he is under the influence of alcohol at work in contravention of his employer's prohibition of such. 42 U.S.C. § 12114(c)(2) (The employer " may require that employees shall not be under the influence of alcohol * * * at the workplace."); *Flynn v. Raytheon Co.,* 868 F.Supp. 383, 386

(Mass.1994). It is undisputed that Woolcott's erratic attendance, deteriorating job-performance and otherwise unacceptable behavior raised legitimate concerns in DuPont's management which led to the request that Woolcott submit to a breathalyser. It is beyond cavil that DuPont's punctuality and sobriety demands are legitimate job requirements. While the ADA, in proper circumstances, protects an individual's status as an alcoholic, it is equally clear that alcoholics are not exempt from reasonable rules of conduct and that an employer need not tolerate an alcoholic's misconduct such as sporadic attendance or on-the-job intoxication. *Collings v. Longview Fibre Co.,* 63 F.3d 828, 832 (9th Cir.1995), *cert. denied,* 516 U.S. 1048, 116 S.Ct. 711, 133 L.Ed.2d 666 (1996); *Flynn,* at 387. Congress has expressly stated that an employer such as DuPont may hold an alcoholic employee to the same job-performance and behavior standards-e.g., punctuality and sobriety-to which it holds other employees "even if any unsatisfactory performance or behavior is related to the * * * alcoholism of such employee." 42 U.S.C. § 12114(c)(4). Simply stated, the ADA does not protect an alcoholic from the consequences of his misconduct. *Williams v. Widnall,* 79 F.3d 1003,1007 (10th Cir.1996).

> FN7. *See* Equal Employment Opportunity Commission regulations implementing the ADA-*viz.,* 29 C.F.R. § 1630.2(h) (The phrase "physical or mental impairment" includes any physiological, mental or psychological disorder or condition.); *cf.* Department of Justice Regulations effectuating part A of subchapter II of the ADA-*viz.,* 28 C.F.R. § 35.104(1)(ii) ("The phrase physical or mental impairment includes * * * alcoholism.").

[3][4][5][6] Moreover, rather than immediately terminating him for his misconduct, DuPont gave Woolcott time off with pay to seek treatment and paid a significant portion of the cost for such. When he returned to work, he voluntarily agreed to abide by the same rules imposed on any other employee who had similarly been discovered to have violated the company's prohibition by coming

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT     H
Page   7   of   8

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 251475 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

to work intoxicated and who had not been terminated for such-*viz.,* he was not permitted to have any alcohol in his system while at work. He violated such restriction embodied in the Rehabilitation Agreement. In lieu of termination, he agreed to the terms and conditions of the December Agreement but nevertheless violated such as well. Again, in lieu of termination, DuPont extended to Woolcott a final opportunity which required him to comply with the terms of the Last Chance Agreement which he accepted. However, Woolcott failed to comply with such and was terminated therefor. Woolcott argues that he was not reasonably accommodated. *See* 42 U.S.C. § 12112(b)(5)(A). Such is meritless. The ADA's requirement that an employer reasonably accommodate an alcoholic employee requires no more than that such employee be given unpaid time off to participate in a treatment program. *Williams,* at 1006; *Myers v. Hose,* 50 F.3d 278, 283 (4th Cir.1995); 29 C.F.R. § 1630.2(*o*) (App.).[FN8] The ADA's reasonable-accommodation requirement does not encompass a duty on the part of the employer to tolerate further misconduct or to await uncertain results of an alcoholic employee's treatment program. *Myers,* at 283; *Fuller v. Frank,* 916 F.2d 558, 562 (9th Cir.1990) (applying the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*). Furthermore, Woolcott neither alleged nor presented evidence of a timely request made prior to his acts of misconduct for a reasonable accommodation. It is the responsibility of the disabled individual to inform the employer of the need for an accommodation. *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 165 (5th Cir.), *cert. denied,* 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996). "If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Ibid.* Asking for a second chance and to be absolved of one's past misconduct is not a request for an accommodation. *Siefken v. Village of Arlington Heights,* 65 F.3d 664, 666-667 (7th Cir.1995). The ADA neither envisions nor requires that an employee must be given another opportunity despite his misconduct for which he was reprimanded or terminated.

FN8. Woolcott does not contend that he

was not permitted to use accrued paid leave to seek treatment. *See, e.g.,* 29 C.F.R. § 1630.2(*o*) (App.) ("[O]ther accommodations could include * * * permitting the use of accrued paid leave * * * [to seek] necessary treatment * * *.").

**\*5** [7] Even assuming *arguendo* that Woolcott had established his *prima facie* case, DuPont has thoroughly satisfied its burden of articulating and producing evidence of legitimate non-discriminatory reasons for its decision to terminate Woolcott-*to wit,* his intoxication on the job and his subsequent breaches of the Rehabilitation Agreement, the December Agreement and the Last Chance Agreement-thereby vitiating any inference or presumption of disability discrimination.

In the final analysis, there is simply no evidence that DuPont did not reasonably accommodate Woolcott, that its decision to terminate Woolcott was pretextual or that such was motivated by improper animus. The record would not support a rational finding that the legitimate and non-discriminatory reasons put forth by DuPont were false and that, more likely than not, disability discrimination was the real reason for Woolcott's termination from DuPont.

Accordingly, it is hereby ORDERED that Woolcott's motion is denied and that DuPont's motion for a summary judgment of dismissal is granted and that this case shall be closed.

W.D.N.Y.,1997.
Woolcott v. E.I. DuPont de Nemours & Company, Inc.
Not Reported in F.Supp., 1997 WL 251475 (W.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:95cv00721 (Docket) (Aug. 23, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT ___H___
Page ___8___ of ___8___