Donna M. Meyers
Clay A. Young
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska  99501
PHONE:  907-279-3581
FAX:  907-277-1331
dmm@delaneywiles.com
cay@delaneywiles.com

Attorneys for Defendant
Chugiak Senior Citizens, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her Power of Attorney Carol Winters,<br><br>              Plaintiff,<br><br>    v.<br><br>CHUGIAK SENIOR CITIZENS, INC.,<br><br>              Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 3:06-cv-00083-TMB |

**DEFENDANT CHUGIAK SENIOR CITIZEN, INC.'S MOTION *IN LIMINE* NO. 5
TO EXCLUDE AUGUST 30, 2006 REPORT OF ROBERT P. DREYER, HIS FILES,
AND HIS TESTIMONY AT TRIAL**

**INTRODUCTION**

On August 30, 2006, Robert P. Dreyer, Alaska Long Term Care Ombudsman

(hereafter "LTCO") issued a 14 page report[1] ("the Report") concerning allegations

plaintiff Helen Winters and her daughter Carol Winters ("the Winters") made against

Chugiak Senior Citizens, Inc. ("CSC"), which operates an assisted living home ("ALH").

_____

[1]Exh. A.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)    Page 1 of 29

CSC seeks a ruling that neither Mr. Dreyer's report or files may be admitted into evidence, or used in any way, at trial;[2] and Mr. Dreyer's opinion testimony itself is inadmissible.   Mr. Dreyer has no personal knowledge of any of the alleged events forming the basis for the Winters' claims against CSC.   His report and file notes are hearsay, and no exception justifies their admission.   Any opinion testimony Mr. Dreyer might offer based on his investigation, as reflected in his log notes and report, is also inadmissible under Fed. Evid. Rule 701.   Moreover, Mr. Deyer is not an expert whose opinion testimony would be admissible under Fed. Evid. Rule 702.

### STATEMENT OF FACTS

**I.   HISTORY OF OLTCO INVOLVEMENT.**

The Alaska Office of the Long Term Care Ombudsman was established pursuant to Section 712 of the Older Americans Act, 42 U.S.C. § 3058g.  Statutory authorization for the OLTCO can be found in AS 47.62.010, *et seq.*  Robert P. Dreyer was hired as the LTCO on or about April, 2005.[3]  Prior to his work as an LTCO, Dreyer had no experience in elder law, health care, or public advocacy.[4]   His previous positions included work as a supply officer in the Air Force, a health and safety officer for a chemical company, and an environmental specialist and manager for the Alaska

---

[2]The report dated August 30, 2006 (Exh. A) and log or file notes (Exh. D) are collectively referred to as the "report", except where it is necessary to distinguish between them. The reasons for excluding the August 30, 2006 report apply with equal, if not greater, force to the log or file notes.
[3]*See* Dreyer Deposition, attached Exh. B at 7.
[4]Exh. B at 24.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)          Page 2 of 29

Department of Environmental Conservation.[5]  Similarly, prior to his employment at OLTCO, he had no formal education or training on these subjects.[6]

Dreyer became involved in the Winters' dispute with CSC on or about July 8, 2005 when he received a fax from Carol Winters alleging that CSC was mistreating Helen Winters.[7]  Dreyer first met with Helen Winters the following day, and opened his investigative file on or about July 15, 2005.[8]  Over the course of the next several months Dreyer conducted interviews of Helen Winters, CSC's executive director Linda Hendrickson and various CSC staff members and residents.[9]  He also exchanged a series of e-mails with Hendrickson regarding the status of the investigation.[10]

While the OLTCO does not have a formal procedure for performing investigations, the office does have a set of draft guidelines which Dreyer suggests should have been followed.[11]  However, Mr. Dreyer's investigation and resulting report do not comply with these guidelines.

## II.  WINTERS' RELIANCE ON LTCO REPORT.

Plaintiff's complaint against CSC relies heavily on Dreyer and his report.[12]  Additionally, plaintiff's counsel has relied heavily on the report in the "court of public opinion."  In a Channel 2 news segment on September 5, 2006, Mr. Davis said "They [the allegations against CSC] were disputed by the center, and now the ombudsman's

---

[5] See Exh. B at 52-53; see also Dreyer's curriculum vitae, attached as Exh. C.
[6] See Exh. B at 24-32.
[7] See LTCO Case File LT-01-200500061, Exh. D, at 1.
[8] Id.
[9] See Exh. D.
[10] See Dreyer-Hendrickson e-mails, attached Exh. E.
[11] Exh. B at 35-36; see also "Alaska Long Term Care Ombudsman Program Manual: Chapter 7:  The Problem Solving Process", attached Exh. F.
[12] See Plaintiffs' Amended Complaint at ¶ 15-19, 21 and 24(c).

Defendant Chugiak Senior Citizens, Inc.'s Motion in Limine No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)    Page 3 of 29

office has come back saying every one of these allegations are valid, are true, are correct."[13]  Again, in a September 14, 2006 newspaper article on this case Mr. Davis is quoted as saying "I think it's huge when an impartial fact finder, which the ombudsman office [sic] is, concludes that all those complaints were valid."[14]  Plaintiff's proposed uncontroverted facts makes it clear plaintiff intends to parade Dreyer's Report before the jury as some governmental agency that conducted an investigation resulting in findings that CSC violated certain statutes and regulations that the jury should find credible.[15]

This reliance demonstrates that the impropriety of allowing the report into evidence or of allowing Dreyer to testify to matters outside the scope of his knowledge is not merely tangential.  Plaintiff intends to use the Report to boost the credibility of their allegations through governmental 'validation'.  However, no such "validation" should be afforded to Dreyer's hearsay report, administrative log, and testimony, which amount to hearsay, innuendo, and Dreyer's uninformed and biased lay opinions. Accordingly, admission of Dreyer's report, administrative log, and opinion testimony would be highly prejudicial to CSC, and should not be allowed.

---

[13]A transcript of the KTUU piece is attached a Exh. G.

[14]*See* "Ombudsman sides against Senior Center" <u>Alaska Star</u>, September 14, 2006 at page 1, 31. Attached as Exh H at 2.
[15]Plaintiff's Proposed Uncontroverted Facts, ¶¶ 24 and 51, at 4 and 7; Exh. J.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
<u>Winters v. Chugiak Senior Citizens, Inc.</u>/Case No. 3:06-cv-0083 (TMB)        Page 4 of 29

**ANALYSIS**

I.    **THE LTCO REPORT AND LOG/FILE NOTES ARE INADMISSIBLE HEARSAY.**

The report, and to an even greater extent the log, are simply collations of inadmissible hearsay statements which must be excluded from evidence.  The only rule that could support admissibility of the report is Fed. R. Evid. 803 (8)(C), but it does not make the report admissible as a governmental investigative report for several reasons. First, the report does not qualify as the kind of fact-based, objective report meant to be covered by Rule 803.[16]  Second, the report lacks the requisite 'indicia of trustworthiness' for admissibility.  Third, the log itself is not even arguably covered by an exception to the hearsay rule.  Finally, even if the report is nominally trustworthy, other provisions of the Federal Rules of Evidence require the exclusion of the report (either in its entirety, or portions thereof) as a combination of irrelevant, unduly prejudicial and matters outside of Dreyer's personal knowledge.

**A.  THE REPORT IS WHOLESALE HEARSAY.**

Neither Dreyer's report or log demonstrate or even imply personal knowledge of the majority of the events discussed.  He does not cite any basis upon which to base his conclusions other than the statements of Helen and Carol Winters.[17]  This is classic

---

[16]Further, OLTCO is not the governmental agency tasked with investigating claims such as those made by Winters. That task falls within the purview of the State Department of Health and Social Services. *See* Analysis I.B., *infra*.
[17]*See* Exh. B at 90.

"Q:  Okay. Did you ever witness, yourself, any physical abuse of Helen Winters?
 A    [Dreyer]: Unh-unh. (Negative).
 Q:  Did you ever witness any verbal abuse of Helen Winters?
 A:  No, [I] would say not. I wouldn't call it abuse, no."

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)        Page 5 of 29

hearsay – out-of-court statements introduced to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(C).

Specific examples of such reliance on hearsay abound.  Several of Dreyer's factual findings indicate that he "validated the incident with the resident [Ms. Winters]" at a later time.  *See e.g.* Exh. A at 2-3.  As the relevance of the report to this litigation is to bolster plaintiff's allegations against CSC staff, plaintiff is in effect using the repetition of her allegations to a governmental interlocutor to bolster the credibility of those allegations.  It defies logic that such hearsay becomes admissible simply by using a public official as a conduit. *See* Fed. R. Evid 805 (each level of "hearsay within hearsay" requires exception for admissibility of statement).  *See also Stolarczyk ex rel. Estate of Stolarczyk v. Senator Intern. Freight Forwarding, LLC.*, 376 F.Supp.2d 834, 839 (N.D.Ill. 2005)(a court "could not allow [a government investigator] to relate rank hearsay in the form of out-of-court statements made by an interested party and in reasonable anticipation of ensuing litigation")[18]; *Flannery Properties v. Ron Byrne*, 2000 WL 781964 at 3 (10th Cir. 2000)(upholding evidentiary ruling that agency document consisting of "a summary of various statements from individuals" did not contain "factual findings").[19]

## B. THE REPORT IS NOT A PUBLIC RECORD OF FACTUAL FINDINGS WITHIN THE SCOPE OF RULE 803(8)(C).

For the Report to be admissible under Rule 803(8), plaintiff must first demonstrate that Dreyer's letter constitutes "factual findings resulting from an investigation made pursuant to authority granted by law".  Fed. R. Evid. 803(8)(C).  This

---

[18]Mr. Dreyer issued the report knowing the matter was in litigation.  *See e.g.* Analysis, I.C.1., *infra*.
[19]Exh. I. Attached per D. AK. LR 7.1(c). Cited for purposes of comparison only.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)        Page 6 of 29

letter is not such a report, and is therefore outside the scope of the 803(8)(C) exception. As an initial matter, the report represents, at best, an "interim staff report" that "[does] not embody the findings of the agency." *See Brown v. Sierra Nevada Memorial Miners Hosp.*, 849 F.2d 1186, 1190 (9th Cir. 1988) (quotations omitted). Such an "interim finding" significantly lessens the presumption of trustworthiness given to a more formal agency determination. *Id.*[20]

The OLTCO only has authority to <u>conduct an inquiry</u> into these matters, *see* AS 47.62.015. However, the primary state agency responsible for investigations of these complaints is the OLTCO, but the "licensing agency", the Department of Health and Social Services. *See* AS 47.33.520 (investigation to be performed by "licensing agency); AS 47.33.410 (naming DHSS as the "licensing agency" for assisted living homes.) Dreyer himself recognizes that he lacks the authority to formally cite or sanction an ALH for violating statutes or regulations.[21]

Most importantly, the federal mandate for the establishment of the OLTCO defines the duties and functions of an LTCO as "represent[ing] the interests of residents **before government agencies**." *See* 42 U.S.C. § 3058, (a)(3)(E) and (a)(5)(B)(iv) (emphasis added). *See also Silo v. Commonwealth*, 886 A.2d 1193, 1194 (Pa. Cmwlth. 2005); *Rackley v. Fairview Care Centers, Inc.*, 23 P.3d 1022, 1028 at n. 5-7 (Utah 2001) (cases discussing role of LTCO). Such representation or advocacy in administrative

---

[20]Obviously, this point applies with even greater forcer to Dreyer's investigative log itself, which is truly nothing more than "a summary of various statements from individuals" *Flannery Properties*, Exh. I at 3.

[21]*See, e.g.*, Exh. B at 15-16, 20.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
<u>Winters v. Chugiak Senior Citizens, Inc.</u>/Case No. 3:06-cv-0083 (TMB)    Page 7 of 29

proceedings is completely inconsistent with the role of an independent arbiter in those same proceedings.

### 1.    The Report Is Not "Fact Based".

Given that the OLTCO's mission is to advocate for elder Alaskans (whereas DHSS is charged with investigating and licensing assisted living facilities), Dreyer's conclusions do not represent the sort of disinterested fact finding meant to be covered by 803(8)(C).

The report is not fact-based, but rather completely based on the opinions of the Winters. Though the United States Supreme Court held that Rule 803(8)(C) does not distinguish between statements of fact and of opinion in such reports, *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 109 S. Ct. 439, 448 (1988), surely there must be *some fact* in a fact-based report.

In this case, no hearings were held. CSC was given no opportunity to rebut the Winters' allegations or present its own narrative. Where Linda Hendrickson attempted to do so, her statements were summarily dismissed by Dreyer.[22] Dreyer was not investigating, he was *advocating*.[23]

Procedural irregularities aside, Dreyer's conclusory assertions and selective quotations cannot accurately be described as "fact-based."[24] As noted above, throughout the report Dreyer uses the circular technique of supporting Carol Winters'

---

[22]*See e.g.* Dreyer e-mail of October 18, 2005 Exh. E at 7.

[23]*See* Exh. H at 2 (quoting Dreyer: "We always lean toward the elder when there's a confliction [sic] or there's concern that we may not be getting the total story. **We're an advocate for the elder**.") (emphasis added); *see also* 42 U.S.C. § 3058g (a)(3)(E).

[24]The adequacy of Dreyer's investigative fact finding and techniques, or rather lack thereof, is discussed more fully under Analysis, C.2., *infra*.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)    Page 8 of 29

allegations solely by reference to statements made by Helen Winters repeating those same allegations.   While Dreyer was certainly entitled to believe Helen Winters' accounts over those of the CSC staff, such a belief cannot be considered fact-based merely by tautological reference to the statements chosen to be credited.   Completely absent is any basis for this belief independent of Helen Winters' own statements.

*Stolarczyk* is particularly instructive here. In that case, the documents which plaintiff wanted admitted (in that case an EEOC investigative file) were selected portions of an investigator's interviews with the plaintiff. 376 F.Supp.2d at 838-839.   The court found:

> [C]aselaw teaches, however, that hearsay statements are not exempted from the hearsay bar simply because they were related to a government officer or investigator.  Thus . . . while government accident investigation reports are generally admissible under the public records exemption . . . portions of those reports or exhibits may present other hearsay problems.   Evidence reported in a government document is only admissible to the extent that the maker of the document could testify to that evidence were he present in court.

*Id.* at 839 (internal quotations and citations omitted).   While this case differs from *Stolarczyk* in that Dreyer's report is at issue in addition to his interview notes, the principle holds so far as the report and log are recitations of inadmissible hearsay statements made by the Winters and others.   Dreyer does not have personal knowledge of any of the incidents or allegations discussed in the report beyond what he was told by the participants.

An LTCO investigation is distinguishable from a situation where the lack of personal knowledge would not lessen the reliability of the information contained in a

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)          Page 9 of 29

governmental report.  *See generally Palmer v. Hoffman*, 318 U.S. 109, 112 and at n.2 and n.3, 63 S. Ct. 477, 480 (1943)(discussing rationale for business records exemption to hearsay preclusion).  This LTCO report in particular does not concern such objectively measurable things as epidemiological data,[25] geological surveys,[26] or accounting information, but is "a 'mish-mash of self-serving and hearsay statements and records.'"  *Stolarczyk*, 376 F.Supp.2d at 839 (quoting *Gillin v. Federal Paper Board Co.*, 479 F.2d 97, 99 (2d Cir. 1973)(holding EEOC investigative file inadmissible)).  None of the statements recorded in the report or log were made under oath, nor were they made contemporaneously with the events described.

### 2.    The Report is Not The Work Of An Impartial Investigative Body.

The basis for admissibility of government investigations under Rule 803(8)(C) is the presumed trustworthiness of an impartial government investigation.  *See Ariza v. City of New York*, 139 F.3d 132, 134 (2d Cir. 1998) (citing *Beech*, 488 U.S. at 169, 109 S. Ct. at 449-50).  To the extent that such impartial methodology is not followed, any such presumption of trustworthiness is inappropriate.  *Id.*

Describing the report as not "fact-based" is not meant to denigrate the work done by Dreyer in performing his duties.  It is merely descriptive of his duties to say his job is not to be an objective fact finder, but an advocate.[27]  The guidelines note that as "[t]here

---

[25]*E.g. Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 618 (8th Cir. 1983).

[26]*E.g. Elwood v. City of New York*, 450 F. Supp. 846, 871 (S.D. N.Y. 1978), *rev'd on other grounds*, 606 F.2d 358 (2d Cir. 1979).

[27]*See* "Alaska Long Term Care Ombudsman Program Manual: Chapter 7:  The Problem Solving Process." Exh. F at 14.  *See also* 42 U.S.C. § 3058g(a)(3)(E) and (a)(5)(B)(iv)

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)          Page 10 of 29

are a number of other officials whose responsibilities include investigating complaints or conditions in long term care facilities"[28] an LTCO "can act on behalf of residents **without gathering evidence that meets legal standards of proof**." *Id.* (emphasis added). Further, the LTCO is not bound by "regulations and objective procedures." *Id.*

In this case, Dreyer's job as an LTCO is to advocate on the behalf of Helen Winters.[29]  The federal mandate for the creation of the Alaska OLTCO prescribes this role for an LTCO.  *See, e.g.* 42 U.S.C. § 3058g (a)(3)(E) (Function of the OLTCO is to "represent the interests of the residents before governmental agencies"); 42 U.S.C. § 3058(a)(5)(B)(iv) (one duty of an LTCO is to "represent the interests of residents before government agencies").   By definition, impartiality cannot coexist with advocacy.[30]  Dreyer is simply not an impartial fact-finder.  This lack of independence and objectivity serves to severely reduce, if not completely eliminate, the underpinnings of admissibility of his report.

---

(defining function and duty of LTCO as "represent[ing] the interests of the residents before governmental agencies").

[28] The Department of Health and Social Services operating under authority of AS 47.32.010, *et seq.* and AS 47.33.010, *et seq.* is a prime example of such an agency tasked with this investigative responsibility.  *See also* 7 AAC 75.010, *et seq.*

[29] More accurately, Dreyer's role should be to advocate in the interests of *all* of CSC's residents. See "Alaska Long Term Care Ombudsman Program Manual: Chapter 7: The Problem-Solving Process" Exh. F at 10 (available at http://www.ltcombudsman.org/ombpublic/49_506_1787.cfm) ("Your role is to assist in addressing the rights of all residents, not upholding one resident's rights to the detriment of other residents.") There are indications in his report that he has chosen to represent the interests of Helen Winters over those of other residents. He takes notice of the fact that other residents refer to Winters as "the Queen," Exh. A at 7, as evidence of animosity on the part of CSC *staff* towards Winters.  In his role as an advocate for all the residents, he should also have considered how plaintiff's behavior was affecting the other residents as well.

[30] "'Advocate'" means a public or private officer, agency, or organization designated by federal or state statute, or a state plan developed under a federal or state statute, **to represent the interests of and speak on behalf of a resident** of an assisted living home[.]"  AS 47.33.990 (4) (emphasis added).

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)          Page 11 of 29

Aside from the general statutory mandate to advocate on behalf of assisted-living residents, there are numerous specific indications of clear bias on Dreyer's part.  Dreyer acted as plaintiff's advocate in the conference to discuss the termination of plaintiff's Residential Service Contract with CSC.[31]  Dreyer has admitted as much in the media by describing his role as "an advocate for the elder." [32]  This is not meant to imply wrongdoing on the part of Dreyer; the quote accurately represents his job description. *See* "The Long Term Care Ombudsman Program," Exh. F at 3 ("*LTCO are resident advocates.*") (italics in original).[33]  The guidelines for Long Term Care Ombudsman are explicit in stating that the LTCO is not impartial, nor should they be expected to be.  *Id.* ("*in resolving problems, ombudsmen are usually not impartial.  They become advocates working on behalf of the resident.*") (italics in original).  Dreyer admitted his approach is to "always lean toward the elder when there's confliction [sic] or there's concern that we may not be getting the total story."[34]  His credibility evaluation was simply 'tie-goes-to the complainant.'

Dryer's bias is also reflected in some concluding observations in his report.  For example, Dreyer concludes CSC's caregivers have "negative attitudes, validated by at least 3 care-givers stating that they did not like resident." [35]  However, Dreyer's investigative log does not quote any caregivers who expressly stated he or she did not like plaintiff.  At most, there is only one statement:  Dreyer's September 5, 2005 entry

---

[31]Exh. L at 6-7.

[32]*See* Exh. H at 2.

[33]Available from the National Long Term Care Ombudsman Resource Center at http://www.ltcombudsman.org/ombpublic/49_506_1787.cfm

[34]Exh. H at 2.

[35]Exh. A at 11.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)     Page 12 of 29

which refers to a caregiver's like or dislike of plaintiff.  In the entry, Dreyer writes "[CNA] Lisa doesn't like Helen,"[36] but it is unclear whether this is a quote from Lisa or merely Dreyer's assumption.  If it is only Dreyer's assumption, his log notes and report fail to articulate any basis for his assumption.  Where the log contains another statement that another caregiver "does not like" plaintiff, the statement is not confirmed by the caregiver in question.    Instead, Dreyer simply repeats an allegation made by Carol Winters.[37]

The log simply does not support Dreyer's claim that this dislike was "validated" by three separate caregivers.  Worse, Dreyer affirmatively misattributes a statement made by Carol Winters about her opinion that a particular caregiver not liking plaintiff by attributing the statement to the particular caregiver, and referring to as validation of the staff's negative attitudes toward plaintiff!  Dreyer is certainly entitled to his opinion as to CSC staff members' like or dislike of Winters, but without offering any accurately attributed support, it is hard to see how this opinion is "rationally based on the perception" of Dreyer.    *See* Fed. R. Evid. 701(a).    Thus, Dreyer's opinions are inadmissible.[38]

### C. EVEN IF DREYER'S LETTER IS A PUBLIC RECORD OF FACTUAL FINDINGS WITHIN RULE 803(8)(C), IT SHOULD BE EXCLUDED FOR LACK OF 'TRUSTWORTHINESS'.

If the Court finds that the OLTCO is the kind of governmental investigative body which produces impartial evaluative reports, which is not, there are still ample grounds

---

[36]Exh. D at 4.
[37]*See e.g.* Exh. D at 5 ("**Carol believes** Theresa just doesn't like Helen") (emphasis added).
[38]*See also* Analysis, II, infra.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)        Page 13 of 29

for excluding this report in its entirety.  Under Federal Rule of Evidence 803(8) even factual findings should be excluded where **the sources of information or other circumstances indicate a lack of trustworthiness.**  Fed. R.Evd. 803(8)(C) (emphasis added).

The United States Supreme Court discussed Rule 803(8)(C) in *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 109 S. Ct. 439 (1988).  There, the Court found that fact-based government prepared reports were "broadly admissible." *Beech*, 488 U.S. at 162, 109 S. Ct. at 446.  The Court expressly rejected drawing a distinction between 'facts' and 'opinions,' finding that an inquiry into trustworthiness is the "primary safeguard against unreliable evidence." *Id.* 488 U.S. at 167, 109 S. Ct. at 448.

This safeguard "applies to all elements of the report.  Thus a trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof . . . that she determines to be untrustworthy."  *Id.* 488 U.S. at 167, 109 S. Ct. at 449. Factors which a court should consider in evaluating the "trustworthiness" of a document such as the one at issue include but are not limited to

> (1)  the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held and the level a which conducted; (4) possible motivation problems suggested by *Palmer v. Hoffman*, 318 U.S. 109, 63 S. Ct. 477, 87 L. Ed. 645 (1943).  Others no doubt could be added.

*Id.* citing Fed. R. Evid. 803(8) 28 U.S.C.A. (1975) Notes of the Advisory Committee. (internal citations omitted).  *Palmer* held that reports prepared in anticipation of litigation could not be considered to have been generated "in the ordinary course of business." 318 U.S. at 113-115, 63 S. Ct. 480-481.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)        Page 14 of 29

Even if there is a presumption of trustworthiness attached to fact-based administrative reports,[39] see *Keith v. Volpe*, 858 F.2d 467, 481 (9th Cir. 1988), *cert. den.*, 493 U.S. 813, 110 S. Ct. 61 (1989), CSC can more than meet its burden in rebutting that presumption.   As discussed both in I.A., *supra* and more fully below, Dreyer's letter is clearly based on "sources of information or other circumstances" which "indicate a lack of trustworthiness."   Even if Dreyer's investigation was conducted in a timely fashion, there is evidence of the "possible motivation problems suggested by *Palmer*," [40] and the weighing of the other factors clearly demonstrates the untrustworthiness, and thus inadmissibility, of Dreyer's report.

1.     **Dreyer's Adversarial Role Toward CSC Does Suggest The Report Was Issued With An Eye Toward Litigation.**

At the meeting on January 20, 2006, which was required by AS 47.33.360(c), Dreyer told the participants Carol Winters "was contemplating legal action" and the situation "could get ugly if the media got a hold of it".[41]   Subsequently, Carol Winters sent Dreyer a copy of the media release prepared by plaintiff's attorneys concerning the lawsuit.[42]   Even before plaintiff filed suit, her daughter Carol Winters had sought advice from Mr. Dreyer about how to put pressure on CSC to retract the eviction.[43]   Carol

---

[39]As discussed above, CSC vigorously contests the characterization of Dreyer's report as "fact-based."

[40] Dreyer's bias is clear both from his position and how he conducted the investigation. *See* Analysis, I.B.2., *supra*, but he went beyond his role of advocate for plaintiff.

[41]*See* Exh. D at 8 .

[42]*See* Exh. L at 1-3 (excerpts from Bob Dreyer's file; Doc Nos. 47-49).

[43]Exh. L at 4 (excerpts from Bob Dreyer's file; Doc No. 50).

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)     Page 15 of 29

Winters had also solicited advice and offered suggestions to Dreyer about proving the allegation that CSC's aides "had a lynch mob mentality" regarding plaintiff.[44]

> **2.     Dreyer Has Very Little Experience As An Elder Advocate And Has Not Demonstrated Skillful Execution of His Position.**
>
> **a.     Dreyer Is an Inexperienced and Underqualified Investigator.**

The report on the investigation of the complaints of Helen and Carol Winters was Dreyer's first written report for OLTCO. Exh. B at 72. Robert P. Dreyer was hired to the position of LTCO on or about April, 2005. *See* Dreyer Deposition, attached Exh. B at 7. Prior to his work as an LTCO, Dreyer had no particular experience in elder law, health care, or public advocacy. Exh. B at 24. His previous positions included work as a supply officer in the Air Force, a health and safety officer for a chemical company and an environmental specialist and manager for the Alaska Department of Environmental Conservation.[45] Similarly, prior to his employment at OLTCO, he had no formal education or training on these subjects.[46]

> **b.     Dreyer Did not Follow Appropriate Investigative Procedures.**

As to the investigation itself, while neither Alaska Statutes nor the Alaska Administrative Code offers any guidelines as to the manner in which an LTCO is to conduct there investigation, the National Long Term Care Ombudsman Resource Center does produce a pamphlet of Alaska specific LTCO guidelines.[47]

---

[44]Exh. L at 5 (Doc No. 53).
[45]*See* Exh. B at 52-53; *see also* Dreyer curriculum vitae, attached Exh. C.
[46]*See* Exh. B at 24-32.
[47]*See generally* Exh. F and K.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)          Page 16 of 29

In examining Chapter 7 of the pamphlet, which deals with problem-solving and thus the investigation of complaints, *see* Exh. F, it becomes obvious that Dreyer has ignored some key directives. The guidelines call for "[d]istinguish[ing] facts from someone's opinion, hearsay, characterization or evaluation."[48] There has been little effort to do so in this case. The Winters' statements are simply taken as truth, and anything which is contradictory is either specifically disclaimed, or more commonly simply ignored. The guidelines also call for specification: "It is acceptable to include your personal observations and judgments; however **substantiate these with facts**." *Id.* at 20 (emphasis in original); *see also Id.* at 25 ("**REMINDER** you should never represent something as a fact without verification. . . [verification] is a self-protective device to prevent a too vigorous pursuit of unfounded complaints") (emphasis in original). As discussed at length above, such substantiation and independent verification is woefully absent from the report.

### c. Dreyer Demonstrates a Lack of Knowledge of the Relevant Legalities.

The guidelines indicate that a working knowledge of the laws and regulations applicable to long term care residents is crucial to the performance of the ombudsman's role. *See e.g.* Exh. F at 15. Such an understanding of the underlying regime is critical in providing a framework for any investigation. How is Dreyer to advise residents as to their rights if he doesn't know what they are?

Yet, Dreyer's report demonstrates areas of both ignorance and, worse, affirmative misapprehension of these legalities. For example, following Hendrickson's

---

[48]Exh. F at 18.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)    Page 17 of 29

October 13 notification to Dreyer that Hendrickson had put Winters on notice that she was at risk of eviction, Dreyer opined that Hendrickson "may not be on solid grounds to issue 30 day [eviction] notice.  *See* Exh. A at page 3.  Neither in his report, nor the referenced October 18, 2005 e-mail,[49] does Dreyer provide any support for this conclusory assertion, nor any standards on which to question the accuracy or validity of his judgment.[50]

Dreyer's deposition testimony further demonstrates a lack of even basic knowledge of the statutory and regulatory regime under which he operates.  He is unclear on the distinctions between nursing homes and assisted-living homes.  *See* Exh. B at 10-14.  He admitted general unfamiliarity with relevant law.  *Id.* at 45-46; 56-58.  For determining whether an ALH has sufficient grounds to terminate a resident's contract (a key issue in this case), his understanding is that the statute requires "common sense." *Id.* at 77-80.[51]

---

[49]Exh. E at 7.

[50]Questions as to Dreyer's understanding of the underlying law aside, Fed. R. Evid. 701 requires that such opinion testimony be "rationally based on the perception of the witness." Without any explication on his part, it is difficult to determine upon what rational basis Dreyer came to this conclusion. Such a non-falsifiable conclusion is precisely the sort of testimony which is more likely to confound that enlighten a finder of fact.

[51]AS 47.33.360(a) states:

(a) An assisted living home may not terminate a residential services contract with a resident of the home against the resident's will, except
    (1)  for medical reasons;
    (2)  for engaging in a documented pattern of conduct that is harmful to the resident, other residents, or staff of the home;
    (3)  for violation of the terms of the residential services contract, including failure to pay costs incurred under the contract;

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)    Page 18 of 29

Worse than Dreyer's lack of knowledge of specific statutes and regulations, is the fact that many of the legal conclusions he does make are plainly and clearly erroneous. For example, Dreyer asserts that CSC was "uncooperative" with his investigation in refusing to give him access to patient records from other CSC residents and former residents. *See* Exh. A at 12. However, absent the consent of those persons, CSC had no authority to disclose this information to Dreyer, and indeed *Dreyer had no authority to request them to do so.* *See* AS 47.62.025(b) ("the ombudsman may obtain medical or other records of an older Alaskan who resides in a long term care facility in the state **only with the consent of the older Alaska** or the older Alaskan's legal guardian") (emphasis added). As the accusation of "interference" is based solely on Dreyer's misapprehension of the law, the accusation is far more prejudicial than probative as to the conduct of CSC.

Additionally, Dreyer attempts to transform CSC's prudent record-keeping into evidence of some sort of conspiracy against plaintiff. *See* Exh. A at 11. Absent something more concrete than this speculation, it is difficult to imagine how Winters' voluminous file demonstrates anything more than that she did and does present tremendous difficulties to the CSC staff in caring for both her and the other residents of the facility. The illogic of Dreyer's position is demonstrated by considering a simple

---

(4)    when emergency transfer out of the home is ordered by the resident's physician;

(5)    when the home is closing; or

(6)    when the home can no longer provide or arrange for services in accordance with the resident's needs and the resident's assisted living plan.

Obviously, the legal standard for when an ALH may terminate a resident's contract is much more precisely defined than "common sense".

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)          Page 19 of 29

counterfactual:  if CSC staff *did not* document the problems they encountered in caring for plaintiff, Dreyer would surely have opined that there was no objective basis for any action adverse to Winters.  Both the presence and absence of records in a resident's file cannot be evidence of wrongdoing.   Further, Dreyer himself seems to recognize the silliness of this allegation.  *See* Exh. B at 131-133.[52]  Dreyer also all but admits his error in accusing CSC of wrongdoing in delivering a copy of the termination notice directly to Helen Winters. *Id.* at 121.

Finally, Dreyer views a meeting on January 20, 2006 as evidence of a verbal and mental abuse against Winters.  Exh. A at 5-6.  It is difficult to see how he came to this conclusion from even his own investigative notes.   If the "indications" of abuse are simply Helen and Carol Winters repeating their allegations, this represents the same circular logic that pervades the bulk of the report.  To the extent that Dreyer viewed the meeting itself as abusive, this is clearly an error on his part. CSC was required by statute to participate in this meeting.  *See* AS 47.33.360(c).

Considering that his position requires an expertise in the rules and regulations governing the treatment of residents in long term care facilities, such a lack of

---

[52]"Q: Do you agree that an [ALH] . . . should put things that they think are important on a resident's care…
A: I agree.
Q: In the…
A: Uh-huh. (Affirmative)
Q: File?
A: I agree…

. . .

Q: Isn't a possible explanation for that that there were all those things that happened and…
A: That's poss…
Q: The comments were accurate?
A: Yes, that's possible."

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)        Page 20 of 29

understanding is mystifying. This gap in knowledge, while perhaps not dispositive, is certainly indicative of the lack of skill and/or relevant expertise employed in producing the report. Further an examination of Dreyer's findings themselves, when compared with the contemporaneously created investigative log, calls question into the skill with which he performed his duties.[53]

### 3.    No Hearing Was Conducted.

Dreyer's report is based solely on informal interviews with various individuals as well as recollections of several meetings.[54] "The lack of formal procedures and an opportunity to cross-examine witnesses are proper factors in determining the trustworthiness of the [administrative] finding."[55] *Denny v. Hutchison Sales Corp.*, 649 F.2d 816 (10th Cir. 1981)(holding that EEOC report based on ex parte investigation was properly excluded).

As noted in *Denny*, courts have not held that hearings are a necessity for admissibility of such reports, 649 F.2d at 821, so the absence of a hearing in this case

---

[53]CSC recognizes that the truth or falsity of Dreyer's conclusion is not directly at issue in this motion. *See e.g. Daubert v. Merril Dow Pharm., Inc.*, 509 U.S. 579, 596, 113 S. Ct. 2786, 2798 (1993)("Vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means for attacking shaky yet admissible evidence.") However, the extent to which Dreyer's findings and conclusions are not supported by his own record of the investigation is relevant in determining both the skill with which he performed his investigation and even whether the report can be considered "fact-based" at all.

[54]Dreyer's recollections and evaluations of such meetings are questionable because often times he did not take contemporaneous notes, and instead recorded his recollections a day or more after the interview or meeting in question. *See* Exh. B at 64-65.

[55]This lack of opportunity to cross-examine references the proceedings in an agency investigation rather than a resulting lawsuit where admission of the report is sought. As applied to this case, CSC had no opportunity to ask its own questions of those interviewed by Dreyer for the purposes of his consideration.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)    Page 21 of 29

is not, on its own, dispositive.  However, more formal proceedings would have gone a long way towards curing the inherent unreliability of informal statements made by interested witnesses and parties which form the basis of the report.  *See Gillin*, 479 F.2d at 99 (holding inadmissible an investigative file containing a "mish-mash of self-serving and hearsay statements").  Further, more objective proceedings would serve to mitigate Dreyer's one-sided reliance on the hearsay statements of the Winters by at least allowing CSC formal access to the investigation.

### 4.     Other Factors.

The four factors listed in *Beech* were not meant to be exclusive.  *See Beech*, 488 U.S. at 167, 109 S. Ct. at 449.  The lack of impartiality of the investigator is certainly among the "other factors" that should be considered when analyzing the trustworthiness of a report.  "[A] report may be untrustworthy if the report appears to have been made subject to a suspect motivation.  For example, if the public official or body who prepared the report has an institutional or political bias, and the final report is consistent with that bias."  *Coleman v. Home Depot*, 306 F.3d 1333, 1342 (3d Cir. 2002) (internal quotation omitted.)

Dreyer's institutional and personal bias have already been discussed at length above, so CSC will simply reiterate that discussion as it applies to the trustworthiness of Dreyer's report.  CSC submits that this demonstrable bias, combined with the lack of hearings and Dreyer's lack of experience and skill eliminates any presumption of trustworthiness which might attach to a government record.  Since the OLTCO has a demonstrable, in fact mandatory, bias, and Dreyer's report is consistent with that bias, the report should be excluded under Fed. R. Evid. 803(8)(C).

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)          Page 22 of 29

### D.    THE REPORT IS INADMISSIBLE AS IRRELEVANT AND/OR UNDULY PREJUDICIAL.

In discussing the "public records exception" contained in Fed. R. Evid. 803(8), the U.S. Supreme Court noted that "safeguards built into other portions of the Federal Rules, **such as those dealing with relevance and prejudice**, provide the court with additional means of scrutinizing and, where appropriate, excluding evaluative reports or portions of them." *Beech*, 488 U.S. at 167-168, 109 S. Ct. at 449 (emphasis added). Thus, even if Dreyer's report is somehow found trustworthy under Rule 803(8)(C), much of it should still be excluded as either irrelevant or unduly prejudicial under Fed. R. Evid. 403. *See Gibson v. County of Riverside*, 181 F.Supp.2d 1057, 1070-1071 (C.D. Ca. 2002)(applying Rule 403 to public record also found untrustworthy under Rule 803(8)(C)).

Certainly, the sections of Dreyer's report discussing the Wickersham facility are irrelevant to the issues in this case. In an apparent effort to impugn the credibility of the CSC staff and specifically Linda Hendrickson, Dreyer discusses incidents and policies at a facility not even operated by CSC to imply similar wrongdoing by CSC. *See e.g.* Exh. A at 11-12 points 2 and 3. Public comments by Winters' counsel indicate that this prejudice is precisely the purpose for which the report will be used. *See* Exh. H at 2 ("Davis said his case may be further strengthened by the report's revelation that Hendrickson also operates a state-license assisted living home, the Wickersham House in Wasilla.").

Whether the court deems this to be evidence of alleged "prior bad acts" disallowed under Rule 404(b), not based on matters within Dreyer's personal knowledge

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)        Page 23 of 29

under Rule 603, or simply not probative on any material issue in this case, and inadmissible under Rule 402, there is ample basis for excluding these statements from evidence.

Dreyer's report is also likely to be unduly prejudicial to the fact finder.  *See Denny*, 649 P.2d at 822 (finding that where there was little probative value to investigators opinion on ultimate issues combined with "real possibility that the jury would give undue deference to such evidence," such testimony was rightly excluded) (citation omitted); *see also* Fed. R. Evid. 403 (unduly prejudicial testimony is inadmissible).  Dreyer's position as a governmental investigator will likely cause the finder of fact to give undue weight to his conclusions given the shoddy basis for those conclusions.

### 1.    Unsupported Assumptions and Clear Omissions Obscure Rather than Illuminate the Factual Record.

CSC recognizes that an exclusionary motion is not the proper forum to attack the substantive findings of Dreyer's report.  However, at a certain point the 'findings' become so divorced from the underlying investigative record that the report can no longer accurately be described as fact-based.  CSC contends that Dreyer's report falls into this category.  While CSC vigorously contests Dreyer's substantive findings, the errors, omissions and spin detailed above are sufficient to call into question the probative value of any conclusions stemming from such a slipshod investigation.

### 2.    The Report Contains Inadmissible and Erroneous Conclusions of Law.

At least one court applying Rule 803(8)(C) has found that portions of an otherwise admissible report which contain such legal conclusions are properly

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)          Page 24 of 29

excludable.  *See Hines v. Brandon Steel Decks*, 886 F.2d 299, 303 (11th Cir. 1989).

The rationale of the *Hines* court is instructive:

> Legal conclusions are inadmissible because the jury would
> have no way of knowing whether the preparer of the report
> was cognizant of the requirements underlying the legal
> conclusion, and, if not, whether the prepared might have a
> higher or lower standard than the law requires.

*Id.*  In some instances, Dreyer fails to demonstrate any knowledge of the underlying

legal standards.   In others he makes *affirmative misstatements* of those standards.

CSC submits that these absences and errors render Dreyer's legal conclusions

precisely the sort of misdirection with which the court in *Hines* was concerned.

As discussed above,[56] in at least four instances of Dreyer making a "legal"

conclusion, he is either not cognizant or is simply mistaken as to the relevant legal rules

and standards.

### 3.      Dreyer Has Little or No First-Hand Knowledge of the Events Discussed.

Dreyer did not personally witness any alleged abuse of Helen Winters by CSC

staff.  *See* Exh. B at 90.  Despite this, he repeatedly concludes that various CSC staff

"did not like" Winters.  (For example, see the discussion of staff member "Lisa." Exh. A

at 3; Exh. D at 4.)   However, his conclusions rarely, if ever, are the result of direct

quotations from the staff members. Rather they represent Dreyer's impressions.  To the

doubtful extent these impressions are admissible in this case,[57]  Dreyer is fully capable

---

[56]*See* Analysis, I.C.2.c., *supra*.

[57]There is nothing in Dreyer's report or investigative file that indicates he has personal
knowledge of actions of staff members showing dislike of or disrespect to Ms. Winters.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)          Page 25 of 29

of testifying to that effect in person.    Courts have indicated a preference for live testimony over investigative files where the file contains a "mish-mash of self-serving and hearsay statements and records[.]"    *Gillin v. Federal Paper Board Co.*, 479 F.2d 97, 99 (2d Cir. 1973)(holding EEOC investigative file inadmissible) (internal quotation omitted).    In such cases, "justice requires that the testimony of the witnesses be given in open court, under oath, and subject to cross-examination."    *Id.*

### 4.    Dreyer's Report is More Likely To Confuse Than to Assist the Jury.

Dreyer's inexact use of language will cause the jury to read far more into his report than is warranted.    As discussed above, Dreyer used the term "validate" in a counter-intuitive and quite possibly misleading manner.    Typically, one would expect "validate" in this context to mean something along the lines of "independent confirmation or verification."    Dreyer himself recognizes that a complaint cannot be validated based on the statements of the complainant.    *See* Exh. B at 115.    Yet, Dreyer's report and investigative log frequently use "validate" in just this manner.    Additionally, where Dreyer remarks that there is an "indication" of some form of wrongdoing or violation on the part of CSC, he does not mean that he has actually seen or heard evidence of that wrongdoing, merely that in his opinion the incident "could have happened."    Exh. B at 116-117.    Dreyer's inexact and misleading use of these terms are likely to lead jurors to draw stronger conclusions than are warranted given the actual facts developed by Dreyer's report.    This probability of confusion is precisely the problem sought to be prevented by Fed. R. Evid. 403.    *See also Denny*, 649 P.2d at 822 (finding that where

His assertions are based either on his own speculation or hearsay statements of Ms. Winters herself. In neither instance would this testimony be admissible.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)          Page 26 of 29

there was little probative value to investigators opinion on ultimate issues combined with "real possibility that the jury would give undue deference to such evidence," such testimony was rightly excluded) (citation omitted).

## II.    DREYER'S OPINION TESTIMONY IS INADMISSIBLE.

Any testimony from Dreyer on matters outside of his personal knowledge is inadmissible for the reasons listed in the discussion of his report and log. *See* I.A, *supra.* Any recitation of conversations he had during the course of his investigation is pure hearsay. *See* Fed. R. Evid. 801 (C); Fed R. Evid. 802. This testimony is not within the scope of any exception to the hearsay rule, as it is not even arguably based on a business or government record under Fed. R. Evid. 803 (6) or (8).[58]

Further, Dreyer should not be permitted to offer opinion testimony. He has not been designated as an expert witness under Fed. R. Evid. 702. Nor could he be so designated as his testimony would not be scientific or technical in nature, *Id.*, and he lacks the requisite experience or expertise to be considered an expert on these matters. *See Kumho Tire Co., Ltd. V. Carmichael*, 536 U.S. 137, 150, 119 S. Ct. 1167, 1175 (1999) (all expert testimony is subject to "gatekeeping" inquiry set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), including testimony based on experience and observation rather than scientific study or analysis). As defendant has demonstrated,[59] Dreyer was not an experienced investigator of ALH's. *See* Exhibit B at 72. Further, he had little or no training in investigation, health care or

---

[58]CSC reiterates its position that Dreyer's report and log are not admissible under the government records exception. *See generally* Analysis, I, *supra.* The arguments and authorities discussed previously apply with even greater force to non-contemporaneous in-court testimony.

[59]*See* I.C.2, *supra.*

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)        Page 27 of 29

elder law, and no practical experience in these fields prior to his employment at OLTCO. *See* Exhibit B at 24-32, 52-53; Exhibit C. Defendant has also demonstrated[60] that Dreyer did not "apply the principles and methods" of LTCO investigation "to the facts of this case. Fed. R. Evid. 702.

Finally, Dreyer's testimony should not be accepted as "lay opinion" testimony under Fed. R. Evid. 701.  As previously set forth in detail above,[61] Dreyer's conclusions or opinions are purely speculative and not "rationally based on the perception of the witness."    *Id.*    Dreyer's own report and investigative log repeatedly substitute the statements, allegations and opinions of Carol and Helen Winters for any independent verification or investigation by Dreyer.  Therefore, his testimony would not be "helpful to a clear understanding of [his] testimony or the determination of a fact in issue."  *Id.*  For reasons discussed more fully above,[62] Dreyer's statements are more likely obscure than illuminate the facts at issue.

## CONCLUSION

Dreyer's August 30, 2006 report, investigative log and opinion testimony are products of numerous instances and multiple levels of hearsay.  The report itself is not a fact-based investigative report admissible under Fed. R. Evid. 803(8)(C).  Alternatively, the report lacks the "indicia of trustworthiness" necessary for the admission of such a report.   Finally, the report, investigative log and Dreyer's opinions are properly excludable under numerous other evidentiary rules concerning relevance, prejudice and lack of personal knowledge by the witness.  For the foregoing reasons, CSC's motion to

---

[60] *See* I.C.2.b, s*upra*.
[61] *See* I.B.2, *supra*.
[62] *See* I.D, *supra*.

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)        Page 28 of 29

exclude Dreyer's report, log or file notes and opinion testimony from evidence should be granted.

DATED at Anchorage, Alaska, this 19th day of December, 2006.

DELANEY WILES, INC.
Attorneys for Chugiak Senior Citizens, Inc.

s/Donna M. Meyers and Clay A. Young
Delaney Wiles, Inc.
1007 W. Third Avenue, Suite 400
Anchorage, Alaska  99501
Phone:  907-279-3581/Fax:  907-277-1331
E-mail:      dmm@delaneywiles.com
E-mail:      cay@delaneywiles.com
Alaska Bar Assoc. No. 9006011 (DMM)
Alaska Bar Assoc. No. 7410117 (CAY)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th
day of December, 2006, a copy of
the above was served electronically on:

Jim Davis/Barbara Brink/
Nikole Nelson/Sonja Kerr
Alaska Legal Services Corporation
1016 West 6th Avenue, Suite 200
Anchorage, Alaska   99501

s/Donna M. Meyers and Clay A. Young
(125558)

Defendant Chugiak Senior Citizens, Inc.'s Motion *in Limine* No. 5
To Exclude 8/30/06 Report of Robert P. Dreyer, His Files, And His
Testimony At Trial
Winters v. Chugiak Senior Citizens, Inc./Case No. 3:06-cv-0083 (TMB)          Page 29 of 29