# STATE OF ALASKA

**OFFICE OF THE LONG TERM CARE OMBUDSMAN**

FRANK H. MURKOWSKI, GOVERNOR

3745 Community Park Loop, Ste 200
Anchorage, AK 99508
PHONE: (907) 334-4480
FAX: (907) 334-4486

August 30, 2006

Linda Hendrickson, Director
Chugiak Senior Citizens, Inc.
22424 N. Birchwood Loop
Chugiak, AK 99577

**Certified Mail RRR**
7004 1160 0002 0764 9357

RE: Chugiak Assisted Living Home
Case No. LT-01-200500061

Dear Ms. Hendrickson,

On July 9th, 2005, the Office of the Long Term Care Ombudsman, hereinafter "OLTCO," received a complaint against Chugiak Assisted Living Home, a licensed assisted living home in Chugiak. The OLTCO conducted an investigation of these allegations and the results of that investigation are set out in the attached Report of Investigation.

We did substantiate allegations that affected a resident's rights and quality of life and have set out recommendation for correction in the attached report, including requesting the Department of Health and Social Services, Division of Public Health, Certification and Licensing Unit issue a Notice of Violation consistent with the findings in this report of investigation.

Please be advised our office may continue to monitor this home. Our case on this matter is now closed.

Sincerely,

Robert P. Dreyer
Long Term Care Ombudsman

Cc: State of Alaska, DHSS, Division of Public Health, Certification and Licensing
State of Alaska, DHSS, Division of Senior and Disabilities Services, Adult Protection Services
Municipality of Anchorage, Department of Health and Social Services
Complaintant(s)

EXHIBIT A
Page 1 of 16

# REPORT OF INVESTIGATION

Case No. LT-01-200500061

August 30, 2006

**STATE OF ALASKA**
Office of the Long Term Care Ombudsman
3745 Community Park Loop
Anchorage AK 99508
TEL (907) 334-4480
TOLL FREE 1-800-730-6393
FAX (907) 334-4486

EXHIBIT A
Page 2 of 16

# REPORT OF INVESTIGATION

The Office of the Long Term Care Ombudsman, OLTCO, State of Alaska, is charged with investigating and resolving complaints made by or on behalf of older Alaskans who reside in long term care facilities in the state if the complaint relates to a decision, action, or failure to act, by a provider or a representative of a provider of long term care services, or by a public agency or social services agency, that may adversely affect the health, safety, welfare or rights of the older Alaskans. (See AS 47.62.015).

On July 8th, 2005 the OLTCO received a complaint against the Chugiak Senior Citizens' Inc.-Assisted Living Home, a licensed assisted living home located at 22424 N. Birchwood Loop, Chugiak, Alaska 99567. Pursuant to the above cited statute, the OLTCO conducted an investigation. The allegations, along with our findings and recommendations, are set out herein.

## Findings & Recommendations

**Initial Complaint:** The complainant stated the resident is being "verbally and mentally abused" by staff at Chugiak Senior Citizens', Inc Assisted Living Home (hereafter referred to as "the Home") and is "not being treated with respect and dignity". Staff complains and tells resident that she is too "fussy". Other residents complain that she is too "picky" because she can't eat normal foods. Staff serve resident last during meals and take her out of dining room last as well. Complainant states it seems staff conspire to ostracize resident and that long term staff turn new staff against resident. Resident believes she is left on toilet too long as a form of punishment. Resident is fearful to speak up. When resident declined a shower one day and requested it the next, she was refused by staff saying "you had your chance and didn't take it." Resident is to have 2 baths per week and didn't get one until a week later. Resident also complains about being forced to go to bed early. The complainant stated the resident is not offered a choice in meals that are compatible with her health needs. Prior to admission to the Home, the admission coordinator assured resident that the Home would provide a substitute choice at each meal. Resident needs low salt diet due to hypertension. Other residents state she is too fussy as she can't eat "normal" foods and have dubbed her "The Queen". The complainant stated that residents and staff smoke outside the building near the entrance to the building and that in the summer the back door is propped open without any screen to keep mosquitoes or bears out of the home. Administrator has stated resident is not a good fit and staff and resident don't get along, however resident wants to stay.

**Allegation No. 1:** The complainant stated the resident is being "verbally and mentally abused" by staff at Chugiak Senior Citizens', Inc Assisted Living Home

1



EXHIBIT A
Page 3 of 16

(hereafter referred to as "the Home") and is "not being treated with respect and dignity". Staff complains and tells resident that she is too "fussy". Other residents complain that she is too "picky" because she can't eat normal foods. Staff serve resident last during meals and take her out of dining room last as well. Complainant states it seems staff conspire to ostracize resident and that long term staff turn new staff against resident. Resident believes she is left on toilet too long as a form of punishment. Resident is fearful to speak up. When resident declined a shower one day and requested it the next, she was refused by staff saying "you had your chance and didn't take it." Resident is to have 2 baths per week and didn't get one until a week later. Resident also complains about being forced to go to bed early.

**Findings:** On July 15, 2005 I met with the resident, the complainant, the Director of Chugiak Senior Citizens, Inc. (LindaH), the Program Manager of Chugiak Assisted Living (MarlaN) and the Care Coordinator for the resident. The Director of Chugiak Senior Citizens, Inc. (LindaH) acknowledged there had been a history of strife between the resident and her staff and that her staff complained about taking care of resident. Resident stated she wanted her diapers placed in an overlapping manner on her couch on which she sleeps, so urine would not leak through. She also wanted her diapers placed in an orderly manner when stored. She also stated the staff did not appear professional with their hats on backward. Resident also stated that staff tries to put her to bed early.

On July 29th, 2005 I met with the resident, the complainant, and the Program Manager for Chugiak Assisted Living (MarlaN). Resident stated she was still having a problem with care-giver "Tom" and that he seems too abrupt or curt with her. *{Indication of Lack of Respect and Dignity toward Elder}*

On August 10th, 2005 I received an allegation from the complainant that staff member "Lisa" was being insensitive with resident while putting on resident's "Ted Hose" and pulled them too tight and that staff insisted resident put on her own hose. (I verified this later with conversation with staff member "Lisa" who stated she and the staff decided the resident could do this herself, even though resident has a bad right arm and little strength in her left arm. I also validated the incident with the resident later).

On September 5, 2005 I met with staff member "Lisa" who stated the resident is difficult to work with as she is "fussy". Staff member "Lisa" confirmed that she and staff were trying to have resident put on her own hose. "Lisa" stated that resident eats alone because no one likes her. "Lisa" stated she has to leave the room when taking care of resident so "Lisa" can settle down as she conflicts with resident. It was apparent during this meeting that "Lisa" does not like the resident. *{Indication of Lack of Respect and Dignity toward Elder}*

On September 7, 2005 I met with staff member "Fred". "Fred" stated he gets along well with resident but that resident is particular and set in her ways, but is

2

EXHIBIT A
Page 4 of 16

gradually adjusting to living in an assisted living home. Toileting was a problem, but recently they have begun toileting her at night and that's working well. "Fred" said resident has favorites that she dines with but does stay in her room for the most part. She does have one friend, a fellow resident, who that comes by her room to visit.

On October 13, 2005 I received email from the Director, Chugiak Senior Citizens' Inc. (LindaH) that she had drafted a letter that if resident doesn't stop abusive behavior toward staff she will be given a 30 day eviction notice. Purportedly, resident accused staff of not liking her and not doing what she wanted. Resident denied any abusive behavior toward staff.

On October 14, 2005 I received a allegation from the complainant that staff member "Lisa" refused to help put on resident's "Ted Hose" and began yelling at her. Resident yelled back. (I later validated the incident with the resident). {Indication of Lack of Respect and Dignity toward Elder}

On October 18, 2005 I sent an email to Director, Chugiak Senior Citizens', Inc. (LH) stating I wasn't convinced staff was trying hard enough to accommodate the resident's needs and that Director may not be on solid grounds to issue 30 day notice.

On October 19, 2005 I received an email from the Director, Chugiak Senior Citizen's, Inc. (LH) disagreeing with my assessment that staff is not trying hard enough and that she does not have grounds for 30 day notice. Director stated she has had grounds for some time and has lots of documentation to build her case, but if resident's behavior continues she will issue a 30 day eviction notice.

On November 4, 2005 I received a phone call from the complainant expressing her concern that staff members "Theresa" and "Lisa" may be intentionally trying to hurt the resident when they put on her "Ted Hose" and that a couple of days ago, "Lisa" told the resident in front of several people at dinner time that "you are not a nice person." (I later validated the comment made by "Lisa" with the resident during a visit). {Indication of Verbal and Mental Abuse and Lack of Dignity and Respect toward Elder}

On December 9, 2005 I received a phone call from the complainant that staff member "Theresa" told the resident "she was not a good person". Also, the previous night "Theresa" threw a couple of the resident's "Depends" on the floor and then expected the resident to wear them. (Both incidents were validated with the resident during a later visit). {Indication of Verbal and Mental Abuse and Lack of Dignity and Respect toward Elder}

On December 20, 2005 I received and email from the Director, Chugiak Senior Citizens', Inc. (LindaH) that the resident had slapped a staff member the prior weekend.

3

EXHIBIT A
Page 5 of 16

On December 23, 2005 I visited the resident concerning the slapping allegation. The resident denied doing so and stated she may have grabbed staff member "Terri" as she thought she was going to fall. Resident also stated staff member "Sheila" yelled at her. I also spoke to a nurse and three other staff members concerning caring for the resident. All stated that the resident was somewhat difficult to care for but was not the most difficult of all the residents. They stated they have no full assists. *{Indication of Verbal and Mental Abuse}*

On December 24, 2005 I received a phone call from the resident complaining that staff members "Terri with the blond braid" and "Tom" treated her "terribly" today. Resident also stated there was a problem concerning taking religious communion earlier than normal. *{Indication of Lack of Dignity and Respect toward Elder}*

On December 30, 2005 I conducted meetings with three staff members individually, "Sheila", "Terri" and "Tom", concerning the purported slapping incident involving the resident. "Sheila" stated that the resident got upset with her and "Terri" when they tried to move her toward the dining room. "Sheila" stated the resident stated she did not want "Sheila" to move her but rather "Terri". "Sheila" stated the resident got upset and slapped "Terri"'s hand. "Sheila" further stated that she has done care-giving for over 20 years and that the resident doesn't like her and she doesn't like the resident either so there is a conflict. "Shelia" stated the resident yells at her and "Sheila" tells her to be quiet and leaves the room until she does. "Terri" said she was surprised about the incident but likewise the resident seemed surprised the incident happened as well. "Terri" stated she thought of the incident as "no big deal" and had essentially forgotten about it. She said this is her first job as a caregiver. "Tom" stated that he and the resident don't get along. He stated the resident yells at him and he doesn't put up with it stating "this job doesn't pay enough for her to yell at me. She's lucky to be here, she doesn't know how good she has it here." "Tom" further made a statement that "this is an independent living home not an assisted living home." I discussed the resident's lack of good hearing ability but both "Sheila" and "Tom" thought it was only selective hearing. *{Indication based on Tom's comments of Lack of Dignity and Respect toward Elder}*

On January 6, 2006 I received a phone call for the complainant that the resident directly received a letter of eviction today as a result of the slapping incident. The home claimed the resident is a threat to staff.

On January 7, 2006 I met with the complainant who informed me that the resident was taken by ambulance the previous night (the day of the eviction letter presentation to the resident herself) to the hospital due to very high blood pressure (220/113). The complainant was called by the Chugiak Assisted Living nurse the night of the resident's high blood pressure readings. The complainant

4

EXHIBIT A
Page 6 of 16

met the resident at the Emergency Room and was also admitted herself as the incident also elevated her own blood pressure. The complainant questioned the home's judgment in giving the eviction letter directly to the resident when the staff knows that the resident has hypertension and a general anxiety disorder and the complainant is the resident's Power of Attorney. The complainant also stated the home has made the resident's stay miserable almost from the beginning. Nobody welcomed the resident when she first arrived. The complainant also related a recent incident that previously had been mentioned to me by the resident, that when the resident was in the dining room, she had requested to be taken to her room because she was going to have a bowel movement. The staff refused her request. The complainant also related what the resident had told her that precipitated the slapping incident: that "Sheila" didn't wash the resident's hair long enough and the resident told "Sheila" she was going too fast and to slow down. "Shelia" became upset. "Sheila" started putting the towels away and the resident told her to do it differently. "Shelia" became upset again and wouldn't blow dry the resident's hair. The complainant expressed concern the staff has been intentionally baiting the resident to create an outburst like the slapping incident. Also, the complainant expressed concern that she has observed two other residents often giving the staff a hard time, but they are not being evicted. (I validated the dining room incident and the hair washing incident with the resident in a subsequent visit). *{Indications of Verbal and Mental Abuse and Lack of Dignity and Respect toward Elder}*

On January 9, 2006 I met with the Chugiak Senior Citizens', Inc. Assisted Living Home Admininstrator, (JanF), and the resident's Care Coordinator concerning the eviction letter. JanF stated the resident is a difficult resident and requires heavier care than others. JanF, made an off-handed statement that in past they have been able to "get rid of" of heavy care residents. She immediately retracted that comment. When asked about the operation of the Assisted Living portion of the Chugiak Senior Citizens', Inc. JanF stated they have 12 Program Assistants, some of whom are CNAs ("Lisa" and "Sheila" were mentioned specifically). Each new employee receives 80 hours of on-the-job-training on both night and day shifts. They hire people with no caregiving experience or training. I stated I had learned that at least 3 Program Assistants did not like the resident in question. I asked JanF if she was familiar with the resident and her needs. JanF knew some background but was unfamiliar that resident had a letter from her doctor that she had an anxiety disorder. JanF also didn't know the personal history of the resident that probably caused her to be a "fussy" person and her recent fear of dying in December like her close relatives that may have cause a purported slapping incident. I also mentioned the resident is in chronic pain but is unable to take medication for it.

On January 20, 2006 I met with the resident, the complainant, the Director, Chugiak Senior Citizens, Inc. (LindaH), the Assisted Living Home Administrator (JanF), the Assisted Living Home Program Manager (MarlaN), the attorney for Chugiak Senior Citizens, Inc, (DonnaM), the President of the Board of Directors,

5

EXHIBIT A
Page 7 of 16

Chugiak Senior Citizens, Inc (ChrisI), the resident's Care Coordinator, a deacon from the local Catholic Church and a friend and co-worker (Kevin) of the complainant. Various issues came up during the meeting concerning the resident's care and problems with staff. I stated that though the resident is viewed as a heavy care resident by the staff, she is really only average or below average of what I normally see in my visits in assisted living homes around the state. Towards the end of the meeting, the resident asked to speak. She stated she didn't understand why she is being evicted. She loves it there and some of the staff are fine but others don't treat her well and yell back and say "don't tell me what to do." She said she doesn't bother anyone, just sits in her room except to come out to eat. She keeps her room neat. She didn't understand why two other residents who yell at staff but aren't being evicted. She said if she had to move she didn't think she would "make it". {Indication of Mental and Verbal Abuse}

On January 20, 2006 I met with LindaH, DonnaM and ChrisI immediately after the above meeting. LindaH wanted to present her side of the issue. She stated she had staff complain about the resident and sometimes come to her in tears. She said she is concerned about losing staff. I expressed my concern to her about two of her employees, "Tom" and "Lisa" and that both of them and "Sheila" had stated to me they didn't like the resident. I understood her allegiance to her staff but her main mission is the care of the elders.

It is the opinion of the OLTCO that this resident, based on the preponderance of the evidence, has been both "verbally and mentally abused" and "not treated with respect and dignity" by the staff of the Chugiak Senior Citizens', Inc. Assisted Living Home and thus the Home has appeared to violate AS 47.33.330 and AS 47.33.350. The historical trend of the treatment of the resident by various staff members shows a lack of understanding and adequate training of the needs of this resident and elderly people in general:

    a. staff are abrupt with resident in July,
    b. were insensitive when performing care in August,
    c. don't accept resident's wishes to have her home in a certain order in September,
    d. alleged other residents don't like the resident in September,
    e. refused to assist resident in dressing in October,
    f. insensitive when performing care in November,
    g. demeaned resident in December,
    h. were insensitive when performing care in December,
    i. caused mental anguish by threatening resident with eviction July 05-January 06,
    j. caused mental trauma leading to hospitalization by issuing letter of eviction directly to resident rather than Power of Attorney in January,

k. refused to provide care when resident needed to attend to bodily functions in January, and
l. were insensitive in performing personal care in January

**Recommendations:** The OLTCO recommends the Department of Public Health, Assisted Living Licensing, consider issuing a Notice of Violation consistent with these findings. The staff of Chugiak Senior Citizens' Assisted Living must refrain from actions that can be construed as mental and verbal abuse and failure to render the respect and dignity deserved by elders. Derogatory and demeaning comments can have a "chilling effect" on residents. Other actions or lack of actions (such as failure to toilet when requested) can be interpreted as retaliation against the resident. Staff, both seasoned and new, caregivers as well as manager/administrators, should receive organized instruction on elder rights and abuse and especially what elders themselves see as abuse. This office is willing to conduct short classes on this subject with all staff at the home's convenience.

**Allegation No. 2:** The complainant stated the resident is not offered a choice in meals that are compatible with her health needs. Prior to admission to the Home, the admission coordinator assured resident that the Home would provide a substitute choice at each meal. Resident needs low salt diet due to hypertension. Other residents state she is too fussy as she can't eat "normal" foods and have dubbed her "The Queen".

**Findings:** On July 15, 2005 I visited with the resident concerning her meal preferences and requirements for health related reasons. The resident stated she needs a low salt diet due to high blood pressure, heart murmur and is allergic to milk. She has not eaten pork or beef for over 20 years as the pork is too salty and the beef is too high in cholesterol. She stated that often the food, especially the soup, is too salty. The complainant had stated previously that she purchases low salt TV dinners and Lactaid and brings them to the resident. I queried the resident what she ate as an alternative when the Home provided beef or pork. She stated normally a cold sandwich. She produced a menu provided by the Home which in fact showed one main entrée. The alternate selection was a cold sandwich. *{Indications of failure to provide therapeutic meals consistent with health related restrictions of the resident and to consider the resident's preference for food}*.

On July 15, 2005 a meeting was held between the Director, Chugiak Senior Citizens', Assisted Living Home (LindaH); the Program Manager of the Home and the resident's Care Coordinator. I discussed the need to meet the resident's need for non-beef and non-pork meals. LindaH stated they don't take people who have special dietary needs prescribed by a doctor. I suggested the Home cook two entrees at meals. LindaH stated they provide an alternative selection. I pointed out the menu only listed a sandwich as an alternative choice. LindaH was

resistant to the idea of a second entrée. I again pointed out that preparing a second entrée as choice for the residents would not be difficult. She stated she would discuss it with the cook.

On July 29, 2005 I had a meeting with the resident, complainant, and the Program Manager (MarlaN) of the Home. I asked MarlaN if LindaH had considered offering two entrees for dinner. MarlaN stated she didn't think LindaH had addressed the issue. After the meeting I went to the kitchen and met briefly with the head cook (Donna?). I asked her to consider making two entrées for the residents so the residents would have a choice of another warm entrée rather than a cold sandwich. She said she was relatively new and it has taken her awhile to come up with the menu, but would consider it. It would have to be approved by management. She also stated she had to make a lot of "Meals on Wheels" meals and that may prevent her doing so.

On September 1, 2005 I visited the resident to check on her well-being. While there the complainant called and queried if any progress had been made on meal selection. She stated the soup still was awfully salty.

On September 7, 2005 I met with CNA "Fred" who confirmed that complainant brings in TV dinners to give her a choice when beef and pork entrees are served at meals.

It is the opinion of the OLTCO that Chugiak Senior Citizens', Inc has not appeared to comply with AS 47.33.220 in that it did not consider the resident's preference for food and AS 47.33.300 and 7 AAC 75.265 by not providing therapeutic meals that are consistent with health related restrictions of the resident.

Recommendations: The OLTCO recommends the Department of Public Health, Assisted Living Licensing, consider issuing a Notice of Violation consistent with these findings. Chugiak Senior Citizens', Inc. Assisted Living Home must begin offering a second choice entrée for its residents. The same number of entrees can be made, i.e. for 20 residents the cook could prepare 10 beef entrees and 10 fish entrees or 10 pork and 10 chicken meals as an example. Choices would be offered until one entrée ran out. Also, steps should be taken to counter allegations by other residents that this resident is too "fussy" or is a "queen" because she is unable to eat certain foods. These comments can have a "chilling affect" on a resident's fear to "speak up" to correct issues affecting them.

Allegation No. 3: The complainant stated that residents and staff smoke outside the building near the entrance to the building and that in the summer the back door is propped open without any screen to keep mosquitoes or bears out of the home.

**Findings:** During most visits made by the OLTCO, it was noted that the entrance doors were not propped open. However, on August 21, 2006, early evening, I happened to drive by the Home and noted the left outside entrance door was propped open with a blue chair. The interior "Arctic entrance door" was also open. There was no staff to be seen. Again, on August 29, 2006 at 9:30 PM I noted both outside doors and both interior "Arctic entrance doors" were wide open. No staff or other persons were to be seen. Again, on August 30, 2006 at 11:30 AM I noted both interior "Arctic entrance doors" were wide open. No staff or other persons were to be seen. These open doors could allow bears or other wildlife to easily enter the building threatening the safety of the residents in violation of AS 47.33.300 ensuring residents have the right to live in a safe environment. There was no evidence of smoke wafting into the Home. Nor was there any evidence of insects entering the building from the outside. *{Indications the Chugiak Assisted Living Home is not providing a safe living environment for its residents}.*

**Recommendations:** The OLTCO recommends that Chugiak Assisted Living always keep outside entrance doors closed or install security-rated screen doors to prevent wildlife from entering the Home to ensure the safety of the residents.

**Other observations:**
During the course of the investigation the following observations were made:

**Allegation No. 4:** The resident was deprived/restricted from practicing her religious beliefs.

On December 24, 2005 I received a phone call from the resident complaining that care-giver "Tom" has treated her "terribly". Resident stated "Tom" spoke to her awful because she wanted her food 5 minutes earlier so she could take Holy Communion (Eucharist). She stated communion was going to be offered sooner than normal and she needed to fast 1 hour after eating so she could take communion. *{Indication of Preventing Practice of Religious Beliefs}*

On December 27, 2005 the complainant called and stated resident had been treated with disrespect by care-givers "Tom" and "Terri with the blond braid" when resident wanted her substitute food warmed up (she was eating pureed food due to recent oral surgery for a root canal) so she could take communion.

On December 30, 2005 I had a meeting with care-giver "Tom" and asked him about the incident where he refused to warm up the resident's pureed food so she could eat it and still have an hour to fast prior to communion. "Tom" acknowledged he refused and said he'd come back later. He said "we have a

system here and her request did not meet that schedule." *{Indication of Preventing Practice of Religious Beliefs}*

It is the opinion of the OLTCO that Chugiak Senior Citizens', Inc has not complied with AS 47.33.300 in that it did not accommodate the resident's request to eat at an appropriate time so she could practice her religion.

**Recommendation:** The OLTCO recommends the Department of Public Health, Assisted Living Licensing, consider issuing a Notice of Violation consistent with these findings. The staff of the Home should receive training on the importance of ensuring that residents are given the proper opportunity to appropriately practice their religious practices.

**Allegation No. 5:** The resident's right to privacy and confidentiality was not protected.

**Findings:** On December 23, 2005, three days after the resident was accused of slapping a staff member by the Home, I visited the resident. Just prior to entering the building I encountered two residents and a staff member. One resident, "Steve", in a wheelchair stated as I began to walk in, "I hope you are here to take care of "H" (the resident). If she ever slaps another staff person I'll personally beat the hell out of her." It was obvious by this comment from another resident that staff did not keep the alleged incident confidential and in fact by not doing so, put the resident at risk of harm by another resident. *{Indication of Violation of Privacy and Confidentiality}*

On January 7, 2006, according to written comments in the "Chugiak Senior-Assisted Living Resident Progress Notes" for this resident, at approximately 8:30 PM the resident was having a telephone conservation with another party (purported to be her daughter). Staff wrote in the resident's Progress Notes they "went to get resident's vital signs and heard resident yelling. The resident was on the phone with daughter...heard her say "I don't know how they could throw me out at 90 years old." To overhear this conversation and then write it formally in the resident's progress notes is a breach of privacy. *{Indication of Violation of Privacy and Confidentiality}*

On February 23, 2006 an Ombudsman from the OLTCO met with two residents to request permission for release of their files so the OLTCO could investigate allegations of singling out another resident by the Home. The first resident stated this had already been requested by the Home. She said she knew this investigation was about the subject resident and her pending eviction. The other resident was also aware of the investigation and the resident involved. He made comments concerning statements the OLTCO had made to LindaH in a recent meeting with the Home. He also made comments as to the lack of experience of

the Ombudsman. Since he was not in attendance at any meeting with the Ombudsman, it is questionable where he would have received such information concerning the investigation and indicates he may have been "coached". This also has the effect of pitting resident against resident and can have a chilling effect on residents making them reluctant to complain for fear of eviction or retaliation. *{Indication of Violation of Privacy and Confidentiality}*

It is the opinion of the OLTCO that Chugiak Senior Citizens', Inc has violated AS 47.300 in that it failed to keep confidential care issues affecting the resident and failed to keep private conversations private by entering those conversations into an official record.

**Recommendations:** The OLTCO recommends the Department of Public Health, Assisted Living Licensing, consider issuing a Notice of Violation consistent with these findings. Chugiak Senior Citizens', Inc. Assisted Living Home staff, both seasoned and new, caregivers as well as manager/administrators, should receive organized instruction on elder rights. This office is willing to conduct short classes on this subject with all staff at the home's convenience.

**Other Observations noted during investigations:**

1. There are indications, since the resident is considered by staff (especially staff with longevity with the Home) to be a "heavy care" there has been a concerted effort to document in the resident's Progress Notes, numerous adverse comments by the resident as to her care in an attempt to administratively "build a case" for eviction. Though the resident has often claimed the staff was hurting her or not taking care of her needs as she requested, these comments were discounted as chronic complaints rather than sincere comments as to pain or her wishes. These negative attitudes, validated by at least 3 care-givers stating they did not like the resident, precipitated and may have in fact caused an alleged "slapping incident" that was the cause for eviction. Thus, it can appear the staff were trying to "get rid of" another "heavy care" person. Accusations of the Home having a history of not caring for "heavy keepers" have been made in at least one formal case and in verbal comments received by the OLTCO office unrelated to this case.

2. There may be a reluctancy by the Director (LH), Chugiak Senior Citizens', Inc. to take appropriate correction action against certain CNAs or care givers employed by the Home or to grant them increased believability because of undue allegiance to them. The Director (LindaH) also operates a state licensed Assisted Living Home, Wickersham House, in Wasilla and employs several of the same staff. Staff that presently work at the Chugiak Assisted Living Home and others who have worked at the

Home, are and have been employed at the Wickersham House as well. Thus, it puts the Director in a tenuous position that if she was to dismiss or correct a care giver from the Chugiak Assisted Living Home she would risk also losing a care giver at her privately owned Wickersham House Assisted Living Home.

On May 2, 2006 a Long Term Care Assistant Ombudsman conducted a visit to Wickersham House in Wasilla to investigate a complaint unrelated to this case. It was learned at that time that Theresa, Tom, and Rhonda, all current or former employees of Chugiak Assisted Living Home were employed at Wickersham House.

On August 1, 2006 another Long Term Care Assistant Ombudsman conducted a visit to Wickersham House to investigate a complaint also unrelated to this case. At that time, Rhonda, a former employee of Chugiak Assisted Living Home was working at the Wickersham House.

3. A conflict of interest may also be perceived by others that the Director (LindaH), Chugiak Senior Citizens', Inc, Assisted Living Home also operates her own private assisted living home in Wasilla, Wickersham House. Employees are hired, often untrained, and then given 80 hours of on-the-job training at the Chugiak Assisted Living Home. Then they are later employed at the Wickersham House concurrently with their employment at Chugiak or later with Wickersham House. This allows the accusation that Chugiak Assisted Living Home is expending funds and training time used to train care givers for another assisted living home.

4. At points throughout this investigation the Home was less than cooperative with the Office of Long Term Care Ombudsman. On February 1, 2006 the OLTCO subpoenaed records from the Home requesting: names, addresses, telephone numbers and records of all former residents from January 1, 2004 to December 31, 2005 and documentation relating to their evictions/termination of residency; documentation relating to the Home's policy and procedures on internal investigations of complaints/response to resident concerns/complaints; and copies of "Resident Progress Notes" on three other residents who purportedly complain a lot for the period January 1, 2005 to January 1, 2006. Purpose of reviewing of these records was to ensure the resident was not being singled out; to ensure the Home was not purposely evicting residents who complain or use records as justification to evict residents who need more intense care than other residents; and to examine what internal investigation procedures exist to resolve complaints by residents. The investigation of these records was necessary, as any eviction has a chilling effect on other residents who may now become reluctant to complain about their care for fear of retribution. On February 13, 2005, the

Home, through their attorney, Donna M, formally refused to release the requested documents on past residents stating seeking of such information was overly intrusive and asked the three other current residents if they would consent to releasing their "Resident Progress Notes". The residents purportedly unequivocally refused to give consent. Additionally, the Home stated that copying the roughly 80 pages of "Resident Progress Notes" for these three other residents was "overly burdensome". Attorney for the Home, DonnaM, also stated the request was merely a "fishing expedition". The Assistant Attorney General (AG) for the State countered the refusal on February 16, 2006 stating the Home was interfering with the investigation by the OLTCO. The same day, the Home's attorney, DonnaM, replied to the AG's letter stating the Assistant AG was intimidating the Home. On March 14, the State's Assistant AG again requested copies of all records subpoenaed. Still the Home, through their attorney, DonnaM, again formally declined on March 17, 2006 to provide all the requested documents, releasing instead only the list of past residents from January 1, 2205 to December 31, 2005. Thus it made it difficult to determine if the resident was being singled out and if documentation of progress of residents was documented equally.

5. This office obtained copies of the resident's "Resident Progress Notes" for the period January 1, 2005 through January 1, 2006 of which there were 77 pages of notes pertaining to the resident's care, many of which contained negative comments. The fact that there were 77 pages of notes in the resident's "Resident's Progress Notes" compared to a total of 80 pages (as stated by attorney for the Home, DonnaM) for the same period for all three of the other residents for which the OLTCO requested records, but was denied, certainly lends credence to the allegation that the Home was "building a case" on subject resident. If the Home had acted as aggressively in responding to the concerns of the resident and tried to meet her wishes as it had in resisting the investigation and pushing for eviction of the resident, many of the issues presented by the resident and the OLTCO could have been resolved to at least the partial satisfaction of both parties.

Respectfully Submitted,

*[signature]* dated this 30th day of August, 2006
Robert P. Dreyer
Long Term Care Ombudsman
State of Alaska

EXHIBIT A
Page 15 of 16

Distribution:
Complainant(s)
Ms. Linda Henrickson, Director, Chugiak Senior Citizens', Inc. Assisted Living Home
Beverly Wooley, Director, Department of Health and Human Services, Municipality of Anchorage,
Jerri Van Sandt, State of Alaska, Department of Health and Social Services, Division of Public Health, Certification and Licensing
Brenda Mahlatini, State of Alaska, Department of Health and Social Services, Division of Senior and Disabilities Services, Adult Protection Services,

14

EXHIBIT A
Page 16 of 16