Westlaw.

216 F.3d 1087

Page 1

216 F.3d 1087, 2000 WL 781964 (C.A.10 (Colo.)), 2000 CJ C.A.R. 2996
**(Cite as: 216 F.3d 1087)**

C

Briefs and Other Related Documents

Flannery Properties v. Ron ByrneC.A.10 (Colo.),2000.NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.

FLANNERY PROPERTIES, a California general partnership; Michael Flannery, Plaintiffs-Counter-Claim-Defendants-Appellants-Cross-Appellees,

v.

RON BYRNE; BMS Vail Limited Partnership, a Colorado Limited Partnership; BMS Vail General Partnership, a Colorado general partnership; Ron Byrne & Associates Real Estate, Defendants-Counter-Claimants-Appellees-Cross-Appellants.

**Nos. 98-1122, 98-1134.**

May 30, 2000.

Before BRORBY, HOLLOWAY, and BRISCOE, Circuit Judges.

ORDER AND JUDGMENT [FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir.R. 36.3.BRISCOE.

*1 In this diversity action, plaintiffs Flannery Properties and Michael Flannery appeal the jury verdict rejecting their fraudulent misrepresentation claim. Flannery also appeals the district court's denial of prejudgment interest on the jury's damage award for negligent misrepresentation. Defendants Ron Byrne, BMS Vail Limited Partnership, BMS Vail General Partnership, and Ron Byrne & Associates cross-appeal the jury verdict against them on their counterclaim for abuse of process. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm both the appeal and the cross-appeal.

I.

In 1991, Michael Flannery, a resident of California, became interested in purchasing property in Colorado.[FN1] In October 1991, Mark Cadmus, a real estate broker, showed Flannery a house at 146 Forest Road owned by Ron Byrne. [FN2] Cadmus and Flannery later looked at the house with Byrne. According to Flannery, Byrne told him the eastern property line "was just below the light columns [ ] just where the driveway intersects the street." Aplt.App. II at 428-30. Byrne denied telling Flannery that the property ran from the light posts. Byrne owned the adjacent property, Lot 5, and told Flannery that he planned to build a single-family home on the back part of the lot. Flannery claimed Byrne told him an easement would keep the house on Lot 5 "far out of the view from anything at this house." *Id.* at 432. Flannery believed that "everything between the light columns to the house was included in this property, including the deck and walkway that went from the patio out on to this property." *Id.* at 433. Byrne testified that he never pointed out the property line to Flannery. Much of the area that Flannery believed was part of the 146 Forest Road property was actually part of Lot 5.

FN1. Flannery Properties is a partnership with Flannery and his three children. The distinction between Flannery Properties and Flannery individually was not relevant at trial and we will refer to both as "Flannery."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT I
Page 1 of 7

http://web2.westlaw.com/print/printstream.aspx?sv=Split&rs=WLW6.09&prft=HTMLE... 10/12/2006

FN2. The distinction between Ron Byrne individually and BMS Vail Limited Partnership, BMS Vail General Partnership, and Ron Byrne & Associates was not relevant at trial and we will refer to all as "Byrne."

In October 1991, Flannery offered to buy the house at 146 Forest Road for $4 million. Byrne rejected the offer and made a counter-offer of $4.5 million, which Flannery rejected. Flannery then purchased a house at 636 Forest Road for $2 million. Shortly after Flannery moved into the 636 Forest Road house, Byrne and Flannery agreed to an exchange of houses-Flannery would give Byrne the 636 Forest Road house and pay Byrne $2.1 million in exchange for the 146 Forest Road house. Flannery again looked at the 146 Forest Road house the next day. According to Flannery, Byrne assured him that any development on Lot 5 would be on the back part of the lot. Flannery did not have a survey done on the property. On November 18, 1991, Flannery and Byrne completed the exchange of real estate.

According to Flannery, Byrne approached him at various times from early 1992 through 1993 to discuss Flannery's purchase of Lot 5. In the fall of 1993, Flannery made an offer of $2.35 million for Lot 5, which Byrne rejected. Flannery testified that in October 1994, he discovered the property line between 146 Forest Road and Lot 5 was next to his house. Flannery told Byrne that if they could not resolve the property line issue, he would initiate litigation against Byrne. In November 1994, Flannery instituted a lawsuit against Byrne in California. Flannery testified that after the lawsuit was filed, he became aware that construction was beginning on Lot 5 and that Byrne planned to build a duplex and an employee housing unit only 20 to 25 feet from Flannery's house. After Flannery filed another lawsuit, Byrne built the duplex farther back from the property line.

*2 In June 1996, Flannery filed a third amended complaint against Byrne in Colorado federal district court, raising claims, *inter alia,* of fraud and negligent misrepresentation.[FN3] Byrne raised counterclaims, *inter alia,* of slander of title, abuse of process, and trespass.[FN4] Flannery also filed a lis pendens against Lot 5. In January 1998, a jury found against Flannery on his claims of fraudulent misrepresentation and fraudulent concealment, but in favor of Flannery on his claim that Byrne made a negligent misrepresentation of material fact and awarded Flannery damages of $60,000. The jury found against Byrne on his counterclaims for slander of title and abuse of process, but for Byrne on his counterclaim for trespass and awarded Byrne damages of $1.00.[FN5] The district court denied Flannery's motion to amend the judgment to include prejudgment interest.

FN3. The district court dismissed Flannery's three claims for specific performance of covenants and his claim for promissory estoppel. At trial, the district court dismissed Flannery's claims for reformation of deed due to mutual mistake of the parties, constructive trust, and breach of contract. Flannery voluntarily dismissed his claim for trespass. None of these claims are at issue on appeal.

FN4. The district court dismissed Byrne's counterclaim for business disparagement. This claim is not at issue on appeal.

FN5. The parties do not appeal the verdicts on Byrne's slander of title and trespass counterclaims.

II.

*District court's evidentiary rulings-appeal and cross-appeal*

Flannery argues the district court erred in two evidentiary rulings: (1) allowing Byrne's counsel to cross-examine Byrne with leading questions, and (2) excluding documents from the Colorado Real Estate Commission. In the cross-appeal, Byrne argues the district court erred in excluding evidence that Flannery previously used litigation improperly. We review evidentiary rulings for abuse of discretion. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 992 (10th

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Cir.1999).

*Leading questions on cross-examination.* Flannery called Byrne as a witness in his case-in-chief. Before beginning cross-examination, Byrne's attorney stated: "I intend to cross only on those points raised by the plaintiffs, reserving the right to recall Mr. Byrne in the defendant's case-in-chief." Aplt.App. III at 846. After cross-examination began, Flannery objected to Byrne's counsel asking leading questions because Byrne was not an adverse witness. The district court ruled Byrne's counsel could ask leading questions because it was cross-examination.

Federal Rule of Evidence 611(c) states:
Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

The advisory committee notes to Rule 611(c) state that "[t]he purpose of the qualification 'ordinarily' is to furnish a basis for denying the use of leading questions when the cross-examination is cross-examination in form only and not in fact, as for example the 'cross-examination' of a party by his own counsel after being called by the opponent." Cross-examination by leading questions is not a matter of right when a party is being cross-examined by his own counsel. *Shultz v. Rice,* 809 F.2d 643, 654 (10th Cir.1986).

Under the abuse of discretion standard, this court will not disturb the district court's ruling unless this court has a "definite and firm conviction that the [district] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Hidalgo v. Fagen, Inc.,* 206 F.3d 1013, 1020 (10th Cir.2000) (internal quotations omitted). *See Shultz,* 809 F.2d at 655 (finding district court did not abuse its discretion when it allowed leading questions on cross-examination of a client that were "archetypical of those allowed during direct examination to develop testimony and expedite entry into evidence of time-consuming foundational information"). Some of Byrne's counsel's leading questions went to the substance of the case, but our review of the transcript does not establish that this affected Flannery's substantial rights. *See Hidalgo,* 206 F.3d at 1020 (noting that a party is entitled to a new trial only if the error affected his substantial rights). Although the district court erred in stating that cross-examination by leading questions was a matter of right, we are convinced this did not rise to an abuse of discretion. *See* Fed.R.Ev. 611(c), advisory committee's notes (noting that "[a]n almost total unwillingness to reverse for infractions has been manifested by appellate courts").

*3 *Admission of documents from Colorado Real Estate Commission.* Flannery sought to admit
redacted factual findings by the ... Commission that find ... that probable cause and reasonable grounds exist[ ] that [ ] Byrne violated the real estate licensing laws by misrepresenting the location of the eastern boundary from approximately 1989 to 1991, and that as a result of that, [they recommended] ... Byrne's real estate license be publicly censured for a six-month period, and that he admit to the public and the real estate community that he engaged in those misrepresentations.

Aplt.App. I at 243. The district court refused to admit the evidence as hearsay, concluding that it was not a factual finding from an investigation of a public agency admissible under Federal Rule of Evidence 803(8)(C). [FN6] Flannery unsuccessfully sought to admit the Commission evidence numerous times during trial.

FN6. The district court also concluded the Commission evidence was inadmissible under Federal Rule of Evidence 408 as evidence of conduct or statements made in compromise negotiations. We conclude the district court abused its discretion in excluding the evidence under Rule 408 because there is no indication that the Commission matter involved offers of compromise or settlement by Byrne or Flannery.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT I
Page 3 of 7

The Commission found there was probable cause to refer Flannery's complaint against Byrne to a hearing for violation of the real estate licensing law. The investigative report of the Commission consisted of a summary of various statements from individuals. Flannery argues the Commission evidence was admissible under Federal Rule of Evidence 803(8)(C). Rule 803(8)(C) is an exception to the hearsay rule, which allows the admission of " [r]ecords, reports, statements, or data compilation, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings ..., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

There are three requirements for a document to be admissible under Rule 803(8)(C): (1) the report was prepared "pursuant to authority granted by law"; (2) the evidence constitutes "factual findings"; and (3) circumstances do not indicate the report is untrustworthy. *Perrin v. Anderson,* 784 F.2d 1040, 1046-47 (10th Cir.1986). The term "factual findings " is construed broadly and includes "conclusions and opinions found in evaluative reports of public agencies." *Id.* at 1047. Byrne argues the Commission has no authority to make factual findings but can only impose sanctions on real estate licensees found to have violated the licensing law. *See* Colo.Rev.Stat. § 12-61-114(1) (stating that "[e]xcept as otherwise provided in this section, all proceedings before the commission with respect to disciplinary actions ... shall be conducted by an administrative law judge"). The Colorado Supreme Court has stated that "the Commission is not the fact-finder in the agency process, and the Commission is not required to make findings regarding the relationship between the conduct, the public need and the sanction." *Colorado Real Estate Comm'n v. Hanegan,* 947 P.2d 933, 936-37 (Colo.1997). Further, the evidence Flannery sought to admit does not contain factual findings. The district court did not abuse its discretion in not admitting the Commission evidence under Rule 803(8)(C).[FN7]

FN7. At oral argument, Flannery contended the Commission evidence was also admissible under Federal Rule of Evidence 803(8)(A) as a record setting forth the activities of a public office or agency. Flannery did not raise this issue with the district court or in his appellate brief and we will not consider it for the first time on appeal. *See Tele-Communications, Inc. v. Commissioner,* 104 F.3d 1229, 1232 (10th Cir.1997) (noting that "[g]enerally, an appellate court will not consider an issue raised for the first time on appeal").

***4** Flannery contends these evidentiary rulings amounted to cumulative error requiring reversal. " ' A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.' " *McCue v. Kansas Dept. Human Resources,* 165 F.3d 784, 791 (10th Cir.1999) (quoting *United States v. Rivera,* 900 F .2d 1462, 1470 (10th Cir.1990) (en banc)). The record does not indicate that the rulings amounted to cumulative error. Flannery was able to introduce evidence that Byrne acted fraudulently in representing the property lines to him and he was able to fully examine Byrne on the matters elicited during Byrne's cross-examination.

*Exclusion of evidence that Flannery previously used litigation coercively.* Byrne contends the district court erred in excluding four items of evidence: (1) Byrne's testimony that Flannery's attorney said Flannery would sue Byrne if he did not sell Flannery Lot 5, (2) newspaper advertisements placed by Flannery publicizing the lawsuit, (3) testimony of William Dorricott that Flannery breached an agreement, then sued him, and (4) testimony of David Black that Flannery breached an agreement, then sued him.

The district court excluded Byrne's testimony that Flannery's trial attorney, Dale Kinsella, told Byrne that if he did not give Flannery part of Lot 5 Flannery would make his life miserable. The district

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

court excluded the testimony under Federal Rule of Evidence 403, finding that "the prejudicial effect and the disruption to the trial in having Mr. Kinsella have to argue his own credibility outweighs the possible probative effect." Aplt.App. IV at 1590. Under the facts of the case, the district court did not abuse its discretion. Byrne testified that Flannery threatened him with litigation; the testimony concerning Kinsella repeating that threat was not necessary and would have been more prejudicial than probative under the circumstances.

The district court granted Flannery's motion in limine to exclude the newspaper advertisements as irrelevant. The advertisements, which publicized the lawsuit between Flannery and Byrne and sought fact witnesses, are not relevant to whether Flannery engaged in abuse of process. Further, Byrne presented other evidence of Flannery's state of mind in filing the lawsuit.

Byrne sought to admit the testimony of Dorricott and Black under Federal Rule of Evidence 404(b), which allows evidence of prior acts to show, among other things, the actor's motive, intent, or state of mind. Byrne argues this testimony would support the inference that Flannery's motive in filing the lawsuit was to avoid the terms of his agreement with Byrne. However, Byrne testified to this motive and Dorricott testified to limited facts surrounding Flannery's lawsuit against him. Although it may have been relevant, the district court did not abuse its discretion in excluding evidence of prior litigation by Flannery.

*District court's denial of Flannery's motion for judgment as a matter of law on Byrne's abuse of process counterclaim*

*5 We review de novo the district court's denial of a motion for judgment as a matter of law. *Baker v. Barnard Constr. Co.,* 146 F.3d 1214, 1220 (10th Cir.1998). Judgment as a matter of law "is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion ." *Baty v. Willamette Indus., Inc.,* 172 F.3d 1232, 1241 (10th Cir.1999) (internal quotation omitted). We do not " weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for [those] of the jury," but we "must enter judgment as a matter of law in favor of the moving party if 'there is no legally sufficient evidentiary basis ... with respect to a claim or defense ... under the controlling law.' " *Id.* (quotations omitted). We view the evidence and any inferences to be drawn therefrom most favorably to the non-moving party. *Id.*

Flannery moved for judgment as a matter of law on Byrne's counterclaim after the close of evidence, pursuant to Federal Rule of Civil Procedure 50(a). Byrne's abuse of process counterclaim concerned Flannery's filing of a lis pendens against Lot 5. In addressing Flannery's argument that there was no evidence that he used the process in an improper way, the district court stated that "[Byrne's] position is that it was to force [ ] Byrne to sell the property to [ ] Flannery." Aplt.App. IV at 1647, 1650. The district court denied Flannery's motion for judgment as a matter of law and the jury eventually found for Flannery on the counterclaim.

To establish a claim for abuse of process under Colorado law, Byrne must prove: "(1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings, i.e., use of a legal proceeding in an improper manner; and (3) resulting damage." *Lauren Corp. v. Century Geophysical Corp.,* 953 P.2d 200, 202 (Colo.App.1998). Flannery contends there was no evidence that he filed the lis pendens in an improper manner.

A litigant's motive is relevant in determining whether there was an ulterior purpose for the use of the process, but the plaintiff must still establish there was an objectively improper use of the process. *James H. Moore & Assoc. Realty, Inc. v. Arrowhead at Vail,* 892 P.2d 367, 373 (Colo.App.1994). "Classic examples of the requisite improper use include the use of process to accomplish a coercive goal which is not the intended legal purpose of the process ." *Id.* Byrne contended the actual purpose of Flannery's action was to force Byrne to sell Lot 5 to Flannery. Byrne

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

testified that just before Flannery sued him, Flannery said that "if I did not sell him this lot for his price or give him the property that he would sue me, my life would be miserable, and I would not be able to sell it to anyone." Aplt.App. IV at 1581-82. This is evidence of an improper purpose.

*6 Although the filing of a lis pendens relates to a right of possession, use, or enjoyment of real property, "[t]he intended purpose for filing a notice of lis pendens is to provide notice to anyone who may acquire an interest in the property during the pendency of the litigation so that he or she will be bound by its outcome." *Moore,* 892 P.2d at 373. Flannery could have had a proper purpose in filing the lis pendens, but there was also evidence that he used the lis pendens for the improper purposes of preventing other individuals from purchasing Lot 5 and forcing Byrne to sell the property to him. The district court did not err in denying the motion for judgment as a matter of law and allowing the jury to decide the claim.

*District court's denial of prejudgment interest on the jury's award for negligent misrepresentation*

Flannery asserts the district court erred in denying him prejudgment interest on the damages awarded for his negligent misrepresentation claim. We review the district court's decision to deny prejudgment interest for abuse of discretion. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.,* 205 F.3d 1219, 1236 (10th Cir.2000). Because this issue involves prejudgment interest on a state law claim, the propriety of interest is determined by Colorado law. *See id.*

After trial, Flannery filed a motion to amend the judgment to include prejudgment interest of $96,443.80. The district court summarily denied the motion. Colorado statutes provide that at the claimant's election, "[i]nterest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs." Colo.Rev.Stat. § 5-12-102(1)(b). Flannery contends the "time of the wrong" was no later than November 18, 1991, when he acquired the 146 Forest Road property.

The jury awarded Flannery $60,000, but did not specify the nature of the damages. "Damages recoverable for negligent misrepresentation include (1) the difference between the value of what the plaintiff received and its purchase price or other value given for it (out-of-pocket expenses); and (2) other pecuniary loss suffered as a consequence of the plaintiff's reliance upon the misrepresentation (consequential damages)." *Western Cities Broadcasting, Inc. v. Schueller,* 849 P.2d 44, 49 (Colo.1993). The trial testimony showed that the fair market value of the property was equal to or greater than the price paid by Flannery. Based on the testimony, there was no evidence of a negative difference between the value Flannery received and the purchase price he paid.

Because there was no evidence of out-of-pocket expenses for the negligent misrepresentation, Flannery is left with consequential damages for the negligent misrepresentation. Flannery testified he spent $60,000 for Byrne to move the planned house on Lot 5; the jury awarded Flannery $60,000 in damages for his negligent misrepresentation claim. Flannery did not testify when he incurred those damages. Prejudgment interest for consequential damages may only be awarded from the time the damages were incurred. *Pegasus Helicopters, Inc. v. United Tech. Corp.,* 35 F.3d 507, 513 (10th Cir.1994) (applying Colorado law). Flannery has presented no evidence of when the consequential damages were incurred.

III.

*7 We AFFIRM on all issues raised in both the appeal and the cross-appeal.

C.A.10 (Colo.),2000.
Flannery Properties v. Ron Byrne
216 F.3d 1087, 2000 WL 781964 (C.A.10 (Colo.)), 2000 CJ C.A.R. 2996

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT I
Page 6 of 7

216 F.3d 1087

Page 7

216 F.3d 1087, 2000 WL 781964 (C.A.10 (Colo.)), 2000 CJ C.A.R. 2996
**(Cite as: 216 F.3d 1087)**

- 98-1134 (Docket) (Apr. 15, 1998)
- 98-1122 (Docket) (Apr. 03, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT I
Page 7 of 7

http://web2.westlaw.com/print/printstream.aspx?sv=Split&rs=WLW6.09&prft=HTMLE... 10/12/2006