# CHAPTER 7

# THE PROBLEM–SOLVING PROCESS

***Objective***    *The problem-solving process is an approach used by ombudsmen to resolve complaints. This process and the prerequisite skills are the primary focus of this chapter. The chapter is designed to enable the ombudsman to develop the skills needed to receive, identify, verify, and resolve problems/complaints.*

## In This Chapter

I. INTRODUCTION TO PROBLEM SOLVING .................................................................................... 3

   A. COMMON PROBLEMS ........................................................................................................... 4
   B. BARRIERS TO SELF-ADVOCACY ......................................................................................... 5
   C. ROLE OF THE OMBUDSMAN/ADVOCATE ............................................................................ 5

II. POLICY CONSIDERATIONS ......................................................................................................... 7

   A. DOCUMENTATION ............................................................................................................... 7
   B. CONFIDENTIALITY .............................................................................................................. 7
   C. ENCOURAGING SELF-ADVOCACY ...................................................................................... 8
   D. RESOLVING PROBLEMS WITHIN THE FACILITY .................................................................. 8

III. RESOLVING ETHICAL DILEMMAS ......................................................................................... 9

IV. USING THE THREE STAGES OF PROBLEM SOLVING......................................................... 11

V. STAGE 1:  INTAKE AND INVESTIGATION ............................................................................. 12

   A. RECOGNIZING AND RECEIVING COMPLAINTS ................................................................... 12
   B. GATHERING INFORMATION:  INVESTIGATION .................................................................... 13
   C. VERIFYING AND DEFINING THE PROBLEM ........................................................................ 24

VI. STAGE 2:  ANALYSIS AND PLANNING .................................................................................. 26

   A. ANALYZING THE SITUATION ............................................................................................. 26
   B. IDENTIFYING SOLUTIONS ................................................................................................. 27
   C. IDENTIFYING OBSTACLES ................................................................................................. 27

VII. STAGE 3:  RESOLUTION AND FOLLOW UP ....................................................................... 28

   A. CHOOSING A RESOLUTION APPROACH .............................................................................. 28
   B. ACTING TO RESOLVE THE COMPLAINT ............................................................................. 34
   C. EVALUATING THE OUTCOME ............................................................................................ 36

VIII. COMPLAINT RESOLUTION IN ASSISTED LIVING HOMES ........................................... 37

   A. ROLE OF THE OMBUDSMAN PROGRAM ............................................................................. 37
   B. COMPLAINT HANDLING ................................................................................................... 37

IX. COMMUNITY RESOURCES AND SUPPORT SYSTEMS ...................................................... 44

X. WHAT AN ADVOCATE SHOULD KNOW ................................................................................ 47



EXHIBIT F
Page 1 of 53

▶ *Chapter 7*                                                 *The Problem-Solving Process*

**XI.  WORKING TO CHANGE THE SYSTEM:  THE LARGER ROLE OF THE OMBUDSMAN/ADVOCATE.........49**

    A.  ACHIEVING LONG-RANGE GOALS ................................................................................................................49
    B.  ADVOCACY.........................................................................................................................................................49

**XII.  REPORTING.............................................................................................................................................................52**


EXHIBIT F
Page 2 of 53

# I. Introduction to Problem Solving

In an institutional setting, certain practices and methods of operation are developed to ensure efficiency. While efficiency is a legitimate business concern, these practices and methods may conflict with the needs of individual residents. It has been argued that a "good facility" is one that attempts to balance the need for efficiency with quality of life issues; a "bad facility" is more likely to focus solely on efficiency.[1] Moreover, nursing homes are based on the medical model with its emphasis on health and safety concerns. These concerns sometimes overshadow the right to make choices that involve at least some degree of risk: an example is the use of restraints.

Problem solving, complaint resolution, is the primary means that ombudsmen use to ensure that resident rights are understood and honored in such an environment. It involves educating residents, staff and others about rights, and helping to find practical solutions to problems that arise when the interests of the facility and the interests of the individual conflict.

Responding to and resolving complaints can be difficult. There will be times when you will be called upon to support the resident in a decision that may be clearly harmful to him/her. There will also be times when you will be trying to balance the rights of one resident against the rights of another. After all, in any communal setting, there will be differences of opinion and preference.

Whatever the situation, the process for approaching it is the same. Complaint handling is really nothing more than a problem-solving process. It is a systematic, rational process you follow – from receipt of a complaint through investigation and resolution. As you handle more and more complaints, you will adapt this process to your own style. Eventually, it will become second nature.

### *Uniqueness of the Ombudsman Approach*[2]

The LTCO's goal in problem solving is achieving satisfaction for residents. The *approach* an ombudsman uses is critical not only to the immediate outcome but also to effectiveness in the future with residents and staff. As residents see how ombudsmen work to build rather than damage relationships, residents feel more able to trust that they can turn to ombudsmen for help without feeling that their relationships with staff will be strained. Therefore, as an ombudsman, you must carefully select your strategies and be skillful and thoughtful in resolving problems. This chapter is designed to assist you in understanding the process and in refining your skills.

> *The ombudsman's sole responsibility is problem solving.*

Real problem solving requires taking the time to understand what factors affect how the staff is working, as well as what the resident is experiencing. Since the LTCO's sole responsibility is problem solving, you can take the time to get to know the resident's situation in depth and to look into creative solutions that are workable for the staff. A solution will only work if it is based on mutual understanding and if it

---

[1] Wayne Nelson, Ph.D., Deputy Director, Oregon Ombudsman Program. *What Kind of Ombudsman Are You?* Speech delivered at the 13th Annual Louisiana Ombudsman Conference.

[2] Adapted from "Ombudsmen as Problem Solvers" by Barbara Frank, in the *Training and Resource Manual for Volunteer Resident Advocates*. Connecticut Nursing Home Ombudsman Program, 1996.

EXHIBIT ___ ___
Page ___3___ of ___53___

works for all parties.

Ombudsmen seek to work in such a way that staff understand more of what is at the heart of a resident's concerns and find ways to respond to the resident's needs. As a result, ombudsmen hope to see a difference in the way care is provided for an individual: both tangible, seeable aspects, and intangible attitudinal aspects. In resolving a problem on behalf of a resident, ombudsmen seek to help staff gain a new understanding of what the resident is experiencing or needing, a sort of breakthrough in which staff experience an "Ah ha" moment. Each situation provides a building block for the next situation, bringing each discussion to a deeper level of understanding about how the facility can attempt to adapt its practices to support residents' human experience and needs.



After a time, these approaches and perspectives become a part of how the facility's leadership supports and guides staff in their daily work and can lead to changes in facility policies and routine practices. Thus, all residents benefit. **The ultimate goal of the ombudsman approach to problem solving is to help staff become more responsive to residents and residents better equipped to directly express their concerns to staff.**

## A. Common Problems

*Common problems likely to surface in facilities include:*

- Loneliness, the need for someone to talk with
- Boredom: not enough social or personal activities
- Problem with roommate(s)
- Lack of privacy
- Poor food service or quality
- Inability to get services, care, or attention because of physical or communication problems
- Physical or chemical restraints
- Neglect
- Transfer from one room to another without notice
- Transfer to another facility because of change from private pay to Medicaid
- Need for assistance to document or make complaints

- Inability to live independently coupled with a desire on resident's part to leave facility
- Use, accounting, and safe-keeping of personal funds and personal possessions
- Limited opportunities to go outside the facility for community activities
- Need for assistance to find or purchase services
- Insufficient medical or nursing care
- Physical or mental abuse
- Additional or high charges for "extra" services
- No rehabilitative care
- Guardianship issues
- Loss of dignity and self-respect based on general treatment in facility
- Need for legal assistance to make will or to make arrangements for disposing of personal funds or possessions, or for other matters

EXHIBIT F
Page 4 of 53



*The Alaska LTCO Program Manual*

## B. Barriers to Self-Advocacy

Residents may be unable to express their particular needs without assistance from others. Barriers to self-advocacy are manifold. There are at least three kinds of barriers to self-advocacy, as indicated below. They are *physical and mental barriers; psychological/psychosocial barriers; and information barriers.*

**Psychological/Psychosocial**
– Fear of retaliation
– Sense of isolation
– Lethargy
– Disorientation
– Loss of confidence
– Depersonalization
– Disdain for the label *complainer*
– Social pressure to conform
– Fear of upsetting the family
– Belief that this is the best it can be
– Sense of hopelessness and/or despair
– Inability to question authority
– Mystique about medical issues
– Lack of familiarity with staff
– Lack of experience with assertive behavior, particularly for women
– Stereotypes, fears about age
– Sense of weakness resulting from illness

**Physical and Mental**
– Hearing loss
– Loss of speech
– Immobility
– Memory loss or other impairments in cognitive functioning
– Inaccessibility of staff
– Impaired Vision
– Diminished physical strength
– Effects of medications
– Depression

**Information**
*The resident lacks information concerning:*
– Rights, entitlements, benefits
– Authority within the facility
– Legal and administrative remedies
– Alternatives
– How to improve the situation
– The right to complain and how to advocate for change

## C. Role of the Ombudsman/Advocate

As an ombudsman, you will be an advocate acting on behalf of residents. In some cases, you will be able to educate, support, and encourage residents to engage in self-advocacy, to represent themselves. In other situations, you will be representing the resident(s). There are some basic guidelines to remember in advocacy. These "do's and don't's" are listed below in *Tables 1 and 2.*

Another important aspect of the role of advocate is personal style, or demeanor, in presenting problems to staff. A style that is hostile, aggressive (rather than assertive) or blaming will cause great damage to your working relationship and make it difficult for you to collaborate with the facility staff in solving problems. On

EXHIBIT _F_
Page _5_ of _53_

the other hand, a style that is too passive will not be effective in ensuring that the resident's rights are respected.

As an advocate, you are called upon to be respectful, and sometimes even empathetic, to the concerns of the facility. Yet you must also be persistent and professional in your pursuit of the implementation of a resident's rights. You can serve the resident's interests best if your manner is "firm, fair, and friendly."[8]

*Table 1*

| The Do's of Advocacy |
|---|
| – Respect the confidentiality of all complaints made to you. |
| – Be a good listener. |
| – Assure the resident that you are there to listen to his/her problem. |
| – Speak clearly and slowly so that the resident can understand you. |
| – Talk to the resident in a quiet, private area. |
| – Explain things in a few words, rather than in long paragraphs. |
| – Be objective, yet understanding. |
| – Try to provide an accurate picture to the resident of what he/she can expect. |
| – Attempt to make the resident feel you care and are there to help him/her. |
| – Work with the resident, the staff, and the administration in solving problems. |
| – Keep accurate records as requested for evaluation of the program. |
| – Remember that it may take some questions and perseverance to get to the real problem. |
| – Make an effort to understand the total situation or problem by seeking out as many sources of information as possible. |
| – Remember that some residents may distort or exaggerate; therefore, an accurate and reliable assessment of the problem is necessary. |
| – Remember that the resident may tire easily, have a short attention span, digress during conversations, or simply become confused |

*Table 2*

| The Don't's of Advocacy |
|---|
| – Do not provide physical or nursing care. This is the responsibility of the trained nursing staff and is for the resident's protection as well as the advocate's. |
| – Do not bring unauthorized articles into the home such as food, drugs, prescriptions, tobacco, alcoholic beverages, or matches. |
| – Never treat the residents as children. They have had a lifetime of experience. |
| – Do not diagnose or prescribe for a resident. |
| – Do not make promises that may be impossible to keep. |
| – Do not advise residents on business or legal matters; refer them to appropriate professionals. |
| – Do not be critical of the residents or the facility. |
| – Do not engage in arguments, but rather, stick to the question or problem at hand. |
| – Do not forget that you are not an inspector of the facility. You are there to listen to individual complaints and try to resolve them. |

Source: From *Module 1: The Long Term Care Ombudsman Program, Comprehensive Curriculum*, The National Center for State Long Term Care Ombudsman Resources, NASUA, Washington, DC, March 1992, pp. 20-21

---

[8] Wayne Nelson, Ph.D., Deputy Director, Oregon Ombudsman Program. *What Kind of Ombudsman Are You?* Speech delivered at the 13th Annual Louisiana Ombudsman Conference.


EXHIBIT F
Page 6 of 53

*The Alaska LTCO Program Manual*

# II. Policy Considerations

## A. Documentation

Documentation is extremely important for accurate reporting and for allowing others who may later become involved in a complaint to know what steps you've already taken. Furthermore, any complaint may at some time become a source of litigation, and clear documentation will be critical.

Some ombudsmen find keeping a diary or journal of their visits helpful. This allows them to remember personal information about residents, observations of potential problems, and events that may not seem significant at the time, but turn out to be important later. It may also make it easier to complete whatever forms the State Long Term Care Ombudsman (SLTCO) requires for reporting on your activities.

## B. Confidentiality

*All records and information obtained during an investigation or during the resolution process must be held in confidence.* Information may only be disclosed if the complainant or resident or his/her legal representative consents to the release of the information or by court order.

Explain the confidentiality policy to the complainant at the outset of the complaint-handling process. Unless explicitly given approval to reveal their names, you must keep the name of a resident or complainant confidential. In cases where complainants do agree to have their names revealed, you must make a record that permission was given at the time it was given. In cases where permission to act might become an issue, it is preferable to have a signed waiver of confidentiality. The SLTCO has copies of these forms. These forms are also necessary if the identity will be revealed outside of the facility.

Permission to disclose the identity also applies to asking complainants other than the resident for permission to tell the resident that they contacted you. You need simply to ask, "Is it okay to tell Mrs. Jones that you contacted me about this problem?" You will usually be told "yes." The section on ethical dilemmas offers guidance on how to proceed if you are told "no."

Many people will make a complaint only under the condition of anonymity. If people insist on having their names kept secret, they should be told that, while you will do everything possible to protect their identity, there is the possibility that the facility may be able to determine who made a complaint.

You should also explain that some complaints are virtually impossible to investigate without revealing the identity of the resident. For example, a complaint regarding a resident's finances may not be properly checked out unless financial records are reviewed, which would immediately indicate who had filed a complaint. If the use of a complainant's name is initially denied and it is needed to proceed further with a complaint investigation, you should speak with the person again to explain the situation and to request use of the name. You should discuss with the complainant any potential risks involved in being identified.



EXHIBIT F
Page 7 of 53

 | *A guarantee that retaliation will not occur should never be offered to obtain the complainant's permission to use his/her name.* |

## C. Encouraging Self-Advocacy

*You should encourage the complainant to act on his/her own behalf.* You can offer information, support, and guidance, but encourage the complainant to take action themselves. Sometimes they may be willing to participate in the problem-solving process if you can be with them to offer assistance. A more complete discussion of encouraging self-advocacy, empowerment can be found in *Chapter 5, Residents Rights.*

If the resident prefers that you act on their behalf, remember that you can do no more than what the resident gives you approval to do. You must also report back to the resident on your progress.

*Sometimes a resident will insist that nothing be done or said. In such cases, you have no choice but to continue to check back with the resident to see if he or she wishes to proceed at a later date.*

## D. Resolving Problems within the Facility

*If the problem is with the facility, try to resolve the problem within the facility before pursuing other avenues for resolution.* Normally, you should attempt to resolve problems within the facility. If you cannot resolve a problem, or if it seems to require technical expertise, or something else from an outside source, a referral may be appropriate. Check with the SLTCO if you see a need for referral.

EXHIBIT F
Page 8 of 53

EXHIBIT _____F_____
Page __9__ of __53__

# III. Resolving Ethical Dilemmas

You will inevitably find yourself in a number of complaint situations that pose ethical dilemmas or a call for special handling. The key to knowing how to respond to many of these situations is to remember that you <u>represent the resident</u>. *Table 3 lists seven typical situations that may occur and provides suggestions for dealing with these dilemmas.*

## Typical Dilemmas and Suggested Responses

*Table 3*

| Dilemma | Suggested Response |
|---|---|
| A family member complains about a resident's care, but the resident says everything is fine and asks you not to proceed. | <u>Your primary responsibility is to the resident.</u> If pursuing the investigation would identify the resident, you must discontinue it unless the resident grants permission to proceed. As an alternative, if you feel there is a problem with the care in the facility, you might be able to pursue a more general investigation, taking care not to do anything that would reveal the resident's identity. |
| The resident complains, but a family member urges you "not to rock the boat." | This case is more clear-cut: the resident has requested assistance, and you should honor that request. Explain to the family that you are obligated to assist residents in resolving problems. |
| Relatives want you to investigate their complaint, but do not want the resident to know what you are doing. *(For example: two relatives are involved in a dispute over who is to provide for the resident's expenses; or, relatives may fear that the resident will be upset or alarmed by a problem.)* | This is a particularly sensitive situation. It may be advisable to have a general conversation with the resident to ascertain whether he/she is concerned about the problem mentioned by the complainant. You will have to judge whether there is a problem concerning the resident. If the resident is being victimized, you are responsible for addressing the problem. You should not become involved, however, in family disputes, which are not affecting the resident's well being. |
| A resident who is unable to make decisions for himself / herself, but has not been legally declared incapacitated, makes a complaint. | Even though the resident may be confused, you should check into his/her complaint. It cannot be dismissed as invalid just because it comes from someone who is confused. The resident's condition should, however, be considered as one factor in determining whether the complaint is valid. Consider what you know about the resident and about the facility. Try to understand what the resident is expressing, if there is an underlying message or unmet need. |
| A case arises involving a resident for whom a guardian has been appointed. | Generally, when cases arise involving such residents, you should work through the guardian. Exceptions to this rule would be:<br>–   The complaint is about the guardian or some action of the guardian.<br>–   The complaint is about the issue of whether the guardian is needed.<br>–   The guardianship is a limited one (the resident retains the right to make some decisions).<br>With these types of cases, it may be advisable to seek legal advice from an appropriate agency. |



EXHIBIT ___F___

Page ___10___ of ___53___

▶ *Chapter 7*                                                        *The Problem-Solving Process*

*Table 3 continued . . .*

| Dilemma | Suggested Response |
|---|---|
| The interest of one resident runs counter to the well being of a group of residents. *(For example: a resident may complain about being denied the right to smoke, but others say that the resident has almost set the facility on fire by smoking in non-smoking areas.)* | In such cases, try to determine the facts and help the parties arrive at a solution that, as far as possible, protects the rights of the individual and the group.  Your role is to assist in addressing the rights of all residents, not upholding one resident's rights to the detriment of other residents. |
| A resident will not give you permission to reveal her identity but wants your assistance. | Discuss the reasons the resident does not want her identity revealed. If this will limit your ability to resolve the issue, discuss this with the resident and tell her you will do as much as possible without revealing her identity.<br><br>If you cannot resolve the issue without revealing her identity, tell her what you've done and why you cannot take the case further. If appropriate, encourage the resident to discuss her concern with the Residents Council.<br><br>– Look for supporting evidence during your regular visits.<br>– Look for supporting evidence when visiting other residents; perhaps several other residents share the same issue and you can proceed on their behalf.<br>– Inform the resident that you will be available to pursue this issue if she changes her mind. Check back with her regarding this. |
| A complainant other than a resident insists on remaining anonymous. | As in the case of residents who do not wish their names used, such persons should not be forced to reveal their identity.  The complaint, if specific enough, can be investigated using these techniques:<br><br>– Look for supporting evidence during your regular visits.<br>– Engage in casual conversations to see how residents feel about the issue.<br>– Review recent complaints/survey reports to see if similar problems have been noted.<br>– If all else fails, file the complaint for future reference in case similar problems arise. |



EXHIBIT F
Page 11 of 53

# IV.  Using the Three Stages of Problem Solving

The problem-solving process includes three major stages of action, as indicated in Table 4.  The stages are the following:  *Stage 1, Intake and Investigation; Stage 2, Analysis and Planning; and Stage 3, Resolution and Follow Up*.

These three stages are discussed at length in the following narrative.  They are simply a way of organizing your work as you seek to resolve problems.  If you ever wonder what to do next, consult Table 4 below, the discussion of each stage in this chapter, and *Appendix I* of this chapter, Guidelines for Practice, to check your work and get additional ideas.

## Stages in the Problem-Solving Process

*Table 4*

| STAGE 1 INTAKE AND INVESTIGATION | |
| --- | --- |
| **Receive the Complaint** | Receive problems, complaints, concerns. |
| **Gather Information** | Collect information from interviews, records, observations. |
| **Verify the Problem** | Review information gathered.  Assess what seems to be at the root of the problem.  The complaint may be only a symptom. |

| STAGE 2 ANALYSIS AND PLANNING | |
| --- | --- |
| **Analyze the Situation** | Once you identify the problem, consider the causes. |
| **Consider Solutions** | Generate alternative solutions or approaches.  Who should be involved?  When?  How?  Why? |
| **Identify Obstacles** | Anticipate obstacles to help select an appropriate approach. |

| STAGE 3 RESOLUTION AND FOLLOW UP | |
| --- | --- |
| **Choose an Approach** | From your list of alternative solutions, choose the most efficient way to proceed, keeping any obstacles in mind.  Identify alternative strategies in case you need them. |
| **Act** | Proceed with the selected plan, but be prepared to use an alternative. |
| **Evaluate Outcome** | Check back with the persons involved to evaluate the outcomes.  Is the problem solved?  Is it partially solved?  If not, look for new approaches or information and start again. |



# V. Stage 1: Intake and Investigation

Intake and investigation is the initial stage in problem solving. It is fundamental to your ability to successfully resolve an issue. This stage includes three steps that are discussed in the following narrative: *recognizing and receiving complaints; gathering information; and verifying and defining the problem*.

## A. Recognizing and Receiving Complaints

What is a complaint? This basic question is a confusing one for many ombudsmen. Are complaints only those problems you report to the state, only those you refer to a regulatory agency, or anything a resident voices as a concern?

In its simplest definition, *a complaint is any expression of dissatisfaction or concern*. However this does not mean that you launch a full-scale investigation every time someone says today's lunch tasted bad. Many people express dissatisfaction just to let off steam or to have some way of expressing themselves about things over which they have little control. They may not expect or want you to intervene on their behalf. Some residents may be disoriented as to time and express concerns that relate to past events that are no longer relevant. Your task is to be skillful in listening, observing, and investigating; and to determine when such expressions are actual requests for assistance.

**Identifying Unreported Complaints**

Problems sometimes exist in a facility about which no complaints are voiced. An absence of complaints may not mean that all the residents are receiving quality care or experiencing an acceptable quality of life. There are many reasons why residents are reluctant to voice complaints. Some of these were listed on the preceding pages; others are listed in *Chapter 5 Resident Rights*.

A lack of reported complaints should be taken as an indication of the need to reach out to the residents. Regular visits in a facility will make you a familiar figure to the residents. Once you have established trust, residents and their families may begin to assert their rights and voice their concerns. Your ability to detect concerns of residents that are only hinted at and to observe situations that require action is as important as your ability to respond to a direct request for assistance.

**Sources of Complaints**

An ombudsman may receive problems or complaints from a variety of sources, including:
- Residents
- Relatives or friends of residents
- Local advocacy or friendly visitor groups
- Facility staff
- Social work and human service agencies
- Hospital personnel



— Legislators and political leaders

Most of your complaints will probably come from visits in the facility or from telephone calls to the SLTCO office. If possible, cultivate relationships with staff members or residents who can contact you on behalf of residents with less ability to communicate.

*There are three important factors to remember about sources of complaints:*

1. ***Few residents will make a complaint unless they are visited regularly by an ombudsman***. Most residents will not feel comfortable complaining to a stranger for fear of reprisal, and therefore need to know and trust a person before talking openly about their concerns. In addition, many residents do not know that they have the right to complain, or they feel that making a complaint will not do any good.

   In some facilities, a residents council, grievance committee, or community council (composed of residents, relatives, and community people) may bring problems to you. Complaints made by such groups help to protect and support an individual resident. Sometimes these organizations become mere "rubber stamps" for the facility administration, so you will have to learn how much they really represent the interests of residents.

1. ***Relatives of residents are one of the most common sources of complaints.*** They, too, may hesitate to complain for fear of retaliation to their loved ones. Families also fear that once the facility staff has labeled them as "complainers" or "guilty children," their credibility will decrease.

   Keep in mind that the needs and interests of families are not necessarily the same as the needs and interests of the residents. Residents face the stark reality of spending 24 hours a day in a facility. Residents' concerns may seem small to people living outside the facility but may have a major impact on their quality of life.

3. ***Long term care staff members are a common, if not frequent, source of complaints.*** Staff complaints may be based on a variety of motives. On one hand, many staff are concerned about residents and want to provide the best care possible. When conditions in a facility are poor, staff may look for outside help in trying to correct the problems. On the other hand, some staff can become disgruntled with their employer because of low pay, poor working conditions, or other disputes with management. Since your role as an ombudsman is to address concerns of residents, be careful to avoid becoming an ombudsman for facility staff.

## B. Gathering Information: Investigation

Before you can resolve most complaints, you will need to gather additional information about the situation

EXHIBIT ___F___
Page __14__ of __53__

from a variety of sources.  This process, which is the second step in Stage 1, is frequently referred to as *investigation.*

There are a number of other officials whose responsibilities include investigating complaints or conditions in long term care facilities. Some of these are: surveyors for the Alaska Office of Health Facilities Licensing and Certification and for the Alaska Department of Health and Social Services, Division of Mental Health and Developmental Disabilities; law enforcement officials; and adult protective services workers. Each of these has its own set of rules and standards of evidence that must be met in order to determine the validity of the complaint and any corrective actions or penalties that might be applied. Sometimes others expect a LTCO's investigation to adhere to the standards of investigation used in their job.

> *An ombudsman has the freedom to be an independent thinker.*

*As a LTCO, your investigation and actions do not have to comply with the standards others use.* Your primary role is to advocate, to act, on behalf of residents. You can act on behalf of residents without gathering evidence that meets legal standards of proof. You have more freedom to think and act "out of the box" of regulations and objective procedures that others must Your actions must always be directed by actions must always be directed by residents and resident's and resident's and the Policies and Procedures of the Alaska Long Term Care Ombudsman Program. While you cannot be a "loose cannon," your role as an investigator is distinct from that of other investigators.

*The purpose of a LTCO's investigation is to determine whether the complaint is valid.*  An investigation is a search for information.  You must seek information that will either prove or disprove the allegations made by the complainant.  The successful resolution of a complaint often depends on the quality of the investigation.  A poor investigation can lead to a valid complaint being dismissed as invalid or unverifiable.

It is important to be objective in gathering information.  You must not make assumptions about the validity of a given complaint, even though you believe there are problems in a facility.  Being an objective investigator does not mean that you lessen your efforts to improve the care and quality of life for long term care residents.  More explanation about this follows in the section, "When a Complaint Cannot be Verified," later in this chapter.

The investigation involves preparation—deciding what information is relevant—and using various techniques to collect it.  Among the most common techniques ombudsmen use are *interviewing, observation, and the use of documents.*  In order to use these techniques well, there are certain skills you will need. These skills are discussed in relation to the relevant steps in the problem-solving process.


## Preparation

So how do you decide what information is relevant and how you might collect it? Stop and think about the following questions before proceeding with an investigation.


EXHIBIT ___F___
Page _15_ of _53_

### What is the complaint about? In what general category does it fall (for example, resident rights, nursing care, family problem)?

A complaint about general resident care may turn out to contain several very specific elements. Care complaints can be about the number of staff, the training of staff, the treatment plan, the manner in which treatment is given, the failure to provide treatment, the development of bedsores, and many other problems. You need to know specifically what the complaint is about before starting to investigate.

### Who are the persons involved?

Who is responsible and who has the power to do something about it? It may be important to gather names, telephone numbers, and addresses of all people who have some role in the situation. A complaint about resident care could include: the complainant; the resident; the facility nursing staff, the facility administrator; and the resident's physician. Another health care facility (hospital, nursing home) where the resident was recently treated may be an important element in determining the cause of the resident's condition.

### What, if any, agencies are or should be involved?

A problem concerning Medicaid would likely involve the Eligibility Specialist at the Division of Public Assistance. A case related to Medicare would involve Social Security. You will need to identify any other agencies that may play a role in the problem such as the Division of Mental Health and Developmental Disabilities, the Veterans Administration, or the Division of Occupational Licensing.

### When did it occur?

Is this a recent matter or did it happen two months ago? The time frame might affect how much evidence you can find. It could also affect whom you interview and what kind of resolution will be sought.

### Where did it occur?

If the situation occurred in the facility, it might be handled differently than if it occurred in the community while the resident was out for an appointment. The physical location within the facility might also affect the investigation and resolution.

### What steps has the complainant already taken to resolve the matter?

If the complainant has taken some action, you need to know this to avoid duplicating unproductive actions or retracing steps. You also need to know the results of the actions already taken. This can help you anticipate obstacles to resolving the problem. For example, has the complainant talked with the administrator, director of nursing, charge nurse, or supervisor? Has the complainant contacted the physician? Have there been any meetings with the staff? Have any other agencies been contacted?

If the complainant has not taken any action, you can suggest possible steps he/she might take. Advice of this nature helps the complainant learn self-advocacy and may also save you time to work on other problems. Remember, *you should encourage and support self-advocacy as much as possible.*

### What, if any, law or rules may be relevant?

EXHIBIT 
Page 16 of 53

If the complaint is about resident rights, for example, you may need to review the federal law and state statutes on resident rights. Likewise, if the case involves Medicaid, you may need to review the nursing home reimbursement rules, which spell out what services are paid for by Medicaid.

### What result is the complainant seeking?

What does the complainant want? By determining the answer to this question, you might save yourself some time and prevent your solving the problem the "wrong" way.

You may see a need to effect policy changes or systemic solutions, but the complainant only wants his/her immediate situation improved. You might have the opportunity to work on the more long-range solutions, but your <u>primary</u> focus should be on the complainant's immediate concern.

### Interviewing

<u>Interviewing is possibly the most frequently used method of gathering information.</u> In order to discover the facts of a case (the who, what, when, where, why, and how), you might interview a resident, administrator or operator, or an employee of another agency or

> *Always go into an interview with a specific purpose in mind.*



institution. Regardless of the position of the person being interviewed and the personal style of the interviewer, there are several factors to consider when preparing for an interview. These are similar to the factors that are important in setting the stage for communication discussed in *Chapter 6, The Communication Process.* It is important to adhere to certain guidelines that will increase your likelihood of success. You will need to develop the skills of listening, questioning and note taking.

---

#### ITEMS TO CONSIDER WHEN PREPARING FOR AN INTERVIEW

| | |
|---|---|
| **SETTING** | Is it comfortable, quiet, and private? |
| **TIME ALLOTTED** | Will the interview be hurried? |
| **TIMING** | Will there be interruptions? |
| **GOALS** | What are the goals of the interview? List these. |
| **BIASES** | What possible biases do you and the interviewee have? |

---

EXHIBIT  *F*
Page *17* of *53*

*The Alaska LTCO Program Manual*

Many of these items may be beyond your ability to control. For example, you may not be able to see an administrator at a time and place of <u>your</u> choosing. The most important item, however, is one you <u>can</u> control: *Set your goals beforehand. Know what questions you need answered and what specific information you need.*

As a general rule, ***it is best to speak to the complainant first*** before securing additional information from other residents, facility personnel, family, or other people.

Remember that *an interview is a social situation, and that the relationship between you and the interviewee will affect what is said.* Although you will want to direct the interview in order to achieve its goals, most of your time will be spent *listening.*

It is extremely important to avoid making promises to the complainant regarding the resolution of the problem. It can be tempting, in a sincere effort to comfort a resident, to assure him/her that the problem will be solved. This can lead to false expectations which may eventually be turned against you.

## GUIDELINES TO FOLLOW DURING INTERVIEWS

− Maintain objectivity. Do not make assumptions about the validity of the information.

− **Try to establish rapport before addressing the problem.**

− Explain the purpose of the interview and the function of the ombudsman.

− **Use open-ended questions to encourage responses about the problem area such as "What is it like to participate in your care planning meeting?" or "*What happens when you ask for a different meal than the one on the menu*?"**

− Use close-ended questions to obtain specific details and facts such as, "*Who responded to your request for assistance*?" or "*Do you get outside the facility for fresh air*?"

− **Use language that is easy to understand; explain any technical terms.**

− Guide the interview toward the desired goals, yet be flexible enough to adjust the goals according to any new information received.

− **Let the interviewee know when the interview is about to end; summarize what has been accomplished.**

− Explain how the information will be used and other steps anticipated in conducting the investigation and resolving the complaint.

7-17


EXHIBIT F
Page 18 of 53

**Skills Involved in Interviewing**

The charts on the following pages define and explain the skills involved in each activity.  They are:



**Interview Skill #1:  Listening**

— <u>Be an active listener</u>, see Chapter 6, The Communication Process, for active listening skills.

— <u>Be alert to more than spoken words when you listen</u>.  Notice inflection of speech, qualities and tone of voice, facial expressions, a glint in the eye, body language, gestures, and general behavior.  See if you can detect gaps or omissions in what the person is saying.  Sometimes more can be learned from what is *not said* than from what is said.

— <u>Determine whether the complainant is glossing over some fact</u> because he/she thinks it "detracts from his/her position."  Explain that you are interested in the "bad" facts as well as the "good," and that you can only be of help if you know the whole situation.

— <u>Never completely believe or disbelieve everything a person says</u>.  Distinguish facts from someone's opinion, hearsay, characterization, or evaluation. You will have to sort out the difference between the "truth" and fiction. An interviewer should. If someone labels a resident as "hostile," for example, find out why (e.g., specific behaviors the resident exhibits, how often, with what people).

— <u>Identify and logically separate the many different problems</u> a resident may be experiencing. Sort out those that you will be able to handle and those that you cannot.

— <u>Be alert to problems that may be unintentionally revealed</u>.[4]  The resident may have a very limited notion of what help is available to him/her or may not want to "burden" you with too many problems. Listen for "the problem behind the problem."  There is always the possibility that what the complainant is saying is not what is bothering him/her, but is instead voicing feelings that reflect a general feeling of hopelessness.

**Interview Skill #2:  Questioning**

As mentioned under "Guidelines to Follow During Interviews," in this chapter, different types of questions

---

[4] This is listening for clues as discussed more fully in Chapter 5, Communication.

EXHIBIT F
Page 19 of 53

may be used to gather the information you are seeking. Think through what you want from the interview and then develop questions to help you obtain the information. *Table 5*, The Questioning Technique, prepared by Robert K. Burns of the University of Chicago, lists various types of questions, the purpose of each, and examples. Refer to it for suggestions as you design interview questions. This table will also be helpful when you are preparing for a meeting to resolve the complaint.

## The Questioning Technique

*Table 5*

| TYPE | EXAMPLES | PURPOSE |
|---|---|---|
| FACTUAL or "W" Questions | 1. All the "W" questions: What, Why, When, Who, Which, How? | 1. To get information |
| EXPLANATORY or "Dig Deeper" Questions | 1. In what way would this help solve the problem?<br>2. Just how would this be done?<br>3. What other aspects of this should be considered? | 1. To broaden discussion<br>2. To get deeper thinking and analysis<br>3. Get at additional facts, reasons, and explanations |
| LEADING or "New Idea" Questions | 1. Should we consider this. a possible solution?<br>2. Would this be a feasible approach? | 1. To introduce a new idea<br>2. To advance a suggestion of your own or others |
| HYPOTHETICAL or "Suppose" Questions | 1. Suppose we did it this way...what would happen?<br>2. Another company does...is this feasible? | 1. To change the course of the discussion<br>2. To suggest other, or even unpopular opinions and points of view |
| JUSTIFYING or "Show Proof" Questions | 1. Why do you think so?<br>2. How do you know?<br>3. What evidence do you have? | 1. To challenge old ideas<br>2. To get reasoning and proof<br>3. To develop new ideas |
| ALTERNATIVE or "Make a Choice" Questions | 1. Which of these solutions is best, A or B?<br>2. Does this represent our choice in preference to...? | 1. To make a decision between alternatives<br>2. To get agreement |
| COORDINATING or "Get Agreement" Questions | 1. Can we conclude that this is the next step?<br>2. Is there a general agreement on this plan? | 1. To develop consensus<br>2. To get agreement<br>3. To take action |

EXHIBIT ___F___
Page __20__ of __53__

**Interview Skill #3:  Note taking**

Your notes will be part of the file, which is the central reference point not, only for you and the complainant, but also for agencies to whom the complaint may be referred.  Some tips for effective note taking follow.

–  Maintain rapport and a good conversational flow during an interview even if it is necessary for you to take notes.

–  If you will be taking notes, explain the reasons why in order to mitigate any anxiety or fear on the part of the person being interviewed.

–  Take notes of responses that are especially significant and/or that you feel are important to remember accurately.

–  Write only information that you are prepared for the interviewee or someone else to see.

–  Keep your notes short, factual, and to the point.  It is acceptable to include your personal observations and judgments; however, <u>substantiate these with facts</u>. *For example, if you indicate that the floor was dirty, state that you noticed coffee and juice stains in the day room on Wing C, and that it felt sticky to the touch.*

  ❑ <u>AVOID judgmental statements</u> such as "Resident is obviously a chronic complainer," or "Administrator can't be trusted."

  ❑ <u>Describe behaviors, do not attempt to label them.</u>  For example, if an administrator is unresponsive to your questions say, "Administrator said he had no comment when I asked about the training and supervision that certified nurse assistants receive.  After I asked other questions related to the complaint, the administrator said the interview was over and escorted me to the door."

*In other words, substantiate and document your opinions and observations with as much information as possible.*

---

**Interview Record Checklist**

*Include the following information in your record of an interview:*

| | |
|---|---|
| ❑ Names and positions (job title) of everyone present, whether or not they spoke | ❑ Narrative account of the content of the interview |
| ❑ Date and time of interview | ❑ Goals that were accomplished and those that were not achieved |
| ❑ Location of interview | ❑ Any new avenues to explore |

EXHIBIT ___F___
Page _21_ of _53_

*The Alaska LTCO Program Manual*

## Observation

Observation is the second method of gathering information. Many complaints can be understood and verified only by sharing in the experience of the complainant. Complaints that have to do with items such as staffing, sanitary conditions, and food often can be fully checked only through observation. This section includes tips for observation and a list of questions intended to help you focus on the information that is presented to each of your senses.

---

### TIPS FOR OBSERVATION

– When observing conditions in a facility, it is important to use all the senses. Refer to *Table 6* on the following page for factors to consider.

– Approach a situation requiring investigative observation with an open mind and an understanding of what is observed.

– Be as impartial as possible. If you look only for evidence that fits a preconceived notion or theory, other evidence may be missed or much of the evidence may be misinterpreted.

– Prepare for observing by deciding what type of observations will help you investigate a particular case.

– *For example, in a complaint about a resident being given a regular meal instead of a salt-free dinner, you would be able to investigate by seeing and possibly tasting the food served. By making an unannounced visit to the facility, you could observe a routine mealtime procedure. Familiarity with applicable rules and regulations will allow you to better judge which observations are relevant to the individual case and which are extraneous.*

– Record your observations as soon as possible after they are made to help eliminate errors due to a memory bias, (for example, recording what you expected to find instead of the actual facts of your observation).

---

EXHIBIT __F__
Page _22_ of _53_

▶ *Chapter 7*                                    *The Problem-Solving Process*

## GUIDE TO SENSORY OBSERVATIONS IN A LONG TERM CARE FACILITY

*Table 6*

| SIGHT | SOUND | SMELL | TASTE | FEEL |
|---|---|---|---|---|
| Do furnishings appear cold, institutional, hard? Are they homelike? Does each resident have a locker or dresser? Are there enough chairs for visitors? | Is music piped through corridors too loud or too soft? Is it appropriate for residents? | Is there a strong urine odor? a strong disinfectant odor? | Are smells so strong they can be tasted? | Are sheets soft or stiff? |
| Are there pictures, calendars, photos, or art work? What colors are the walls? Bright? Cheery? Dull or drab? Is the paint peeling? | Are call bells ringing often and long? | Do residents smell of urine or feces? | Is the food cooked completely? | Are blankets scratchy or smooth? |
| Are plants real? Does the facility make maximum use of natural light? | Are there residents with noticeably labored breathing? Are all "noisy residents" in one area? | Does the food smell inviting? | Is the coffee cold? | Is the building too hot or too cold for residents? |
| Are residents clean, shaved, hair combed? Are clothes wrinkled? Dirty? | Do staff talk pleasantly with residents? with one another? Do they call each other by name? What statements are made that affect residents' dignity? | Do residents smell of colognes, after shave, or perfume? | Is the water fresh? | Are the floors slippery or gritty? |
| Are call lights left unanswered? | Is an intercom overused and annoying? | Are air fresheners or other scents used to mask unpleasant odors? | | Are the resident's hands cold, skin stiff? |
| Is the staff neat? Do they smile at residents? Do they wear name tags or have an identifying uniform? | Are residents involved in activities that promote conversation? | Is there an odor from dead flowers, medicine, or alcohol? | | |
| Are there several blocks of idle time each day without activities? | | | | |


EXHIBIT F
Page 23 of 53

**Using Official Documents**

<u>Using official documents is the third primary method of gathering information.</u> The
following is a list of documents that may prove helpful. 

– <u>The Resident's Medical Record or Assisted Living File</u>: It contains physician
orders and notes, daily nursing notes, and other information related to the
resident's care. Medical records are useful because they provide legal, written documentation for the
complaint investigation.

---

**CAUTION: There are two problems that may arise regarding medical records:**

<u>First</u>, they are confidential. The resident, or the resident's guardian, or the legal representative,
must sign a written statement authorizing release of the records to an ombudsman. The resident
may give oral consent, but the facility may be reluctant to accept consent.

If the resident is unable to give consent and there is a compelling need for the ombudsman to see
the record, the ombudsman should check with the State Long Term Care Ombudsman.

<u>Second</u>, medical records are often not totally complete and/or accurate, and they can be difficult
to understand. Records are sometimes filled out hurriedly or by staff who do not understand the
significance of careful record keeping. If the records are available to review, there may be
portions that you do not understand. In these instances, it is helpful to consult a specialist
(doctor, nurse, therapist, dietitian) about comments that are unclear. In many cases, it is critical
that you seek the assistance of specialists in order to protect yourself from accusations of being
uninformed or unprofessional.

---

– Documentation of Incidents: The facility must document any incidents, such as a resident's falling,
someone's being hit, or unexplained, significant injuries. The form many facilities use is called an
"incident report." If this report includes some internal examination for quality assurance, it may not be
accessible to the ombudsman or the resident. However, some documentation of the incident must be
available to the resident, and with the resident's permission, to the ombudsman.

– Records of Transactions or Agreements: These include, for example: bills, letters, and/or written
agreements such as an admission contract. They also include schedules of care routines that may be
posted in a resident's room.

– Official Documents Kept by the Division of Medical Assistance, Health Facilities Licensing and
Certification: These records can also be useful to a complaint investigation. They include survey
reports, license applications, and reports on complaints investigated by the state agency.

## C. *Verifying and Defining the Problem*

*Verifying and defining the problem* is the third and last step in Stage 1 of the problem-solving process. It involves verifying that the complaint is valid and then defining the underlying problem.

### When a Complaint Is Verified

*A complaint is verified if it is shown that the alleged problem does exist or did occur.* You have been gathering information in order to determine the facts of the case. Formal verification is simply a matter of reviewing those facts, ensuring that you have proper <u>documentation</u>, and then proceeding with resolution. The amount of documentation and formal verification you need will be determined by the complexity of the issue, the willingness of the facility to accommodate the resident, and in some cases, the resident's cognitive and communication abilities.

### When a Complaint Cannot Be Verified

*There will be times when a <u>complaint cannot be verified</u>.* There may be no corroborating statements, or the facts may even contradict the complaint.

---

*Example*

Mr. Johnson tells you that the Pleasant Manor assisted living facility didn't have enough staff to bathe and dress his mother on Tuesday two weeks ago. His mother has Alzheimer's. When you visit the facility, the residents all appear clean and appropriately dressed. Mrs. Johnson, the complainant's mother, does not recall any problems with dressing and bathing. Your casual conversations with other residents reveal nothing pertinent to this issue: there are no issues with insufficient staff or with residents not receiving assistance with bathing and dressing. Survey reports from this facility as well as your complaint documentation do not mention anything relevant to this issue. You have nothing to proceed on except Mr. Johnson's statement.

---

Handling these situations will require tact, as the resident/complainant may still be convinced that the problem is valid. Here are some tips:

– Be careful that you do not make the complainant believe you think he/she is foolish.

– A factual, detailed presentation is especially important when telling the complainant that nothing can be done.

– Explain that not being able to verify the complaint does not mean that you question the honesty or sincerity of the complainant.

– Discuss any alternative steps that might be available. For example, there may be another agency better suited to deal with the complainant's concern.


EXHIBIT ___F___
Page __25__ of __53__