*In some cases you can still pursue resolution without objective verification.* You may believe that a case has merit although you have been unable to verify it. It is also possible that you have been unable to get access to records or materials that might verify the complaint. In such cases, consider the following actions.

— *Help the resident or complainant represent himself/herself.* Explain that there is little you can do at this time without further proof. Show the person how to document problems as they occur. If needed, explain the "chain of command" in the facility so the individual will know who to talk with if the problem comes up again. Leave telephone numbers and addresses of the Ombudsman Program and other appropriate agencies for future contact.

— *Do whatever you can to resolve the complaint.* Complaints can be resolved without verification in many cases. If the resident complains that the staff is slow to answer his/her call light, you can always discuss the problem with the Director of Nursing (DON), provided the resident approves. This may cause the DON to initiate her own investigation or quietly resolve the problem.

> **REMEMBER** you should never represent something as a fact without verification. At the same time, verification should never be used as a tool for limiting attempts to resolve complaints. Rather, it is a self-protective device to prevent a too vigorous pursuit of unfounded complaints.

EXHIBIT F
Page 26 of 53

# VI.  Stage 2:  Analysis and Planning

Once a complaint has been verified, you are ready to analyze the information you have gathered to determine the reason the problem occurred.  This process will enable you to plan resolution strategies by defining potential solutions and identifying obstacles that may be encountered.

There are three steps in this stage of problem solving:  *analyzing the situation; identifying potential solutions; and identifying potential obstacles.*

## A.  Analyzing the Situation

### Why did the problem occur?

The information gathered during your investigation should give you some idea about the cause of the problem. Your investigation may reveal that the root problem is not the one that was reported to you.  For example, you may have been told that articles of clothing are being stolen.  During your investigation, you learn that clothing is simply not being returned from the laundry room.  Accurately determining the root problem is essential to finding a lasting solution.

> *Determining the root problem is essential to finding a lasting solution.*

Thinking through the cause of the problem automatically leads to identifying potential solutions.  Questions that might be considered are:

- Was there an oversight on the part of the facility staff?
- Was there deliberate retaliation against the resident?
- Is the problem related to policies/procedures of the facility?
- Are there personality clashes between the resident/relatives and staff?
- Is the facility habitually short staffed?
- Does the resident's physical/mental condition make good care extremely difficult to provide?
- Is the quality of care related to the resident's method of payment (i.e., Medicaid vs. private pay)?

### What justification or explanation does the facility offer for the problem?

A thorough analysis includes the perspective of the facility.  Some possible explanations the facility might give could also indicate obstacles to resolution.  Examples of statements you might hear are:

- There is no problem.
- The problem is due to a "difficult" resident or family member.
- The facility's action is based on medical/professional judgment.
- The care is as good as it can be considering the low rate of reimbursement.
- The facility meets the regulations and has good inspection reports.



EXHIBIT F
Page 27 of 53

### Who or what is at fault regarding the problem?

Determining who or what is responsible for the problem is important preparation for moving into the resolution stage. The responsibility may rest with one or more of the following:

- Facility staff failed to perform their duties properly.
- State/federal regulations are lax or confusing regarding the issue(s) raised by the complaint.
- Third-party reimbursement programs may not pay for certain procedures.
- Independent professionals (e.g., doctor, physical therapist) may not leave clear instructions for resident and staff to follow.
- The resident, or family, may be causing, or contributing, to the problem.

## B. Identifying Solutions

Use the information from your analysis of the situation to begin planning the next stage of the problem-solving process. Begin by identifying possible solutions to the problem. *Keep the complainant's/resident's goals in mind.*

- What might resolve the problem?
- What will it take to keep it from recurring?
- How many possible solutions can be identified?

## C. Identifying Obstacles

Once possible solutions are identified, you need to anticipate obstacles that might deter resolution. You do this by examining each potential solution and asking, "What obstacles might be encountered in seeking this outcome?"

EXHIBIT __F__
Page __28__ of __53__

# VII. Stage 3: Resolution and Follow Up

From the information gained in Stages 1 and 2, you should be ready to choose an approach to resolve the complaint, act, and evaluate the outcome. Remember the potential obstacles identified in Stage 2, and be flexible enough to use a different approach if your initial choice does not achieve the expected results.

Stage 3 of the problem-solving process involves the following three major steps: *choosing an approach for resolution; acting to resolve the complaint; and evaluating the outcome.*

## A. Choosing a Resolution Approach

Once a complaint has been investigated and verified, the next step in the complaint handling process is resolution of the problem. **This simply means coming up with a solution.** Sometimes you will develop a solution to try to "sell" to the respective parties; at other times, you may have to bring people together and help them work out the solutions that are meaningful. The important point is that the solution has to "fix" the problem. For example, helping a resident search for lost clothing may be a nice thing to do, but it does not provide a lasting solution to a problem of mishandling of laundry or personal possessions

*It is important to recognize when a solution to a problem or an agreement has been reached.* Some people get so involved in investigation or negotiation that they fail to realize that they have won their point or solved the problem. On the other hand, you should also recognize when *no satisfactory solution* has been reached, and the problem continues to reoccur. When a satisfactory agreement has not been reached, it is time to discuss the problem with the State Long Term Care Ombudsman.

*Complaints may be resolved in many ways.* Most are resolved at the facility level by simply bringing the problem to the attention of the staff or administrator. However, there are other, more adversarial approaches that may be required when the complaint cannot be resolved at the facility level. These are discussed later in this chapter. To begin with, we focus on the collaborative methods used for solving the complaint within the facility.

### Strategies for Resolving the Problem in the Facility
As a person working on behalf of residents and their interests, you need to become familiar with a variety of techniques for resolving complaints. Some of these techniques are especially suited for handling individual problems.

As you can see in *Table 7,* there are three primary strategies for resolving complaints at the facility level: *self-advocacy, mediation, and negotiation.*

Of these three, **negotiation is the strategy you will probably use most frequently**. However, it is important to remember that you can negotiate processes – the how and when something will be


EXHIBIT F
Page 29 of 53

accomplished, but you cannot "give up" the outcome if it is a matter of law and regulation. As an ombudsman, you can negotiate <u>how</u> a resident's right will be met, not <u>if</u> it will be met.

***Long Term Care Ombudsmen rarely use true mediation because ombudsmen are not usually neutral, ombudsmen are resident advocates.*** The one situation in which true mediation may be used is with family members or with issues where one resident's rights conflict with that of other residents.

## RESOLUTION STRATEGIES AT A FACILITY LEVEL

*Table 7*

| SELF ADVOCACY |
| --- |
| *Urge complainants to take action themselves.* When people are able to resolve their own problems, they become more confident and less dependent. This gives power to the complainant. It is an <u>empowerment</u> strategy.<br><br>An excellent way to encourage self-advocacy is to help residents voice concerns and resolve problems through the resident council. In some facilities, resident councils have been very effective in relating opinions and feelings to administrators, resulting in changes in the facility. In other homes, the resident council may be little more than an alternative activity to bingo. The more independent the council is of staff involvement, the more likely it can be useful in solving problems. You will have to evaluate each council to determine whether it is an appropriate forum for resolving complaints. |
| **MEDIATION** |
| *Try to get the complainant and the appropriate facility personnel to meet and develop a mutually agreeable solution.*<br><br>This can be a difficult role, since both parties sometimes use the mediator as a target for their bad feelings. In some cases, the parties may have different goals they want to achieve; whereas in other cases, both parties may agree on the goals, but disagree on how to reach them.<br><br>–   A mediator is essentially a facilitator – trying to encourage open communication and helping both sides find as much common ground as possible.<br><br>–   A mediator is neutral. – establishing the "ground rules" for the meeting, but not taking sides.<br><br>–   *Mediation is appropriate when the parties involved have **equal** power.* |



*Table 7 Continued*

| NEGOTIATION |
|---|
| – In negotiation, you bargain with another party to arrive at a binding agreement. |
| – Negotiation can avoid confrontation with the other party by clarifying the consequences of a continued course of action. |
| – Negotiating in a long term care facility will generally occur with the administrator or home operator. |
| – In negotiations, it is critical for you to know:<br>1. *whom you are representing,*<br>2. *what problems you want to solve, and*<br>3. *what may be acceptable solutions.* |
| **Negotiations should not be entered into without knowing what can and cannot be done by all parties to achieve the desired results.** |
| When you plan to negotiate in a formal session, remember: |
| 1. Prepare an *agenda* so that you are not sidetracked from the items you want to discuss. |
| 2. Ask for a *timetable* if the facility spokesperson promises that certain things will be done. |
| 3. Ask for a *written agreement* if the solution to a problem involves a major change in facility policy or is dependent on promises made by the facility. |
| 4. Summarize the results following any formal session with a letter. |
| 5. Monitor "agreed-to" actions resulting from the session to ensure that changes are made. |

## Principled Negotiation

The strategy of **principled negotiation** was developed a few years ago by a group called the Harvard Negotiating Project. This strategy is outlined in a book titled <u>*Getting to Yes*</u>. The book is an excellent resource for ombudsmen, since the role of a negotiator is perhaps the one most often adopted in resolving complaints within the facility.

*The general principle is to bargain on interests rather than positions.* The traditional method of negotiation involves each side taking a position, arguing its merits, and reaching a compromise. Unfortunately, compromises are often difficult to find and may leave both parties less than satisfied.


EXHIBIT _F_
Page _31_ of _52_

*The Alaska LTCO Program Manual*

Following are the key elements of **principled negotiation**:

❖ **Negotiate on the merits.**

❖ **Recognize that the participants are problem solvers.**

❖ **Concentrate on achieving a wise outcome**, reached efficiently and amicably. To do this, you must:
  – Focus on solving the problem.
  – Refrain from trying to score debate points or outsmart the other party.

❖ **Separate the people from the problem.**
  – Be soft on the people, hard on the problem.
  – Proceed independent of trust. Achieving resolution is based on interests and results, not on personal relationships.
  – Be aware that the other person probably perceives the situation differently than you do.
  – Do not react to emotional outbursts. Let the other side let off steam.
  – Phrase your proposals in terms of what you think will solve a problem, not in terms of what <u>they should do</u>.

❖ **Focus on interests, not positions.**
  – Explore interests.
  – Realize that each side has multiple interests. Try to find compatible ones that can form the basis of a solution. Try to see how the resident's interests are compatible with the facility's stated interests.
  – Avoid having a bottom line.

> E X A M P L E : Ombudsman to administrator: *"I know you want this facility to maintain its reputation as a home-like place where the care is good. Let's discuss what one specific resident, Mrs. Quiet, needs for her to feel at home and be comfortable with her care routine."*

❖ **Invent options for mutual gain.**
  – Develop multiple options to choose from; decide later.
  – Look for solutions that will allow both sides to gain something, in contrast to compromises where both sides lose something.
  – Do not be wedded to a single solution.
  – Try to develop a win-win solution based on shared interest.

> E X A M P L E : Ombudsman to administrator: *"Based on our discussion, we both agree that Mr. Dillard needs more opportunities for movement and to be outdoors. Let's brainstorm some ideas about how his needs can be met."*


EXHIBIT F
Page 32 of 53

▶ *Chapter 7*                                                    *The Problem-Solving Process*

❖ **Insist on using objective criteria.**
   – Try to reach a result based on standards independent of will such as laws, written rules, and/or outside experts.
   – Reason and be open to reason; yield to principle, not pressure.

> E X A M P L E : Ombudsman to Director of Nursing: *"I understand your concern that Mrs. Evert's health will rapidly decline if she doesn't agree to take the medicine her doctor ordered. You've done an excellent job of fully explaining the consequences of her decision and offering other options. Nevertheless, residents have the legal right to refuse treatment."*

## Sources of Power in Negotiating

In addition to practicing the techniques of **principled negotiation**, you should be aware of the sources of power that are available to you as an ombudsman in resolving conflicts in the long term care system. Your **base of power in negotiation** includes: [5]

– *The Older Americans Act:* The law requires every state to establish a Long Term Care Ombudsman Program to resolve complaints on behalf of facility residents.

– *Standards of Care*: Federal and state regulations establish a standard of care by which facilities must abide. In your advocacy, you seek adherence to these standards.

– *Civil Law:* Legal avenues exist by which a facility can be held accountable for violations of civil law. You offer the opportunity for the facility to avoid unpleasant legal conflicts by working out an agreement.

– *The Public Interest:* You represent the concern of the public at large for high-quality nursing facilities and assisted living homes.

– *Facility Reputation:* The facility•s willingness and desire to resolve problems and to cooperate with you can enhance its good name.

– *Resolution:* You can provide assistance in resolving problems of mutual concern.

– *Necessity:* If the problem has persisted to such an extent that the ombudsman has been called into the situation, then that problem probably will not go away without some sort of serious appraisal and action.

– *Persistence:* You are charged by the ombudsman statute to work for resolution; and in accordance with that mandate, you will stay with the situation until it improves.

---

[5] From the Virginia Ombudsman Manual, 1988.


EXHIBIT F
Page 33 of 53

—  *Best Alternatives:*  You offer the opportunity for an "in-house" resolution.  If a problem cannot be resolved at this level, you must refer the problem to the SLTCO who will likely seek regulatory action.

—  *Brainstorming:*  If a problem persists, it is in the best interest of everyone involved that it be resolved.  As the saying goes, two heads are better than one.  By meeting, you can think of a workable solution.

—  *Linkage with Community Resources:*  If resolution requires outside assistance, you can play a key role in tapping needed community resources and bringing them into the situation.

## Adversarial Resolution Strategies

If a complaint cannot be resolved at the facility level, it may be necessary to use more adversarial strategies to get the problem corrected.  These strategies include involving regulatory agencies, the community, courts, legislature, and the network of agencies serving the elderly; and in rare cases, the local media.

As a rule of thumb, remember that the more adversarial your method, the greater your burden of proof.  You must have very good quantity and quality of evidence before seeking resolution through one of these strategies.

Also remember that you are no longer working in cooperation with the facility.  There will likely be some damage, at least temporarily, to your working relationship when more adversarial methods are used.  However, there may be some instances where these methods are the only way to get the problem resolved.

The most commonly used adversarial strategy is referral to the Alaska Office of Health Facilities, Licensing and Certification or to the Division of Senior Services, Assisted Living Homes Licensing.  As you will recall from the discussion of the regulatory system in *Chapter 3, Long Term Care: Facilities, Regulations and Finances*, these agencies can be called upon to investigate complaints.  For this kind of referral, you will need to provide detailed information.  <u>The more detailed a complaint is, the better the chance that it will be verified by the regulatory agency and eventually resolved</u>.  If there is evidence of a trend at the facility, it should be included in the complaint so that the investigators can be alert to more widespread problems in the facility.

*It is also useful to become acquainted with employees of these agencies in your area so that problems may be discussed in an informal manner.*  Creating and maintaining such a relationship offers the possibility of a three-fold benefit.  First, regulators have legal authority not possessed by Ombudsmen.  Second, frequent contact with the agency may serve as a form of subtle pressure, which can lead to a more responsive bureaucracy and therefore to an improved regulatory system.  Third, once such a relationship has been established, many problems can be solved through informal contact, such as a telephone call.



EXHIBIT ___F___
Page __34__ of _53_



> *If you see a need to use any of these more adversarial strategies, you should contact the State Long Term Care Ombudsman.*

## B.  Acting To Resolve the Complaint

Once you have chosen an approach, you act to resolve the complaint. You implement your plan, remaining free to pursue other options if your initial strategy does not achieve the desired results. There are numerous skills that will be helpful in the actual resolution process. Most of these were discussed in *Chapter 6 The Communication Process* and in previous sections of this chapter. Two more skills are presented here: *earning trust and confronting authority figures.*

### Earning Trust

You cannot help resolve a complaint unless residents, staff, and administrators trust you. This means you must maintain confidence, be respectful, and have a good attitude. Other specific techniques for earning trust are summarized below in Table 8.

### TECHNIQUES FOR EARNING TRUST

*Table 8*

| DO'S | DON'T'S |
|---|---|
| – Let the individual do the explaining.<br>– ***Listen attentively and with understanding***.<br>– Hear exactly what is being said.<br>– ***Be sensitive to sensory losses, memory lapses***.<br>– Restate to clarify and show understanding.<br>– ***Encourage the speaker to elaborate***.<br>– Concentrate on physically demonstrating your attention: use posture, facial expressions, eye contact, gestures, and voice quality.<br>– ***Be comfortable with silences***.<br>– Use note-taking positively.<br>– ***Keep conversation moving with open-ended questions***.<br>– Repeat what has been said without adding or changing.<br>– ***Empathize***. | – Make the complainant feel defensive.<br>– Evaluate, make value judgments, accuse, correct, or indoctrinate.<br>– Appear judgmental in your posture or facial expressions.<br>– Take control of the conversation. If you control, intimidate, or threaten, you lose credibility.<br>– Seem detached or uninterested. Neutrality is not the same as lack of *concern*. |

### Confronting Authority Figures

Many of us have difficulty confronting authority figures in our daily lives. An authority figure could be any of the following: the head of an agency, an elected or appointed official, a facility administrator or owner, or anyone who is in a position to hurt or help you or your clients. You, too, may be perceived as an authority figure because of your knowledge, experience, status, training, or position.



EXHIBIT ___F___
Page __35__ of __53__

In resolving complaints, you will find yourself in a position where confronting authority figures is essential to achieve the results you seek. You must choose the correct approach toward a person who is perceived by others to be an authority figure.

### Reactions to Authority Figures

Three common reactions to those who have the power to influence outcomes are: *avoidance, awe, and anger.*

| | |
|---|---|
| *Avoidance* | It may take weeks or months for agencies to process complaints or for courts to process cases; yet many persons immediately seek such remedies without first confronting the person directly responsible for the problem. Why? Because they think it will not work, dread failure, and dislike face-to-face confrontation, especially on someone else's "turf." |
| *Awe* | Ironically, many persons may gripe about officials and corrupt politicians in private but cannot always be counted on to put their grievances in writing or to stand up at a public hearing. Many people are easily intimidated by a gavel or even an imposing tone of voice. Ombudsmen, too, can be seduced into a "cozy" relationship with the opposition. Certain professionals, such as doctors, have an aura about them that is difficult to dispel. |
| *Anger* | It is frustrating to deal with officials or staff who fail to share your viewpoint. Some may even attempt to disguise their self-interest as concern for residents. Having to confront such persons on a regular basis can be quite stressful and may lead to anger or "burnout." **Creative brainstorming and problem-solving sessions are a necessity in such circumstances, not a luxury**. |

### Tips for Dealing with Authority Figures

- Make an objective assessment of the individual to find out if he/she will be an ally or an adversary.

- Size up the prejudices, preferences, and decision-making patterns exhibited by the authority figure, and study his/her overt and covert influence.

- Be aware of the appeal process and the chain of command if a person in authority renders an unfavorable decision.

- Be aware of the policies, guidelines, rules, regulations, and laws that govern the authority figure, as well as those he/she is in charge of or can control.

- Encourage those in positions of responsibility to fulfill their public trust. This is the most powerful approach. If you can show an administrator a resident's rights in black and white as stated in standards or statutes, there is a good chance that he/she will capitulate or be won over. **The law is a very powerful tool that the ombudsman must know and call upon.**



## C.  Evaluating the Outcome

Once you have implemented a solution to a problem, you must evaluate the outcome to see whether it was actually resolved.  This requires checking back with the persons involved to see whether the problem has been resolved to their satisfaction.  The purpose of follow-up is to *verify that resolution of the complaint has occurred; and to do some self-evaluation.*

Complaints should be followed up at one or two regular intervals.  This may range from a few days to several months after resolution, depending on the nature of the complaint.  If the problem is recurring, or the agreed-upon solution was not put into effect, it may be necessary to reopen the case.  At this point, you should determine what went wrong and take further action.  If the complaint resolution has been implemented and the case remains closed, you can elicit feedback from the complainant.

There are two factors you should keep in mind while attempting to resolve a complaint:

–   **Some complaints cannot be resolved.**  This can happen in spite of a thorough investigation, unquestionable verification, and a wise and persistent course of action during the resolution process.

–   **Complaint resolution is not always clear cut.**

    1.  In some cases, a problem will go away, and then reappear.

    2.  In other situations, some parts of the problem will be taken care of, but not others.

    3.  In some instances, the complainant will not be completely convinced that the situation is as good as it should be.  At other times, the complainant will say that everything has been solved, regardless of your desire to pursue the matter further.  Most cases become less "black and white" the more they are examined, so it is possible that you will handle many cases that you can call only partially resolved.

    4.  Most cases become less "black and white" the more they are examined; so it is possible that you will handle many cases that you can call only partially resolved.


EXHIBIT ___F___
Page __37__ of __53__

# VIII.  Complaint Resolution in Assisted Living Homes

## A.  Role of the Ombudsman Program

Advocacy on behalf of assisted living residents is an integral part of the Long Term Care Ombudsman's mission.  The ombudsman program can perform many functions: complaint handling, issues advocacy, enforcement advocacy, community education, needs assessment, community resource linkage, information gathering, training and assistance to operators, and resident empowerment.

There are no clear-cut guidelines as to who is responsible for problems and issues when a facility is unlicensed and hasn't even applied for licensure.  Sometimes, the only entities with authority have been Adult Protective Services, a local Fire Marshall or the local District Attorney's office.

## B.  Complaint Handling

Many of the same procedures and skills used in the nursing home complaint process apply to assisted living homes.  <u>Even if you exclusively visit assisted living facilities, you need to be familiar with all of the information in this chapter and follow the guidance it contains.</u>

This section discusses some differences in assisted living facilities and nursing homes that may call for adapting your skills and strategies. The primary distinctions to keep in mind follow:

–   Assisted living home operators have less training than nursing facility administrators.

–   Fewer professional staff are on hand or available to advise the operator.

–   Staffing requirements are much looser than in nursing homes.

–   Some problems are the result of poor coordination by the system: failure of the mental health network to follow up, lack of resources, and/or exclusion of assisted living residents from access to services or activities.

–   Operators may be unaware of community resources they can tap; they may not be familiar with agencies that can assist with problems they experience.

–   Community organizations may be less willing to reach out to assisted living residents than to nursing home residents, especially if there have been any problems related to the mental disabilities of some residents; the community may have opposed the facility's presence in the neighborhood.

–   Residents have less family and fewer visitors or connections with the world outside the home.

–   In contrast to nursing home regulatory oversight, few licensing programs are functioning adequately to back up an ombudsman action.


EXHIBIT F
Page 38 of 53

- Many assisted living homes have not yet been identified/found by the licensing agency.

- As smaller, informal facilities, assisted living homes may resist some of the "institutional" requirements imposed through regulations.

- <u>It will be difficult for ombudsmen to carry out anonymous investigations and to assure freedom from retaliation.</u>

- State agencies, that the ombudsman would think to turn to for remedies, may have vested interest in the facility because they place people there and face few other options for such placements.

- Too often it is not clear under whose jurisdiction a particular facility falls.

<u>Ombudsmen should approach complaint investigation and resolution with the knowledge that confidentiality will be difficult to maintain and with the awareness that many problems are the result of ignorance.</u>  Regulators, operators, residents and advocates are still learning how assisted living homes should operate.

> *The ombudsman should approach resolution from an educational perspective, as a partner or resource to help the operator identify potential resources, to provide the training and information necessary to correct the problem*

The following chart prepared by the Cleveland Boarding Home Advocacy Program provides a helpful comparison between complaint resolution in nursing homes and assisted living homes.



EXHIBIT___F___
Page _39_ of _53_

*The Alaska LTCO Program Manual*

## COMPLAINT RESOLUTION IN NURSING HOMES AND ASSISTED LIVING HOME: A SUMMARY OF SIMILARITIES AND DIFFERENCES

| NURSING HOMES | TYPES OF PROBLEMS | ASSISTED LIVING HOMES |
|---|---|---|
| Medicaid discrimination, non-payment, problems with 3rd party reimbursements | **Financial Money** | Exploitation, non-payment |
| Inadequate nursing care | **Adequacy of Care** | Inadequate, neglectful care; provision of illegal nursing care |
| Taste, quantity, quality, appeal, temperature | **Food** | Nutritional value, adequacy of modified diets, number of meals, quantity and quality of food |
| Same as in assisted living homes | **Residents Rights** | Same as in nursing homes |
| Medicaid problems, SSI/SS problems, Medicare problems, insurance, DRG's, family problems, outside agency problems | **Not Against Facility** | Family problems, problems with outside agencies and health care providers, problems with inspectors, need for additional resources for residents and caregivers |

## DIFFERENCES BY VIRTUE OF REGULATIONS

| NURSING HOMES | | ASSISTED LIVING HOMES |
|---|---|---|
| Clear statutory and regulatory basis including bill of rights and health and safety requirements. | | Regulatory procedures for board and care homes differ from state to state; often enforcement is limited or non-existent. |
| As a result of the clear statutory and regulatory basis, clear understanding exists between state and local governments on enforcement responsibility. | . | Division for responsibility for is often unclear. |
| Heavy federal and state supplementation of care costs (Medicaid). | | Many states have financial supplementation. |



EXHIBIT F
Page 40 of 53

## Differences by Virtue of Nature of the Institution

| Nursing Homes | Assisted Living Homes |
|---|---|
| Public nature of licensed nursing home – right of access. | "Private home" syndrome – it is a quasi-public business. May have no right of access except possibly through health and housing inspectors. |
| Many care providers. Administrator can fire inadequate employees. | Operator usually is sole caregiver. |
| Large number of residents, with accessibility to families, friends, and others who will be aware of care. | Most homes are small, with isolated residents who have few outside contracts. |
| Identifiable – Stable List. Investigator can understand complaint in context of experience with a particular home. | Many homes go unidentified, even in states with licensure, especially small, unlicensed homes. |
| Barriers of entry into the nursing home field make for stability of operation, not possible for them to "disappear." | Can be easy to move in and out of business, or to pick up and move. |

## Victimization in Assisted Living Homes and Strategies for Intervention

### Resident is Victim, Care Provider is Victimizer

| Type of Complaint | Questions to Ask in Choosing Possible Interventions |
|---|---|
| **Overt, Intentional Abuse and Neglect of Resident**<br><br>Examples:<br>  – Acute bedsores<br>  – Locked in basement<br>  – Physical assault | ❖ *Involve multiple agencies?* |
| **Unintentional Provision of Bad Care (Lacked Care-Giving Knowledge or Was Unaware of Regulations).**<br>Examples:<br>  – Inadequate nutrition<br>  – Locking up residents to prevent wandering<br>  – Inappropriate storage and handling of resident medications | ❖ *Assessment of situation; what happened? What is the caregiver's understanding of situation?*<br><br>❖ *What kind of training or technical assistance would address the problem?*<br><br>❖ *Who/what organizations could provide training and technical assistance?* |



*The Alaska LTCO Program Manual*

| PSYCHOLOGICAL ABUSE AND NEGLECT | ❖ *Assessment of situation; what happened?  What is the caregiver's understanding of situation?* |
| Examples: | |
| – Verbal threats punitive action – can't go out | ❖ *Are resources available to provide education for the caregiver?  Are support groups for abusers available?* |
| | ❖ *What is the best way to confront caregiver?* |

## Resident is Victim, Family is Victimizer

| Type of Complaint | Questions to Ask in Choosing Possible Interventions |
|---|---|
| **ABUSE, NEGLECT, EXPLOITATION** | ❖ *Involve protective services?* |
| | ❖ *Could mediation be used?* |
| Examples: | ❖ *What kind of intervention on resident's behalf could change the family's behavior?* |
| – Not giving resident access to his/her own money | |
| – Not obtaining needed services | |
| – Upsetting resident | |
| – Inappropriate placement. | |

## Resident is Victim, Social Service System is Victimizer

| Type of Complaint | Questions to Ask in Choosing Possible Interventions |
|---|---|
| **INABILITY TO ACCESS NEEDED SERVICES** | ❖ *How would you advocate for resident?* |
| | ❖ *Would a case conference provide possible resolution?* |
| Examples: | ❖ *What does the caregiver need to know about resources?* |
| – Senior Centers discriminating against residents. | |
| – Social worker failing to respond when resident in need of assistance. | |
| – Denial of services. | |
| **INAPPROPRIATE USE OF ASSISTED LIVING HOMES THAT JEOPARDIZES RESIDENT WELFARE** | ❖ *What alternative placements are available?* |
| | ❖ *How would you go about educating the social service system about appropriate placement in assisted living facilities?* |
| Examples: | |
| – Placing violent residents. | |
| – Residents needing skilled nursing care. | |
| – Dumping troublesome residents into homes. | |



## Care Provider is Victim, Resident is Victimizer

| Type of Complaint | Questions to Ask in Choosing Possible Interventions |
|---|---|
| **OUTRAGEOUS BEHAVIOR**<br><br>Examples:<br>   – Smearing feces on the wall<br>   – Throwing lit cigarettes into trashcans.<br>   – Violating house rules | ❖ *Mediate between resident and caregiver?  Involve social worker?* |
| **REFUSAL TO PAY FOR CARE** | ❖ *What might cause the resident to refuse to pay his/her care?*<br><br>❖ *Involve social worker if resident has one?*<br><br>❖ *Does the caregiver have the right to request removal of resident?* |
| **MAKING UNFOUNDED ACCUSATIONS**<br>Examples:<br>   – Claiming caregiver is holding resident prisoner.<br>   – Accusations of molestation. | ❖ *For what reasons might the resident make these allegations?*<br><br>❖ *What are possible resolutions?*<br><br>❖ *Refer for needed health or psychiatric services?* |

## Care Provider is Victim, Family is Victimizer

| Type of Complaint | Questions to Ask in Choosing Possible Interventions |
|---|---|
| **REFUSAL TO PAY FOR CARE** | ❖ *What are possible interventions that might resolve this problem?*<br><br>❖ *Involve protective services?* |
| **VIOLATION OF HOUSE RULES**<br>Examples:<br>   – Show up at midnight to visit.<br>   – Buys resident alcohol. | ❖ *Involve the family?*<br><br>❖ *Would mediation be appropriate?* |
| **NOT GIVING ADEQUATE INFORMATION AT TIME OF PLACEMENT**<br>Examples:<br>   – Not informing of life-threatening health problems<br>   – Inaccurate in describing resident ADL functioning. | ❖ *What information should the caregiver obtain when residents are placed in his/her facility?*<br><br>❖ *What alternative placements are available?* |


EXHIBIT F
Page 43 of 53

*The Alaska LTCO Program Manual*

## Care Provider is Victim, Social Service System is Victimizer

| Type of Complaint | Questions to Ask in Choosing Possible Interventions |
|---|---|
| **INAPPROPRIATE PLACEMENT AND LACK OF FOLLOW UP**<br><br>Examples:<br>– Resident needs skilled nursing care.<br>– Resident needs more care than home can give.<br>– Agencies close cases when resident enters home. | ❖ *What kind of follow up should the placing agency provide?*<br><br>❖ *How would you educate the social service system on this issue?*<br><br>❖ *What does the provider need to know at admission?* |
| **DENIAL OF SERVICE**<br><br>Examples:<br>– Psychiatric hospital refuses to evaluate violent resident.<br>– Social worker will not act promptly to remove inappropriate resident. | ❖ *How would you advocate with the agency to provide service?*<br><br>❖ *Educate social service system?*<br><br>❖ *Educate caregiver?* |

***NOTE:  In any of the above situations, it may be necessary to remove the resident(s) and/or attempt to close the home depending upon caregiver intentions and willingness and/or ability to learn and change.***

**Based on matrix prepared by:** Sally Reisacher, Services to Adult Care Homes & Eleanor Warner, Nursing Home Ombudsman, 1468 West 25th St., Cleveland, OH 44113, April 28, 1989. Sally Reisacher can be contacted at: Reisacher Petro & Associates, Board and Care Quality Forum, 1728 Holly Lane, Pittsburgh, PA 15216, bcqf@bellatlantic.net, (412)563-7330; Fax: (412)563-7331.



# IX.  Community Resources and Support Systems

You may frequently encounter problems that require services that you, as an ombudsman, cannot provide, or that require knowledge you do not have.  You need to be aware of the community resources and support systems that are available to meet residents' needs in these areas.  A few such resources and systems are discussed below.

### The Alaska Commission on Aging (ACoA)

The Alaska Commission on Aging provides various services to the elderly.  As an ombudsman, you should make a point to familiarize yourself with the programs provided by the ACoA. The ACoA is charged with planning, advocacy, grant making and administration, and inter-agency coordination on senior citizens' issues.  The ACoA funds and administers senior services grant programs.  Within the ACoA, is the Office of Long Term Care Ombudsman (OLTCO).  The ACoA grants for nutrition, transportation and support services (hot meals, essential transportation, and selective supportive services), and Senior Employment are funded through the Older Americans Act and state monies.  The ACoA's home and community based services grants (care coordination, adult day centers, and respite care) are funded by the state, as are senior services. In addition, the staff of these programs is often very familiar with other resources and with programs affecting the elderly, such as Medicare.  They can be a valuable source of assistance.

### Adult Protective Services (APS)

The Adult Protective Services Program is housed in the State Division of Senior Services.  This program responds to reports of abuse or neglect of persons aged 19+ who cannot protect themselves because of physical or mental impairment.  APS acts to prevent, remedy, or halt abuse or neglect while helping the adult maintain the maximum possible degree of personal freedom, dignity and self-determination.

APS will respond to allegations of abuse, neglect, and financial exploitation of long term care residents if the alleged perpetrator is a family member or someone living in the community.  The Ombudsman Program and APS have entered into a memorandum of understanding that provides procedural guidelines around cases of this kind.  The SLTCO will assist you if you encounter such situations.

### Insurance Counseling Program

The Insurance Counseling Program is a service of the Alaska  Division of Senior Services.  This program answers questions about health and long term care insurance, Medigap policies, and Medicaid and Medicare benefits.  The program maintains a state-wide, toll free hot line:  800-478-6065.


EXHIBIT F
Page 45 of 53

*The Alaska LTCO Program Manual*

### Legal Services

Legal assistance for the elderly may be provided by a number of sources. Eligibility may be based on the type of problem, income, or other factors. In addition to private attorneys, other sources of legal services include the Alaska Legal Services Corporation and the Disability Law Center. Such organizations provide various help, ranging from legal advice to actual representation in a suit against a facility.

### Community Mental Health Centers

These centers provide a variety of services to nursing home residents and their families. The level of services appears to vary greatly from place to place. Some centers have regular programs to provide counseling or treatment to residents. In other areas, assistance may come only on the basis of a direct request from a resident or family member. You should contact the local mental health center in your area to find out what services they provide.

### Civic Groups

Virtually all the popular civic and business organizations have community service programs that include some type of assistance to the elderly. Some have specific projects that work to purchase wheelchairs, eyeglasses, or other items needed by nursing homes residents, but not always covered by Medicare or Medicaid.

### Church and Religious Groups

These groups may provide assistance in two important ways. First, many such groups visit facilities on a regular basis, assist with activities, and generally provide a positive presence in the home. Second, they often can provide spiritual counseling for residents. As an ombudsman, you should take care not to impose your own religious beliefs on a resident, but it is always appropriate for you to refer someone who expresses concerns in this area.

### Other Organizations

The American Dental Association encourages its members to provide free engraving of dentures for the elderly. Your local dental association can tell you if this service is available in your area.

Support groups exist for the victims and families of a variety of diseases. For example, the Alzheimer's Association has local chapters in many areas. These groups may be valuable sources of information or assistance.

### Resources for Mentally and Developmentally Disabled Residents

You will encounter a number of residents who suffer from mental or physical disabilities. Although some residents will be elderly, many will be younger, disabled persons. There are some special resources you should be aware of in working with such residents.

Protection and advocacy services provide legal counsel on voluntary and involuntary admission and/or commitment to treatment facilities, legal capacity, change of status, transfer, discharge, and enforcement and protection of the rights of developmentally disabled and mentally ill persons. This agency can be called on when problems arise dealing with these issues.


EXHIBIT F
Page 46 of 53

▶ *Chapter 7*                                                   *The Problem-Solving Process*

The protection and advocacy agency in Alaska is the Disability Law Center. Their toll free number is: 800-418-1234.

### Alternatives to Nursing Homes

You will encounter residents who want to leave the nursing home. Although many of these persons will need nursing home services and have no other place to receive such care, many residents do improve to the point that they are capable of living in alternative housing for the elderly. You should be familiar with what alternatives are available in your community. These may include: adult day care, independent living apartments, congregate housing, assisted living facilities, and continuing-care retirement centers.



# X.  What an Advocate Should Know[6]

A good advocate must be knowledgeable about long term care facilities, conditions, and issues.  There is no substitute for current, factual information to support your advocacy efforts.  A good advocate knows the following:

**Facilities in the Immediate Community**
– What kind of facilities are they?  What level of care do they provide?  Are they private and therefore do not participate in Medicaid or Medicare programs?

– Who lives there?  The very old and very ill?  Young people?  Mentally ill?  Disabled?  How many beds does each facility have?

– What kinds of special programs does the facility offer?  Rehabilitation?  Community  interaction?  Physical therapy?  Mental health services?  Resident council?  Family council?  Does the facility provide the services that it advertises in brochures, telephone books, and the newspaper?

– Does the facility have a dementia special care unit?  If so, what makes the unit "special"?

– What is the general atmosphere of the facility?  Warm, friendly, active?  Cold, quiet, sterile?

– Which facilities offer special model programs that could be duplicated by others?

– Which facilities have warm, receptive staff who encourage the public to visit and help?

– What kind of training is provided for the nursing assistants?  How are the working conditions for workers?

– How does the facility measure up in meeting standards?  What do inspection reports say about conditions?

**Regulations for Facilities**
– What are the regulations and state licensure standards for nursing homes and for assisted living facilities?

**Regulatory Agencies**
– What state agencies have jurisdiction over facilities, e.g., Health Facilities Licensing and Certification and the Assisted Living Homes Licensing?

---

[6] Adapted from materials produced by the National Citizens' Coalition for Nursing Home Reform.

## The Difference Between Medicare and Medicaid programs
– What benefits do they offer?  What types of facilities do they certify?

## Your Community Resources
– What is the mental health center doing for residents in nursing homes? Assisted living facilities?

– What alternatives to institutionalization exist in your area? Are there waiting lists for such programs or services?

## Who Makes Decisions about Facilities in Your Community
– Who owns the nursing homes and the assisted living homes?  Are doctors, legislators, or others involved in ownership?

– Are there "chain" facilities in your community?  Where is the "home" office of the chain?

– Who is on the governing board of the nursing home?  This information should be available from the Health Facilities Licensing and Certification.

– Is the administrator the owner or part owner?  Does the owner own several nursing homes?

– Are there any independent citizens' groups working on nursing home or assisted living issues in your community?  Can they provide volunteer services or support?


EXHIBIT F
Page 49 of 53

# XI.  Working to Change the System:  The Larger Role of the Ombudsman/Advocate

Although the major day-to-day job of the ombudsman is to resolve individual problems, it is important that you have some knowledge of the broader issues that affect facilities and the long term care system in general.

## A.  Achieving Long-Range Goals

An important part of your work as an ombudsman is to achieve long-range goals for improving the system. Several reasons that efforts directed toward long-range changes in the system are important follow.

- Improved care for all residents is a major reason why the ombudsman program was created.  Issue work allows an ombudsman the opportunity to work for all residents, not just the relatively small number of people who register complaints.

- Solving individual problems, while important, is often a "band-aid approach" to dealing with the inadequacies of the long term care system.  An ombudsman can become so busy putting out brush fires that there is never enough time to plan how to fight the big battles.

- Working on issues can at times be more satisfying.  This is not to say that the individual's problem should be put aside in favor of a "fun project," or that resolving an individual case is not satisfying. Working exclusively on individual cases can be frustrating, however, because it often does not allow time to step back and take a look at the larger picture.  When too many individual cases are piled on top of one another, an ombudsman can feel weighed down and be more susceptible to "burnout."

As discussed earlier, you will encounter repeat complaints in some facilities as well as similar complaints that recur in many different homes. Such system-wide or repetitive problems may indicate a need to seek improved state legislation or enforcement of existing legislation, or to pursue other remedies that appear likely to protect the rights of all residents.  It is important that you identify issues that are affecting all residents and consider steps that can be taken to <u>change the system</u> for the benefit of all residents.

## B.  Advocacy

Your roles in solving individual problems include those of investigator, mediator, and negotiator.  In working on system issues, you are fulfilling the role

> *Advocacy means using your voice on behalf of some person(s) in favor of some cause.*

of ombudsman as advocate. It is a process by which you seek to influence those who make decisions to do so in ways that help reach your goals.  The advocate is committed to striving for and asserting the expressed


EXHIBIT _F_
Page _50_ of _53_

▶ *Chapter 7*                                                    *The Problem-Solving Process*

interest of an individual or group.  The advocate may understand and respect the positions held by other people, but his/her loyalty is to the achieving of his/her goal.

The skills you use as an issues advocate are much like those you use to solve complaints.  You must be able to gather facts and information, and to plan and carry out actions.

Ombudsmen need to think of creative ways to involve social services agencies, assembly or council representatives, state and federal legislators, the medical community, the legal community, and the business community.

Once these individuals and groups are involved, their interest in solving problems in long term care facilities should increase.  With this interest developed, powerful individuals can be called upon to intervene when problems arise.  Furthermore, the very fact of this interest will tend to keep facilities on "good behavior."

> *The law is only as good as it is enforced.*

Legislation is sometimes the most effective way of addressing problems in long term care facilities.  Although effective laws can occasionally be adopted quickly and quietly, major reform legislation requires a great deal of organizing.  Much effort is required and several months or years will pass, from the first steps of drafting major legislation until it is signed into law and then fully implemented by promulgating rules.  The principle should be remembered that any law is only as good as its enforcement.

Ombudsmen cannot get legislation adopted by working alone.  Coalitions need to be formed to bring together as much support as possible.  Organizing in the community among senior citizen groups, unions, churches, social service providers, and consumer organizations will help demonstrate to the legislature that there is citizen support for a legislative initiative.  Nursing home operators and their associations have a great deal of political influence.  This power must be understood and sometimes countered before laws that benefit nursing home residents become reality.

> *The Nursing Home Reform Amendments of 1987 is perhaps the most sweeping change in nursing home regulation history.*

Such groups and coalitions have helped to enact the state laws on ombudsman access and resident rights.  Organizations such as the American Association of Retired Persons are involved in working for improvements in the quality of nursing home care.

On the national level, the National Citizens' Coalition for Nursing Home Reform, located in Washington, D.C., is an extremely effective voice for nursing home reform.  NCCNHR (nick-ner), as it is commonly known, is made up of residents, advocates, concerned citizens, ombudsmen, and others who share a desire to improve nursing homes.  This organization is primarily responsible for

EXHIBIT __F__
Page _51_ of _53_

*The Alaska LTCO Program Manual*

organizing the coalition including nursing home associations, health care professionals, unions, consumer groups, and many others that lobbied Congress to enact the Nursing Home Reform Amendments of 1987. *This piece of legislation is perhaps the most sweeping change in nursing home regulation in history.*

 *Ombudsmen should be aware that they are a part of such a network of advocates and should stay informed about state and national issues that affect long term care facilities.*

EXHIBIT  F
Page 52 of 53

# XII.  Reporting

Reporting on the work you do may be one of the most burdensome parts of your job as an ombudsman, but it is a very important part.  Reporting helps to inform the public and the elected officials about the conditions in nursing homes and the problems that residents face.  It also informs decision makers about the work that the ombudsman program does.  In an environment where accountability is becoming more and more important, there is a great need to demonstrate both the effectiveness and the need for the program.

As of 1995, there is a national reporting system that ombudsman programs in every state use.  This reporting system ensures that similar information is collected so that a national database can be developed.  While that database may not mean much to the individual resident, it may go a very long way in helping legislators to understand that additional resources are needed to improve the life of all residents in nursing homes.

One of the most frequently asked questions is, "*What is a reportable complaint*?"  As a rule of thumb, a reportable complaint is one where you invested more time and effort than simply relaying a concern to staff.  For example, if Ms. Smith had drunk all the water in her room and needed more, and all you needed to do was to ask the nurse to bring her more, you probably shouldn't report this.  (But you should make at least a mental note to keep an eye out for the same or related problem involving other residents.)

> *A reportable complaint is one where you invested more time and effort than simply relaying a concern to staff.*

However, if several residents didn't have water because there was a systemic problem in getting the water delivered, or if over the course of several visits Ms. Smith didn't have water because the aides were avoiding her, you probably should make a report.  These problems are more likely to require that you use what you've learned to investigate and resolve them.

*Each complaint or complaint case must be documented.*  What is a complaint case as opposed to a complaint?  **A complaint case is any problem or group of problems you work on as a whole**.  It could be several different complaints made by one resident or a single complaint voiced by a number of residents.

