IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

HELEN WINTERS, )
through her power of attorney )
Carol Winters, )
         )
        Plaintiff, )
         )
vs. )
         )
CHUGIAK SENIOR CITIZENS, INC., )
         )    Case No. 3:06-cv-00083-TMB
        Defendant. )
_____ )

**MEMORANDUM IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

Plaintiff, Helen Winters, through counsel of record, Alaska Legal Services Corporation, and pursuant to Fed. R. Civ. Proc. Rule 56 moves this Court for Partial Summary Judgment because no genuine issues of material fact exist on two aspects of Plaintiff's claims and therefore, Ms. Winters is entitled to a judgment as a matter of law on those points. Specifically, Ms. Winters' level of care has not changed from the time of her admission in September of 2004 until the time Defendant Chugiak Senior Center ("CSC") attempted to evict her on January 6, 2006. Thus, the Court must find as a matter of law that CSC's threatened eviction of Ms. Winters violates the Alaska Assisted Living Home Act (AS 47.33.005-AS.47.33.990), since none of the statutory grounds for termination of the residential services contract exist (AS 47.33.360(a)). Amended Complaint, Dkt. 1 (Ex. C),[1] Count I. The Court must also hold, as a matter, of law, that CSC has breached its contract with Ms. Winters. Amended Complaint, Dkt. 1 (Ex. C.), Count IV. Further, at the time of Ms. Winters' admission

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST 6TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

---

[1]    References within this brief to "Dkt" are to the docket entry numbers of pleadings filed in this Court. Ms. Winters filed an amended complaint in state court on March 31, 2006. CSC removed the case to this Court on April 14, 2006. The amended complaint is found within Dkt. 1, at Ex. C.

through January 6, 2006, CSC lacked the requisite statutorily required written complaint process.

## STANDARD OF REVIEW

Fed. R. Civ. Proc. Rule 56(a) and (b) permit a motion for summary judgment "upon all or any part" of a claim. See, also, Rule 56(d). A court may grant summary adjudication as to specific issues without granting judgment on an entire cause of action if to do so will narrow the issues for trial. *First Nat. Ins. Co. v. Federal Deposit Ins. Corp., 977* F. Supp. 1051 (D. C. Cal. 1997). In deciding a motion for partial summary judgment that will not fully adjudicate the case, a court may both make legal rulings about the materiality of the factual assertions that are not properly controverted, and make legal rulings about factual assertions that are properly shown to be controverted. *Dooley v. Liberty Mut. Ins. Co.*, 307 F. Supp. 2d 234 (D. C. Mass. 2004). If the Court finds that Plaintiffs are entitled to partial summary judgment, the Court will still need to afford subsequent proceedings to address those matters not decided by the partial summary judgment. *In re Air Crash Near Cali, Colombia on December 20, 1995,* 985 F. Supp. 1106 (D.C. Fla. 1997).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Ms. Winters' level of care has not changed since her admission to CSC in September 2004. CSC admits that on her admission to CSC Ms. Winters was an elderly woman who has been diagnosed with a number of maladies, including hearing loss, severe knee pain, spinal osteoporosis, a history of blood clots, a history of two falls within the last two years resulting in a broken shoulder from the second fall and an anxiety disorder. Answer, Dkt. 19, Par. 6. CSC admits that the conditions listed in the

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

preceding sentence were disclosed to it on or about the time of Ms. Winters' admission

to the CSC in September 2004. Answer, Dkt. 19, Par. 6.

On September 24, 2004, Ms. Winters signed a CSC Assisted Living Program

Lease Agreement. Affidavit Carol Winters, Ex. 11. She also signed a CSC Living

Program Resident Services Contract, for Ms. Helen Winters. Affidavit Carol Winters,

Ex. 12. Both documents affirm that CSC will provide care to Ms. Winters based upon a

plan of care. See, Ex. 11, at 30334; Ex. 12, at 30337. Specifically, CSC's Services

Contract specifically states that CSC is to conduct a standardized interview to determine

needs of residents before move-in and develop a written service plan before move in.

Ex. 12, at 30337. The written service plan is to include a description of "..what, when,

how and how often services will be provided, support the principles of dignity, privacy,

choice in decision-making, individuality, and independence; support a homelike

environment when the health or reasonable safety and well-being of others are not at

risk; and be reviewed and updated quarterly and *more often if needed.*" (emphasis

added.), Ex. 12, at 30337-30338. The written service plans applicable here are at Ex. 8,

the first service plan created for Ms. Winters on September 15, 2004 and the October 5,

2005 service plan, Ex. 10. which was the plan in place at the time of the attempted

eviction. Neither of those plans support an eviction of Ms. Winters.

CSC conducted a pre-screening assessment of Ms. Winters in September 2004.

Answer, Dkt. 19, Par. 11; Affidavit Carol Winters, Ex. 5[2], Pre-Screening Completed

Sept. 7, 2004. CSC also completed a Client Profile. Affidavit Carol Winters, Ex. 6. CSC

admits that the Plan of Care Contract signed at the time described the services CSC

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

---

[2]     Since the parties have already submitted proposed exhibit lists, Plaintiffs' references are to the
exhibit numbers as referenced on Plaintiff's exhibit list. Thus, Plaintiff Ex. 5, is the 5th document
referenced within Plaintiff's exhibit list and a copy is attached for the Court's convenience.

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment
Case No. 3:06-cv-00083-TMB
Page 3 of 13

would provide to Ms. Winters, was to include, among other things, assistance with

activities of daily living, self-care and medication management. Answer, Dkt. 19, Par.

12. The pre-screening instrument of Sept. 7, 2004 shows that Ms. Winters had a care

level of 26. Affidavit Carol Winters, Ex. 5. A Client Profile created at the same time

shows Ms. Winters needed help with her daily living activities. Affidavit Carol Winters,

Ex. 6. The two instruments show that Ms. Winters needed help with most of her daily

living activities. Affidavit Carol Winters, Ex. 5, 6. These instruments were used to

develop a plan of care for Ms. Winters in the fall of 2004. Affidavit Carol Winters, Ex.

7, 8. The initial State of Alaska, DSDS Choice Plan of Care from Sept. 2004 states that

Helen requires 24 hour supervision and "substantial assistance with all of her ADL's

and IADL's." Affidavit Carol Winters, Ex. 7, at 30046. The initial CSC Service Plan

from September 2004 states that Ms. Winters needs assistance in most of her ADL's

and IADL's, including toileting, ambulation, transferring, incontinence, dressing,

bathing, medication, safety checks. Ex. 8.

  About a year after Ms. Winters' admission, and before the attempted eviction in

January of 2006, a renewed state plan of care and a CSC service plan of care were

created for Ms. Winters. A State of Alaska, DSDS Choice Plan of care from September

10, 2005 was created for Ms. Winters. Affidavit Carol Winters, Ex. 33, 34. A CSC

Service Plan was created on October 5, 2005. Affidavit Carol Winters, Ex. 38.

  CSC's "Move-Out Criteria", an internal policy, states that an individual must

exceed a score of 56 on a functional assessment to be deemed unsuitable for CSC.

Affidavit Sonja Kerr, Ex. 95. The same policy, as well as the Resident Services

Contract requires that if staff believe there has been a change in the residents' needs, a

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE AND STATEWIDE OFFICE
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

new functional assessment is completed. Affidavit Carol Winters, Resident Services

Contract, Ex. 12, Affidavit Sonja Kerr, Ex. 95, Ex. 50, at pg. 119-120. From the time of

her admission in September 2004, until January 6, 2006, CSC did not apparently

conduct any other pre-screening assessment of Ms. Winters to objectively establish any

change in her level of care.  In fact, the October 2005 plan of care in place for Ms.

Winters prior to January 6, 2006 is identical to the plan of care from the fall of 2004,

once again recognizing that "Helen requires maximum assistance of her ADL's and

IADL's." (P. Ex. 33, at 30042). Affidavit Carol Winters, Ex. 33, 34, and 38.

It is undisputed that CSC attempted to evict Ms. Winters on or about January 6,

2006 and has never retracted that eviction notice. Answer, Dkt. 19, Par. 17, 18, and 21;

Amended Complaint, Dkt. 1(Ex. C), at Ex. 1.[3] There is simply no basis for the eviction

based on Ms. Winters' plans of care.

As an assisted living facility, CSC is legally required to have a written complaint

process in place and that residents or their representatives must be informed of this

written complaint process. AS 7AAC 12.890. Ms. Winters was never informed of

CSC's written complaint form until it was disclosed in the course of discovery in this

matter. Affidavit Carol Winters, Par. 11, Ex. 96[4]. CSC administrators likewise admit

---

[3]     The amended complaint contains an exhibit marked Ex. 1, which is a January 5, 2006 letter from
Jan Freels to Helen Winters indicating Ms. Winters must leave the facility. The purported reason for
termination is an alleged "continued pattern of behavior and conduct is detrimental to the safety and well-
being of other residents and staff, and your unwillingness or inability to refrain from unnecessary verbal
abuse and hitting of staff suggest you may need mental health services to prevent harm to others and/or
the facility can no longer provide the level of services you need." CSC cited to AS 47.33.360(a)(2)(3)(6).
However, CSC has otherwise indicated in its original eviction letter of January 5, 2006 that the eviction
was due to verbal abuse and hitting of staff, i.e. that it was detrimental to the safety and well-being of
other residents and staff. CSC has since maintained that the eviction is predicated on its belief that Ms.
Winters' care needs have increased since her admission to the facility.
[4]     Plaintiff's Exhibit 96 is not on the Plaintiff's witness list because it received in a late disclosure
from CSC.
Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment
Case No. 3:06-cv-00083-TMB
Page 5 of 13

they never provided the Winters' with a written complaint form. Affidavit Sonja Kerr, Ex. 50, 94, 53, 51.

## ARGUMENT

### I.    MS. WINTERS' LEVEL OF CARE NEEDS REMAINED THE SAME FROM HER ADMISSION TO THE ATTEMPTED JANUARY EVICTION-SHE DOES NOT MEET ANY GROUNDS FOR EVICTION UNDER AS 47.33.360(a).

Plaintiff's Amended Complaint, Count I asserts that CSC's threatened eviction is illegal because none of the statutory grounds for termination of the residential services contract exist. Amended Compl., Dkt. 1 (Ex. C), Par. 24. The Alaska Assisted Living Home Act's statutory grounds for termination of the residential services contract are found at AS 47.33.360(a) which provides:

"An assisted living home may not terminate a residential services contract with a resident of the home against the resident's will, except

(1)    for medical reasons;
(2)    for engaging in a documented pattern of conduct that is harmful to the resident, other residents, or staff of the home;
(3)    for violation of the terms of the residential services contract, including failure to pay costs incurred under the contract;
(4)    when emergency transfer out of the home is ordered by the resident's physician;
(5)    when the home is closing; or
(6)    when the home can no longer provide or arrange for services in accordance with the resident's needs and the resident's assisted living plan.

CSC's purported reason for termination is not within this list. Even assuming *arguendo*, that CSC is contending that they may rely upon subsections (2), (3) or (6), the facts do not measure up. The reality is that Ms. Winters is no more "heavy care" as of January 2006 than she was when admitted in September of 2004. Dispositive proof that Ms. Winter's condition had not changed as of January 5, 2006 is the fact that CSC never documented such a change as required by its own policies and procedures.

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment
Case No. 3:06-cv-00083-TMB
Page 6 of 13

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

According to the CSC Move-Out Criteria, CSC provides "24 hour staffing, seven days a week." Ex. 96. The CSC Move-Out Criteria states that CSC relies upon the functional assessment process before suggesting anyone move out, specifically, the policy states that CSC is no longer appropriate "if the resident's functional assessment score is equal to or higher than fifty-six (56) ....and the resident obtains a score of 57 and above on the CSC Functional Assessment." Ex. 95. According to CSC's Executive Director, Linda Hendrickson, staff would complete a functional assessment upon admission and "then if necessary, if something changes. They're constantly assessing, so if something changes, they'll do another functional assessment if there has been a definite change." Affidavit S. Kerr, Deposition Hendrickson, Ex.50, at 119-120. Ms. Winters needs did not change and thus, a new complete functional assessment was never completed of her after September 2004. Further evidencing the fact that her condition has not changed is that fact that each and every plan of care demonstrates her medical condition is the same as it was on the day that she entered CSC.

Moreover, CSC is collaterally estopped from raising now a concern that Ms. Winters was too disabled to enter CSC. CSC is estopped because it has factually admitted its knowledge that Ms. Winters was disabled upon entry to CSC. In its Answer, CSC admitted that it was aware of Ms. Winters' disabilities at the time of her admission as a result of the pre-screening instrument done on Sept. 7, 2004 by Lynn Moser. Affidavit Carol Winters, Ex. 5, 6. The pre-screening instrument recognizes all the disabilities identified and admitted by CSC in its Answer. No other pre-screening instrument describes a higher level of care. Indeed, the last agreed upon care plan for Ms. Winters, created in October 2005, and the plan in place at the time of the purported

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

eviction of January 2006, is the same[5] as the first care plan of Sept. 2004. Cf. Ex. 7, 8,

with Ex. 33, 34, 38. Both describe Ms. Winters as an elderly woman with various

disabilities who needs "maximum assistance with all ADL's and IADL's." Thus, there

is simply no legitimate factual basis that CSC may rely upon to show that Ms. Winters

needs have "increased" while she has been a resident at CSC and prior to January 6,

2006, the date CSC unlawfully attempted to evict her from CSC. For that reason, the

Court must find as a matter of law that Ms. Winters is entitled to partial summary

judgment and a finding that CSC's efforts to evict Ms. Winters violates the Alaska

Assisted Living Home Act at AS 47.33.360. In reality, CSC's consistent use of the

phraseology "heavy care" is nothing more than a euphemism for "too disabled." Ms.

Winters cannot be factually determined to be "too disabled" because her condition has

remained essentially the same throughout the time of her residency at CSC. That is

simply not true factually.

     Ms. Winters' medical condition has not changed from what it was upon

admission, and there is simply no factual basis to support termination of the residential

contract under the Assisted Living Home statute and standards. Because Ms. Winters

medical condition had not changed, the CSC violated the Alaska Assisted Living Home

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

---

[5]    The September 2004 CSC Service Plan states that Ms. Winters needs assistance in toileting, ambulation, transfer, incontinence, dressing, bathing, medications, safety checks. Ex. 8. The state plan of care notes that "Helen requires 24 hour supervision & substantial assistance with all of her ADL's and IADL's." Ex. 8. It notes that Helen will need medication reminders, and will need help with transfer, bathing, home hazards, skin care, immobility, or other risk factors. The September 2005 Choice Plan states that Helen cannot cook, is at risk for falls, requires maximum assistance using the toilet, requires daily skin care, requires assistance with dressing, requires assistance with medications, daily assistance with ambulation and transfer needs. At Ex. 33, pg. 30042, the state Choice Plan notes that "Helen requires maximum assistance of her ADL's and IADL's." Ex. 38, the CSC October 2005 service plan indicates that "Helen needs assistance with most ADL's." Ex. 38, at pg. 30058. The document goes on to state that Helen is at risk for falls, will be monitored when ambulating, will request assistance for transferring, will receive medication prompts, will be assisted with bathroom needs, transferring and showering. Ex. 38, at 30059. All plans require that Ms. Winters receive pre-prepared meals at the facility.

Act by violating the very purposes of the Act, AS 47. 33.005, which is to ensure

assisted living homes that " provide a homelike environment for elderly persons and

persons with a mental or physical disability who need assistance with the activities of

daily living"; and promote the establishment of homes that help "the elderly to age in

place."

## II.    CSC HAS BREACHED THE RESIDENTIAL SERVICES CONTRACT.

Plaintiff's Amended Complaint alleges a breach of the Residential Services

Contract. Am. Compl., Count IV, Par. 30-32. CSC and Ms. Winters[6] entered into a

contract on Sept. 24, 2006. P. Ex. 11. The contract provides that it is subject to the

Landlord and Tenant laws of the State of Alaska and is also made subject to the Alaska

Assisted Living Homes Act, 47.33.005-90. P. Ex. 121, pg. 30337. The contract requires

that CSC "conduct a standardized service interview to determine the service needs of all

Residents at or before the time of move-in." P. Ex. 11, at 30337. The contract requires

CSC to develop a Resident Service Plan before move-in which (1) includes a

description of what, when, how, and how often services will be provided; (2) support

the principles of dignity, privacy, choice in decision-making, individuality and

independent; (3) support a homelike environment when the health or reasonable safety

and well-being of others are not at risk; and (4) shall be reviewed and updated at least

quarterly and *more often if needed*. P. Ex. 11, at 30338. The contract states "Program

assistants are available 24 hours a day to assist with activities of daily living." P. Ex. 11,

at 30338. Further, the contract states that CSC will "accept only residents whose needs

we can meet. This includes assessing resident needs, abilities and preferences, staffing

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

---

[6]    Although CSC has now belatedly raised the issue of the Power of Attorney, they did, in fact, accept Ms. Carol Winters' signature on the Residential Services Contract and on the Lease Agreement. See, P. Ex. 12, at 30346; and P. Ex. 11, at 30335.

ratios, physical spaces, etc." Ex. 12, at 30339. The contract states that a resident may be involuntarily moved only if:

1. She/he poses an immediate threat to self or others.
2. She/he needs mental health services to prevent harm to self or others;
3. She/he has breached the conditions of their Resident Contract Agreement and/or Resident Service Plan.
4. The Manager has had its license revoked or not renewed;
5. The manager can no longer meet the Resident's needs as defined in the Resident Service Plan, and the Manager determines in consultation with the Resident, [Guardian] and/or [Guarantor], physician and/or care coordinator that it is inappropriate for the Resident to remain at the Facility; and
6. The Resident [Guardian], and/or [Guarantor] has received proper notice of failure to pay by the Manager. P. Ex. 12, at 30341

CSC has no evidence to establish that as of January 6, 2006, Ms. Winters met any of the special provisions allowing for involuntary movement. The CSC Resident Services Contract requires CSC to review and modify the service plan if Ms. Winters' needs had changed. P. Ex. 11, 30338. The contract reads:

> "Resident shall receive services based upon contractual agreements. Manager[7] shall review, monitor, implement, and modify the service plan in a timely manner. Manager shall have procedures in place to alert the Resident, her/his physician, or his/her representative, when changes in a Resident's mental or physical status are observed by staff.

If Ms. Winters' needs had changed, then her service plan should have been revised or changed as the contract requires. It was not. The plan in place as of the time of the attempted eviction was the October 2005 plan. Ms. Winters resident care plan as of the January 2006 attempted eviction remained the October 2005 service plan and there is no indication in that plan that CSC cannot meet her needs. See, Ex. 33, 34, 38.

Throughout this proceeding, CSC has contended that Ms. Winters needs mental health services to prevent harm to herself and others and that is why she must move.

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

---

[7]    Manager refers to CSC. See, Ex. 12, pg. 30337, "Manager means Chugiak Senior Citizens, Inc."
Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment
Case No. 3:06-cv-00083-TMB
Page 10 of 13

That is why they sought the Rule 35 IME. However, CSC had no evidence as of January 6, 2006 that Ms. Winters "needs mental health services." The October 2005 CSC Service Plan was not modified or changed to reflect any need for mental health services.

Further, there is no evidence that Ms. Winters otherwise breached the contract. Ms. Winters was not an immediate threat to herself or others. CSC clearly retained a license.[8] There is no issue as to payment as Ms. Winters has paid her rent throughout this dispute. Thus, there is simply no question that CSC has violated the contract by its attempt to evict Ms. Winters in complete contravention of the Resident Service Contract. Ex. 12.

## III.    CSC LACKED A WRITTEN COMPLAINT PROCESS PRIOR TO JANUARY 2006.

Plaintiff's Amended Complaint, Count I asserts a violation of the Assisted Living Homes Act.  Alaska law requires that assisted living facilities have complaint procedures in place. Assisted living homes must provide residents a means of grievance. AS 47.33.340. At the time a person begins residency in an assisted living home, the home shall give a copy of the grievance procedure to the resident and the resident's representative, if any. The statute further provides:

> The grievance procedure established under this section must provide that a resident and the resident's representative have the right to (1) present both a *written* and an oral explanation of the resident's grievance; (2) have an advocate of the resident's choice, and the resident's representative, if any, attend meetings concerning the resident's grievance; and (3) *be notified in writing*, within 30 days after the filing of the grievance, of the final decision of the home regarding the grievance.

---

[8]        In a late disclosure,  provided on December 5, 2006, CSC revealed that its licensure is provisional from July 2006 to December 2006. See, Defendant's 25th Supplemental Disclosure, at Bate Stamp 10576.

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment
Case No. 3:06-cv-00083-TMB
Page 11 of 13

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

CSC did not have a <u>written</u> complaint process in place from 2004 to 2006. CSC's own policies required that there be a complaint form available to residents. Affidavit S. Kerr, Ex. 23. However, that written complaint process was not in place. Ms. Winters was not provided any written complaint form by CSC staff. Affidavit Carol Winters, Par. 11. Staff who gave depositions gave varied answers on the availability of a complaint form. Executive Director Linda Hendrickson testified that she didn't believe there was an official complaint form. Affidavit S. Kerr, Ex. 50, Deposition of Linda Hendrickson, at T. 44. Former Program Director Lynn Moser testified that she had never seen a complaint form for a resident to fill out. Affidavit S. Kerr, Ex. 94, Deposition of Lynn Moser, at T. 49. Tom Isaacs, a program assistant who worked directly with Ms. Winters and about whom she complained testified that he did not know of "any formalized process" and that he didn't believe there was a written complaint form. Affidavit S. Kerr, Ex. 53, at T. 122. He had never seen one. T. 122. Jan Freels, another administrator, explained that a resident had to know to request a complaint form the receptionist or the administrative assistant but she did not know how the resident would know to request such a form because she was in the process of putting that in a resident handbook she is presently developing. Affidavit S. Kerr, Ex. 51, T. 83. Thus, the Court must conclude, as a matter of law, that CSC did not have a written complaint process in place during the timeframe of 2004 to January 2006. This violates the Assisted Living Homes Act and Ms. Winters is entitled to partial summary judgment on that point.

## CONCLUSION

The Court must grant partial summary judgment to Ms. Winters as requested.

DATED: December 19, 2006      ALASKA LEGAL SERVICES CORPORATION
                             Attorneys for Plaintiff

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431

Helen Winters
through her power of attorney Carol Winters


s/Sonja D. Kerr
ALASKA LEGAL SERVICES
1016 West 6th Avenue, Suite 200
Anchorage, Alaska 99501
PHONE: (907) 272-9431
FAX: (907) 279-7417
E-mail: skerr@alsc-law.org
Alaska Bar No. 0409051


Certificate of Service

I hereby certify that on the 19th of December, 2006, a copy of this document was served electronically on

Donna M. Meyers
Delaney, Wiles
1007 W. Third Avenue, Suite 400
Anchorage, AK 99501.

S/Sonja D. Kerr (0409051)

LAW OFFICES OF
ALASKA LEGAL SERVICES CORPORATION
ANCHORAGE AND STATEWIDE OFFICE
1016 WEST SIXTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501-1963
(907) 272-9431