IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her power of attorney Carol Winters,<br><br>    Plaintiff,<br><br>vs.<br><br>CHUGIAK SENIOR CITIZENS, INC.,<br><br>    Defendant. | Case No. 3:06-cv-00083-TMB |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' FOURTH MOTION IN LIMINE RE: LACK OF SERVICE ON THE POWER OF ATTORNEY OF THE TERMINATION LETTER**

Defendants Chugiak Senior Citizens, Inc. ("CSC") urge the Court to exclude all evidence about how it personally served Ms. Winters' (as opposed to her daughter) with a Notice of Eviction. (Doc. 140) CSC claims that it was required to serve the elderly Ms. Winters, despite her elderly frail status and in spite of the fact that her daughter had a power of attorney and CSC had on all previous occasions dealt directly with Carol Winters in regard to all legal matters. All of this information is relevant to Ms. Winters' claims of intentional and negligent infliction of emotional distress. There is no basis for excluding it, CSC's Motion should be denied.

**Facts**

CSC was well-aware that Ms. Winters' daughter, Carol Winters, held a Power of Attorney. (P. Ex. 1.) CSC had on numerous occasions dealt directly and even only with Carol Winters with regard to matters involving her mother from her admission in September 2004 forward. Carol Winters was the sole signatory on the lease agreement

and residential services contract by which Ms. Winters' was admitted to CSC. (P. Ex. 11, ALP Lease Agreement, and P. Ex. 12, ALP Resident Services Contract)  Carol Winters signed for the Residents Rights Information. (P. Ex. 24). Carol Winters signed releases of information for her mother, and attended numerous care conferences for her and even without her from fall 2004 forward. (P. Ex. 9, 14, 17, 18, 19, 20, 27, 29, 31). It was Carol Winters who responded to CSC's notice of eviction (P. Ex. 44). And tellingly, CSC sent its January 26, 2006 letter refusing to withdraw the eviction notice to Carol Winters. (P. Ex. 48).

Thus, the only critical legal document that CSC forwarded to Helen Winters appears to be the Notice of Eviction. (P. Ex. 40). CSC claims that the method by which CSC served Ms. Winters with the Notice of Eviction should be excluded because CSC was *statutorily obligated* to serve Ms. Winters rather than her daughter. This argument is simply without merit. In fact, both Alaska's Assisted Living Home Act and the Uniform Residential Landlord Tenant Act would have permitted CSC to serve *either* the elderly Ms. Winters or her daughter. *See, e.g.* AS 49.45.100(c)(allowing service on lessee or person in possession) & AS 47.33.360(b)(allowing service on resident or resident's representative). Here, Carol Winters, as the POA, and not her mother, was the person who signed both the lease and residential services contract. Carol Winters was the lessee and the representative for Helen. There was certainly no statutory requirement that Helen Winters be served at all, let alone that Helen Winters be served before Carol Winters and in the manner in which it was done, which staff knew would be extremely upsetting to Ms. Helen Winters.

That CSC chose to personally deliver this document to Helen Winters, an elderly resident with known heart, blood pressure and anxiety issues without the courtesy of informing her daughter and power of attorney is the something the jury ought to be able to consider in evaluating Ms. Winters' claims that CSC intentionally, recklessly or negligently caused her emotional distress.[1]

---

[1] Marla Nelson, Program Manager at CSC, testified that it was a deliberate choice of CSC to serve Helen Winters with the January 5, 2006 eviction letter:

> Q. Do you have any knowledge of how this was delivered to Helen?
> A. Yes.
> Q. How?
> A. Certified mail.
> Q. So the document was delivered certified mail from CSC to Helen Winters back at CSC?
> A. Correct.
> Q. Was it your intention as staff to send this directly to Helen?
> A. Yes.
> Q. Was the intention to send it directly to Helen even though you were aware that Carol Winters was her Power of Attorney?
> A. Yes.
> …
> Q. Did you discuss with Carol Winters whether you could send this to her Mother?
> A. No.
> Q. You were aware that getting this sort of letter would upset Helen Winters?
> A. Correct.
> ….
> Q. You took no steps to avoid upsetting her by sending this letter directly to her?
> A. No.
> …
> Q. You said it was your intent to give Helen this letter, right?
> A. Yes.
> Q. And you knew it would upset her to get this letter, right?
> A. Yes.
> Q. And you didn't take any steps to mitigate her being upset, right?
> A. No.
> Q. And you hoped that by her getting this letter, Helen and Carol would decide to leave, to have her leave the facility?
> A. It was asking her to leave the facility.
> …
> Q. At the time you made the arrangements for certified mail, you were aware of a fax number for Carol Winters, weren't you?
> A. Correct.
> Q. Did you take any steps to fax the letter to Carol before sending it to her mother?
> A. No.
> Q. Now, do you know if Helen received the January 5th letter before Carol did?
> A. I believe so.

(P. Ex. 54, Dep. Marla Nelson, T. at 35-39)

Because of the way CSC handled the matter – a matter which was CSC's choice – insofar as service – Ms. Winters landed in the Emergency Room because she became so upset. (P. Ex. 42, 43, 45)

Specifically, the jury should be able to hear evidence demonstrating that all previous legal issues had been handled between Carol Winters and CSC. That Carol Winters alone had signed the residential services contract and lease that admitted her mother to CSC, (P. Ex. 11, and 12), that Carol Winters had previously been viewed and treated as the legal representative of Helen Winters. Only then will the Jury be able to fairly determine if it was reckless or indifferent of CSC to serve the January 5, 2006 notice of eviction document on the elderly Ms. Winters without even taking the precaution of first notifying her daughter.

## CONCLUSION

The Court must deny the Defendant's fourth motion in limine.

DATED: January 31, 2007         ALASKA LEGAL SERVICES CORPORATION
                                Attorneys for Plaintiff Helen Winters
                                through her power of attorney Carol Winters

                                s/Sonja Kerr_____
                                ALASKA LEGAL SERVICES
                                1016 West 6th Avenue, Suite 200
                                Anchorage, Alaska 99501
                                PHONE: (907) 274-9431
                                FAX: (907) 279-7417
                                E-mail: skerr@alsc-law.org
                                Alaska Bar No. 0409051

**Certificate of Service**

I hereby certify that on the 31st day of January, 2007,
a copy of this document was served electronically:

Donna M. Meyers
Delaney, Wiles

1007 W. Third Avenue, Suite 400
Anchorage, AK 99501.

S/Sonja D. Kerr (0409051)