IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her power of attorney Carol Winters,<br><br>　　　Plaintiff,<br><br>vs.<br><br>CHUGIAK SENIOR CITIZENS, INC.,<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Case No. 3:06-cv-00083-TMB<br>)<br>) |

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION *INLIMINE* No. 11
RE: LINDA HENDRICKSON'S ALLEGED CONFLICT OF INTEREST
REGARDING CSC AND WICKERSHAM HOUSE

Defendant Chugiak Senior Citizens, Inc. ("CSC") has moved to exclude the plaintiff from presenting any evidence and argument that Linda Hendrickson had a conflict of interest by being the Executive Director of and a co-owner and Administrator of another assisted Living Facility, Wickersham House. (Doc. 146) Defendant argues that the evidence is not relevant, not a matter of personal knowledge for either Carol Winters or LTCO Bob Dryer, is hearsay and is more prejudicial than probative under Rule 403. These claims are not well founded in law or fact and this motion should be denied.

**I.      FACTS**

Linda Hendrickson became the Executive Director of CSC in April of 2004 and has at all times during Helen Winters' tenancy at CSC operated in that position. (Pl. Ex. 50, Tr.7) Prior to that she was the Program Director for the Assisted Living Program. (Tr. 33) She has direct oversight of the day to day operations of all of CSC. (Tr. 7) She also owns, with her

husband, a small assisted living facility at her home in Wasilla called Wickersham House. (Tr. 108)  Wickersham House has five assisted living residents.  It is staffed by employees who also concurrently work at CSC and employees who have previously worked at CSC. (Tr. 11-112)  The first residents entered Wickersham House in August of 2004, the month before Helen Winters entered CSC. (Tr. 114)

The Long Term Care Ombudsman interviewed Linda Hendrickson as a part of his investigation into the complaints concerning Helen Winters' care at CSC.  (Pl. Ex. 35(c): Report of LTCO p. 6)  Linda Hendrickson expressed her concerns, not about Helen Winters' care, but rather about losing people who worked at CSC, describing how her staff has complained about the plaintiff and sometimes come to her in tears. (Report p.6)

## II.   ARGUMENT

### This Evidence Is Relevant, Admissible and the Probative Value Outweighs Any Prejudice

The plaintiff has no intention of turning this case into a mini trial to prove that Linda Hendrickson is a "public employee" and is prohibited from accepting outside employment that is incompatible or in conflict with the proper discharge of her official duties, or that she is using her official position for personal gain or obtaining financial gain for a spouse, child or business in which the she is associated.  (*See* AS 39.52.010 *et.seq.*)  However, the above factual information is relevant to many of the issues at trial.

Federal Evidence Rule 401 reads:

### Definition of "Relevant Evidence"

> "Relevant Evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

"Rule 401… contains a very expansive definition of relevant evidence." *United States v. Curtis*, 568 F.2d 643 (9th Cir. 1978).

> The important thing for the Judge and for to remember is that the evidence does not by itself have to prove the ultimate proposition for which it is offered; nor does it have to make the ultimate proposition more probable than not. To be relevant it is enough that the evidence has a *tendency* to make a consequential fact even the least bit more probable or less probable than it would be without the evidence.

<u>Federal Rules of Evidence Manual</u>, S. Saltzburg, M. Martin and D. Capra, Vol.1 at 166.

A quick review of the issues at trial demonstrates the relevance of this evidence. The issues at trial have to do with CSC's discrimination against Helen Winters on the basis of her disabilities, CSC's failure to offer reasonable accommodation, CSC's failure to address Helen Winters' legitimate complaints about her care by staff and CSC's unlawful attempts to evict Helen Winters. In essence, CSC has chosen to evict Helen Winters rather than correct the behaviors of its staff.

The fact that Linda Hendrickson as the chief administrator of CSC is more interested in retaining employees than caring for residents explains all of the above poor decisions by CSC. The fact that Linda Hendrickson in her capacity as owner of an assisted living facility employs staff in common with CSC makes it more probable than not that her loyalties to her employees exceed her loyalties to residents as disciplinary action at CSC could affect her relationship with her employees at Wickersham House. The fact that she expressed concerns about retaining employees to the OLTCO makes it more probable than not that her excessive concern about retaining employees led CSC to ignore, whitewash or blame Helen Winters for problems she is having at CSC. Similarly, a juror could reasonable infer that excessive concern regarding maintaining staff could result in exercising inadequate oversight of staff

and allowing a culture of indifference or abuse to develop at CSC.  Finally, the facts demonstrate intention and a motive to disregard Helen Winters' complaints, intention and motive to get rid of Helen Winters as a resident, and intention and motive to not accommodate her disabilities.

Under Federal Rule of Evidence 402, all relevant evidence is admissible.  Under this Rule, impeachment evidence that is relevant to the credibility of a witness is admissible unless barred by the Constitution, statutes or rules.  Although the Federal Rules clarify how a witness may be impeached, who may impeach, and restrict certain forms of impeachment, there is no effort in the Federal Rules to delineate all of the traditional methods of impeaching a witness.  The emotions or feelings of a witness or the witness' self-interest in the outcome are all recognized as potential sources of partiality of a witness.  In particular, business relationships or employment have been recognized as possible sources of bias.  *Arnall Mills v. Smallwood*, 69 F.2d 57 (5th Cir. 1933).

Partiality and bias, or any acts, relationships, self-interest or motives reasonably likely to produce them may be used to impeach.  In *United States v. Abel*, 469 U.S. 45, 105 S. Ct. 465 (1984) the U.S. Supreme Court specifically held that bias impeachment was permissible, and that the type of organization to which members belong can be relevant to a jury to assess the nature and extent of a witness' bias.  In *Abel*, despite the defendant's denial, the prosecutor was allowed to introduce his membership in a secret prison organization whose members would lie to protect each other.  The Supreme Court recognized that the type of organization to which members belong can be relevant to assess the nature or extent of a witness' bias.  Where, as here, there is an additional specific employment relationship between the Executive Director of CSC and the very program assistants responsible for the

day-to-day care of Helen Winters, the jury is entitled to that information not only to assess the actions and motives of CSC, but also to analyze the credibility of its witnesses.

Plaintiff does not intend to use inadmissible evidence to prove its case.  Evidence is available from first-hand witnesses, or business records.  Defendant's claims of undue prejudice are not well founded.  The fact that the jury might conclude that CSC is responsible for acting unlawfully towards the plaintiff because Ms. Hendrickson owned and operated another assisted living facility is a fair inference, not an unfair inference.  Yes, this evidence is detrimental to CSC's case.  But it is not unfairly detrimental.  *See*, *Wilson v. Groening*, 25 F.3d 581 (7th Cir. 1994) (In a claim of use of excessive force, leaving out the evidence of spitting by the prisoner, although insufficient to justify the use of force by a guard, would have left the jury with an unduly sanitized and incomplete version of the facts).

The cases cited by defendant do not support exclusion of this evidence.  In *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684 (9th Cir. 2001) the court found no reversible error in excluding evidence where the plaintiff had neglected to offer it at trial.  The court did emphasize that the trial court has broad discretion to make the balancing determination under Rule 403.  In *Fasanaro v. Mooney Aircraft Corp. ,*687 F.Supp.842 (N.D. Cal.1988) the court recognized that confusion and delay could result if tangential facts were admitted because the opposing party should have an opportunity to rebut the facts.  However, in this instance there can be no rebuttal.

It is undisputed by Linda Hendrickson as to her ownership of another assisted living home and the employment of particular program aides.[1]  She clearly testified to it under oath

---

[1] Since Ms. Hendrickson and the aides can be called as to this issue, CSC's concerns about Fed. Rule Evid. Rule 802 (Hearsay) and Rule 602 (Lack of Personal Knowledge) do not apply.

Plaintiff's Response To Defendant's Motion *In limine* No. 11
Re: Linda Hendrickson's Alleged Conflict Of Interest Regarding CSC And Wickersham House
Case No. 3:06-cv-00083-TMB
Page 5 of 6

at her deposition. (Tr. 108-114) She admitted that some of the aides no longer employed at CSC are employed by her at Wickersham. Given that CSC has asserted that Ms. Winters' situation is related to staff turnover at CSC, Ms. Hendrickson's employment of prior CSC aides is clearly relevant. The proof will take little time and can be entered into by stipulation.

### III.    CONCLUSION

The evidence is relevant as to issues in the case, as well as to impeachment of witnesses. The evidence is not unfairly prejudicial and therefore the Defendant's motion should be denied.

DATED: January 31, 2007            ALASKA LEGAL SERVICES CORPORATION
                                   Attorneys for Plaintiff Helen Winters
                                   through her power of attorney Carol Winters

                                   s/Sonja Kerr_____
                                   ALASKA LEGAL SERVICES
                                   1016 West 6th Avenue, Suite 200
                                   Anchorage, Alaska 99501
                                   PHONE: (907) 274-9431
                                   FAX: (907) 279-7417
                                   E-mail: skerr@alsc-law.org
                                   Alaska Bar No. 0409051

**Certificate of Service**

I hereby certify that on the 31st day of January, 2007,
a copy of this document was served electronically:

Donna M. Meyers
Delaney, Wiles
1007 W. Third Avenue, Suite 400
Anchorage, AK 99501.

S/Sonja D. Kerr (0409051)