IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

HELEN WINTERS, )
through her power of attorney )
Carol Winters, )
                 )
    Plaintiff, )
                 )
vs. )
                 )
CHUGIAK SENIOR CITIZENS, INC., )
                 )   Case No. 3:06-cv-00083-TMB
    Defendant. )
_____ )

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO CSC'S MOTION IN LIMINE
NO. 5: THE OLTCO REPORT, FILES AND TESTIMONY OF DREYER**

There is *one* thing that is very clear after reviewing defendant Chugiak Senior Citizens, Inc. ("CSC")'s 27 page motion *in limine* concerning Alaska's Office of Long Term Care Ombudsman ("OLTCO"); CSC deeply fears any and all evidence that will be proffered by the OLTCO. CSC's fear has caused it to spend nearly all of its brief distinguishing the Supreme Court precedent which is squarely on-point and to write a brief which is more appropriate as a closing argument and/or cross-examination, than as a motion *in limine*. As set forth below, CSC's motion should be rejected.

**I.      Argument and Authorities**

    **A.      Supreme Court Authority**

The best place to start is with the law, on the issue *sub judice* that means starting with Supreme Court precedent, specifically, *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988). That case involved a military plane crash and the resulting lawsuit brought by the surviving spouses. The Judge Advocate Generals had drafted a report on whether the crash resulted from pilot error or equipment malfunctions. The trial court admitted the report under Evidence Rule 803(8)(c). However, the court of appeals reversed holding that "conclusions

Plaintiff's Memorandum in Opposition to D's Fifth Motion in Limine
Winters v. CSC, Case No. 3:06-cv-00083-TMB
Page 1 of 5

or opinions" should not be admitted under 803(8)(c). The Supreme Court, after reviewing the relevant legislative history and precedent, resolved the existing conflict between the circuits and created a very bright line:

> Rather than requiring that we draw some inevitably arbitrary line between the various shades of fact/opinion that invariably will be present in investigatory reports, we believe the Rule instructs us -- as its plain language states -- to admit "reports . . . setting forth . . . factual findings." The Rule's limitations and safeguards lie elsewhere: First, the requirement that reports contain factual findings bars the admission of statements not based on factual investigation.  Second, the trustworthiness provision requires the court to make a determination as to whether the report, or any portion thereof, is sufficiently trustworthy to be admitted.
>
> A broad approach to admissibility under Rule 803(8)(C), as we have outlined it, is also consistent with the Federal Rules' general approach of relaxing the traditional barriers to "opinion" testimony.  Rules 702-705 permit experts to testify in the form of an opinion, and without any exclusion of opinions on "ultimate issues."  And Rule 701 permits even a lay witness to testify in the form of opinions or inferences drawn from her observations when testimony in that form will be helpful to the trier of fact. We see no reason to strain to reach an interpretation of Rule 803(8)(C) that is contrary to the liberal thrust of the Federal Rules.

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988).

The upshot of *Beech Aircraft* is straightforward: unless CSC can show: 1) that that the OLTCO report and underlying records are *not* a "records, reports, statements, or data compilations, in any form" or 2) that the OLTCO and its reports and records are "untrustworthy," all such data is admissible. When the issues are framed in this fashion CSC's argument fails. First, it is obvious that the OLTCO report and underlying records *are* "records, reports, statements, or data compilations, in any form." Second, there is no evidence before this Court that the OLTCO and its reports and records are "untrustworthy."

In *Sana v. Hawaiian Cruises,* Ltd., 181 F. 3d 1041, 1047 (9th Cir. 1999) the Ninth Circuit considered whether an investigation completed after a seaman's injuries was within

Plaintiff's Memorandum in Opposition to D's Fifth Motion in Limine
Winters v. CSC, Case No. 3:06-cv-00083-TMB
Page 2 of 5

the regular course of business. The dispute centered on whether the primary investigator could rely on the contributions of three people he interviewed. The Court allowed the report, *including the information by the contributors*, as an investigation regularly done in the course of the business. *See also*, *Abdel v. U.S.*, 670 2d. 73, 75-76 (7th Cir.1982)(allowing the investigative report of a food stamp worker into evidence); *Keith v. Volpe*, 858 F. 2d 467 (9th Cir. 1988)(noting strong presumption in favor of admissibility).

### B.     The OLTCO is Covered by 803(8)(c)

CSC claims that the OLTCO is "not the governmental agency tasked with investigating claims such as those made by Winters." (Doc. 148, n. 16.) This is not true. The OLTCO is an independent agency, under the administrative oversight of the Alaska Mental Health Trust Authority, AS 46.62.010, 47.30.010, and established to comply with the Programs for Older Americans Act, 42 U.S.C. 3001, 3058(a)(1)(2). (P. Ex. 35B, at 134, 142).[1]

### C.     The Report and the Records are "Trustworthy."

CSC argues that the OLTCO data is not admissible because it is "untrustworthy;" apparently due solely to the credentials of Mr. Dreyer. This argument is not supported by any case citations.

---

[1] The statutory functions of the Ombudsman are clear and specifically include:

> 1) to **identify**, **investigate**, and **resolve complaints** made by or on behalf of older individuals who reside in long-term care facilities (termed "residents") that relate to **providers of long-term care services**, public agencies, or health and social service agencies;
> 2) to assist residents in protecting their own health, safety, welfare, and rights;
> 3) to inform residents about the means of obtaining services;
> 4) to ensure that residents have regular and timely access to services, and
> 5) to represent residents' interests before governmental agencies and seek administrative, legal, and other remedies to protect residents' health, safety, welfare, and rights. 42 U.S.C. 3058g(a)(3).

Plaintiff's Memorandum in Opposition to D's Fifth Motion in Limine
Winters v. CSC, Case No. 3:06-cv-00083-TMB
Page 3 of 5

It is also factually baseless. Mr. Dreyer holds both a bachelor's and master degree. He is a former Lieutenant Colonel having served 22 years in the Air Force. (P. Ex. 35, Dep. Dryer, p. 7.) He has years of experience in oversight and compliance for both the United States military and the State of Alaska. (P. Ex. 35, Resume of Dreyer, pg. 1008-1009, same as D. Ex. C.) He has conducted inspections critical to military members worldwide. He coordinated and ensured the health of base families, including social services, for Elmendorf AFB. Dreyer worked for the State of Alaska from 1996 until his position with the OLTCO. In that capacity, he ensured proper inspections and disaster assistance in compliance with federal and state regulations.

### D.     Mr. Dreyer Must Be Permitted to Testify.

CSC also wants to completely exclude Mr. Dreyer's testimony pursuant to Fed. Rule Evid. Rule 702. The motion does not request relief sufficiently focused to allow the court to rule on the question of admissibility of any particular subject. Fed. Rule of Evid. Rule 701 permits a lay witness to testify if the opinions or inferences are a) rationally based on the perception of the witness; b) helpful to a clear understanding of a witness' testimony or the determination of a fact in issue, and c) not based on scientific, technical or other generalized knowledge within the scope of Rule 702. A lay witness may testify to facts within personal knowledge under Fed. Rule Evid. 602. And, under Fed. Rule Evid. 701, that same lay witness may testify about his conclusions if they are based upon his perceptions and if they aid the jury in understanding the witness' testimony. Recently, in *U.S. ex rel Poong Lim/Pert Joint Venture, Plaintiff vs. Dick Pacific*, 2006 U.S. Dist. LEXIS 13046 (Ak. Dist. Court 2006), the Alaska District Court by Judge Sedwick ruled it would be premature to preclude the entire testimony and documents reviewed or relied upon or created by lay person and also permitted

Plaintiff's Memorandum in Opposition to D's Fifth Motion in Limine
Winters v. CSC, Case No. 3:06-cv-00083-TMB
Page 4 of 5

certain testimony of the lay person.  In other words, it is not an "all or nothing" situation as the CSC proposes.

## CONCLUSION

Defendant's motion is meritless and should be denied.  If CSC has objections to specific portions of the file, the Court can determine the admissibility of that evidence at that juncture.

DATED: January 31, 2007    ALASKA LEGAL SERVICES CORPORATION
Attorneys for Plaintiff
Helen Winters
through her power of attorney Carol Winters


s/Nikole Nelson_____
ALASKA LEGAL SERVICES
1016 West 6th Avenue, Suite 200
Anchorage, Alaska 99501
PHONE: (907) 274-9431
FAX: (907) 279-7417
E-mail: nnelson@alsc-law.org
Alaska Bar No. 9906033

**Certificate of Service**

I hereby certify that on the 31st of January, 2007,
I served the above document via the Electronic Case Filing system on:

Donna M. Meyers
Delaney, Wiles
1007 W. Third Avenue, Suite 400
Anchorage, AK 99501.

s/nnelson (9906033)

Plaintiff's Memorandum in Opposition to D's Fifth Motion in Limine
Winters v. CSC, Case No. 3:06-cv-00083-TMB
Page 5 of 5