Donna M. Meyers
Clay A. Young
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska  99501
Phone:  907-279-3581
Fax:  907-277-1331
dmm@delaneywiles.com
cay@delaneywiles.com

Attorneys for Defendant
Chugiak Senior Citizens, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her Power of Attorney Carol Winters,<br><br>              Plaintiff,<br><br>   v.<br><br>CHUGIAK SENIOR CITIZENS, INC.,<br><br>              Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 3:06-cv-00083-TMB |

**OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT WITNESSES**

Defendant Chugiak Senior Citizens, Inc. ("CSC") opposes plaintiff Helen Winters'

motion to exclude CSC's expert witnesses, Dr. Deborah B. Geeseman, Dr. Sabine von

Preyss-Friedman, and Theresa Panchot.   The Court should deny plaintiff's motion to

exclude CSC's expert witnesses because (1) CSC's expert reports were timely

disclosed before trial; (2) Dr. Geeseman's report and testimony are relevant; and (3) Dr.

Geeseman's testimony and report is admissible and should not be excluded under

*Daubert v. Merrell Dow Pharmaceuticals*, *Inc.*, 509 U.S. 579, 597 (1993).

However, if the Court determines CSC's expert reports were not timely disclosed under the Pre-Trial Order, CSC has simultaneously cross-moved to modify the pre-trial order to allow the disclosures. *See generally* Cross-Motion to Modify Pre-Trial Order to Allow Expert Disclosures.

## Statement of Relevant Facts and Proceedings

Plaintiff's motion seeks the wholesale exclusion of CSC's three expert witnesses without providing the Court with the relevant facts and an accurate history of relevant legal proceedings. The facts and procedural history do not justify the exclusion of CSC's experts or plaintiff's accusation that CSC is attempting "to completely obfuscate the requirements of the Court's prehearing order". Dkt 158 at 2. Instead, the relevant facts and procedural history totally contradict plaintiff's argument that CSC's expert disclosures were not timely disclosed.

Contrary to plaintiff's insistence that "the Court's prehearing order required experts to be disclosed November 28, 2006", Dkt 158 at 2, the Court's order has a deadline for disclosing expert reports. Dkt 63.[1] The order did not set a separate deadline for designating experts followed by another deadline for disclosing their reports. *Id.* However, the deadline for expert disclosures was effectively vacated on October 11, 2006 for all experts, and although the Court urged the parties to stipulate to a new deadline, the parties never reached any agreement on a new deadline or moved the Court to establish one. Given the absence of any deadline for expert disclosures,

---

[1] Plaintiff fails to cite the docket number for the document she describes as the Court's prehearing order. Dkt 158 at 2. CSC presumes plaintiff is referring to the most recent order that lists any deadline for expert disclosures, which is the Order Re: New Pretrial Deadlines and Trial Date entered on September 21, 2006. *See* Dkt 63.

which is explained by the following summary of events and legal proceedings, it is absurd for plaintiff to argue CSC's expert disclosures are untimely.

In the Parties' Scheduling and Planning Conference Report, the parties initially agreed to August 15, 2006 as the deadline for disclosing experts and exchanging expert reports. Dkt 27. The Court incorporated the parties' proposed deadline in the initial Scheduling and Planning Order. Dkt 30. This initial order did not set a separate deadline to designate experts followed by a deadline to disclose the experts' reports, and the parties' expert disclosures were to occur simultaneously. *Id*. When the initial pre-trial order was entered, the parties had anticipated discovery would close on September 29, 2006, and trial would commence on December 4, 2006. Dkt 27, 30.

After discovery disputes arose, the parties stipulated to extend all pre-trial deadlines and the trial date by approximately 60 days, resulting in a new Court approved expert disclosure deadline of October 16, 2006 with discovery to close on November 28, 2006 and trial to commence on February 12, 2007. Dkt. 61, 63. However, the discovery disputes did not end at that point and a discovery issue dealing directly with the subject of expert opinions and testimony arose when CSC requested plaintiff to submit to an IME.

On September 20, 2006, CSC requested plaintiff to submit to a psychiatric independent medical evaluation ("IME") by psychiatrist Deborah Geeseman, M.D. Dkt 79 at 2, ¶ 4 (Affidavit of Donna M. Meyers and Exh. A). Without providing any explanation, plaintiff initially refused to undergo any IME. Dkt 79 at 2, ¶ 5 (Affidavit of Donna M. Meyers and Exh. B). Despite the initial refusal, plaintiff's counsel subsequently agreed to reconsider the request for an IME, but the parties eventually

disagreed over the information CSC was required to produce before plaintiff would even make a decision whether to submit to the IME. *See generally* Dkt 79. Plaintiff insisted on imposing certain conditions on CSC before she would even make a decision whether to submit to the examination. Dkt 79 at 2-4. For example, plaintiff requested a copy of Dr. Geeseman's curriculum vitae and information on the scope of the proposed examination. Dkt. 79 at 2-3, ¶ 7. CSC responded by providing Dr. Geeseman's curriculum vitae and a description of what Dr. Geeseman intended to do. Dkt. 79 at 2, ¶ 9. However, plaintiff was not satisfied with the information that was provided and she refused to make a decision about whether to submit to the IME unless she could take Dr. Geeseman's deposition and obtain Dr. Geeseman's expert witness file, which plaintiff's counsel had subpoenaed over CSC's objection to producing the file. Dkt 79 at 3-6. CSC then canceled Dr. Geeseman's deposition, and moved on an expedited basis to quash the subpoena served on Dr. Geeseman and to compel the IME. Dkt. 75-81.

CSC requested rulings on both motions on shortened time because expert disclosures were due on October 16, 2006, and if the Court extended the deadline and compelled the Rule 35 examination, CSC needed to schedule the IME before Dr. Geeseman left for a trip out-of-state. Dkt 79 at 2, ¶ 3 (Affidavit of Donna M. Meyers). Dr. Geeseman was going to be absent from her office from October 13-29, 2006, and CSC wanted to schedule plaintiff's IME, which CSC's counsel anticipated could occur in early November. Dkt 79 at 5, ¶ 13.

The Court granted CSC's motions for expedited consideration, and scheduled a hearing on the motions for October 11, 2006. Dkt at 82.[2] At the hearing, the Court granted CSC's Motion to Quash Dr. Geeseman's deposition. Dkt 114 at 10. As to the motion to compel the IME, plaintiff requested "an opportunity to fully brief that or to present evidence about how that's going to impact her health from her physicians". Dkt 114 at 7. Even though the Court was inclined to grant the motion to compel the IME, it deferred ruling on CSC's motion to compel to allow plaintiff the time she requested to fully brief her position on the IME. Dkt. 114 at 7-10.

At the same hearing, the Court addressed CSC's request to extend the deadlines for expert discloses in light of plaintiff's objections to the IME and her request for additional time to fully brief the dispute over the IME. Dkt 114 at 23-28. At the time, CSC anticipated that if the Court granted the motion and Dr. Geeseman was allowed to conduct the IME in early November CSC could possibly provide expert disclosures by November 15th. Dkt. 114 at 23-24. A dialogue ensued then between the Court and counsel for both parties which reflected a clear understanding that the Court was vacating the deadline for expert disclosures because of plaintiff's continuing opposition to the IME and her request for additional time to fully brief the IME issue. Dkt at 23-28. During the dialogue, CSC specifically requested the Court to extend any new deadline to all experts, and not just to Dr. Geeseman's disclosure. Dkt 114 at 24-25. Even though plaintiff's counsel objected to extending the deadline for experts other than Dr. Geeseman, plaintiff's counsel also expressed a desire to move back all deadlines, if the time extension applied to all experts. Dkt 114 at 25. The Court inquired about CSC's

---

[2]The Court also scheduled the hearing to address plaintiff's Motion for Settlement Conference, which the Court eventually denied. Dkt 82, 88.

position on moving other pretrial deadlines as suggested by plaintiff's counsel, and CSC's counsel was also amenable to moving some other pre-trial deadlines by a similar time extension. Dkt 114 at 26. However, there was no agreement reached or ruling issued at the hearing which set a new deadline for expert disclosures. *See generally* Dkt 114 at 23-28. Instead, the Court left it to the parties to work out any agreements on extending pre-trial deadlines, including a new deadline for all expert disclosures. Dkt 114 at 27-29. Following through on the Court's advice for the parties to work out the new expert disclosure deadline or other pretrial deadlines, CSC's counsel wrote plaintiff's counsel on October 13, 2006 asking for plaintiff's position on which pretrial deadlines plaintiff wanted to extend. Exh. C. Plaintiff's counsel responded by e-mail stating: "We would agree to a stipulation to vacate the October 16th expert disclosure date in light of Judge Burgess' need to receive our response to your IME motion and issue an order on the Rule 35". Exh. D. Nowhere in plaintiff's counsel response does she say the October 16th deadline is vacated only for Dr. Geeseman's disclosure. *Id.*

On October 18, 2006, plaintiff filed her opposition to CSC's motion to compel the Rule 35 IME, still contending among other things, that the examination would cause "undue hardship given the fragile state of her heath" and age. Dkt 89 at 1. In the opposition, plaintiff's counsel urged the Court to exercise its discretion and deny the exam based on "very unusual and exceptional circumstances at issue here", including plaintiff's "age and frailty" and substantial hearing problem which plaintiff's counsel argued was likely to prevent Dr. Geeseman from obtaining any valid results from her proposed oral examination. Dkt 89 at 9. Thus, plaintiff continued to oppose CSC's request for an IME by arguing the IME would possibly have detrimental physical affects

on her because of her age and health, and it would render valid results because of her hearing impairment. *Id.*

CSC promptly filed its reply to plaintiff's opposition on October 23, 2006 to obtain a ruling in time for Dr. Geeseman to conduct the examination in the first two weeks of November since Dr. Geeseman was not available the rest of November.[3]  On November 1, 2006, the Court granted CSC's motion to compel over plaintiff's objections (Dkt at 95), but the parties were never able to reach an agreement on a deadline for expert disclosures.  The same day the Court granted the motion, CSC's counsel sent and e-mail to plaintiff's counsel about scheduling the examination. Exh. F.  The following day on November 2, 2006, CSC informed plaintiff's counsel Dr. Geeseman could perform the IME on November 8, at 1:00 p.m.  Exh. G.  However, on November 3, 2006, plaintiff's counsel indicated plaintiff had a longstanding medical appointment on November 8th and asked for the IME to be rescheduled because the appointment was a medical necessity.  Exh. H.  When plaintiff's counsel asked to reschedule the IME, she knew Dr. Geeseman would not be available again to perform the IME before the first week in December 2006. Exh. I.

Despite the fact there was never any agreement between counsel or an order from the Court establishing a new deadline for expert disclosures; plaintiff has unilaterally attempted to impose different deadlines for expert disclosures.  In this

---

[3]During the October 11, 2006 meeting in Chambers the undersigned mentioned Dr. Geeseman's unavailability during the last two weeks in November when the Court suggested CSC could defer filing its reply to plaintiff's opposition on the motion to compel.  The undersigned informed the Court and plaintiff's counsel that CSC would probably file the reply on time so that if the Court granted the motion, Dr. Geeseman could perform the IME before she left town for the remainder of November.  See Affidavit of Donna M. Meyers, ¶ 5 at 2.

motion, plaintiff contends the deadline was November 28, 2006. Dkt 158 at 2; *see also* Exh. O at 1-2. However, in November 2006, plaintiff's counsel took the position that the deadline for expert disclosures was October 16, 2006. Exh. K. Plaintiff contended the Court only informally afforded CSC additional time for Dr. Geeseman's expert disclosure. *Id.* CSC's counsel disagreed with plaintiff's position, and reminded plaintiff's counsel again that CSC would provide its expert disclosures after Dr. Geeseman's IME. Exh. L. CSC's counsel also objected to conditions plaintiff's counsel tried to impose on the IME, such as having counsel present and videotaping the examination. Exh. M and N.

Even though there was no new deadline for expert disclosures, CSC disclosed all three of its experts on Defendant's Final Witness List that was filed and served on December 5, 2006. Dkt. 104. Following Dr. Geeseman's IME on December 8, 2006, CSC informed plaintiff's counsel that Dr. Geeseman anticipated completing her report by the following week, and the report would be forwarded to CSC's other two experts, Dr. von Preyss-Friedman and Theresa Panchot and their expert reports would be completed and provided to plaintiff on December 29, 2006. Exh. P. Plaintiff's counsel objected, indicating plaintiff would move to exclude the testimony reports of Dr. Geeseman, Dr. von Preyss-Friedman and Theresa Panchot "since they were not timely disclosed". Exh. Q. Plaintiff's counsel also reserved any deposition of the experts until the Court had ruled on plaintiff's anticipated motion to exclude. *Id.* However, plaintiff's counsel did notice the deposition of Dr. Geeseman for January 12, 2007, which was subsequently canceled. *Id.*; *see also* Exh. S.

CSC has provided plaintiff with disclosures from all three experts.  Dr. Geeseman's expert report was disclosed on December 21, 2006.  Exh. A.  Plaintiff's counsel was notified Dr. von Preyss-Friedman and Theresa Panchot's expert reports would be not be disclosed on December 29th as originally anticipated and they were disclosed on January 5, 2007.  *See* Exh. R; *see also* Exh. B.

On the other hand, plaintiff has never disclosed any retained expert witnesses in her final witness lists or discovery responses, and apparently does not intend to call any retained experts at trial.  *See* Dkt 103 (Plaintiff's Final Witness List); *see also* Dkt 40 (Exh A at 8 and 10; Exh. B 13 and 14).

## Argument

### I.    CSC's Expert Reports Were Timely Disclosed Before Trial

Plaintiff has asserted inconsistent and confusing positions on the deadline for expert disclosures.  In the motion to exclude CSC's experts, plaintiff contends the "parties stipulated to the date of November 28, 2006 as the date for disclosure of experts".  Dkt 158 at 2.  She cites Dkt 60-1 to support this contention, but nowhere in that stipulation does it state November 28, 2006 is the date for disclosure of experts.  Instead, the stipulation lists November 28, 2006 as the deadline for completion of discovery and October 16, 2006 as the deadline for expert disclosures.  Dkt 63.  However, there is no dispute the October 28, 2006 deadline was vacated at the October 11, 2006 hearing,  *see* Dkt 114 at 23-29, and there was no subsequent stipulation between the parties or an order from the Court re-establishing a deadline for expert disclosures.  On October 13, 2006, plaintiff's counsel conceded the expert disclosure deadline was vacated when she wrote CSC's counsel acknowledging the October 16,

2006 deadline was vacated.   Exh D (Plaintiff's counsel wrote:   "We would agree to a stipulation to vacate the October 16th expert disclosure date in light of Judge Burgess' need to receive our response to your IME motion and issue an order on the Rule 35").

It was equally clear at the October 11, 2006 hearing that any deadline for expert disclosures would apply to all of CSC's experts, and the deadline would be set for a date sometime after the IME was completed.  *See* Dkt 114 at 23-29.  Given that the IME did not occur until December 8, 2006, plaintiff's argument that there was a November 28, 2006 deadline is totally at odds with the record of the hearing.   According to plaintiff's argument, CSC's expert disclosures would have been due before Dr. Geeseman had an opportunity to conduct the IME.  Yet, there is no question from the transcript of the hearing that the Court and counsel for the parties contemplated having a new expert deadline that applied to all of CSC's experts and the deadline would be a date sometime after the IME.   There is no basis for plaintiff's argument that only a new deadline would be established for Dr. Geeseman's expert disclosure.  Dkt 158 at 2. Plaintiff does not cite anything in the record to justify this position, and that position is not supported by any common sense reading of the transcript.

Plaintiff should not be permitted to complain about the timing of CSC's expert disclosures when her refusal to submit to the IME delayed CSC's ability to schedule the IME sooner.  As noted above, CSC first requested plaintiff to submit to an IME on September 21, 2006.  *See generally* Dkt 79.  Initially, plaintiff outright refused to submit to the IME and when she seemingly decided to reconsider her refusal she attempted to impose unreasonable preconditions before she would even decide whether to agree to the IME.  *Id.*  Faced with plaintiff's recalcitrance and unreasonable demands, CSC was

forced to file a motion to compel plaintiff's attendance at the IME, which sought an expedited ruling because of the impeding pre-trial deadlines and early trial date. At the October 11, 2006 hearing on the motion to compel, plaintiff was undeterred by the Court's preliminary assessment that CSC's motion to compel had merit and that the Court was likely to grant the motion. S*ee* Dkt 114 at 7-10. Instead of agreeing to the IME, plaintiff continued to impede CSC's ability to schedule the IME by requesting additional time to fully brief an opposition to the IME.

In plaintiff's opposition, she ostensibly opposed the IME in part because of her frail health, age and hearing impairment. *See generally* Dkt 89. However, the arguments which plaintiff continued to assert in her effort to defeat CSC's request for the IME were not supported by the opinions of her primary treating physician. Before plaintiff filed her opposition to the motion to compel the IME on October 18, 2006 (*see* Dkt. 89), plaintiff's counsel had requested plaintiff's treating physician, Dr. Jones, to provide an opinion on whether CSC's proposed psychiatric examination was likely to have an adverse impact on plaintiff's health. Exh. E at 1-3. Dr. Jones did not "think the examination itself should have an adverse physical effect on Ms. Winters, so long as the interview periods don't exceed 45 minutes or so". Exh. E at 4. Dr. Jones also stated that given his knowledge of Dr. Geeseman's "considerable experience in psychiatry" he thought Dr. Geeseman should be able to "conduct a series of interviews that will provide helpful information about [plaintiff's] condition". Exh. E at 4. However, plaintiff's counsel never disclosed to the Court or even mentioned these opinions from Dr. Jones in her opposition to the IME. Dkt 89. Instead, plaintiff unreasonably delayed the scheduling of the IME by insisting on a ruling from the Court.

As soon as the Court granted CSC's motion to compel, CSC scheduled the IME for November 8, 2006, but plaintiff did not make herself available due to what her counsel described as a longstanding doctor's appointment for medical necessity. Exh. H. This resulted in another delay since Dr. Geeseman would not be available again to conduct the IME again the first week in December, which plaintiff's counsel knew when she requested to reschedule the IME from November 8.

## II. Even if the CSC Did Not Strictly Comply With the Expert Disclosure Requirements, the Exclusive Sanction Is Not Justified

Plaintiff contends CSC's experts should be excluded because Dr. von Preyss-Friedman and Theresa Panchot were not disclosed by November 28, 2006, and their qualifications were not appended to Defendant's Final Witness List (Dkt. 104). As noted above, there was never a separate deadline to disclose experts, only a deadline to disclose expert reports. Moreover, there was never a deadline to disclose expert reports by November 28, 2006. Even if the Court were to find there was an implied deadline to disclose expert reports that expired before CSC actually disclosed its reports, exclusion is not an appropriate sanction.

The sanction of excluding expert disclosures is not appropriate where the failure to disclose is harmless. Fed. R. Civ. P. 37(c). Moreover, the party seeking disclosure of expert testimony under Rule 37 must demonstrate prejudice of the opposing party's failure to disclose. *Paulissen v. United States Ins. Co.*, 205 F.Supp.2d 1120, 1126 (C.D. Cal. 2002).

Plaintiff does not contend she suffered any prejudice by the timing of CSC's expert disclosures. *See generally* Dkt 158. Nor could plaintiff demonstrate any prejudice. CSC has agreed to make the experts available for depositions. Even though

the deadline for filing evidentiary motions has passed, plaintiff is not precluded from challenging the qualifications of the experts or the admissibility of their opinions. Moreover, plaintiff has now had the reports of the experts for seven weeks, and has known the identities of all three experts for eight weeks.

CSC did not append a statement of each expert's qualifications to its final witness list.  Dkt. 104.  However, CSC did provide a summary of their qualifications.  *Id.* at 4.    Moreover, CSC had already provided Dr. Geeseman's curriculum vitae to plaintiff's counsel several months earlier on October 2, 2006.  Dkt 79 (Affidavit of Donna M. Meyers and Exhibit D).  Additionally, CSC provided a summary of Dr. von Preyss-Friedman's qualifications on November 10, 2006, almost a month before final witness lists were due.  Exh. J.

## III.    Dr. Geeseman's Testimony Is Relevant.

Plaintiff has moved to exclude on relevancy grounds "expert testimony" as to Helen's condition today.  *See* Motion to Exclude Expert Testimony at 3.  Plaintiff argues that the testimony of Dr. Geeseman is not relevant because Dr. Geeseman's evaluation of plaintiff took place on December 8, 2006, when the attempted eviction took place in January 2006.  *Id.*  Plaintiff's argument is deficient for multiple reasons.

First, while plaintiff has moved to exclude all of CSC's expert witnesses, plaintiff has only proffered reasons why the Court should exclude Dr. Geeseman.  *Id.*  Because plaintiff is required to produce factual and legal argument and authority in support of her motion[4] and she has not articulated any factual or legal reasons why Dr. von Preyss-

_____

[4]A motion must include the "authorities relevant to the relief requested."  *See* D. Ak. LR 7.1(a)(2).  "Failure to include proper materials in support of . . . a motion as required by this rule subjects the motion to summary ruling by the court. . . .  If the failure is by the

Friedman and Theresa Panchot should be excluded on relevancy grounds, the Court should deny Plaintiff's motion, at least as regards to Dr. von Preyss-Friedman and Theresa Panchot.[5]

Second, plaintiff has failed to cite any on-point legal authority in support of her motion to exclude Dr. Geeseman's testimony.  Dkt 158 at 3-4.  The only case plaintiff relies on is *Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, (9th Cir. 2001).  *Id.* at 3.  *Jinro* involved a South Korean corporation that brought a breach of contract action for trading of frozen chickens, fraud and racketeering.  *Jinro*, 266 F.3d at 995-96.  Defendants offered the testimony of David Pelham as an expert witness to testify about Korean law and the business practices of Korean companies and their propensity to engage in fraudulent activity.  *Id.* at 1001.  The Ninth Circuit ruled that Pelham should not have testified as an expert as he lacked the appropriate background, education and experience.  *Id.* at 1002-10.  The Ninth Circuit noted that Pelham was not a lawyer, he had no formal education or training in business or as a cultural expert, he

---

moving party, it may deemed an admission that the motion is without merit[.]"  D. Ak. LR 7.1(d); *see also Nilsson, Robbins, Dalgarn, Berlinier, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1548 (9th Cir. 1988) ("If a brief fails to contain the contentions of the [plaintiff] with respect to the views presented, and fails to contain citations to authorities, statutes and the record, the issue is waived."); *Intertrust Technologies Corp. v. Microsoft Corp.*, 275 F. Supp. 2d 1031, 1051 (N.D. Cal. 2003) ("As far as the Court is concerned, the persuasiveness of an argument . . . is in direct proportion to the authorities on which it is premised.  Necessarily this means that an argument that lacks appropriate supporting citations is no argument at all.  Thus, Microsoft cannot be heard to complain that the Court has not adequately considered its arguments where these arguments are insufficiently supported by citations to evidentiary and/or legal authorities.").

[5]Plaintiff may not attempt to cite new authority in her reply brief as she is solely limited to rebutting the legal or factual arguments raised in opposition.  *See* D. Ak. LR 7.1(b); *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (noting that courts generally decline to consider arguments raised for the first time in a reply brief); *Golden v. Pacific Maritime Ass'n*, 786 F.2d 1425, 1429 (9th Cir. 1986) ("appellants cannot raise a new issue ... in their reply briefs.").

simply claimed to have familiarized himself with Korean business practices, in part, as a "hobby," and he had not investigated Jinro.  *Id.* at 1001.

Here, unlike the situation in *Jinro*, Dr. Geeseman has the appropriate background, education and experience to provide expert psychiatric testimony.  Exh. A (Dr. Geeseman's Psychiatric Evaluation, CV).  Dr. Geeseman is a graduate from the University of Wisconsin Medical School and performed her psychiatric residency at the University of Wisconsin.  *Id.* at 12.  Dr. Geeseman is a diplomat of the American Board of Psychiatry and Neurology and the National Board of Medical Examiners and is licensed in Wisconsin and Alaska.  *Id.* at 12.  Dr. Geeseman has practiced psychiatry for the past 23 years.  *Id.*  And, unlike in *Jinro*, where the expert did not investigate Jinro, as set forth,  *see supra* § IV, Dr. Geeseman conducted a thorough psychiatric examination of Winters.

Third, for the reasons explained in CSC's opposition to plaintiff's motion to exclude all evidence created after January 31, 2006 on grounds of relevancy, which is expressly incorporated into this motion, *see* Opposition at 1-6, plaintiff's argument regarding relevancy lacks merit, completely contradicts some of her claims and the relief she has requested.  Moreover, Plaintiff even concedes that plaintiff's current condition is "relevant to any potential damages."  *See* Dkt 158 at 3 n.1.  Dr. Geeseman's testimony is also relevant to determine whether CSC was justified in attempting to terminate the lease agreement due to Helen Winter's psychiatric problems and low level of functioning, to evaluate plaintiff's claim for damages for pain and suffering, and damages for mental anguish, as well as whether CSC may be precluded from instituting

future eviction proceedings based on Helen Winters' current mental problems and level of functioning.  *See* Dkt 1, Exh. C at 11 (Amend. Complaint); Fed. R. Evid. 401.

In sum, the Court should deny plaintiff's motion to exclude CSC's experts.

## IV.    Dr. Geeseman's Testimony and Report Is Admissible and Should Not Be Excluded Under *Daubert*

Plaintiff seeks to exclude Dr. Geeseman's testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993),[6] Evidence Rules 702, 703, 704,[7] and 705.[8]  *See* Motion at 4-6.

Rule 702 of the Federal Rules of Evidence states that

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial judge is charged with a "gatekeeping" duty under Rule 702 to ensure that all expert testimony, not just scientific expert testimony, both rests on a reliable foundation and is relevant to the task at hand.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  In *Daubert*, the United States Supreme Court established a two-part test for

---

[6]As with her prior argument, plaintiff makes no factual or legal argument for exclusion of the testimony of Dr. von Preyss-Friedman and Theresa Panchot, so there is no basis for the Court to grant her motion for these two experts.  *See* supra notes 3 and 4.

[7]There is no legal basis to exclude Dr. Geeseman's testimony and report (or any other CSC expert) under Rule 704 because Rule 704 expressly permits such evidence: "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a).

[8]There is no legal basis to exclude Dr. Geeseman's evaluation under Rule 705 because Dr. Geeseman has disclosed the underlying facts and data upon which she based her evaluation.  Fed. R. Evid. 705; Exh. A (Dr. Geeseman's Psychiatric Evaluation, CV).

determining whether to admit expert testimony.  *See Daubert*, 509 U.S. 579, 592 (1993).  "Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a),[9] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."  *See id.* (footnotes omitted).  "[T]o qualify as 'scientific knowledge' as required by Rule 702, an inference must be derived by the scientific method."  *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502–03 (9th Cir. 1994).

> In order to determine whether scientific reasoning is valid under *Daubert*, a trial court is to consider factors such as whether the reasoning: 1) can be and has been tested; 2) has been subject to peer review; 3) has a known or potential rate of error; and 4) generally has been accepted by the scientific community.

*Desrosiers v. Flight Int'l of Fla. Inc.*, 156 F.3d 952, 960 (9th Cir. 1998).  "[A] trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability.  But . . . the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case."  *Kumho*, 526 U.S. at 141.

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one.  Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability--of the principles that underlie a proposed submission.  The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

---

[9]Rule 104(a) states that

> [p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court. . . .  In making its determination it is not bound by the rules of evidence except those with respect to privileges.

*See* Fed. R. Evid. 104(a).

*Daubert*, 509 U.S. at 594–95 (footnote omitted).  While the Supreme Court has

> emphasized that the focus of the inquiry envisioned by Rule 702 must be
> on the principles and methodology underlying an expert's testimony, not
> on the conclusions[,] [t]he Court later refined this language, explaining that
> a district judge may reject expert testimony where the "analytical gap"
> between the data and the expert's conclusion is too great.

*Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998) (citing *Daubert* and

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997)).  "Under [*Daubert*], a district judge

asked to admit scientific evidence must determine whether the evidence is genuinely

scientific, as distinct from being unscientific speculation offered by a genuine scientist."

*Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996).

The *Daubert* criteria for evaluating the validity of scientific evidence is also

pertinent outside a scientific context, although other factors might also have a bearing

on the reliability of testimony based on technical or other specialized knowledge. *See*

*Kumho Tire Co.*, 526 U.S. at 152.  "The objective of [the gatekeeper requirement] . . . is

to make certain that an expert . . . employs in the courtroom the same level of

intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.*

"An opinion from an expert who is not a scientist should receive the same degree of

scrutiny for reliability as an opinion from an expert who purports to be a scientist."  Fed.

R. Evid. 702 advisory committee's note (2000).  An expert must explain factually why

and how she reached her conclusions.  *Hilt v. SFC Inc.*, 170 F.R.D. 182, 185 (D. Kan.

1997).  The proponent of the expert testimony must show "a grounding in the methods

and procedures of science which must be based on actual knowledge and not

subjective belief or unaccepted speculation."  *Mehus v. Emporia State University*, 222

F.R.D. 455, 461-62 (D. Kan. 2004).

Plaintiff's argument that Dr. Geeseman's report and testimony is not reliable is at odds with various courts have that concluded that a psychiatrist or psychologist's testimony and report is admissible and would helpful to the jury. Numerous courts have found that a psychiatrist or psychologist is an expert that satisfies Evidence Rule 702 and *Daubert* and may testify at trial. *See, e.g.*, *S.M. v. J.K.*, 262 F.3d 914, 921-22 (9th Cir. 2001) (affirming district court's admission of expert psychiatrist's testimony on housekeeper's Post-Traumatic Stress Disorder, even though psychiatrist had not relied strictly upon Diagnostic and Statistical Manual of Mental Disorders (DSM) in reaching his diagnosis); *Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (holding that the district court properly admitted testimony of a psychiatrist who diagnosed plaintiff because the psychiatrist "testified to his experience, to the criteria by which he diagnosed [the plaintiff], and to the standard methods of diagnosis in his field"); *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1299 (8th Cir.1997) (admitting testimony of well-qualified psychiatrists on issue of damages for mental anguish and emphasizing that weight and credibility accorded to the testimony is left to the trier of fact); *Tyus v. Urban Search Management*, 102 F.3d 256, 263-64 (7th Cir. 1996) (concluding that district court should have allowed psychologist to testify regarding apartment complex's alleged racially discriminatory advertising practices about how an advertising campaign sends message to its target market and how an all-White campaign affects African-Americans); *United States v. Rahm*, 993 F.2d 1405, 1412-14 (9th Cir. 1993) (holding that trial court erred in excluding expert's psychological testimony); *United States v. Finley*, 301 F.3d 1000, 1005, 1007-16 (9th Cir. 2002) (concluding that clinical psychologist could testify that defendant "has an atypical belief

system" in which the defendant would distort or disregard information that ran counter to those beliefs); *Flavel v. Svedala Industries, Inc.*, 875 F. Supp. 550, 557-58 (E.D. Wis. 1994) (concluding that expert testimony of psychologist would be admissible in age discrimination action, since evidence of discriminatory conduct was often widely disbursed and difficult to evaluate in and expert testimony as to age stereotyping would aid jurors in assessing liability); *see also Pascouau v. Martin Marietta Corp.*, 994 F. Supp. 1276,1278-79 (D. Colo. 1998) (finding in Title VII discrimination case that psychiatrist testimony about plaintiff's personality disorder compelling); *Lowe v. Philadelphia Newspapers, Inc.*, 594 F. Supp. 123, 125-26 (E.D. Pa.1984) (concluding in racial discrimination employment case that expert testimony is relevant on the issues of plaintiff's mental state and personality that, among other things, caused plaintiff to perceive criticism as harassment, and to corroborate the observations of defendants' managers who interviewed plaintiff for various promotions).

Courts have recognized "that psychological and psychiatric evaluations . . . are long-recognized techniques that have been empirically tested, subject[ed] to extensive peer review and publication, and generally accepted in the psychological community." *Samaniego v. City of Kodiak*, 80 P.3d 216, 219 (Alaska 2003). Courts have also "repeatedly recognized the validity of independent psychological and psychiatric exams and forensic psychological and psychiatric exams in civil and criminal contexts." *Id.* (affirming the trial court's decision to admit psychiatrist's testimony concerning his diagnosis of Samaniego).

Moreover, numerous courts have found psychiatric and psychological testimony admissible even when the mental health professional did not personally interview the

subject. *See, e.g., Jackson v. State*, 553 So.2d 719, 720 (Fla. App. 1989) (concluding

that expert psychologist's testimony was admissible even though psychologist did not

personally interview child because the conclusion was based on variety of data

including the child's school records, the police records the state's evidence and all of

the defendant's statements and medical records); *Campbell v. Young Motor Co.*, 684

P.2d 1101, 1106 (Mont. 1984) ("But the fact that Campbell was not interviewed before

his death does not render inadmissible a psychologist's opinion based on the available

data concerning Campbell's pre-injury and post-injury condition, physical and mental.");

*In re Estate of Hoover*, 615 N.E.2d 736, 744-45 (Ill. 1993) (concluding that expert

psychiatric opinion evidence was admissible even though expert had no opportunity to

examine the patient when doctor based opinion on other evidence).

Here, given Dr. Geeseman's background, education and experience there is no

credible argument that Dr. Geeseman is not an expert in psychiatry and may not

provide testimony based on her psychiatric evaluation of Helen Winters. Exh. A (Dr.

Geeseman's Psychiatric Evaluation, CV). Dr. Geeseman's conclusions regarding Helen

Winters abilities are reliable under Rule 702 and 703. *Id.* Dr. Geeseman relied on the

data that is the foundation for modern psychiatric diagnosis.[10]     Specifically, Dr.

Geeseman actually interviewed Helen Winters and based her evaluation on, among

---

[10]Rule 702 and *Daubert* permit the admission of evidence when the conclusions are otherwise reliable. *See Finley*, 301 F.3d at 1008 ("It appears from the record before us that Dr. Wicks based his diagnosis on proper psychological methodology and reasoning.  He relied on accepted psychological tests, from which he drew sound inferences, and he took a thorough patient history, including meeting with Finley's wife and observing Finley's behavior.  Dr. Wicks did not base his conclusions solely on Finley's statements; rather, he used his many years of experience and training to diagnose Finley's mental condition.  Finally, Dr. Wicks did not use any experimental techniques in his evaluation of Finley and he did not deviate in any way from his normal practice of conducting psychological evaluations.").

other things, her interview with Helen Winters, a mini-mental status exam, a seven minute screen, a full formal mental status exam, plaintiff's medical records, progress notes, hospital notes, information provided by CSC, CSC's employees, and Carol Winters.  Exh. A at 3, 14-17.  The data upon which Dr. Geeseman based her conclusions is the data relied upon by psychiatrists and psychologists and it may be reviewed, retested and reanalyzed by others in the field.  Under these circumstances, Dr. Geeseman's report and proffered testimony is reliable.  For theses reasons, the Court should deny plaintiff's motion to exclude Dr. Geeseman's report and testimony.[11]

## Conclusion

For the reasons set forth above, the Court should deny plaintiff's motion to exclude CSC's expert witnesses.

---

[11] Plaintiff's reliance on *United States v. Solomon*, 753 F.2d 1522 (9th Cir. 1985) (exclusion of psychiatrist's expert testimony concerning narcoanalysis of one defendant was not an abuse of discretion since psychiatrist admitted that narcoanalysis does not reliably induce truthful statements), *see* Motion at 4, is of no import as *Solomon* is factually and legally distinguishable and was decided under the old *Frye* standard for scientific reliability, which is no longer followed by the Ninth Circuit or the United States Supreme Court.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1314 n.2 (9th Cir. 1995).  Plaintiff's citation to *United States v. Marsh*, 26 F.3d 1496, 1502 (9th Cir. 1994), is also not pertinent because in *Marsh* the court excluded expert psychiatric testimony regarding the victim because it was not relevant to the defendant's criminal extortion case.  Here, unlike in *Marsh*, the basis for Helen Winters' case and CSC's defense is based in part on whether Helen Winters' mental and physical ability has deteriorated to the point that CSC, a limited assisted living facility, can no longer care for her needs; thus her mental abilities are directly at issue.  Plaintiff's reliance on *Nichols v. American Nat. Ins. Co.*, 154 F.3d 875, 881 (8th Cir. 1998), is similarly misplaced because unlike the situation in *Nichols*, CSC is not going to use expert testimony to establish plaintiff exhibited poor psychiatric credibility and veracity, rather Dr. Geeseman is simply going to testify about her psychiatric exam of Helen Winter's and Helen Winters' level of functioning.

DATED at Anchorage, Alaska, this 31st day of January, 2007.

DELANEY WILES, INC.
Attorneys for Chugiak Senior Citizens, Inc.

s/Donna M. Meyers and Clay A. Young
Delaney Wiles, Inc.
1007 W. Third Avenue, Suite 400
Anchorage, Alaska  99501
Phone:  907-279-3581/Fax:  907-277-1331
AK Bar Nos.: 9006011 (DMM)/7410117 (CAY)
E-mail:        dmm@delaneywiles.com
E-mail:        cay@delaneywiles.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st
day of January, 2007, a copy of
**OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE
EXPERTS** was served electronically on:

Jim Davis, Jr./Barbara Brink/
Nikole Nelson/Sonja Kerr
Alaska Legal Services Corporation
1016 West 6th Avenue, Suite 200
Anchorage, Alaska   99501

s/Donna M. Meyers and Clay A. Young
(127086)