IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, ) <br> through her power of attorney ) <br> Carol Winters, ) <br>  ) <br>     Plaintiff, ) <br>  ) <br> vs. ) <br>  ) <br> CHUGIAK SENIOR CITIZENS, INC., ) <br>  ) <br>     Defendant. ) <br> _____ ) | Case No. 3:06-cv-00083-TMB |

**REPLY TO DEFENDANT CSC'S OPPOSITION TO PLAINTIFF HELEN WINTERS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

In response to Plaintiff's Partial Motion for Summary Judgment, Defendant, Chugiak Senior Citizens, Inc. ("CSC") raises arguments regarding the existence of disputed material facts, but then fails to offer admissible evidence contradicting Ms. Winters' well-supported claims. (Cf. Doc. 246-1 with Doc. 153) Then CSC attempts to thwart Ms. Winters' efforts at obtaining relief by suggesting that even if CSC's attempts to evict Ms. Winters were illegal, Ms. Winters has no recourse for CSC's illegal acts. This Court should reject CSC's arguments and grant Ms. Winters' request for partial summary judgment.

    **I.**    **CSC has not offered sufficient admissible evidence to defeat Ms. Winters' Motion for Summary judgment.**

The only "evidence" CSC offers in support of its contention that it had valid

grounds to terminate Ms. Winters' residential services contract are the self-serving affidavit of CSC administrator Linda Hendrickson, and its expert reports, whose admissibility is questionable. Such "evidence" is not sufficient to defeat the present motion.

First, as to the CSC's expert witnesses, plaintiff has moved this Court to exclude the testimony and reports of CSC's expert witnesses for various reasons, including that they were not timely disclosed and they lack the qualifications necessary to render the opinions they offer. (Doc. 157, 158). Ms. Winters' hereby incorporates the facts and legal arguments proffered in her Second Motion in Limine, Motion to Exclude Defendant's Expert Witnesses. It should also be noted, that none of these witnesses can offer firsthand accounts of the incidents that lead to CSC's decision to terminate Ms. Winters' residential services contract. And, only one (Dr. Geeseman) of three has ever met Ms. Winters in person, and even then Dr. Geeseman's opinion as to Ms. Winters' mental health status as of November 2006, has absolutely no bearing on CSC's actions to terminate her residential services contract nearly a year earlier. (Doc. 157, 158)

If Ms. Winters prevails on her motions to exclude these witnesses and their reports, CSC will be left having proffered only the self-serving affidavit of CSC administrator Linda Hendrickson to refute Ms. Winters' claims that CSC lacked a legal basis to involuntarily termination her residential services contract. Ms. Hendrickson's affidavit when viewed in light of the uncontradicted documentary evidence demonstrating that Ms. Winters' medical condition has not deteriorated since her admission to CSC in September of 2004, should be seen as nothing more than a "conclusory allegation" unsupported by factual data. As such, it is not sufficient to defeat Plaintiff's partial motion for summary

judgment on this issue. *See, e.g. Angel v. Seattle-First National Bank*, 653 F. 2d 1293, 1299 (9th Cir. 1981).

## II. Ms. Winters May Enforce Her Rights Under the Assisted Living Homes (ALH) Act.

Next, CSC argues that Ms. Winters' cannot bring a civil action to enforce her rights under the ALH Act because the ALH does not create a private right of action. This argument is simply without merit, and should be summarily rejected by this Court.

### 1. Residents of Assisted Living Facilities have Private Rights of Action to Enforce their Rights under AS 47.33.350 & AS 47.33.360.

AS 47.33.350 and AS 47.33.360 respectively prohibit retaliating against Assisted Living Facility residents for complaining about the care they receive at a facility, and from involuntarily terminating a residential contract except in very limited circumstances.[1] Ms. Winters' alleges that CSC violated both these provisions. CSC argues that even if CSC violated AS 47.33.350 and AS 47.33.360, Ms. Winters cannot bring a suit such as the present one to vindicate her rights as the ALH Act does not create a private right of action. A close examination of the applicable and recent case law demonstrates that the ALH Act creates a private right of action for residents, like Ms. Winters, to sue to enforce their rights.

In *Alaska Marine Pilots v. Hendesch*, 950 P. 2d 98 (Alaska 1997), the Alaska Supreme Court, relying on the Restatement (Second) of Torts, discussed the factors that

---

[1] A contract may be involuntarily terminated for only for: medical reasons, a documented pattern of harmful conduct by the resident, violating the terms of the contract, when ordered by the resident's physician, when the home is closing, or when the home can no longer provide or arrange for services needed by the resident. AS 47.33.360(a).

should be considered when determining whether or not an implied private right of action exists for violations of a state statutes. The *Alaska Marine Pilots* Court found that one of the critical questions is whether the legislative provision is clear and specific versus broad and general. *See, also Peter v. Schumacher Enterprises*, 22 P.3d 481 (Alaska 2001). Like the provisions at issue in both *Alaska Marine Pilots* and *Peter,* the statutes, here, are clear and specific – they prohibit terminating a residential contract for any reason other than those specifically enumerated in AS 47.33.360(a) and prohibit retaliating against a resident of an assisted living facility for complaining about violations of the Act. Both provisions clearly satisfy this initial inquiry.

      Other factors to consider relate to the adequacy of existing remedies and the effect a private right of action would have on any existing remedies. CSC contends that private rights of action will somehow interfere with the existing remedies which allow the State to amongst other things revoke a non-compliant facility's license. However, CSC has failed to articulate exactly how bringing a civil action to thwart CSC's violations of the Act would interfere with the remedies set-out in the statute, and it is readily apparent that the State will still be free to impose whatever penalties it sees fit. This is similar to the situation in *Alaska Marine Pilots*, where the Alaska Supreme Court specifically held that "a private right of action will not interfere with government enforcement of [the statute], as the government remains free to impose the penalties provided by the statute. If anything, private enforcement will assist the government." 950 P. 2d 98, 104. *See also, Peter,* 22 P.3d at 481(existing remedies did not preclude private right of action where they consisted of a relatively modest civil penalty that could be assessed by the state in an administrative hearing and where a private cause of action likely to provide meaningful incentive to

comply with statute).

The *Alaska Marine Pilots* Court further indicated that an implied right of action would not interfere with an existing administrative process when such process does not provide recourse for an injured individual. *See Alaska Marine Pilots,* 950 P. 2d at 104. Here, as has been demonstrated by the facts of this case, the administrative process set-out in the ALH does not provide adequate recourse for a person such as Ms. Winters' who faces an illegal eviction. Ms. Winters' participated in the administrative process and then was threatened with an eviction, CSC refused to retract its notice of termination despite repeated requests by the Long-Term Care Ombudsman and others. It was only the filing of the present lawsuit and by Judge Stowers' entering of a Temporary Restraining Order that Ms. Winters has been able to remain in her home. Clearly, the administrative process is not adequate to preserve her right to remain in her home.

As to the final factor, the burden on the courts, here, as in *Peter*, "the statutory requirements of those sections are specific and not difficult to apply" and so not likely to be burdensome to courts. 22 P.3d 481, 490. Furthermore, the implying a right of action in this context is unlikely to result in a drastic change in the law since the ALH Act itself acknowledges the possibility of such civil suits. *See, i.e.* AS 47.33.350(3)(expressly prohibiting retaliation against a resident for "fil[ing] a civil action alleging a violation of this chapter"); and AS 47.32.090 (c) (states "a complainant against whom retaliatory action has been taken make recover treble damages in a civil action upon a showing that the action was taken in retaliation for the filing of the complaint.")[2]

---

[2] CSC's footnoted argument regarding the purported inapplicability of this provision is nonsensical. CSC argues that this provision is not applicable because Ms. Winters did not complain to the "department."

Clearly, the provisions of the ALH Act at-issue in this litigation meet the test articulated in *Alaska Marine Pilots* and create a private right of action for residents to bring civil suits to rectify violations. However, CSC does not address this seminal case or any of its progeny and instead relies old cases which are clearly distinguishable from the present case.

    **2.    CSC's Argument that Ms. Winters Lacks a Private Right of Action to Enforce her Rights Under The ALH Act is Not Well-Supported.**

To support its argument CSC cites outdated and inapplicable cases. For example, CSC relies on *Reed v. Municipality of Anchorage,* 782 P. 2d 1155, 1157-58 (Alaska 1989) which is a nearly twenty year old case that is cited for the proposition that "courts uniformly hold that health and safety legislation does not create a private cause of action in the absence of explicit language to that effect." However, the *Reed* court nowhere defined what it meant by "health and safety" regulations (at-issue in that case was whether a terminated municipal employee could bring a civil suit for retaliatory termination under the state "whistle-blower" statute), nor did the Court offer much in the way of analysis regarding private rights of action. Thus, calling into question whether the Court's holding would be applicable to other statutory schemes or other fact patterns.

Moreover, recent Alaska Supreme Court cases concerning private rights of action tend to negate a broad application of the *Reed* Court's statement and holding. For example, the Alaska Supreme Court has found private rights of action to exist pursuant to the statutory schemes that what would seemingly qualify as "health and safety" legislation. *See, e.g. Peter v. Schmacher,* 22 P. 3d 481 (Alaska 2001)(insurance liability regulations)

---

However, the statute nowhere requires that. And, it is undisputed that she did complain to appropriate entity the Long –Term Care Ombudsman,

and *Alaska Marine Pilots*, 950 P.2d 98 (Alaska 1997) (violations of pilot licensing requirements found enforceable) and *Smallwood v. Central Peninsula General Hospital*, 2006 Alas. LEXIS 178 (Alaska 2006)(prohibitions against certain billing practices of Medicaid recipients found privately enforceable).

Likewise, the applicability of the Court's decision in *OK Lumber Co. Inc. v. Providence* beyond the fact that case is questionable, given that the Court's holding in *Peter v. Schumacher Enterprises*, 22 P.3d 481 (Alaska 2001). In *Peter,* the Alaska Supreme Court held that precisely the same statutory scheme that was at issue in *OK Lumber,* did create a private right of action for aggrieved insurance purchasers. The Court distinguished *OK Lumber* from *Peter* primarily on the basis that the statute at-issue in *OK Lumber* prohibited repeated violations thus making it difficult to enforce, whereas in *Peter* the relevant statute precluded single violations. Here, like in *Peter*, the statutes prohibit single violations – AS 47.33.360 prohibits involuntarily terminating residential contracts for any reason other that those specified in AS 47.33.360(a), and AS 47.33.350 specifically prohibits retaliation for complaints regarding other violations of the ALH Act.

Likewise, CSC's reliance on *Farr v. Alternative Living Services, Inc*. 643 N.W. 2d 841 (Wis. App. 2002) is misplaced. First and most obviously, the case is distinguishable because it deals with a statutory scheme, although similar in subject matter, unrelated in anyway to Alaska's ALH Act. Furthermore, unlike the statute at issue in *Farr,* Alaska's ALH Act explicitly acknowledges that residents may bring civil actions for violations of the statute. Here, the ALH Act evidences the express intent to authorize civil suits for violations of the Act. For instance, AS 47.33.350(3) expressly prohibits retaliating against a resident for "fil[ing] a civil action alleging a violation of this chapter." As does

47.32.090 (c), which states "a complainant against whom retaliatory action has been taken make recover treble damages in a civil action upon a showing that the action was taken in retaliation for the filing of the complaint."[3]  These provisions would be rendered meaningless if the Court were to find that residents lacked the ability to bring such civil suits.

As to the Judge Christen's order in *Metcalf v. CSC*, it should be given no weight. As acknowledged by CSC, Judge Christen's 2003 order is unpublished and non-binding, further it lacks any persuasive value given that it is completely devoid of analysis, and appears to address the ALH Act prior to its having been amended in 2005.  Thus, this Court should simply ignore this order.

> **3.    AS 22.10.020(g) creates an express private right of action for persons, like Ms. Winters' who seek declaratory relief when faced with an actual justiciable controversy.**

Even if this Court were to find that the ALH Act does not create a private right of action for residents of assisted living facilities to bring tort actions when a facility breaches a residents rights under the Act, Ms. Winters' would still be able to maintain the present suit because she is seeking declaratory and injunctive relief.

Ms. Winters brought this action pursuant to AS 22.10.020(g) seeking injunctive and declaratory relief as to her rights under Alaska Assisted Living Homes Act. [Doc. 1, Ex. C, Plaintiff's Amended Complaint].  Among other relief Ms. Winters explicitly requests that the Court "declare that by its actions as stated above the defendant has

---

[3] CSC's footnoted argument regarding the purported inapplicability of this provision is nonsensical.  CSC argues that this provision is not applicable because Ms. Winters did not complain to the "department." However, the statute nowhere requires that.  And, it is undisputed that she did complain to appropriate entity the Long –Term Care Ombudsman,

violated the Alaska Living Homes Act" *Id*. at 9.

AS 22.10.020(g), in relevant part, provides:

in case of an actual controversy in the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought.

AS 22.10.020(g) thus provides a private right of action for a party seeking declaratory relief with respect to their legal rights so long as an actual controversy regarding those rights exists. *See, Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027 (Alaska 1972) *overruled on other grounds, Juneau v. Thibedeau*, 595 P.2d 626 (Alaska 1979). *See also Ratliff v. Security National Bank*, 670 P.2d 1139( Alaska 1983)(holding that AS 22.10.020 (c)(now (i)) creates a private right of action to sue where additional statute prohibits complained of conduct); *Johnson v. Alaska Dep't of Fish & Game*, 836 P.2d 896 (Alaska 1991)(holding that AS 22.10.020(c)(now (i)) when combined with anti-discrimination statutes, create a private right of action to bring particular civil rights actions against the state).

Here, there is no question with regard to the existence of an actual justiciable controversy between CSC and Ms. Winters thus AS 22.10.020(g) provides express authorization for her to bring this suit. Even if this Court were to find that AS 22.10.020(g) in and of itself did not create an express private right of action for individuals seeking declaratory relief with respect to state laws, an implied right of action exists for violations of the relevant statutes.

### III.     There is no dispute that CSC violated AS 47.33.340

CSC contends that it was under no obligation to provide Ms. Winters with a complaint form upon which to make a written complaint about any of her concerns. (Doc. 246-1, at 11-12). CSC strains the logical reading of the statute, AS 47.33.340, which provides in relevant part:

> (a) An assisted living home shall establish a written grievance procedure for handling complaints of residents of the home. At the time a person begins residency in an assisted living home, the **home shall give a copy of the grievance procedure to the resident and the resident's representative**, if any. (emphasis added)
>
> (b) The grievance procedure established under this section must provide that a resident and the resident's representative have the right to
>
> > (1) **present both a written** and an oral explanation of the resident's grievance." (emphasis added)

By its own admission, CSC did not provide the grievance procedure directly to Ms. Winters; only Carol Winters signed acknowledgement receipt of the grievance procedures. (P. Ex. 24) While it is true that AS 47.33.070(a)(7)(B) provides that the home must only have record of giving the copy to either the resident or the resident's representative, nothing in that provision of the statute seems to excuse the mandatory requirement in 47.33.340 that requires a copy of the grievance procedure be given to both Helen Winters and Helen Winters' representative. This makes sense because the resident herself may wish to lodge a complaint and needs to know how to do so independent and respective of her representative.

Moreover, it is abundantly clear that the statute requires the availability of a written complaint form and that CSC Standard Operating Procedures required a written complaint form. The statute could not be more clear because the statute requires that individuals have the ability to "present both a written and an oral explanation of the resident's grievance."

AS 47.33.340(b)(1). If CSC's practice or policy or procedure was to <u>not</u> provide residents with any written complaint forms, that would be contrary to the statute and that is impermissible. *See,* P. Ex. 24, bate Stamp 10068, pg. 4 (CSC grievance policy acknowledging that CSC cannot have a policy or procedure that would be inconsistent with Alaska law.)

Executive Director Linda Hendrickson specifically acknowledged the lack of a written complaint form; she testified:

> Q. You are aware that there is a requirement for assisted living homes in Alaska to have a written complaint process for residents?
>
> A. Yes.

…

> Q. Is there a complaint form?
>
> A. I don't believe there's an official form, no. They usually write a letter, if there is one.
>
> Q. Is there a reason there is no complaint form?
>
> A. No.

(P. Ex. 50, T. 44) And, she reaffirmed this again in her testimony, admitting that that she had never seen a complaint form. (P. Ex. 50, T. 57)

Ms. Hendrickson also admitted that CSC's own policy required a written complaint form. She explained that the CSC Board, as of January 2005, had approved a policy by which there were to be consumer complaint forms, which were then to be collected and entered into a data base and that the responsibility for maintaining the complaint database

and generating reports about it was assigned to the Executive Director. (P. Ex. 50, at 57). CSC's policy, which is found at P. Ex. 22, states:

> "Complaint forms shall be available to clients, residents, and other consumers." (P. Ex. 22, at Bate Stamp 10167).

It is uncontroverted that Carol Winters never saw a complaint form until it was produced during this litigation. (Doc. 153, Aff. Carol Winters).

Thus, it is clear that Plaintiff Winters is entitled to summary judgment on the failure of CSC to have a written complaint form available to residents.

## CONCLUSION

For all of the above reasons, the Court must grant partial summary judgment in favor of Plaintiff Winters.

DATED: February 20, 2007        ALASKA LEGAL SERVICES CORPORATION
                                Attorneys for Plaintiff
                                Helen Winters
                                through her power of attorney Carol Winters


                                s/Sonja Kerr_____
                                ALASKA LEGAL SERVICES
                                1016 West 6th Avenue, Suite 200
                                Anchorage, Alaska 99501
                                PHONE: (907) 274-9431
                                FAX: (907) 279-7417
                                E-mail: skerr@alsc-law.org
                                Alaska Bar No. 0409051


### Certificate of Service

I hereby certify that on the 20th day of February, 2007, a copy of this document was served electronically on :

Donna M. Meyers

REPLY TO DEFENDANT CSC'S OPPOSITION TO
PLAINTIFF HELEN WINTERS' MOTION FOR
PARTIAL SUMMARY JUDGMENT                                      Page 12 of 13

Delaney, Wiles
1007 W. Third Avenue, Suite 400
Anchorage, AK 99501.

S/Sonja D. Kerr (0409051)

REPLY TO DEFENDANT CSC'S OPPOSITION TO
PLAINTIFF HELEN WINTERS' MOTION FOR
PARTIAL SUMMARY JUDGMENT                                     Page 13 of 13