Donna M. Meyers
Clay A. Young
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska 99501
PHONE: 907-279-3581
FAX: 907-277-1331
dmm@delaneywiles.com
cay@delaneywiles.com

Attorneys for Defendant
Chugiak Senior Citizens, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her Power of Attorney Carol Winters,<br><br>Plaintiff,<br><br>v.<br><br>CHUGIAK SENIOR CITIZENS, INC.,<br><br>Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 3:06-cv-00083-TMB |

**DEFENDANT CHUGIAK SENIOR CITIZENS, INC.'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT NO. 3 RE: COUNT III**

**I.    Introduction**

        Defendant Chugiak Senior Citizens, Inc. ("CSC") moved for summary judgment

on Count III of plaintiff Helen Winters' Amended Complaint. Count III is plaintiff's claim

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 3 Re: Count III
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                    Page 1 of 13

that CSC violated Alaska's Uniform Residential Landlord Tenant Act ("URLTA").[1]  In her opposition, plaintiff relies on AS 34.03.240, and argues CSC waived its right to terminate the lease agreement by accepting rent from plaintiff after plaintiff breached the Lease Agreement, Residential Services Contract and Resident Policies (collectively "the Lease Agreement").  For the reasons explained below, plaintiff's argument is legally incorrect.

## II.    CSC Is Entitled To Summary Judgment On Count III

### A.    The URLTA Does Not Supercede The Assisted Living Homes Act

CSC moved for summary judgment on Count III on the grounds that that since plaintiff is a resident in CSC's assisted living home, plaintiff's relationship with CSC is governed by the Alaska Assisted Living Homes Act.  *See* Memorandum In Support of Motion at 2-3.  Specifically, CSC noted AS 47.33.360 governs the involuntary termination of a residential services contract.  *See id.* at 3.  Nothing in AS 47.33.360[2] or

---

[1]Dkt. No. 1, Ex. C at ¶¶ 27-29 (Amended Complaint).
[2]Alaska Statute 47.33.360 provides:
(a) An assisted living home may not terminate a residential services contract with a resident of the home against the resident's will, except

    (1) for medical reasons;

    (2) for engaging in a documented pattern of conduct that is harmful to the resident, other residents, or staff of the home;

    (3) for violation of the terms of the residential services contract, including failure to pay costs incurred under the contract;

    (4) when emergency transfer out of the home is ordered by the resident's physician;

Defendant Chugiak Senior Citizens, Inc.'s Reply to Opposition to
Motion for Summary Judgment No. 3 Re:  Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                                    Page 2 of 13

in the Assisted Living Homes Act contains any waiver defense. *See generally* AS 47.33.005.-.990. In her opposition, plaintiff has not disputed that the Assisted Living Homes Act governs CSC's termination of plaintiff's Lease Agreement. *See* Opposition at 1-7. Neither was plaintiff able to marshal any legal authority demonstrating that the lawful termination of a lease pursuant to the Assisted Living Homes Act is somehow governed or preempted by the URLTA. *See id.*

---

(5) when the home is closing; or

(6) when the home can no longer provide or arrange for services in accordance with the resident's needs and the resident's assisted living plan.

(b) At least 30 days before terminating the residential services contract with a resident under (a)(2), (3), (5), or (6) of this section, the assisted living home shall provide written notice of the proposed contract termination to the resident or the resident's representative, and to the resident's service coordinator if any. The notice must state the

(1) basis for the termination; and

(2) resident's right to contest the termination in the manner provided in the contract, which must include an offer by the home to participate in a case conference as described in (c) of this section.

(c) Before terminating the residential services contract with a resident under (a)(2), (3), (5), or (6) of this section, the assisted living home shall participate in a case conference if requested by the resident or the resident's representative. The case conference must include the resident, the resident's representative, if any, the resident's advocate, if any, the resident's service coordinator, if any, the home administrator, and appropriate care providers who may discuss the appropriateness of the contract termination.

(d) If a home terminates the residential services contract with a resident under this section, the home shall cooperate with the resident, the resident's service coordinator, if any, and the resident's representative, if any, in making arrangements to relocate the resident.

AS 47.33.360

Defendant Chugiak Senior Citizens, Inc.'s Reply to Opposition to
Motion for Summary Judgment No. 3 Re: Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                    Page 3 of 13

Plaintiff's waiver argument rests on the erroneous assumption that the Assisted Living Homes Act is preempted by the URLTA. The absence of logic in plaintiff's assumption is exposed when the various provisions of the Assisted Living Homes Act are considered. For example, under AS 47.33.360(a)(4), an assisted living home may involuntarily terminate a resident's contract "when an emergency transfer out of the home is ordered by the resident's physician." An assisted living home thus could not comply with the URLTA's notice and waiver provisions under these circumstances. In fact, the Department of Health and Social Services ("DHSS") could take enforcement against an assisted living home by imposing civil fines for the home's failure to abide by the provisions of the Assisted Living Homes Act. Thus, if CSC followed the URLTA's waiver and notice provisions, rather than the Assisted Living Homes Act under those circumstances, it would face potential enforcement action by DHSS. *See* AS 47.32.140(f).

The Assisted Living Homes Act is an expansive regulatory scheme that preempts the URLTA. The waiver provisions of the URLTA do not apply to an assisted living home, and therefore the Court should grant CSC's motion for summary judgment on Count III.

**B.    CSC Did Not Violate The URLTA**

Assuming *arguendo* that the URLTA is applicable to plaintiff's claims, CSC is entitled to summary judgment on Count III because CSC did not violate any provision of the URLTA. *See* Memorandum In Support Of Motion at 3-7. In her opposition, plaintiff argues that CSC violated AS 34.03.240, a section of the URLTA that addresses waiver

Defendant Chugiak Senior Citizens, Inc.'s Reply to Opposition to
Motion for Summary Judgment No. 3 Re:  Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                                    Page 4 of 13

of a landlord's right to terminate the rental agreement. *See* Opposition at 3-5. Specifically, plaintiff argues CSC waived its right to terminate plaintiff's lease by accepting rental payments from plaintiff for January and February 2006 after CSC had notified plaintiff on January 5, 2006, that it was terminating her lease agreement. *See id.* Plaintiff's argument is legally deficient.

Before addressing the legal deficiencies in plaintiff's argument, it must be recognized that the parties do not dispute the underlying facts surrounding CSC's actions regarding the date CSC notified plaintiff it was terminating the lease, plaintiff's request for an extension of time to remain at CSC, and when and how CSC accepted plaintiff's rent for January and February, 2006. *See* Opposition at 2. Rather, the parties simply dispute whether the facts demonstrate CSC violated AS 34.03.240. *See* Opposition at 2-7. Given the absence of a factual dispute, the court may rule on the legal significance of the undisputed facts. *See* Fed. R. Civ. P. 56(b).

The legal deficiency of plaintiff's argument is laid bare by the plain language of AS 34.03.240. Alaska Statute 34.03.240 provides:

> Acceptance of rent with knowledge of a default by the tenant or acceptance of performance by the tenant that varies from the terms of the rental agreement or rules or regulations subsequently adopted by the landlord constitutes a waiver of the right of the landlord to terminate the rental agreement for that breach, <u>unless otherwise agreed after the breach has occurred</u>.

Defendant Chugiak Senior Citizens, Inc.'s Reply to Opposition to
Motion for Summary Judgment No. 3 Re:  Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                    Page 5 of 13

AS 34.03.240 (emphasis added).[3]  CSC could not have committed any waiver after it provided notice to plaintiff of her breach because the parties "otherwise agreed after the breach ha[d] occurred" that plaintiff could remain at CSC for 30 more days.

To reiterate, CSC provided plaintiff with a Notice of Termination of plaintiff's Lease Agreement and Residential Service Contract dated January 5,[4] 2006 to become effective February 4, 2006.[5]  However, on plaintiff's behalf, on January 26, 2006, plaintiff's Care Coordinator, Kathy Husky and on January 26, 2006, Timothy Twomey requested an extension of time for plaintiff to remain at CSC so that plaintiff could find a new residence as she allegedly was having trouble finding a new residence.[6]  In response to plaintiff's requests, on January 30, 2006, CSC granted plaintiff a 30-day

---

[3]Plaintiff cites various cases for the general proposition that a landlord's acceptance of rent after the termination date constitutes a waiver, *see* Opposition at 3, but none of the cases interpret AS 34.03.240 or any similar statute under the context of facts similar or remotely analogous to the facts in this case.  Certainly, none of the cases stand for the proposition that an agreement to stay a tenant's eviction for thirty days constitutes a waiver.  *Compare* Opposition at 3, *with Harper v. Quinlan*, 48 A.2d 113, 115 (Pa. App. 1946) (where landlords stated, in letter to tenant after expiration of time specified in notice to quit for tenant's removal from leased premises, that they were permitting tenant to remain while tenant was seeking another location, court held that landlords' acceptance of rent after such time did not constitute waiver of such notice).

[4]In her opposition, and in CSC's memorandum in support of the motion, both parties erroneously state the termination letter was dated January 4, 2006.  *See, e.g.*, Opposition at 2; Memorandum In Support of Motion at 3.  However, the letter was actually dated January 5, 2006.  *See* Ex. E at 1; Plaintiff's Ex. 64.  For purposes of resolving CSC's motion and plaintiff's cross motion for summary judgment on Count III, whether the notice was dated January 4th or January 5th is of no consequence.  CSC's position that it did not waive its right to terminate the lease does not rest or fall on whether the letter was dated January 4th or January 5th.

[5]*See* Ex. E at 1

[6]*Id.*; *see also* Ex. N at 1 (Kathy Husky Correspondence, dated January 26, 2006); Ex. O at 1-2 (Timothy Twomey Correspondence, dated January 27, 2006).

Defendant Chugiak Senior Citizens, Inc.'s Reply to Opposition to
Motion for Summary Judgment No. 3 Re:  Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                                    Page 6 of 13

extension of time, allowing her to remain at CSC until March 5, 2006, to provide her

time to find suitable alternative housing.[7]  However, CSC expressly stated:

> CSC will not withdraw its Notice of Eviction.  However, CSC
> is willing to allow Ms. Winters <u>a 30-day stay</u> of the eviction to
> locate an alternative living assisted (sic) program.
>
> . . . .
>
> To be clear, CSC does not intend to withdraw the eviction
> notice, and <u>the 30-day stay should not be interpreted as a
> waiver of CSC's right to terminate Ms. Winters' Residential
> Services Contract and Lease Agreement</u>.  At the expiration
> of any time extension for Ms. Winters to vacate her
> apartment, CSC reserves the right to take appropriate legal
> action to enforce [its] termination of the Lease Agreement
> and Residential Services Contract.[8]

Pursuant to the agreement to stay the date plaintiff was required to vacate her

residence, and because plaintiff resided at CSC for January and February, plaintiff paid

CSC rent for January and February.[9]

Given these undisputed facts and the law, plaintiff's argument that CSC waived

its right to terminate plaintiff's lease  by accepting rent for January and February is

clearly unpersuasive.[10]  CSC did not waive its right to terminate plaintiff's lease because

---

[7]Ex. K at ¶ 3 (Affidavit of Linda Hendrickson).
[8]Ex. F at 1, 3 (emphasis added).
[9]*See* Ex. K at ¶ 3, pg. 2.
[10]The irony is CSC went out of its way to assist plaintiff by staying the eviction by 30 days, so that plaintiff could have more time to find suitable alternative housing, despite plaintiff's abusive conduct toward CSC's staff, and now plaintiff is attempting to exploit CSC's generosity for her benefit and against CSC by claiming such an agreement to temporarily stay her eviction is unlawful and constitutes a waiver. As the court stated in *Harper v. Quinlan*, 48 A.2d 113, 115 (Pa. App. 1946), "with the existing housing shortage, the landlords are to be commended for this attitude instead of being penalized." *Id*. at 115.  Similarly, CSC should be commended for showing such

Defendant Chugiak Senior Citizens, Inc.'s Reply to Opposition to
Motion for Summary Judgment No. 3 Re:  Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                                    Page 7 of 13

plaintiff's eviction was stayed for 30 days so that plaintiff could find suitable alternative housing.  *See* AS 34.03.240; *see also Harper v. Quinlan*, 48 A.2d 113, 115 (Pa. App. 1946)(where landlords stated, in letter to tenant after expiration of time specified in notice to quit for tenant's removal from leased premises, that they were permitting tenant to remain while tenant was seeking another location, court held that landlords' acceptance of rent after such time did not constitute waiver of such notice).  Because AS 34.03.240 expressly permits such an agreement, there is no legal basis for concluding CSC waived its right to terminate the rental agreement.

Plaintiff's related argument that CSC simply allowed plaintiff to stay without making an express reservation flies in the face of undisputed facts.  *See* Opposition at 5.  The undisputed record reveals CSC expressly and unequivocally reserved its rights:

> CSC will not withdraw its Notice of Eviction.  However, CSC is willing to allow Ms. Winters a 30-day stay of the eviction to locate an alternative living assisted program.
>
> . . . .
>
> To be clear, CSC does not intend to withdraw the eviction notice, and the 30-day stay should not be interpreted as a waiver of CSC's right to terminate Ms. Winters' Residential Services Contract and Lease Agreement.  At the expiration of any time extension for Ms. Winters to vacate her apartment, CSC reserves the right to take appropriate legal

---

compassion, rather than being penalized.  Like the court in *Harper*, this Court should reject plaintiff's attempt to penalize CSC for allowing plaintiff to remain at CSC for an additional 30 days, especially since plaintiff had requested a time extension and AS 47.33.360(d) required CSC to cooperate with the resident in making arrangements to relocate.  Arguably, cooperation under AS 47.33.360(d) could mean allowing a resident additional time to remain in the assisted living home when the resident is unable to find suitable alternative housing, despite good faith efforts to do so.  The Court should reject plaintiff's attempt to penalize CSC for its generosity in granting the time extension.

Defendant Chugiak Senior Citizens, Inc.'s Reply to Opposition to
Motion for Summary Judgment No. 3 Re:  Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                                        Page 8 of 13

<u>action to enforce [its] termination of the Lease Agreement
and Residential Services Contract</u>.[11]

There is no dispute that CSC accepted rent on March 1, 2006 that was for the month of February, and not March.  *See* CSC's Memorandum in Support at 4-5; *see also* Ex. K, ¶ 3 (Affidavit of Linda Hendrickson).  Therefore, CSC accepted the rent on March 1, 2006 for a time extension specifically requested by plaintiff, which CSC granted while at the same time expressly reserving its right to terminate the lease.  Plaintiff fails to cite a single case to support her argument that CSC's reservation of its right to terminate the lease was not explicit enough to be effective.  *See* Opposition at 5.

In any event, assuming *arguendo* that the parties did not "otherwise agree" and that CSC did not expressly reserve its rights, plaintiff's argument still fails.  CSC and plaintiff had a month-to-month lease agreement, whereby the rent was due on the first day of each month.[12]  Under the URLTA, the landlord may terminate a month-to-month tenancy by a written notice given to the tenant at least 30 days before the rental due date.  AS 34.03.290(b).  If a landlord fails to provide the tenant with written notice prior to the commencement of the new month, the notice would not be effective until the following month.  AS 34.03.290(b); *Morrison v. Smith*, 757 S.W.2d 678,681 (Tenn. App. 1988) (explaining that if tenancy is month-to-month and notice of eviction is given in middle of month, tenant has until end of following month to vacate premises).

---

[11]Ex. F at 1, 3 (emphasis added).
[12]Ex. B at ¶ 3

Defendant Chugiak Senior Citizens, Inc.'s Reply to Opposition to
Motion for Summary Judgment No. 3 Re:  Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                                    Page 9 of 13

Here, CSC provided plaintiff written notice on January 5, 2006.[13]  CSC did not provide plaintiff written notice by January 1, 2006, the day her rent was due.[14] Consequently, if the URLTA applied to CSC's termination notice, the notice would not have been effective until the first day of February and plaintiff would have had one month from that date to remain in her residence.   Under the URLTA, the effective termination date of plaintiff's lease would have been the end of February.  If plaintiff's tenancy was not terminated until the end of February because AS 34.03.290(b) requires a written termination notice 30 days before the next rental due date, then CSC's acceptance of rent for February could not constitute a waiver.  In other words, if the URLTA applies as plaintiff argues, CSC's January 5, 2006 notice meant plaintiff was not required to move out until March 1, 2006.   Therefore, CSC's acceptance of rent for January and February, 2006 could not constitute a waiver if the timing of CSC's notice on January 5, 2006 allowed plaintiff to reside at CSC through the end of February 2006. Consequently, CSC's acceptance of rent for January and February, 2006 was not a waiver under AS 34.03.240.

It is undisputed and conceded by plaintiff that CSC did not accept plaintiff's March and April, 2006 rent until May 3, 2006, which was after the parties agreed that CSC's acceptance of the rent was not a waiver of CSC's right to evict plaintiff.  *See* Opposition at 2.  As March was the first month that plaintiff would have been a holdover tenant at CSC, then CSC would have only violated AS 34.03.240 if it unlawfully

---

[13]Ex. E at 1.

[14]*Id.*

Defendant Chugiak Senior Citizens, Inc.'s Reply to Opposition to
Motion for Summary Judgment No. 3 Re:  Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                           Page 10 of 13

accepted the March rent, which plaintiff concedes was not a waiver under the parties' stipulation that was approved by the Court.

For the reasons set forth above and in CSC's motion, CSC is entitled to summary judgment on Count III of plaintiff's amended complaint.

### C.    Plaintiff and CSC Contractually Agreed There Was No Waiver

CSC also moved for summary judgment on the grounds that plaintiff's claim under the URLTA fails because both the Residential Service Contract and Lease Agreement, which were duly executed by Carol Winters, plaintiff's daughter and power-of-attorney, contain non-waiver provisions. *See* Memorandum In Support Of Motion at 5-8. In her opposition, plaintiff claims that the non-waiver provisions are illegal under AS 34.03.240 and unenforceable under the URLTA. *See* Opposition at 5-6.

Plaintiff's argument is not supported by any legal authority and is otherwise unpersuasive. Nowhere in AS 34.03.240 does the statute address or mention whether parties may agree to non-waiver provisions in their contract and lease agreement. *See* AS 34.03.240. Plaintiff also relies on AS 34.03.340, *see* Opposition at 5-6, but nothing in AS 34.03.340[15] addresses whether parties may contractually agree to non-waiver

---

[15]AS 34.03.340 states in full:

> If a landlord is not a resident of this state or is a corporation not authorized to do business in this state and engages in any conduct in this state governed by this chapter, or engages in a transaction subject to this chapter, the landlord may designate an agent upon whom service of process may be made in this state. The agent shall be a resident of this state or a corporation authorized to do business in this state. The agent shall be the same person designated under AS 34.03.080. The designation shall be in writing and filed with

Defendant Chugiak Senior Citizens, Inc.'s Reply to Opposition to
Motion for Summary Judgment No. 3 Re: Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                    Page 11 of 13

terms.   Neither does AS 34.03.040 address whether parties may contractually waive any rights regarding a landlord's acceptance of rent after previously notifying the tenant of the termination of the lease.   While the Alaska Supreme Court has never addressed the precise issue under facts similar to those at issue here, the Court has held non-waiver provisions in lease agreements are enforceable and observed that "courts have given full effect to those provisions."   *See Stephens v. State*, 501 P.2d 759, 762 (Alaska 1972)(holding that where defendant, because of a nonwaiver provision in a lease, did not waive its right to rely solely on the initial notice of default before cancelling the lease, an issue of fact as to whether the supplemental notice had been mailed was not material to determination of defendant's right to terminate the lease); *see also Matter of Castaldo (Harrington)*, 633 N.Y.S.2d 94, 94-95 (N.Y. App. 1995)(holding that under nonwaiver provision of lease, landlord did not waive right to declare default when landlord accepted rent after serving notice of termination).   For these reasons, the court should find plaintiff's arguments without merit and grant CSC's motion.

---

the commissioner of commerce, community, and economic development. If no designation is made and filed or if process cannot be served in this state upon the designated agent, process may be served upon the commissioner of commerce, community, and economic development, but the service upon the commissioner is not effective unless the plaintiff or petitioner immediately mails a copy of the process and pleadings by certified or registered mail to the defendant or respondent at the last ascertainable address of the defendant or respondent. An affidavit of compliance with this section shall be filed with the clerk of the court having jurisdiction on or before the return day for the process, if any, or within any further time allowed by the court.

Defendant Chugiak Senior Citizens, Inc.'s Reply to Opposition to
Motion for Summary Judgment No. 3 Re:  Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                                    Page 12 of 13

## III.     Conclusion

CSC requests the court to enter partial summary judgment on Count III of the Amended Complaint by dismissing Count III, with prejudice.

DATED at Anchorage, Alaska, this 27th day of February, 2007.

DELANEY WILES, INC.
Attorneys for Chugiak Senior Citizens, Inc.

s/Donna M. Meyers and Clay A. Young
Delaney Wiles, Inc.
1007 W. Third Avenue, Suite 400
Anchorage, Alaska  99501
Phone:       907-279-3581
Fax:          907-277-1331
E-mail:       dmm@delaneywiles.com
E-mail:       cay@delaneywiles.com
Alaska Bar Assoc. No. 9006011 (DMM)
Alaska Bar Assoc. No. 7410117 (CAY)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of
February, 2007, a copy of foregoing
**Defendant's Reply to Opposition to
Motion for Summary Judgment No. 3 Re:
Count III** was served electronically on:

Jim Davis, Jr./Barbara Brink/
Nikole M. Nelson/Sonja Kerr
Alaska Legal Services Corporation
1016 West 6th Avenue, Suite 200
Anchorage, AK  99501

s/Donna M. Meyers and Clay A. Young
(127632)

Defendant Chugiak Senior Citizens, Inc.'s Reply to Opposition to
Motion for Summary Judgment No. 3 Re:  Count III
*Winters v. CSC*, Case No. 3:06-cv-00083-TMB                                    Page 13 of 13