Donna M. Meyers
Clay A. Young
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska  99501
PHONE:  907-279-3581
FAX:  907-277-1331
dmm@delaneywiles.com
cay@delaneywiles.com

Attorneys for Defendant
Chugiak Senior Citizens, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her Power of Attorney Carol Winters, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CHUGIAK SENIOR CITIZENS, INC., | ) ) |
| Defendant. | ) ) |
| —————————————————————— | )    Case No. 3:06-cv-00083-TMB |

**DEFENDANT CHUGIAK SENIOR CITIZENS, INC.'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT NO. 2 RE: COUNTS II, V, VI, AND VII**

**I.     INTRODUCTION**

In its Motion for Summary Judgment No. 2, CSC moved for dismissal of Counts II, V, VI, and VII in plaintiff's Amended Complaint.  Plaintiff has opposed CSC's motion, but none of the arguments have merit.

Defendant CSC's Reply to Opposition to Motion for
Summary Judgment No. 2 Re:  Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083                                        Page 1 of 23

**II.     CSC IS ENTITLED TO SUMMARY JUDGMENT ON THE ADA AND REHABILITATION ACT CLAIMS**

**A.     Plaintiff Has Failed To Established She Is Legally Disabled By Demonstrating That A Physical Or Mental Impairment Substantially Limits Her Major Life Activities**

CSC moved for summary judgment on plaintiff's Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims on the ground that plaintiff had not established that she was disabled by demonstrating that a physical or mental impairment substantially limited her major life activities.  *See* Memorandum in Support of Motion at 5-7, 23-25.  In her opposition, plaintiff argues that she has multiple disabilities because she suffers from arthritis, heart disease, hearing loss, and mental illness.  *See* Opposition at 15.  Plaintiff's argument is legally deficient because she has failed to establish those medical conditions constitute a "disability" under the ADA and the RA because, viewing plaintiff's evidence in the light most favorable to her, she has failed to show her medical conditions substantially limit her major life activities.

Under the ADA and the RA, the term "disability means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment."  28 C.F.R. § 36.104.  The phrase physical or mental impairment is defined as "contagious and noncontagious diseases and conditions as <u>orthopedic</u>, visual, speech, and <u>hearing</u> impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, <u>heart disease</u>, diabetes, mental retardation, <u>emotional illness</u>, specific learning disabilities, HIV

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re:  Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                        Page 2 of 23

disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism." 28 C.F.R. § 36.104 (emphasis added).

As the court in *Epstein v. Kalvin-Miller Intern., Inc.*, 100 F. Supp. 2d 222, 225-26 (S.D.N.Y. 2000) explained: "To succeed on an ADA claim, plaintiff must prove that [her] . . . heart disease impairs [her] ability to walk to such a great extent that [she] is "unable" to walk, or is "significantly restricted" in [her] ability to walk."   In granting the defendant's  motion for summary judgment on the plaintiff's ADA claim, the court concluded the plaintiff had failed to document and causally demonstrate that  his heart disease caused impairment of a major life activity.  *Id.*  The court explained that "[v]iewing the facts in the light most favorable to plaintiff, the Court finds that plaintiff's medical condition, as documented by his physician and described in his own sworn testimony, does not limit his ability to walk to this extent."  *Id.*  In reaching its decision, the court explained:

> Although plaintiff does plead facts to suggest that, even in its treated state, his heart disease might limit his ability to walk, the operative question under the ADA is not whether the condition merely limits, but whether it substantially limits, a major life activity. It is insufficient for plaintiff to plead mere limitation of a major life activity; rather, he must allege facts that, if true, would suggest a substantial limitation.  The Second Circuit has noted:

> Although almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled. Thus, in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities.

*Id.* at 227 (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir.1998) (citing *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir.1995))) (emphasis in original).

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re:  Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                                                 Page 3 of 23

Courts have similarly awarded defendant's summary judgment on a hearing impairment claim where the plaintiff's evidence did not establish that the hearing condition substantially limited a major life activity. *See Walton v. U.S. Marshals Service*, --- F.3d ---, 2007 WL 430426, at *2-8 (9th Cir. 2007)(affirming summary judgment in favor of defendant and holding that evidence was insufficient to establish that plaintiff's hearing impairment substantially limited the major life activity of hearing); *Santiago Clemente v. Executive Airlines, Inc.*, 213 F.3d 25, 30-34 (1st Cir. 2000) (affirming summary judgment for defendant where plaintiff failed to produce evidence demonstrating her hearing problems substantially interfered with major life activities of hearing); *Eckhaus v. Consolidated Rail Corp.*, 2003 WL 23205042, *8-9 (D. N.J. 2003) (holding that plaintiff failed to show that her hearing impairment, when corrected by hearing aids, substantially limits a major life activity) **Ex. P**. In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), the Supreme Court held that corrective and mitigating measures must be considered in determining whether an individual is disabled under the ADA. 119 S.Ct. at 2146.

The analysis for an impairment due to arthritis is similar to the analysis for an impairment due to heart disease, hearing loss, or mental illness. When a plaintiff fails to causally establish that the claimed disability substantially limits a major life activity, the defendant is entitled to summary judgment. *See Papproth v. E.I. DuPont de Nemours and Co.*, 359 F. Supp. 2d 525 (W.D. Va. 2005) (granting defendant summary judgment on plaintiff's ADA claims, concluding that the employee's arthritis did not constitute a "disability" under the ADA, and explaining that the plaintiff has failed to establish that her arthritis substantially limited any major life activities).

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re: Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                    Page 4 of 23

Numerous courts have awarded defendants summary judgment even though the plaintiff has an impairment because the plaintiff did not establish that the impairment caused a substantial limitation on a major life activity.  *See, e.g., Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 724-25 (8th Cir. 2002); *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1227-28 (11th Cir. 1999)(affirming summary judgment for defendant on an ADA claim where plaintiff had heart disease because the court concluded the evidence did not factually demonstrate plaintiff's heart disease substantially limited her major life activities); *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 271 (9th Cir. 1996)(holding that evidence was insufficient to establish that employee was substantially limited in a major life activity and affirming summary judgment); *see also Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 36 n. 2, 37 (5th Cir. 1996)(reversing denial of the employer's motion for judgment as matter of law and holding that a lung capacity that was less than 50% of normal was only evidence of an impairment, and that evidence was not sufficient to establish that plaintiff was substantially limited by the impairment).

"[M]ost disabilities from which people suffer," "do not have a substantial enough effect on their major life activities."  *Berg v. Norand Corp.*, 169 F.3d 1140, 1145 (8th Cir. 1999) (quoting *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 675 (7th Cir. 1998)).  Health conditions that cause moderate limitations on major life activities do not constitute disabilities under the ADA.  *See Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 960 (8th Cir. 2000)(holding that heart disease did not substantially limit plaintiff in the life activities of breathing, walking, doing yard work, cleaning house, and having sex); *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999)(concluding that despite plaintiff's heart disease, plaintiff failed to present sufficient

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re:  Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                                          Page 5 of 23

evidence to establish that his heart disease caused him to be substantially limited in a major life activity). "Not every physical or mental impairment 'counts' for ADA purposes, because most disabilities from which people suffer (bad vision, impaired hearing, arthritic joints, diabetes) do not have a substantial enough effect on their major life activities." *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999).

A condition that simply affects or compromises an individual's ability to perform major life activities is insufficient to establish a disability. *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). "An individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.*; *see also Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 317-317 (6th Cir. 2001). "To hold otherwise could expand the ADA to recognize almost every working American as disabled to some degree." *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 724 (8th Cir. 2002). For these reasons, "courts do not assume that an impairment substantially limits a major life activity. Rather, the plaintiff must show how the impairment limits a major life activity." *Arce v. ARAMARK Corp.*, 239 F. Supp. 2d 153, 167 (D. Puerto Rico 2003).

Here, CSC does not dispute that a person would qualify as disabled under the ADA and the RA if the person's arthritis, heart, disease, hearing loss, and mental illness constituted a disability such that the conditions substantially limited one or more of the major life activities of that person. 28 C.F.R. § 36.104. However, in this case and with this record, viewing all of the evidence in the light most favorable to plaintiff does not factually establish that any of plaintiff's conditions substantially limited one or more of her major life activities. *See* Opposition at 1-27

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re: Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                    Page 6 of 23

and exhibits attached thereto. In other words, there is no evidence that plaintiff's heart disease, arthritis, hearing loss, or mental illness have substantially limited her major life activities.

For example, plaintiff's opposition and exhibits cited therein are completely bereft of any factual showing that plaintiff's heart disease, arthritis, hearing loss, or mental illness was the cause of her alleged problems with medication management, preparing meals, money management, doing housework, etc. Specifically, plaintiff has not factually demonstrated how each particular medical problem or need has caused a substantial limitation on each particular daily major life activity. It is not sufficient that plaintiff has certain medical conditions, to meet her burden and establish a prima facie actionable ADA claim, those medical conditions must be factually causally shown to have substantially limited her major life activities, and plaintiff has not made this showing.

CSC is therefore entitled to summary judgment on plaintiff's ADA and RA claims because plaintiff has failed in her burden to satisfy a predicate element of her prima facie case, *i.e.*, producing sufficient evidence demonstrating that she has an impairment that substantially limits her major life activities.

**B.    Plaintiff Did Not Request An Accommodation**

CSC also moved for summary judgment on plaintiff's ADA and RA claims because plaintiff did not specifically request an accommodation for her disabilities, which plaintiff identifies as heart disease, arthritis, hearing loss, and mental illness. *See* Opposition at 14. In her opposition, plaintiff asserts that she did request an accommodation for her hearing problem, orthopedics/arthritis, and heart disease. *See* Opposition at 17. Plaintiff's argument is legally incorrect and factual bereft.

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re:  Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                              Page 7 of 23

Before addressing the merits of plaintiff's argument, it would not appear that it is necessary to consider plaintiff's argument because, as set forth above, plaintiff has not demonstrated that she even has a disability that substantially limited her major life activities. *See* supra Section II.A. Even if plaintiff had presented such evidence, plaintiff has not shown that CSC was aware that plaintiff had a disability that substantially limited her major life activities. *See* Opposition at 1-37. And, even if she had made such a showing, as explained below, plaintiff did not specifically request an accommodation for her disabilities.

Plaintiff's argument is legally incorrect as she misunderstands the requirements under the ADA and RA for requesting an accommodation. A party seeking a reasonable accommodation under the ADA or RA must specifically request it. *Wisconsin Correctional Service v. City of Milwaukee*, 173 F. Supp. 2d 842, 849 (E.D. Wis. 2001); *Woolcott v. E.I. Dupont Nemours & Co., Inc.*, 1997 WL 251475 at *4 (W.D.N.Y. 1997)(declaring it is the responsibility of the disabled individual to inform employer of need for accommodation, and, if employee fails to request accommodation, employer cannot be liable for failing to provide one). Courts have applied this general rule and dismissed ADA claims where the plaintiff has failed to prove that she requested an accommodation. *See, e.g.*, *Mazza v. Bratton*, 108 F. Supp. 2d 167, 176 (E.D.N.Y. 2000)("A claim of disability discrimination arising from termination of an employee based on failure to accommodate is not made out under the ADA unless the employee's request for a reasonable accommodation has been denied by the employer."); *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)("[I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one."); *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999)("[T]he duty

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re: Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                    Page 8 of 23

to provide a reasonable accommodation is not triggered until a specific demand for an accommodation has been made."). "If the [plaintiff] fails to request an accommodation, the [defendant] cannot be held liable for failing to provide one." *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) (citing 29 C.F.R. § 1630.9, App.).

Plaintiff's argument is factually bereft because the evidentiary record construed in the light most favorable to her does not demonstrate that plaintiff requested an accommodation for her heart disease, arthritis/orthopedic problem, hearing loss, and mental illness. *See* Opposition at 14, 16-17. Plaintiff has not even made any showing regarding when or how she requested an accommodation for her alleged mental illness. *See id.* at 14. In regards to her hearing problem, orthopedics problem and heart disease, plaintiff relies on a letter Carol Winters sent CSC in September 2004 as her evidentiary support. *See id.* at 17 (citing P. Ex. 10). However, in the letter, Carol Winters simply summarized plaintiff's current medical conditions prior to her residency at CSC. *See* P. Ex. 10 at 1. While Carol Winters goes on to note various medical conditions plaintiff suffers from, Carol Winters does not state that these medical conditions are disabilities that substantially limit plaintiff's major life activities. *See id.* at 1-3. Nor does the letter request or suggest reasonable modifications for any disability. *See id.* For example, in regarding to her hearing problem, the letter simply states: "[Plaintiff] cannot hear speech sounds out of her left ear. She will only hear from the right side and she cannot hear you if you are far away from her or if there is no noise in the background." *Id.* at 2. Providing CSC this information cannot be construed as a request for a specific accommodation, e.g., such as requesting CSC provide plaintiff with a TTY (teletypewriter) or a TDD (telephone device for the deaf), etc. In sum, plaintiff never requested a specific accommodation from CSC that would

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re: Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                    Page 9 of 23

enable plaintiff to overcome any disability that substantially limited plaintiff's major life activities. CSC is therefore entitled to summary judgment on plaintiff's ADA and RA claims.

### C.    There Is No Evidence CSC Did Not Accommodate Plaintiff's Requests

Plaintiff also opposes CSC's motion on the grounds that CSC did not accommodate plaintiff's requests for reasonable accommodations under the ADA and RA. *See* Opposition at 18-21. As explained above, plaintiff never requested a specific accommodation from CSC that would enable plaintiff to overcome any disability that substantially limited plaintiff's major life activities. *See* supra Section II.B. CSC therefore cannot be found to be at fault for failing to do something that plaintiff never requested.

Assuming *arguendo* that plaintiff did make a legally cognizable request for an accommodation under the ADA and RA, there is no evidence CSC did not accommodate plaintiff's request. A defendant "is not obligated to provide a [plaintiff] the accommodation she requests or prefers, the [defendant] need only provide some reasonable accommodation." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996). Under the ADA, a plaintiff "cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided." *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800-01 (6th Cir. 1996) (affirming summary judgment for defendant on ADA claim). As long as the defendant "made available other reasonable and effective accommodations" to the plaintiff, it did not matter whether other measures would have been a reasonable accommodation. *Id.* at 800. If a person or entity provides reasonable accommodations for a disabled person, the disabled person has no basis for complaint under the ADA because some other type of reasonable accommodation was not used. *Id.* at 800-01.

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re:  Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                    Page 10 of 23

29 C.F.R. § 1630.9 provides:

> A qualified individual with a disability is not required to accept an accommodation, aid, service, opportunity or benefit which such qualified individual chooses not to accept. However, <u>if such individual rejects a reasonable accommodation</u>, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, <u>the individual will not be considered a qualified individual with a disability</u>.

29 C.F.R. § 1630.9 (emphasis added).

For example, in regards to plaintiff's hearing loss impairment, plaintiff argues that CSC did accommodate her regarding her hearing problems. *See* Opposition at 18-19. Plaintiff does not, however, state exactly how CSC failed to reasonably accommodate her hearing problems and purported request for an accommodation. *See id.* at 18-19. Rather, plaintiff simply asserts at certain times in her charts, the notes reflected that the plaintiff was talking loudly. *See id.* There is no evidence that CSC did not act appropriately or reasonably to plaintiff when communicating with her. *See id.* In fact, plaintiff concedes that various CSC employees, such as Tom Isaacs, had no problem communicating with plaintiff. *See id.* Moreover, plaintiff fails to explain that CSC offered numerous other reasonable accommodations to plaintiff regarding her hearing problems, which plaintiff rejected. For example, plaintiff rejected CSC's offer to use a dry erase board to facilitate communication and rejected CSC's offer to place audio or video equipment in plaintiff's room. *See* **Ex. Q at 1-2** (Conference Care Summaries dated 6/24/05, 7/5/05). As it is undisputed that CSC offered plaintiff reasonable accommodations for her hearing problem, such as the use of a dry erase board to communicate with staff and to have staff communicate with

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re: Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                    Page 11 of 23

her, it does not legally matter if CSC did not use plaintiff's preferred accommodation (whatever that was).

Similarly, in regards to plaintiff's orthopedic impairment, plaintiff argues that CSC failed to accommodate plaintiff's orthopedic problems. *See* Opposition at 19-20. However, plaintiff fails to state what reasonable accommodation she requested and how CSC failed to meet her request. *See id.* Plaintiff simply asserts that she needs to be moved "slowly and gently" and sleep in a comfortable place with pillows placed in an exact place on her bed. *See id.* However, plaintiff has produced no evidence that CSC did not move plaintiff "slowly or gently" or that CSC did not place pillows in the manner plaintiff desired. *See id.* Plaintiff cites no legal authority that the alleged imprecise placement of one pillow at one time on a person's couch or sleeping area could give rise to an ADA claim and establish a prima facie showing that defendant failed to make a reasonable accommodation.

Plaintiff next argues that CSC failed to reasonably accommodate her heart disease. *See* Opposition at 20-21. In support of her argument, Plaintiff asserts that because of her heart disease plaintiff allegedly needed a diet with no pork or beef. *See* Opposition at 20. However, plaintiff has not produced any evidence that (1) any medical provider had advised or prescribed a pork or beef free diet for her heart disease or that these foods were medically contraindicated because of her heart disease; (2) plaintiff ever requested meals without pork or beef; or (3) that all or a substantial portion of the meals provided by CSC either did contain pork or beef, or were not healthy or alternatives were not available. *See* Opposition at 20-21. Plaintiff has also not produced evidence that plaintiff was not otherwise reasonably accommodated by being provided healthy food, or conversely produced evidence showing that CSC provided her meals that would

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re: Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                    Page 12 of 23

adversely affect her heart problem. *See id.* (Plaintiff cites to P. Ex. 9 and P. Ex. 35A and neither of these exhibits are probative of these issues.).[1] Because there is no evidence that plaintiff made a request to reasonably accommodate her heart disease that CSC failed to accommodate, plaintiff has failed in her burden of producing evidence in support of her prima facie case of establishing that CSC failed to reasonably accommodate her heart disease.

In short, CSC is entitled to summary judgment on plaintiff's ADA and RA claims because there is no evidence that plaintiff made a request to reasonably accommodate her alleged disabilities (i.e., hearing problem, heart disease, arthritis/orthopedic problems) that CSC either failed to accommodate or failed to provide plaintiff with other reasonable accommodations.

**D.     Plaintiff's Residency Places An Undue Hardship on CSC**

Plaintiff also opposes CSC's motion for summary judgment on the grounds that there is a dispute whether accommodating plaintiff will cause CSC an undue burden. *See* Opposition at 21-31. For the reasons explained above and in CSC's motion, plaintiff has failed in making the other elements of her prima facie case, so it is not necessary for the court to consider whether the accommodations or continued residency at CSC would place an undue burden on CSC. *See* supra at 1-15. In other words, if plaintiff has not shown that she is disabled for purposes of the ADA and RA, has not shown she requested reasonable accommodations, and has not shown the care and actions provided to her by CSC were not reasonable, it is not necessary to address plaintiff's undue burden argument. Assuming *arguendo* the court addresses plaintiff's argument, plaintiff's argument is nonetheless infirm.

---

[1]CSC had an open dining room for the residents that served a wide variety of meals. **Ex. R** Tr. 42:13-43:7, 46:9-16 (Thomas Isaacs Deposition). There was also a refrigerator that residents could access whatever they wanted to eat. *Id.*

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re: Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                        Page 13 of 23

In support of her argument, plaintiff relies on the deposition testimony of Dr. Michael Jones and a single care giver, Thomas Isaacs. *See* Opposition at 23-26. Plaintiff's reliance on their testimony is misplaced. The testimony fails to establish that CSC wrongfully terminated plaintiff's residency at CSC or that plaintiff's continued residency at CSC does not place an undue burden on CSC. For example, plaintiff's reliance on Thomas Isaacs testimony does not create any factual dispute because Isaacs conceded at his deposition that he did not know if plaintiff was placing an undue burden on CSC warranting CSC's termination of plaintiff's residency at CSC. *See* **Ex. R** at Tr. 75:7-11 (Thomas Isaacs' Deposition).

Plaintiff's reliance on Dr. Jones's testimony similarly does not create any issue of fact regarding whether plaintiff was placing an undue burden on CSC. Dr. Jones has no personal knowledge of the services provided at CSC, and the interactions between CSC's caregivers and plaintiff. He has never visited CSC, and he is not aware of the services CSC provides to its residents. *See* Dkt. Nos. 145, Ex. A, Dkt. 257, Ex. C at Tr. 63:21-23; 78:4-10 (Dr. Jones Deposition). Dr. Jones has never observed CSC's staff interact with plaintiff. *Id.* at Tr. 64:4-7. Dr. Jones has also never contacted CSC to determine the circumstances surrounding CSC's decision to terminate plaintiff's residential services contract and lease agreement with CSC. *Id.* at Tr. 71:25-72:6. For example, Dr. Jones does not know whether CSC's staff communicated effectively with plaintiff by speaking loud enough for her to hear them. Tr. 69:7-10. Dr. Jones does not have any personal knowledge regarding whether CSC's decision to terminate plaintiff's Residential Service Contract and Lease Agreement is related to any purported problems the staff has communicating with plaintiff or because plaintiff's care placed an undue burden on CSC. While Dr. Jones believes that plaintiff's difficult behavior may be related to "her anxiety

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re: Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                    Page 14 of 23

disorder and is not intentional", he does not have any personal knowledge of whether plaintiff's difficult behavior at CSC is intentional or the result of her anxiety.  Tr. 80:24-81:5.  In sum, Dr. Jones' testimony does not create any issue of fact regarding whether plaintiff was placing an undue burden on CSC because there is no evidence that Dr. Jones has sufficient knowledge about CSC's ability to  meet plaintiff's needs or concerning plaintiff's needs to determine whether plaintiff is placing an undue burden on CSC.

Plaintiff's related argument is that it is not evident there is an undue burden because CSC has not derived a specific dollar amount to quantify the undue burden plaintiff's continued residency at CSC would cost CSC.  *See* Opposition at 26-31.  Plaintiff's argument is  a red herring because CSC is not required to derive a specific dollar amount cost to demonstrate an undue burden.  Rather, to demonstrate an "undue hardship" CSC is simply required to produce evidence of "action requiring significant difficulty or expense."  42 U.S.C. § 12111(10).  "The financial condition of the employer is only one consideration in determining whether an accommodation otherwise reasonable would impose an undue hardship."  *Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 538, 543 (7th Cir. 1995)(affirming summary judgment for defendant who had produced evidence showing the requested accommodation would be an undue burden).  Among other factors that may be considered in demonstrating an undue hardship are the number of persons employed at such facility, the impact otherwise of such accommodation upon the operation of the facility, and the type of operation of the covered entity.  42 U.S.C. § 12111(10)(B).

There is substantial evidence supporting CSC's determination that plaintiff was placing an undue burden on CSC.  For example, it would take CSC staff up to an hour to assist plaintiff

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re:  Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                      Page 15 of 23

at bedtime.  *See* **Ex. S** (Care Conference Summary dated 11/12/04).  It would take 40 minutes to assist plaintiff in the morning.  *See* **Ex. R** at Tr. 74:11-16 (Thomas Isaacs' Deposition).  As CSC has only two other staff members to assist with the 20 other residents, CSC's care of plaintiff was placing an undue burden on CSC.  By spending the time on plaintiff, CSC was running the risk it might not able to spend sufficient time assisting other residents who also needed care and observation. [2]

Evidence of the undue burden placed on CSC is also demonstrated by the observations and conclusions in Dr. Deborah Geeseman's expert report.  Dkt. 231, Ex. A at 3, 18-19 (Dr. Geeseman's Report).  In her report, Dr. Geeseman notes "plaintiff is in need of assistance with daily living. . . and [d]ifficulties have arisen between Ms. Winters and the staff of Chugiak Senior Center (hereafter known as CSC) where she resides, in the provision of this assistance. Ms. Winters needs assistance and desires this assistance be provided in the way she wants it done, sometimes in very specific ways."  Dkt. 231, Ex. A at 3.  Dr. Geeseman further notes that "CSC records indicate tensions arising in interactions between CSC staff and Ms. Winters, quantities of time spent in assisting Ms. Winters that are apparently in excess of the average for care provision at CSC, and that two staff members are sometimes present when providing

---

[2]*Easley by Easley v. Snider*, 36 F.3d 297,  305  (3d. Cir. 1994) (declaring a modification of a public entity's policies, practices, or procedures is not reasonable under ADA regulation, if it alters the essential nature of the program or imposes undue burden or hardship in light of the overall program); *Williams v. Wasserman,* 164 F. Supp. 2d 591, 638 (D. Md. 2001) (declaring modification to state's treatment programs for developmentally disabled residents of state's psychiatric institutions, in form of accelerated placement for such residents and community-based facilities, would have resulted in a fundamental alteration of state's provisions of services and programs in face of difficult fiscal and medical choices, and acceleration of process would have required shift of resources, in face of need to maintain minimal number of hospital beds and also to fund placements for other persons in need of community treatment).

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re:  Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                        Page 16 of 23

assistance to Ms. Winters which is not standard protocol for CSC provision of service." *Id.* Dr. Geeseman explained that the care plaintiff needed exceeded that which could be reasonably provided by CSC:

> In reviewing both the statements of Ms. Winters' daughter and the staff notes, it appears that there is a mismatching of the resident's needs and the facility's service. Ms. Winters does have needs for assistance in many areas by virtue of her many medical conditions. The needs and the quantity of time needed to meet those needs does not appear to be compatible with the staff:resident ratio that exists at CSC. It appears that both sides have had a difficult time trying to make the situation a workable one. It appears that when the mismatches arise, that Ms. Winters may become more uncomfortable either physically and/or emotionally and she again attempts to give directions to bring her world back into a state of comfort. However, these directions seems to complicate the situation further. There appears to be a disparity between Ms. Winters' needs (real or perceived) and the staff's availability and limitations for meeting those needs.

*Id.* at 9. Thus, Dr. Geeseman's assessment corroborates CSC's position that plaintiff's needs exceed the level of services CSC can reasonably provide without placing an undue burden on CSC, making unreasonable accommodations, straining staff, and potentially short changing other residents.

CSC's expert in geriatric medicine and long term care, Dr. Sabine von Preyss-Friedman's observations and conclusions in her expert report are further evidence of the undue burden plaintiff's continued residency placed on CSC. Dr. von Preyss-Friedman concluded:

> ### Can CSC meet the care needs of Helen Winters?
>
> Looking at the mere physical capabilities of this patient it appears that admitting her to CSC in September of 2004 appeared reasonable as she had previously been independently living in the community and had increased disability due to a right arm fracture,

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re: Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                    Page 17 of 23

that was expected to heal. However, after admission it became known to the CSC staff what was previously not known: that the patient's care needs were not primarily determined by her physical abilities but by the patient's psychological need to engage other people in control of her environment. Likely, due to the patient's losses that she has experienced as a consequence of old age and disability, the patient is apparently only able to cope with responding to her loss of control with a need to control her caregivers and engage them in ritualistic appearing caregiving demands. The patient's records at CSC document in detail the patient's time consuming needs for staff attention.

I have extensive experience in discharging patients to assisted living facilities and evaluating them for appropriateness of assisted living facilities as well as in the care of frail, elderly, and debilitated patients. It is my experience as a geriatrician who takes care of frail, elderly and debilitated patients, that assisted living facilities are usually overwhelmed by patients who need more than one person assist and care over an extended period of time as Ms. Winters does. On a more probable than not basis, the timing demands for toileting and showering also do exceed that what is usually provided in assisted living facilities.

It is unfortunate that Ms. Winters' need for control of her environment has escalated to the point of verbal abuse of staff as well as physical aggression towards staff as documented above. Further, the needs of Ms. Winters have affected the ability of staff to provide optimal care for other patients residing at Chugiak Senior Citizens, Inc.

The lease agreement signed by Carol Winters, POA, on September 24, 2004, specifies on page 4 that termination by management against the resident's will is agreed upon if the level of care is no longer available at the facility and for engaging in a documented pattern of conduct that is harmful to the resident, other residents or staff of the home.

*In regard to the level of care, again, consistent need for two-person care as well as lengthy toileting and grooming procedures, felt necessary* by Ms. Winters, exceed the level *of care at CSC.*

*As already outlined above, the patient unfortunately has acted verbally and physically abusive as well as socially inappropriate,*

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re: Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                   Page 18 of 23

*placing significant stress on staff as well as other individuals in the facility.*

On a more probable than not basis, the patient's loss of hearing is not a major barrier to communication between staff and the resident and the care delivered to Ms. Winters. The staff during my interviews had appropriate knowledge on how to communicate with patients with hearing impairments such as Ms. Winters. Significant hearing impairment is not an unusual occurrence in the care of elderly patients, and there are other residents at CSC with similar hearing impairments. Also, in my experience treating numerous patients with severe hearing deficits, there is a distinct difference between speaking loudly because of hearing problems and an angry, raised voice and affect.

In summary, Ms. Winters is a 91-year-old female with multiple physical limitations that have been stable to improving after admission to Chugiak Senior Citizens, Inc. in September 2004. *However, her care needs are in excess of what the facility can provide due to the patient's expressed need to control her environment and caregivers beyond her mere physical restrictions. This has led to a burden on staff and other residents. Therefore, the facility has the right to terminate service to Ms. Winters according to Alaska State Statutes governing assisted living facilities and the agreed upon lease and service agreement at the time of Ms. Winters' admission.*

Dkt. 233, Ex. B, p. 4 and 56-57 (emphasis added).

Theresa Panchot's observations and conclusions in her expert report are additional evidence of the undue burden plaintiff's continued residency placed on CSC.  Ms. Panchot also concluded that there was a disparity between the services CSC could offer Ms. Winters, and Ms. Winters' apparent needs, demands and expectations.  Dkt. 235, Ex. B at 69-80.

In sum, there is substantial evidence that plaintiff's continued residency at CSC was placing an undue burden on CSC and that CSC terminated plaintiff's contract because it could not safely provide for plaintiff's needs and because plaintiff had engaged in a documented

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re:  Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                                      Page 19 of 23

pattern of conduct that was harmful to herself and others, and violated the terms of the residential services contract.

### III.    CSC Is Entitled To Summary Judgment On The Fair Housing Act Claim

CSC also moved for summary judgment on plaintiff's Fair Housing Act ("FHA") Claim. *See* Memorandum In Support Of Motion at 13-23, 26-28.  In her opposition, plaintiff argues that she requested "accommodations" from CSC, CSC did not provide these accommodations and there is no evidence that the accommodations would impose an undue burden on CSC.  *See* Opposition at 33.  Plaintiff's argument in her opposition is just that, argument that is not supported by any facts.  *See* Opposition at 31-25.  Plaintiff has presented no admissible evidence in support of her argument.  *See id.*

For example, in regards to her argument that she requested a housing accommodation from CSC, Plaintiff has presented no evidence that she ever requested any housing accommodation from CSC.  *See* Opposition at 31-35; *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch*, 284 F.3d 442, 457 (3d Cir. 2002)(resident has the burden of proposing an accommodation); *see also Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996)("The disabled individual bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.").  Plaintiff has not satisfied her burden and CSC cannot be found at fault for failing to provide an accommodation to plaintiff when there is no evidence CSC was ever asked to make a specific housing accommodation.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (uncorroborated allegations and "self-serving testimony" cannot create a genuine issue of material fact).

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re:  Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                    Page 20 of 23

Unlike the cases plaintiff relies on, plaintiff never made a request for wider door ways, a ramp, hand railings, etc.  *See* Opposition at 35 (citing *United States v. Freer*, 864 F. Supp. 324, 325 (W.D.N.Y. 1994) (disabled individual requested installation of wheelchair ramp on premises); *United States Department of Housing and Urban Development v. Twinbrook Village Apartments*, 2001 WL 1632533 at *2 (H.U.D. A.L.J. Nov. 9, 2001) (disabled tenant requested ramp installed to her apartment)); *see also Andover Housing Authority v. Shkolnik,* 820 N.E.2d 815, 821 nn. 12 & 13 (Mass. 2005) (request for soundproofing in apartment).  Because there is no evidence plaintiff ever made any request for a housing accommodation, CSC cannot as a matter of law be liable for failing to accommodate a non-existent request for an accommodation. [3]

To the extent plaintiff is simply attempting to jerry rig her ADA and RA claims onto her FHA claims, plaintiff has failed in her burden of establish all of the elements of her FHA claim for the reasons provided in CSC's memorandum in support of its motion and in this reply regarding plaintiff's ADA and RA claims which are expressly incorporated herein. [4]

---

[3]The FHA does not, however, "extend a preference to handicapped residents," *United States v. California Mobile Home Park Management Co.*, 29 F.3d 1413, 1418 (9th Cir.1994), and, therefore, CSC is not requited to provide any accommodations that go beyond affording a handicapped person an equal opportunity to use and enjoy a dwelling.  *Prindable v. Association of Apartment Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1254 (D. Hawai'i 2003).

[4]Plaintiff also argues that CSC alternatively was not justified in its actions because CSC did not present evidence that plaintiff presented a direct threat to herself and others.  *See* Opposition at 30-31.  The FHA expressly permits CSC to terminate plaintiff's tenancy if the plaintiff constitutes a direct threat to the health and safety of other individuals.  *See* 42 U.S.C. § 3604(f)(9); *see also Arnold Murray Constr., L.L.C. v. Hicks*, 621 N.W.2d 171, 176 (S.D. 2001) (in absence of evidence proffered by tenant to counteract landlord's testimony that no accommodation would alleviate risk to other tenants from tenant's threatening, emotional outbursts, landlord not obliged to attempt reasonable accommodation).  CSC has evidence that plaintiff was verbally and physically assaulting CSC staff.  Ex. A at ¶ 6; **Ex. T** (CSC Record dated, 12/19/05).  In any event, it is not necessary to resolve this issue, as CSC is entitled to

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re:  Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                    Page 21 of 23

In sum, for these reasons, plaintiff's opposition lacks merit and the court should grant CSC's motion for summary judgment on plaintiff's FHA claim.

## IV.    CSC Is Entitled To Summary Judgment On The Human Rights Act Claim

CSC also moved for summary judgment on plaintiff's Human Rights Act claim.  *See* Memorandum in Support of Motion at 2-27.  In her opposition, plaintiff briefly summarizes and repeats the arguments she made in opposing CSC's motion for summary judgment on her ADA, Rehabilitation Act, and FHA claims.  *See* Opposition at 35-36.  Plaintiff argues that there are genuine issues of material fact regarding "whether CSC failed to accommodate Plaintiff Winters' various disabilities and then attempted to evict her because of those same disabilities."  *Id.* at 36.  Plaintiff's argument regarding the Human Rights' Act claim must be also rejected for the same reasons her arguments regarding the ADA, Rehabilitation Act, and FHA claims lack merit.  *See* supra Sections II-III.  As was explained above, and in CSC's memorandum in support of its motion, CSC is entitled to summary judgment on plaintiff's Human Rights' Act claim.

## V.    Conclusion

For the reasons set forth above and in CSC's memorandum in support of its motion for motion for summary judgment, CSC requests the court enter partial summary judgment on the claims in Counts II, V, VI, and VII of the Amended Complaint, with prejudice.

DATED at Anchorage, Alaska, this 27th day of February, 2007.

---

summary judgment on the other grounds stated above and in CSC's memorandum in support of its motion.

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re:  Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                                        Page 22 of 23

DELANEY WILES, INC.
Attorneys for Chugiak Senior Citizens, Inc.

s/Donna M. Meyers and Clay A. Young
Delaney Wiles, Inc.
1007 W. Third Avenue, Suite 400
Anchorage, Alaska  99501
Phone: 907-279-3581/Fax:  907-277-1331
E-mail:dmm@delaneywiles.com
E-mail:cay@delaneywiles.com
Alaska Bar Assoc. No. 9006011 (DMM)
Alaska Bar Assoc. No. 7410117 (CAY)

**CERTIFICATE OF SERVICE**

I hereby certify that on 27th day
of February, 2007, a copy of foregoing
**Defendant's Reply to Opposition to
Motion for Summary Judgment
No. 2 Re: Counts II, V, VI, and VII**
was served electronically on:

Jim Davis, Jr./Barbara Brink/
Nikole M. Nelson/Sonja Kerr
Alaska Legal Services Corporation
1016 West 6th Avenue, Suite 200
Anchorage, Alaska  99501

s/Donna M. Meyers and Clay A. Young
127869

Defendant CSC's Reply to Opposition to Motion
for Summary Judgment No. 2 Re:  Counts II, V, VI and VII
*Winters v. CSC*/Case No. 3:06-cv-00083 (TMB)                    Page 23 of 23