Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Eckhaus     v.     Consolidated     Rail
Corp.D.N.J.,2003.Only     the     Westlaw
citation is currently available.
United States District Court,D. New Jersey.
Ruth ECKHAUS, Plaintiff,
v.
CONSOLIDATED RAIL
CORPORATION and Joseph Garofolo,
Defendant(s).
**No. Civ. 00-5748(WGB).**

Dec. 24, 2003.

Law Offices of Wendie L. Elovich, P.A.,
By: Wendie L. Elovich, Little Silver, New
Jersey, for Plaintiff.
Pepper Hamilton, LLP, By: Patricia A.
Smith, Ian W. Siminoff, Princeton, New
Jersey, for Defendants.

*OPINION*
BASSLER, J.
**\*1** Before this Court are two motions
brought by defendants Consolidated Rail
Corporation and Joseph Garofolo
(collectively "Defendants") as against the
Complaint of plaintiff Ruth C. Eckhaus ("
Eckhaus" or "Plaintiff"): (1) a motion for
summary judgment brought pursuant to
Fed.R.Civ.P. 56; and (2) a motion to strike
Plaintiff's counsel's affidavit, Plaintiff's
affidavit and Plaintiff's Local Civil Rule

56.1 Statement based on Plaintiff's alleged
violations of Fed.R.Civ.P. 56 and Local
Civil Rule 7.2.

**\*1** Plaintiff's Complaint alleges she was
discriminated against by Defendants based
on: (1) her alleged hearing impairment in
violation of the American with Disabilities
Act ("ADA"), 42 U.S.C. § 12111, *et seq.,*
and the New Jersey Law Against
Discrimination ("LAD"), N.J.S.A. 10:5-1,
*et seq.;* (2) her age in violation of the Age
Discrimination in Employment Act of
1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*
and LAD; and (3) her gender in violation
of Title VII of the Civil Rights Act of 1964
("Title VII"), 42 U.S .C. § 2000e, *et seq.*
and LAD. Plaintiff further brings claims
against defendant John Joseph Garofolo ("
Garofolo"), Plaintiff's supervisor, in his
individual capacity and also asserts a claim
for intentional infliction of emotional
distress.

**\*1** This Court properly exercises
jurisdiction over Plaintiff's federal claims
pursuant to 28 U.S.C. § 1331 and over
Plaintiff's state law claims pursuant to 28
U.S.C. § 1367. Venue is proper pursuant to
28 U.S.C. § 1391(b).

**\*1** For the reasons discussed below,
Defendants' motion to strike is hereby
*denied as moot.* Defendants' motion for
summary judgment is hereby *granted* as to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT P
Page 1 of 20

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiff's federal claims as well as Plaintiff's claim for intentional infliction of emotional distress. Plaintiff's other pendent state law claims are *dismissed.*

### BACKGROUND

### A. Factual History

**\*1** Both parties have submitted 56.1 Statements pursuant to Local Civil Rule 56.1. The facts below are undisputed unless otherwise noted.

**\*1** Plaintiff applied for an entry-level position with Consolidated Rail Corporation ("Conrail") on or about October 31, 1998. Shortly thereafter, Plaintiff met with a representative from AON Consulting, a third-party responsible for handing job placements at Conrail, and was interviewed for the position of Train Person. According to Conrail's "Essential Function Descriptor," essential functions of the Train Person position include, *inter alia,* "Receive/relay/act on oral or written instructions from Conductor/Dispatcher/Switch foreman/Yardmaster/others ... Clearly communicate wayside signals to coworkers ... Ensure safe, efficient train operation ... Recognize audible signals or warnings." (Garofolo Cert., Ex. B.) As part of these duties, a Train Person is often required to use a radio for communication with fellow crew members.

**\*1** Soon after her interview, Plaintiff received an offer for the position of Train Person. Defendants claim this offer was conditional in nature. Plaintiff asserts she was never told the offer was conditional.

**\*2** On or about December 2, 1998, Plaintiff underwent a pre-employment medical examination at the Center for Occupational Health ("COP"). This examination, which was supervised by Dr. Natalie Hartenbaum ("Dr.Hartenbaum"), included a routine hearing test. The Federal Railroad Administration ("FRA") requires that the average hearing loss of a railroad employee may not be greater than 40 decibels in the better ear. Based on her December 2nd examination, Plaintiff's hearing was found to be deficient, according to FRA standards.

**\*2** Plaintiff returned to COP for further auditory testing on December 8, 1998. The testing results on December 8th differed from those on December 2nd. On December 2nd, Plaintiff's hearing was found to be worse in her left ear, and on December 8th Plaintiff's hearing was worse in her right ear. Plaintiff claims she was told that the results of these tests indicated that she had a "borderline" hearing problem. Plaintiff further asserts she was told by Conrail's Health Department technicians that she had passed COP's tests. Plaintiff provides no support for these assertions, save testimony from her own deposition. (*See* Eckhaus Dep., Vol. I at 54.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT P
Page 2 of 20

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

**\*2** Although Plaintiff claims she thought she had passed the hearing tests at COP, she nevertheless made an appointment with a hearing specialist of her choice, Dr. Rosenberg. After examining Plaintiff on December 17, 1998, Dr. Rosenberg diagnosed her with mild to moderate hearing loss and recommended Plaintiff be fitted with hearing aids. Plaintiff testified that she did not obtain hearing aids at that time because she thought she "had passed the physical to go to school" and did not need hearing aids. (Eckhaus Dep., Vol. I at 76.)

**\*2** Plaintiff received instructions from Conrail to attend a three week orientation/training program-the Train Service Employee Course-at the Academy of Industrial Training ("AIT") in Philadelphia, Pennsylvania. The training commenced on January 4, 1999. Conrail asserts that Plaintiff's employment status at that time was a "pre-screened prospective Train Person[ ]" and the medical review of Eckhaus' hearing condition was ongoing. (Defs. 56.1 Statement ¶ 9.) Plaintiff, however, claims she never obtained any notification prior to her enrollment at AIT that her employment status had been deferred because of her medical condition. In fact, Plaintiff asserts she was led to believe all she had to do to become an eligible employee at Conrail was to pass the rigorous written and physical tests administered at AIT.

**\*2** Plaintiff testified that upon learning of her acceptance to the training program, she resigned from her waitress position and relocated to Philadelphia for the three week training program. Conrail provides compensation to the trainees, as well as housing and transportation allowances, during the course of the training. Plaintiff testified she found the training program very rigorous and studied for approximately seventeen (17) hours per day. During the course of training, the students received some instruction on radio usage while working in or around the trains, however Plaintiff claims this training was extremely limited and did not include instruction regarding train slang or jargon used over the radios. Plaintiff successfully completed the Train Service Employee Course at AIT on January 22, 1999.

**\*3** Plaintiff asserts that during her training at AIT, on January 15, 1999, Sue Devito, a Conrail Administrator, informed Plaintiff that her prior physical examination records appeared to be subject to review. Plaintiff claims that she was puzzled about why she was invited to attended the AIT training program if her physical abilities were under review. However, in order "[t]o expedite the review process", Plaintiff provided the audio test results from Dr. Rosenberg's December 17, 1998 examination. (Pl. 56.1 Statement ¶ 10.) This was the first time Plaintiff notified Conrail of the follow-up examination conducted by Dr. Rosenberg. Based on Dr. Rosenberg's diagnosis of mild to moderate hearing loss, Dr. Hartenbaum, at COP, advised Plaintiff, by letter dated January

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT P
Page 3 of 20

Not Reported in F.Supp.2d

Page 4

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

19, 1999 that Plaintiff needed to be fitted with hearing aids and retested by a specialist.

**\*3** Plaintiff asserts she was blatantly humiliated during the graduation ceremony at AIT, because she was the only graduate to receive a diploma and not handed a work order assignment. She claims she was not aware of any reason why she was not given a work order assignment. Apparently, Dr. Hartenbaum's January 19th letter had been sent to Plaintiff's home address while she was still in training in Philadelphia, and Plaintiff did not receive the letter until she returned home.

**\*3** On February 2, 1999, Plaintiff's hearing was tested once again, this time by John Buckley ("Buckley"), an audiologist. Buckley fitted Plaintiff with a hearing aid and, in a report to Dr. Hartenbaum, Buckley indicated that with the aid, "[the] patient hears extremely well at average conversational levels (96%). At low conversational levels the patient also heard well (84%)." (Hartenbaum Cert. ¶ 3, Ex. A.)

**\*3** Dr. Hartenbaum accepted Buckley's determination and thereafter, on February 5, 1999, qualified Plaintiff to work as a Train Person contingent upon Plaintiff's adherence to the following restrictions: (1) Plaintiff was required to wear a hearing aid; (2) Plaintiff was required to wear a Peltor Tactical 6 Electronic Headset when working on or next to a moving train; and (3) Plaintiff was required to avoid

exposure to noise greater than 80 decibels when wearing her hearing aid. (*Id.* ¶ 4, Ex. B.) Dr. Hartenbaum certified that it was the responsibility of Plaintiff's supervisor to make the ultimate determination as to whether Plaintiff could adequately or safely perform her job functions with the use of her hearing aid. ( *Id.* ¶ 4.)

**\*3** After Plaintiff obtained a hearing aid, she received instructions from Conrail to report to work at the Oak Island Rail Yard in Newark, New Jersey on February 16, 1999 to begin her on-the-job training. Conrail asserts that all new hires are required to complete a sixty-day probationary employment period, during which time their employment is at-will and they can be terminated at any time for any non-discriminatory reason. To support this assertion, Defendants proffer only the deposition testimony of Garofolo and Dr. Hartenbaum (Garofolo Dep. at 98; Hartenbaum Dep. at 90-91) and provide no other documentation of Conrail's policies and procedures for probationary periods. Eckhaus contends she was never notified that her position was probationary.

**\*4** Plaintiff reported for work at Oak Island on February 16, 1999 and met with defendant Garofolo, the District Superintendent. Garofolo is the only individual Plaintiff asserts discriminated against her. Plaintiff contends that she had both her hearing aid and Peltor Tactical 6 Headset with her when she reported for work on February 16th. However, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT P
Page 4 of 20

Not Reported in F.Supp.2d                                                        Page 5

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

parties agree that Plaintiff did not have in her possession the packet of paperwork from AIT that Conrail requires all new employees to provide on their first day. Plaintiff claims the reason for this deficiency is that AIT had failed to provide her with the proper paperwork.

**\*4** Garofolo assigned both Plaintiff and another new hire to attend a two-day rules class, in which attendants learned about Conrail's operating rules. During the period Plaintiff participated the rules class, Garofolo received Plaintiff's paperwork from AIT. Both Garofolo and Dr. Hartenbaum testified that Plaintiff's AIT paperwork indicates that Eckhaus had experienced difficulty with following oral instructions while at AIT. (Garofolo Dep. at 89; Hartenbaum Dep. at 92.) Plaintiff strongly denies she experienced any difficulty hearing during training at AIT and goes as far as asserting, without proffering evidence of any kind, that the notations to which Garofolo and Dr. Hartenbaum referred in Plaintiff's AIT file were "contrived for litigation objectives." (Pl. 56.1 Statement at 8.) Garofolo testified that during his conversations with Plaintiff on February 16, 1999 Plaintiff seemed to have problems hearing or understanding Garofolo.

**\*4** Plaintiff and the other new employee reported back to Garofolo's office on February 18, 1999, once they had completed the two-day training course. Plaintiff alleges that Garofolo began mocking Plaintiff because Arthur Claudio,

Plaintiff's brother, was a long-time employee at Conrail. Plaintiff claims Garofolo called three other male Conrail employees into his office and stated to them: "[S]he's going to get the longest, toughest jobs" and "she will not last longer than three days." (Eckhaus Dep., Vol. I at 143 .)

**\*4** After Garofolo allegedly forced Plaintiff and the other new hire to wait outside his office for a few hours, Garofolo called the other new hire into his office, spoke to him for about ten (10) minutes, and let him go. At that point, Garofolo decided to "field test" Plaintiff. (Garofolo Cert. ¶ 6.) Garofolo claims this decision was based on his belief that Plaintiff had been having difficulty hearing him both in conversations that had taken place when Plaintiff first reported to work on February 16, 1999 and in conversations that took place on February 18th.

**\*4** To conduct the field test, Garofolo used a 16-channel radio, similar both to the radio on which Eckhaus was trained at AIT and to the portable radio equipment used by Train Persons to communicate and receive train and engine handling instructions. Garofolo placed the radio on his desk and asked Plaintiff to repeat back to him the transmissions emanating from the radio, which was picking up the everyday communications of railroad employees working in the Oak Island rail yard. Prior to administering the field test, Plaintiff informed Garofolo she was wearing her hearing aid.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT _____P_____
Page ___5___ of ___20___

Not Reported in F.Supp.2d                                                              Page 6

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*5** Garofolo determined that Plaintiff was unable to correctly repeat back to him the communications taking place over the radio frequencies in Oak Island rail yard. Plaintiff admitted in her deposition: "I don't think I repeated the names probably correctly" (Eckhaus Dep., Vol. I at 153.)

**\*5** Plaintiff proffers several explanations for her inability to repeat the radio transmissions, including, *inter alia:* (1) the radio transmission contained static due to the rainy weather on February 18, 1999; (2) the voices on the radio transmission were muffled; (3) the voices on the radio used people's ethnic names, coded jargon and other phrases with which Plaintiff was not familiar; (4) during the course of the test, Plaintiff was not permitted to adjust the volume or frequency of the radio; (5) Plaintiff did not use the specialized Peltor headset that had been issued to her.

**\*5** After completion of the field test, Garofolo informed Plaintiff that he was terminating her employment as a Train Person as of that date, February 18, 1999. Both Garofolo and Plaintiff testified that at the time he terminated Eckhaus, Garofolo explained to her that the position of Train Person is very dangerous, and people have been killed on the job. Both Eckhaus and Garofolo also testified that a Train Person who failed to communicate properly could seriously injure herself or others working around her. Furthermore, Plaintiff contends Garofolo told her that he could not hire someone with a hearing aid because he had no way of knowing if she would remember to bring her hearing aid to work.

**\*5** Plaintiff alleges that after Garofolo completed the field test on February 18th, he made certain comments about Plaintiff's age and gender. In particular, Plaintiff claims Garofolo made the following statements: (1) The Train Person position would be difficult for Plaintiff because she "was a little older," "was a mother" and " had children at home" (Eckhaus Dep., Vol II at 63-64); (2) "[T]his was a very hard job for a woman, why would [she] want this job anyway" (*Id.,* Vol. I at 157); (3) " [W]asn't [Plaintiff] worried about the kids worrying about [her], and that their mother was going to be working on the railroad" ( *Id.,* Vol. I at 159); and (4) "[T]here weren't very many women working there" (*Id.,* Vol. II at 41). Plaintiff also claims that Garofolo "talk[ed] down to [her]" and used a different tone of voice with her than with the other new male employee who also started work on February 16, 1999. (*Id.,* Vol. II at 42.)

**\*5** Garofolo denied making any of the statements referenced in the above paragraph, however Defendants accept these allegations as true for purposes of this motion. Accordingly, this Court shall deem these facts admitted and undisputed for the purposes of evaluating Defendants' motion for summary judgment.

**\*5** Garofolo further claims that upon terminating Plaintiff, he suggested Plaintiff attempt to find another position at Conrail. In fact, in her deposition Eckhaus admitted

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT _P_

Page _6_ of _20_

Not Reported in F.Supp.2d

Page 7

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

that Garofolo indicated his intention to refer Plaintiff to Human Resources for possible placement and that he told Plaintiff she might be offered the position of track repair person. (Eckhaus Dep., Vol. I at 166.) Plaintiff claims that Conrail ignored her requests for assignment to another position and eventually informed her there was no position available for her.

### B. Procedural History

**\*6** Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 24, 1999. Plaintiff's EEOC charge alleged that Conrail discriminated against Plaintiff based on her gender and disability. Plaintiff also filed a charge of discrimination with the New Jersey Division on Civil Rights ("DCR") again alleging Conrail discriminated against her based on her gender and physical handicap.

**\*6** On August 31, 2000, the EEOC issued Plaintiff a right-to-sue letter. On September 25, 2000, Plaintiff withdrew her charge from the DCR. Plaintiff filed her Complaint in this action with this Court on November 22, 2000 alleging discrimination based upon her disability, gender and age, pursuant to both federal and state law.

### DISCUSSION

A. Defendants' Motion to Strike Plaintiff's

Affidavits and Local Civil Rule 56.1
Statement

**\*6** Defendants move to strike Plaintiff's counsel's affidavit, Plaintiff's affidavit and Plaintiff's Local Civil Rule 56.1 Statement, all of which were submitted to this Court in opposition to Defendants' motion for summary judgment. Defendants claim the legal arguments and conclusory factual assertions contained therein violate Fed.R.Civ.P. 56 and Local Civil Rule 7.2.

**\*6** Defendants' motion to strike is contained within Defendants' reply brief. Without commenting on the appropriateness of Defendants couching such a motion within the reply papers, this Court agrees with many of Defendants' contentions. Apparently, Plaintiff's counsel does not understand the ways in which admissible factual evidence differs from inflammatory factual assertions and legal conclusions. Both the Eckhaus Affidavit and the Elovich Affidavit contain conclusory allegations, present facts outside the scope of the affiants' personal knowledge, and offer legal arguments. Additionally, Plaintiff's Local Civil Rule 56.1 Statement is not limited to statements "identifying material facts as to which there does or does not exist a genuine issue." L. Civ. R. 56.1, Comment 2. Instead, it improperly contains "abundant conclusions and arguments, frequently blurring the line between fact and opinion." *N.J. Auto. Ins. Plan v. Sciarra,* 103 F.Supp.2d 388, 395 (D.N.J.1998).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT P
Page 7 of 20

Not Reported in F.Supp.2d

Page 8

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*6** This Court will *sua sponte* disregard the legal arguments and summations included in Plaintiff's Local Civil Rule 56.1 Statement and the accompanying affidavits. *See* L. Civ. R. 7.2(a). In the interest of judicial economy, the Court will consider only the properly drafted sections of Plaintiff's opposition papers in deciding Defendants' motion for summary judgment.

**\*6** Therefore, Defendants' motion to strike is denied as moot.

### B. Summary Judgment Standard

**\*6** Summary judgment is appropriate only if there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). The applicable substantive law determines whether or not a fact is material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In determining whether genuine issues of material fact exist, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.,* 264 F.3d 302, 305-306 (3d Cir.2001) (citing *Anderson,* 477 U.S. at 248).

**\*7** The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party satisfies this requirement, the

burden shifts to the nonmoving party to present evidence that there is a genuine issue for trial. *Id.* at 324. In determining whether a genuine issue of material fact exists, the Court must resolve "all inferences, doubts, and issues of credibility ... against the moving party." *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dism'd.,* 465 U.S. 1091 (1984) (citing *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972)).

### C. Framework for Analyzing Discrimination Claims

**\*7** Plaintiff claims that Defendants discriminated against her on the basis of her disability, age, and gender, in violation of the ADA, ADEA and Title VII, respectively. Accordingly, this Court must apply the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and clarified in *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-256 (1981). Although *McDonnell Douglas* addressed Title VII claims specifically, this burden-shifting scheme has been expanded to claims brought under the ADA and ADEA. *Walton v. Mental Health Ass'n of Southeastern Pa.,* 168 F.3d 661, 667-668 (3d Cir.1999) (framework applies to the ADA); *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 311-312 (1996) (framework applies to ADEA).

**\*7** Under the *McDonnell Douglas/Burdine*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT ___

Page ___ 8 ___ of 20

Not Reported in F.Supp.2d

Page 9

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

model, a discharged employee must first prove a prima facie case of discrimination. *Burdine,* 450 U.S. at 252-253; *Abramson v. William Paterson College of N.J.,* 260 F.3d 265, 281-282 (3d Cir.2001) (citations omitted). After the plaintiff establishes his or her prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Burdine,* 450 U.S. at 254; *Abramson,* 260 F.3d at 282. Once the employer does so, the plaintiff must then demonstrate that the proffered reason was pretextual. *Burdine,* 450 U.S. at 253, 256; *Abramson,* 260 F.3d at 282.

### D. Plaintiff's Claims Under the ADA

### 1. Discrimination Claim

**\*7** The ADA prohibits discrimination in employment on the basis of disability:
**\*7** No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

**\*7** 42 U.S.C. § 12111(a).

**\*7** In order to state a prima facie case for discrimination pursuant to the ADA, a plaintiff must show that: (1) she is disabled within the meaning of the ADA; (2) she is qualified to perform the essential functions of the employment position, with or without reasonable accommodation; and (3) she suffered some adverse employment action as a result of her disability. *Taylor v. Pheonixville Sch. Dist.,* 184 F.3d 296, 306 (3d Cir.1999). Defendants claim Eckhaus cannot meet the first and second requirements of the prima facie case for discrimination under the ADA, asserting that Plaintiff is neither disabled nor can she perform the essential functions of the position with or without reasonable accommodation.

### a. Eckhaus is not disabled under the ADA definition

**\*8** Defendants argue that Plaintiff's purported hearing impairment does not render her "disabled" as defined by the ADA because she is not substantially limited by her hearing difficulties in a major life activity. Pursuant to the ADA, " disability" means: "(A) a physical or mental impairment that *substantially limits* one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (emphasis added).

**\*8** "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment substantially limits a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT P
Page 9 of 20

Not Reported in F.Supp.2d                                                                  Page 10

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

major life activity." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 195 (2002) (citing 42 U.S.C. § 12102(2)(A)). " 'Major life activities' means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working ." 45 C.F.R. § 84.3(j)(2)(ii); *Dicino v. Aetna U.S. Healthcare,* 2003 WL 21501818, at *7 (D.N.J., June 23, 2003). The term " substantially limiting" means: (1) the inability to perform a major life activity that the average person in the general population can perform or (2) a significant restriction as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to that of. the average person in the general population. 29 C.F.R. § 1630.2(j)(1). Factors to consider when determining whether an impairment is substantially limiting include: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

**\*8** The issue in this case is whether Plaintiff's hearing impairment so impacts her everyday life that it qualifies as a disability under the ADA framework. The Supreme Court has found "the ADA's coverage is restricted to only those whose impairments are not mitigated by corrective measures." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 487 (1999)

(holding plaintiffs who suffered from severe myopia were not disabled under § 12102(2)(A) of the ADA because their vision was 20/20 with the use of corrective lenses); *see also Sewell v. Triad Const.,* 2002 WL 1050336, at *2 n. 3 (D.Del., May 22, 2002) (finding that for plaintiff, who wore hearing aids, to be considered disabled under the ADA, his impairment must substantially limit a major life activity of hearing, and the severity of his hearing loss must be examined as corrected by the hearing aids) (citing *Sutton,* 527 U.S. at 471).

**\*8** Plaintiff has failed to show that her hearing impairment, when corrected by hearing aids, substantially limits a major life activity. Buckley, the audiologist who fitted Plaintiff with a hearing aid, reported that with the aid, "[the] patient hears extremely well at average conversational levels (96 %). At low conversational levels the patient also heard well (84 %)." (Hartenbaum Cert. ¶ 3, Ex. A.) Plaintiff provides absolutely no evidence that, with the use of her hearing aid, she is unable to function normally on a day-to-day basis.

**\*9** In fact, Plaintiff goes as far as claiming that her hearing is adequate *without* the use of hearing aids. Plaintiff argues throughout her deposition, affidavit, and Brief in Opposition, that she never experienced hearing difficulties before beginning her training at Conrail and does not truly need hearing aids in the course of her daily life. Plaintiff herself testified that although the hearing aid issued to her did help her

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT _____
Page ____ of ____

Not Reported in F.Supp.2d                                                           Page 11

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

hearing somewhat, she "never really had difficulty hearing." (Eckhaus Dep., Vol. I at 113.) Plaintiff stated in her affidavit that she "did not even wear a hearing aid" during Garofolo's deposition "to prove to Garofolo that [she] could hear all the words." (Eckhaus Aff. ¶ 52.) Furthermore, after Plaintiff was terminated at Conrail, she was employed as a bus driver and "had a radio assigned to [her] that was exactly like that assigned to railroad workers" and was able to use this radio successfully. (*Id.* ¶ 60.)

**\*9** Accordingly, this Court finds that Plaintiff has failed to. prove that her hearing difficulties, particularly when corrected by hearing aids, substantially impinge on her daily life. She does not complain of any cognizable repercussions resulting from her hearing impairment. Therefore, she does not qualify as a person with a disability pursuant to § 12102(2)(A) of the ADA.

b. Plaintiff was not "regarded as" disabled

**\*9** Even if Plaintiff is unable to show that her hearing impairment substantially limits a major life activity, she may still be defined as disabled, pursuant to the ADA, if Defendants regarded her as disabled. *See* 42 U.S.C. § 12102(2)(C) (individuals who are "regarded as" having a disability are disabled within the meaning of the ADA); *Sutton,* 527 U.S. at 489.

**\*9** There are two means by which an individual may fall within this statutory construct: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton,* 527 U.S. at 489. In both cases, the covered entity must entertain misperceptions about the individual, either believing that the individual has a substantially limiting impairment that he or she does not have or that the individual has a substantially limiting impairment when, in fact, the impairment is not as limiting as the employer believes. *Id.*

**\*9** Plaintiff argues that Garofolo perceived her as disabled, therefore she falls under this purview of the ADA. However, "to be covered under the 'regarded as' prong of the ADA the employer must regard the employee to be suffering from an impairment *within the meaning of the statute,* not just that the employer believed the employee to be somehow disabled." *Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375, 381 (3d Cir.2002) (citations and internal quotations marks omitted) (emphasis added).

**\*10** Plaintiff fails to show that Garofolo or anyone at Conrail believed her hearing impairment substantially affected or limited one or more of her major life activities, as defined by the ADA.
**\*10** To be substantially limited in the major life activity of working, then, one

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT P
Page 11 of 20

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 12

must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs.

**\*10** *Sutton,* 527 U.S. at 492.

**\*10** The evidence belies Plaintiff's contention that Garofolo regarded her as disabled and thereby precluded her from *any* employment at Conrail. Garofolo testified that after her termination, he referred Plaintiff to Human Resources for assignment to another position. In fact, in her deposition Eckhaus admitted that Garofolo indicated his intention to refer Plaintiff to Human Resources for possible placement and that he told Plaintiff she might be offered the position of track repair person. (Eckhaus Dep., Vol. I at 166.)

**\*10** Thus, Plaintiff has not sufficiently shown that Defendants regarded her as disabled. Since she has been unable to prove either that she has physical or mental impairment that substantially limits one or more of the major life activities, or that Defendants regarded her as disabled, Plaintiff has failed to prove the first prong of a prima facie case of discrimination pursuant to the ADA. Accordingly, this Court need not reach the other aspects of the Plaintiff's prima facie case challenged by Defendants, namely whether or not Plaintiff can perform the essential functions of the Train Person position,

with or without reasonable accommodation.

**\*10** Eckhaus has not met her burden pursuant to *McDonnell Douglas/Burdine* of proving a prima facie case of discrimination. *See Burdine,* 450 U.S. at 252-253. Therefore, summary judgment may be granted to Defendants on Eckhaus' disability discrimination claim.

### 2. Failure to Accommodate Claim

**\*10** Plaintiff also claims that Defendants failed to accommodate her disability in violation of the ADA. To establish a prima facie case of failure to accommodate under the ADA, a plaintiff must show that: (1) the defendant is a covered employer; (2) she is disabled within the meaning of the statute; (3) she can perform the essential functions of the job with or without reasonable accommodation; and (4) the defendant knew of her disability and failed to provide her with a reasonable accommodation. *Kralik v. Durbin,* 130 F.3d 76, 78 (3d Cir.1997).

**\*10** For the reasons discussed above, Plaintiff has not shown that she is disabled as defined under the ADA, and thus cannot meet the second requirement of the prima facie case for a failure to accommodate claim. Therefore, Plaintiff's failure to accommodate claim fails as a matter of law.

### E. Plaintiff's Claims Under ADEA

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT _____
Page __12__ of __20__

Not Reported in F.Supp.2d

Page 13

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*10** Plaintiff did not allege age discrimination in her EEOC charge. Before instituting an action pursuant to ADEA, a plaintiff must timely file his or her claim with the EEOC and obtain a right to sue letter from the agency. 29 U.S.C. § 626(d). Since these "conditions precedent are statutory, rather than jurisdictional, prerequisites[,] ... claims under [ADEA] can be dismissed for failure to exhaust such administrative remedies." *Santiago v. City of Vineland,* 107 F.Supp.2d 512, 528 (D.N.J.2000) (citations omitted). A plaintiff may avoid the requirement of exhausting his or her administrative remedies when "the acts alleged in the subsequent ... suit are fairly within the scope of the prior EEOC complaint, or the investigation therefrom." *Antol v. Perry,* 82 F.3d 1291, 1295 (3d Cir.1996) (quoting *Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir.1984) (per curiam)).

**\*11** Defendants argue that Plaintiff did not exhaust her administrative remedies given Plaintiff's failure to allege age discrimination in her EEOC charge. In this case, Plaintiff's age discrimination claim is separate and distinct from the other claims presented to the EEOC. *See Antol,* 82 F.3d at 1295 (holding that an employee's gender discrimination claim was not subsumed within the appellant's EEOC complaint based upon disability discrimination); *Santiago,* 107 F.Supp.2d at 528-529 (racial identity claims were distinct from Title VII claims). Accordingly, Plaintiff should have asserted her age discrimination claim separately in her EEOC charge, thereby putting the EEOC on notice that Plaintiff was also the alleged victim of discrimination based upon her age. *See Santiago,* 107 F.Supp.2d at 529. Because she neglected to do so, Defendants properly argue that Plaintiff has failed to exhaust her administrative remedies as to this claim.

**\*11** The one possible deficiency with regards to Defendants' contention, although not raised by Plaintiff, is that Defendants proffer this argument for the first time in the Brief in Support of Defendants' Motion for Summary Judgment. "Courts in addition to this one have treated the exhaustion requirements of ... Age Discrimination in Employment Act (ADEA) as affirmative defenses." *Ray v. Kertes,* 285 F.3d 287, 292 (3d Cir.2002). Defendants did not include this claim as an affirmative defense in their Answer.

**\*11** However, Defendants' failure to include this argument as an affirmative defense in the Answer does not necessarily bar them from raising it at this time. The Third Circuit has held "that the failure to assert an affirmative defense in an answer will not result in waiver if the opposing party has notice of the defense sufficient to avoid prejudice." *Woodson v. Scott Paper Co.,* 109 F.3d 913, 925 n. 9 (3d Cir.1997) (citing *Charpentier v. Godsil,* 937 F.2d 859, 864 (3d Cir.1991) ("It has been held that a defendant does not waive an affirmative defense if he raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT ____
Page __13__ of __20__

Not Reported in F.Supp.2d                                                    Page 14

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

to respond.")); *see also Santiago,* 107 F.Supp.2d at 529 (granting summary judgment on certain discrimination claims based on plaintiff's failure to exhaust administrative remedies but holding defendants waived the issue as to other claims because defendants did not argue plaintiff's failure to exhaust in their opening brief).

**\*11** In this case, Defendants, in their Brief in Support, contend Plaintiff did not to include a claim of age discrimination in her EEOC charge and therefore failed to exhaust her administrative remedies as to that claim. Plaintiff's Brief in Opposition completely ignores Defendants' arguments on this point. Plaintiff had ample opportunity to refute Defendants' assertion that Plaintiff's ADEA claim should be dismissed because she did not allege age discrimination in her EEOC charge. Instead, Plaintiff spends no more than a few lines of her forty page brief addressing the merits of her ADEA claim. At no point does she refute Defendants' contention that this claim should be dismissed.

**\*12** Plaintiff clearly failed to exhaust her administrative remedies with respect to her claim under ADEA. Accordingly, summary judgment is hereby granted as to that claim.

### F. Plaintiff's Claims of Gender Discrimination Under Title VII

**\*12** "Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." ' *Suders v. Easton,* 325 F.3d 432, 441 (3d Cir.2003) (quoting 42 U.S.C. § 2000e-2(a)(1)). To state a claim of gender or sex discrimination, a plaintiff must establish that: (1) she was a member of a protected class; (2) she was qualified for the position sought; and (3) non-members of the protected class were treated more favorably. *Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 318-319 (3d Cir.2000) (citation omitted).

**\*12** In order to survive Defendants' motion for summary judgment as to her Title VII gender discrimination claim, Plaintiff must first prove a prima facie case of discrimination. *Burdine,* 450 U.S. at 252-253; *Abramson,* 260 F.3d at 282. Plaintiff spends less than one page of her forty page brief addressing her Title VII claim. Plaintiff simply argues that she has established a prima facie case of gender discrimination pursuant to Title VII by showing: (1) she is female; (2) she graduated from AIT and was therefore qualified for the position of Train Person; and (3) there are more men working at Conrail then there are women.

**\*12** In support of the latter point, Plaintiff attaches EEO-1 reports detailing the demographics of Conrail's workforce. Without any analysis whatsoever of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT ___P___
Page __14__ of __20__

Not Reported in F.Supp.2d

Page 15

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

contents of the reports, which include well over 100 pages of raw data, Plaintiff states that the reports "confirm only male, younger replacements, that is, non-members of the protected class [*sic* ]." (Pl. Opp. Br. at 19.) It is unclear from this statement what in fact Plaintiff purports the data to confirm. Construing this somewhat muddled statement in favor of Plaintiff, the Court will assume that Plaintiff attempts to make the argument that a greater percentage of Defendants' employees are male than female, and this indicates a bias against female job applicants and female employees. However, the text of Plaintiff's brief on its face is somewhat unclear.

**\*12** Defendants argue Plaintiff has failed to prove the second factor of her prima facie case for gender discrimination, that she is qualified for the position sought. Defendants assert that there is no genuine issue of fact that Plaintiff was unable to hear simple radio signals, as displayed by Garofolo's field test, and thus Plaintiff was not qualified for the position of Train Person. However, this Court finds Defendants' conclusory arguments unconvincing. In support of its contention, Defendants simply highlight a central matter at issue in this case-whether or not Plaintiff was qualified to perform the job of Train Person. At the summary judgment stage, all facts must be viewed, and all inferences must be drawn, in favor of the non-movant. *Coregis Ins. Co.,* 264 F.3d at 305-306 (citing *Anderson,* 477 U.S. at 248). Accordingly, the Court will assume, at least for the purposes of proving her prima

facie case, that Plaintiff was properly qualified for the position of Train Person.

**\*13** Although not raised by Defendants, Plaintiff has arguably failed to prove the third factor of the prima facie case for gender discrimination, that she was treated less favorably than similarly situated male employees. Plaintiff does not argue that she was replaced by a male employee, nor does she proffer any concrete evidence that male employees are treated by Conrail more favorably than female employees or that she was treated less favorably than a similarly situated male employee because of her gender. Plaintiff makes general statements that there are few women who work as Train Persons as Conrail. In addition, she offers the aforementioned voluminous EEO-1 data assumedly to show that a high percentage of the employees at Conrail are men. Although this Court has reservations about Plaintiff's ability to prove both prongs two and three of her prima facie case of gender discrimination, taking all inferences in favor of the non-movant, the Court will proceed assuming the prima facie case has been met.

**\*13** After a plaintiff establishes his or her prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Burdine,* 450 U.S. at 254; *Abramson,* 260 F.3d at 282. Defendants have met this burden.

**\*13** There is a well-documented history of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT \_\_\_\_P\_\_\_\_
Page \_\_15\_\_ of \_20\_

Not Reported in F.Supp.2d                                                                          Page 16

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

problems with Plaintiff's hearing abilities, beginning with the COP examination of Plaintiff on December 2, 1998, in which her hearing was found to be deficient. After retesting on December 8th, Plaintiff's hearing was again found to be below the standard required for Train Persons. Plaintiff was then tested again, by a doctor of her own choice, Dr. Rosenberg, a few weeks later. Dr. Rosenberg found Plaintiff suffered from mild to moderate hearing loss and recommended Plaintiff be fitted with hearing aids. Plaintiff's fourth and final hearing test was conducted by Buckley, who fitted Plaintiff with a hearing aid and reported that with the use of the hearing aid, Plaintiff was able to hear extremely well at normal conversational levels and well at low conversational levels.

*13 Given Plaintiff's history, it was not unreasonable for Garofolo to conduct a test of Plaintiff's hearing, particularly if he noticed she was having difficulty hearing him during their conversations on February 16 and February 18, 1999. Both Garofolo and Plaintiff testified that the Train Person position involved a high degree of risk to employees' personal safety, and it is imperative for those individuals employed as Train Persons to be able to use the radio effectively. Taking these many concerns into account, as well as Plaintiff's history of hearing difficulty, Defendants have articulated a legitimate, non-discriminatory reason for the adverse employment action taken against Plaintiff.

*13 Given that Defendants have met their burden pursuant to the *McDonnell Douglas/Burdine* framework, the onus is on Plaintiff to demonstrate that the proffered reason for her firing was pretextual. *See Burdine,* 450 U.S. at 255-256; *Abramson,* 260 F.3d at 282. This is where Plaintiff fails to satisfy her burden. In order to defeat a properly supported motion for summary judgment, a party may not merely restate the allegations of its pleadings or rely upon self-serving conclusions, unsupported by specific facts in the record. *Celotex,* 477 U.S. at 322-23. A non-moving party must point to concrete evidence in the record which supports each essential element of its case. *Id.* If a plaintiff fails to provide such evidence, then he or she is not entitled to a trial, and the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(e).

*14 Furthermore, in order to avoid summary judgment after the employer has proffered a legitimate, nondiscriminatory reason for the adverse employment action, a plaintiff must produce evidence which: " (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie,* 32 F.3d 759, 762 (3d Cir.1994). A plaintiff, therefore, must cast doubt on the legitimate reason for the employment decision advanced by the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT ___ P
Page 16 of 20

Not Reported in F.Supp.2d                                                   Page 17

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

employer. This burden is met by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 765 (citations and internal quotation marks omitted).

**\*14** Plaintiff spends less than one page of her lengthy brief addressing her Title VII claim and offers nothing more than a few comments allegedly made by Garofolo to support her contention of gender discrimination. Although Garofolo denied making any of these statements, Defendants accept these allegations as true for purposes of this motion. Accordingly, this Court shall deem these fact admitted and undisputed for the purposes of evaluating Defendants' motion for summary judgment.

**\*14** Even accepting that Garofolo made the statements as Plaintiff claims, this Court finds no disputed material facts that defeat Defendants' motion. Plaintiff fails to satisfy her burden to provide evidence that gender discrimination was the real reason for her termination. *See Fuentes,* 32 F.3d at 767. Plaintiff admits that during Garofolo's field test, she failed to accurately repeat back the radio transmissions. (Eckhaus Dep., Vol. I at 153.) Furthermore, it was the responsibility of Plaintiff's supervisor to make the ultimate determination as to

whether Plaintiff could adequately and safely perform her job functions with the use of her hearing aid. (Hartenbaum Cert., ¶ 4.) The comments at issue, even taken together, do not overcome Garofolo's legitimate concern about Plaintiff's ability to hear and use the radio, both skills necessary for the position as Train Person.

**\*14** In addition, Garofolo testified that after Plaintiff's termination, he referred Plaintiff to Human Resources for assignment to another position. In fact, in her deposition Eckhaus admitted that Garofolo indicated his intention to refer her to Human Resources for possible placement and that he told Plaintiff she might be offered a position of track repair person. (Eckhaus Dep., Vol. I at 166.) If the true reason for Plaintiff's termination was her gender, rather than her inability to hear radio transmissions, Garofolo would not have offered to place Plaintiff in another position at Conrail.

**\*15** Unless Plaintiff can prove that Defendants' proffered reason for her firing is pretextual, she cannot defeat a properly supported motion for summary judgment. Plaintiff has not met this burden. For the foregoing reasons, Defendants motion for summary judgment as to Plaintiff's Title VII claim of gender discrimination is hereby granted.

### G. Federal Claims Against Garofolo in His Individual Capacity

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT
Page 12 of 20

Not Reported in F.Supp.2d                                                          Page 18

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*15** It is well-settled that plaintiffs may not bring Title VII claims against private persons in their individual capacities, since individuals do not qualify as employers under the statute. *Kachmar v. Sungard Data Systems,* 109 F.3d 173, 184 (3d Cir.1997) (citing *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1077 (3d Cir.1996)). Therefore, Plaintiff's Title VII claims against Garofolo individually must fail as a matter of law.

**\*15** Likewise, various courts in this Circuit have drawn a parallel between the statutory definitions of "employer" in Title VII and the ADA. *E.g., Santiago,* 107 F.Supp.2d at 551-552; *Kohn v. AT & T Corp.,* 58 F.Supp.2d 393, 419-420 (D.N.J.1999). Courts have found, therefore, that individuals are not liable under Title I of the ADA, which prohibits discrimination by employers. *See Koslow v.. Pennsylvania,* 302 F.3d 161, 178 (3d Cir.2002) (finding " there appears to be no individual liability for damages under Title I of the ADA") (citing *EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1280 n. 4 (7th Cir.1995) ); *Kohn,* 58 F.Supp.2d at 419-421 (same, collecting cases from various circuits); *see also Santiago,* 107 F.Supp.2d at 552 (using similar definitions in ADA and Title VII to find individuals are not liable for retaliation claims under the ADA). Accordingly, Plaintiff's ADA claim against Garofolo in his individual capacity must fail.

**\*15** Finally, courts have treated ADEA claims against individuals much like those claims brought pursuant to the ADA and Title VII. *Walton,* 168 F.3d at 666; *Kohn,* 58 F.Supp.2d at 419-421. The Third Circuit had indicated that the ADA and ADEA similarly define "employer" and share the same basic purpose as Title VII. *Kohn,* 58 F.Supp.2d at 421 (citations omitted). Thus, for the same reasons that Plaintiff's other claims against Garofolo must fail, Plaintiff may not sustain an ADEA claim against Garofolo in his individual capacity.

**\*15** Plaintiff does not dispute that Garofolo is not an "employer" as defined by the ADA, ADEA or Title VII. Therefore, Plaintiff's ADA, ADEA and Title VII claims against Garofolo in his individual capacity fail as a matter of law.

### H. Plaintiff's Claim of Intentional Infliction of Emotional Distress

**\*15** To establish a claim for intentional infliction of emotional distress under New Jersey law, a plaintiff must show that: (1) the defendant intended to cause emotional distress; (2) the conduct was extreme and outrageous; (3) the defendant's actions proximately caused emotional distress; and (4) the plaintiff's emotional distress was severe. *Horvath v. Rimtec Corp.,* 102 F.Supp.2d 219, 235 (D.N.J.2000) (citations omitted). Courts have consistently recognized that it is particularly difficult to establish intentional infliction of emotional distress in employment cases. *Witherspoon v. Rent-A-Center, Inc.,* 173 F.Supp.2d 239,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT _____
Page _18_ of _20_

Not Reported in F.Supp.2d                                                            Page 19

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

242 (D.N.J.2001) (citations omitted).

**\*16** As to the second factor of the prima facie case, in order to establish extreme and outrageous conduct by the defendant, a plaintiff must show conduct " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." ' *Buckley v. Trenton Saving Fund Soc.,* 111 N.J. 355, 544 A.2d 857, 863 (1988) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). In the employment context, a defendant's conduct rarely satisfies this standard. Except in cases involving the use of racial epithets or other similarly extreme conduct, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Witherspoon,* 173 F.Supp.2d at 242 (quoting *Griffin v. Tops Appliance City, Inc.,* 337 N.J.Super. 15, 766 A.2d 292, 297 (2001) (internal quotations and citation omitted)).

**\*16** In the case at bar, Plaintiff has not shown that Defendants' conduct was sufficiently extreme or outrageous to constitute intentional infliction of emotional distress. Plaintiff has failed to meet the standard for proving this tort in the employment context. Accordingly, Plaintiff's claim fails, and summary judgment is hereby granted on this issue.

## I. Dismissal of Other Pendent State Law Claims

**\*16** Given that none of Plaintiff's federal claims survive Defendants' motion for summary judgment, this Court declines to exercise supplemental jurisdiction over Eckhaus' pendent state law claims brought pursuant to LAD.

**\*16** Section 1367(c) permits a court to decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Therefore, once all federal claims have been dismissed, a district court may decline to consider the remaining state law claims if it finds that the parties will not be prejudiced and that "dismissal of the pendent claims best serves the principles of judicial economy, convenience, fairness and comity." *Annulli v. Panikkar,* 200 F.3d 189, 202 (3d Cir.1999) (abrogated on other grounds). As discussed above, Plaintiff's Title VII, ADA and ADEA claims against Defendants are now dismissed. Plaintiff proffers no other grounds for federal jurisdiction. It appears that Eckhaus and Defendants are all residents of New Jersey. (Compl. ¶¶ 1-3.) Diversity jurisdiction is therefore lacking. *See* 28 U.S.C. § 1332(a). Accordingly, the remaining claims are hereby dismissed. *See* 28 U.S.C. § 1367(c)(3); *Kohn,* 58 F.Supp.2d at 421-422.

## CONCLUSION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT ___P___
Page _15_ of _20_

Not Reported in F.Supp.2d                                                    Page 20

Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*16** For the foregoing reasons, Defendants' motion to strike Plaintiff's counsel's affidavit, Plaintiff's affidavit and Plaintiff's Local Civil Rule 56.1 Statement is *denied as moot.* Defendants' motion for summary judgment is *granted* as to Plaintiff's federal claims and Plaintiff's claim of intentional infliction of emotional distress. Plaintiff's pendent state claims pursuant to LAD are hereby *dismissed.* An appropriate order follows.

*ORDER*

**\*17** This matter having come before the Court on the motions of Defendants CONSOLIDATED RAIL CORPORATION and JOSEPH GAROFOLO for summary judgment pursuant to Fed.R.Civ.P. 56 and to strike Plaintiff's counsel's affidavit, Plaintiff's affidavit and Plaintiff's Local Civil Rule 56.1 Statement pursuant to Fed.R.Civ.P. 56 and Local Civil Rule 7.2; and

**\*17** The Court having considered the submissions of the parties without oral argument pursuant to Fed.R.Civ.P. 78; and

**\*17** For the reasons set forth in the Opinion issued this day; and

**\*17** For good cause shown;

**\*17** It is this 24th day of December, 2003 ORDERED that Defendants' motion to strike Plaintiff's counsel's affidavit, Plaintiff's affidavit and Plaintiff's Local

Civil Rule 56.1 Statement is denied as moot; and

**\*17** IT IS FURTHER ORDERED that Defendants' motion for summary judgment is granted as to Plaintiff's federal claims; and

**\*17** IT IS FURTHER ORDERED that Defendants' motion for summary judgment is granted as to Plaintiff's claim for intentional infliction of emotional distress; and

**\*17** IT IS FURTHER ORDERED that Plaintiff's pendent state claims brought pursuant to the New Jersey Law Against Discrimination are dismissed; and

**\*17** IT IS FURTHER ORDERED that the Clerk of the Court mark this case closed.

D.N.J.,2003.
Eckhaus v. Consolidated Rail Corp.
Not Reported in F.Supp.2d, 2003 WL 23205042 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2:00CV05748 (Docket) (Nov. 22, 2000)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT P
Page 20 of 20