Sonja D. Kerr
ALASKA LEGAL SERVICES
1016 West 6th Avenue, Suite 200
Anchorage, Alaska 99501
PHONE: (907) 274-9431
FAX: (907) 279-7417

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS,<br>through her power of attorney<br>Carol Winters,<br><br>    Plaintiff,<br><br>vs.<br><br>CHUGIAK SENIOR CITIZENS, INC.,<br><br>    Defendant. | Case No. 3:06-cv-00083-TMB |

**SUPPLEMENTAL BRIEF REGARDING MOTION AT DOCKET No. 118.**

This brief is submitted per the Court's minute order. (Doc. 284).

**PERTINENT FACTS**

Carol Winters held a valid Maryland Power of Attorney at the time she signed Helen Winters up for CSC. P. Ex. 1.[1] In executing the two contracts at issue – the CSC Assisted Living Program Lease Agreement and the CSC Assisted Living Program Residential Services Agreement – both parties relied upon the Maryland Power of Attorney. The CSC Resident Service Contract was signed by Carol Winters on the guardian blank with a notation (POA) behind the signature. P. Ex. 12. The CSC Assisted Living Program Lease Agreement was signed by Carol Winters on the tenant line, with the name Helen Winters printed below. P. Ex. 11. Of the operative

---

[1] References to exhibits are to those previously submitted by Plaintiffs.

documents, the only document that includes an explicit choice of law is <u>Ex. 12</u> which says that Alaska law is to be applied.

## STANDARD OF REVIEW

Defendants seem to belatedly be raising the issue of standing which is, in essence, governed by Fed. R. Civ. Proc. Rule 17. Rule 17(a) provides, in relevant part:

> Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought….No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Helen Winters brought this action as the real party in interest in state court, captioning it, "Helen Winters, by and through her Power of Attorney Carol Winters." CSC removed it to federal court and retained the same caption and never questioned that Helen Winters is the real party in interest. (Doc. 1.) Every caption prepared by Plaintiffs has indicated that the real party in interest is "Helen Winters through Carol Winters as her POA." An attorney-in-fact, i.e. an individual holding a Power of Attorney like Carol Winters, is not one of the persons named in the Rule 17 exceptions,[2] and no statute expressly allows the commencement of actions by attorneys-in-fact. However, the fact is that Helen Winters is the real party in interest to this lawsuit. Helen Winters

---

[2] *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F. 3d 11, 18 (2nd Cir. 1997).

is the named plaintiff and has participated in it through the assistance of her attorney-in-fact. Thus, whether Rule 17 applies to a Power of Attorney is irrelevant.

Moreover, both parties have proceeded in this case as if the Court had jurisdiction based upon Helen Winters as the real party in interest and Carol Winters' status as attorney-in-fact. The Court ordered a Rule 35 examination of Helen Winters (Doc. 95), at the request of CSC because Helen Winters was a "party" who CSC argued, had placed her emotional status into issue. CSC did not seek to take the Rule 35 examination of Carol Winters, as the POA, because CSC knew that Helen Winters was the real party in interest. Rule 35 specifically allows the Court to order an evaluation of a "party." Thus, there is no question that CSC viewed Helen Winters as the real party in interest pursuant to Rule 35(a). See, Doc. 81 (CSC Memorandum in Support of Motion to Compel Rule 35, which states: "Plaintiff has placed her mental condition in controversy…")

If the Court now lacks jurisdiction pursuant to Rule 17, as CSC argues, then the Court would also have to reverse each of the two earlier decisions, specifically, both the motion to remand and the motion granting the Rule 35 examination of Helen Winters. Alternatively, if there really is an issue as to standing (which Plaintiffs do not believe there is) then the Court may permit amendment of the complaint to cure any defect. Such amendment is favored versus dismissal due to a mistake or inaccuracy as to the real party in interest. Fed. R. Civ. Proc. 17(a). If such amendment is necessary, then it relates back to the original complaint and amended complaints. Fed. R. Civ. Proc. Rule 15; Fed. R. Civ. Proc. Rule 17(a); Ak. Proc. Rule 17(a). In *Burns v. Anchorage Funeral Chapel*, 495 P. 2d 70 (Alaska 1972) the Court held that although an administrator could

not sue in his own name as to the mishandling of the body of the deceased, it was reversible error to dismiss the claim rather than allow amendment to cure the defect.

## ARGUMENT

The Court has asked for briefing on two issues each of which is addressed below.

### I. Law Applicable to the Scope of the POA.

When considering a choice of law question, the Court must first determine if there are really any substantive differences between the two states involved. *Abragados v. AT & T*, 223 F. 3d 932 (9th Cir. 2001). There does not appear to be any real substantive differences as between Maryland and Alaska as to the form for a Power of Attorney. Thus, there is really not a choice of law question in this situation.

As to the actual contracts created by the parties, Ex. 11 and Ex. 12, the choice of law would dictate that Alaska law be applied. There is no question the parties created and negotiated the contracts in Alaska, but the parties clearly did so depending upon the Maryland created POA notwithstanding Ex. 12's reference to Alaska law. Thus, it appears that the internal substantive law of Maryland applies to the Power of Attorney. *Palmer G. Lewis Co., Inc. v. Arco Chemical,* 904 P. 2d 1221 (Alaska, 1995) (applying Washington law to a contract negotiated and agreed upon in Washington.) The document was drafted in Maryland, and brought to Alaska. CSC relied upon the document as drafted based upon Maryland law and at no time did CSC raise any issue as to its validity until the recent motion to dismiss for lack of standing.

Moreover, Plaintiff's view is that the Maryland POA is not substantively different than what is permissible for a POA in Alaska. It is true that Alaska proposes a simple

form checklist and then defines those terms. AS 13.26.332. AS 13.26.347 notes that a Power of Attorney that satisfies the requirements of Alaska law is not prevented from being a statutory form power of attorney if there is additional language, or additional powers, so long as the Power of Attorney is not overall "substantially inconsistent" with the statutory form Alaska uses. AS 13.26.332 suggests that a POA is "very broad" and that it can address real estate transactions, transactions involving tangible personal property, bonds, banking transactions, business operating transactions, insurance transactions, estate transactions, gift transactions, claims and litigation, personal relationships and affairs, benefits from government programs, records, delegation, vote registration and "all other matters, including those specified as follows." These items are then further defined by AS 13.26.344.

The Maryland Power of Attorney signed by Helen Winters is substantially consistent with Alaska law. The POA provides that Carol Winters is "fully authorized and empowered" without limitation, including exercising any act or legal right, request or "sue for" money, property, property rights, demands, and to "have, use and take all lawful means and remedies, to adjust, sell, compromise, to lease real or personal property." P. Ex. 1. It states that Carol Winters can act "on my behalf and for my use and benefit to do all things that I could myself personally." P. Ex. 1, p. 1. The POA also specifically states that any enumeration of items, acts or powers is not intended to limit or restrict, but only to "expand and expand" the powers of the POA. P. Ex. 1, p. 2.

CSC's argument has been that the POA is not a specific express grant as to the ability of Carol Winters to bring suit against CSC on behalf of Helen Winters. Helen Winters believes the POA is sufficiently express for that purpose because to the extent

that Carol Winters has acted on Helen Winters' behalf it has been within the powers that Helen Winters understood and understands. Certainly, an attorney-in-fact has a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency. Thus, a power to do all acts that the principal could do, for and in the name of the principal is limited to the doing of them for the use and benefit of the principal, just as if that were expressed exactly. *Insurance Co. of North America v. Miller,* 362 Md. 361 (Ct. Appls. Md, 2001). Carol Winters has acted consistent with what is in the benefit of Helen Winters. Maryland, like Alaska, protects principals from "self-dealing" actions or inappropriate actions of an attorney-in-fact. Cf. *King v. Bankard*, 55 Md. App. 619, 623, 465 A. 2s 1181 (1983), aff'd, 303 Md. 98, 492 A. 2d 608 (1985) (improper use of general powers referenced in a POA to transfer principal's real property for no consideration) with *Aiello v. Clark*, 680 P. 2d 1162 (Alaska 1984) (finding that mother as power of attorney acted outside of that power by granting interest in real property of principal daughter to another party without consideration.) Those types of "self-dealing" cases are quite distinguishable from the present situation. The lawsuit has been brought for the benefit of Helen Winters; it began as an effort to avoid Helen Winters' abrupt ejection from CSC. The person standing to benefit from the lawsuit is Helen Winters and only Helen Winters. No claims have been made for damages on behalf of Carol Winters nor would Carol Winters "benefit" should Plaintiff prevail.

 An extremely instructive case is *Miller v. Jackson Hospital*, 776 So. 2d 122 (Alabama, 2000). In *Miller*, Roy Miller was severely injured while at the Jackson Hospital. A month after the incident, Roy signed a Power of Attorney to his Uncle

Charles. When the Uncle brought suit, he entitled his lawsuit, "Charles Miller, on behalf of Roy Lee Miller." The defendant hospital filed a motion to dismiss on the basis of lack of standing and Rule 17. As here, defendants argued that the POA was not effective because it was not specific enough under state law. The Court found that the authority of the POA sufficient to enable the POA to bring suit. The language in the Maryland POA signed by Helen Winters is equally sufficient for Carol Winters is to act "on my behalf and for my use and benefit to do all things that I could myself personally." P. Ex. 1, p. 1. Naturally, one of the things Helen Winter could do herself personally is to sign the contracts with CSC at P. Ex. 11 and 12 and to bring suit regarding her discharge. (And, in Plaintiffs' view, she has, as discussed more fully below. )

Next, the defendants in *Miller*, like CSC, argued that the attorney-in-fact only has the power to bring actions after the donor became incapacitated and argued the lack of evidence of incompetence. The language in *Miller* is similar to that in the POA here – the provisions simply stated that the power was unaffected by subsequent incompetence and as such the power of attorney is simply not affected by the various disabilities of Ms. Winters.

The Court in *Miller* also examined whether the POA's commencement of the action was appropriate. The Court explained that the POA could not institute the lawsuit in his own name, i.e. Charles Miller. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F. 3d 11 (2d Cir. 1997). Notably, here, unlike in *Miller*, the POA Carol Winters did **not** bring the suit in her name. If she had, the caption would read: "Carol Winters, POA for Helen Winters." The caption clearly reads the other way – "Helen Winters, by and

through her power of attorney Carol Winters." Thus, the manner in which the lawsuit was brought is not a problem.

Further, if the Court were to determine that Alaska law applies to the POA and that the Maryland POA is not an express grant as required under Alaska law, that determination still does not mean the case must be dismissed. Rule 17(a) states that "a party with whom or in whose name a contract has been made for the benefit of another…may sue in that person's own name without joining the party for whose benefit the action is brought." In this case, if the Court concludes that Carol Winters has brought the suit as the POA (which seems contrary to the caption of the case and the parties actions and reliance to date) then she has brought it in her own name on behalf of Helen Winters and she is permitted to do so consistent with the language above cited from Rule 17(a). Carol Winters signed P. Ex. 12, the CSC Resident Service Contract on the guardian blank with a notation (POA) behind her signature for the benefit of Helen Winters. Carol Winters signed P. Ex. 11, the CSC Assisted Living Program Lease Agreement on the tenant line, with the name Helen Winters printed below, again for the benefit of Helen Winters. Carol Winters thus created two contracts with CSC for the benefit of Helen Winters. As such, under Rule 17, Carol Winters is allowed to sue in her own name without even joining Helen Winters because she signed the contracts to benefit Helen Winters and the lawsuit is brought to benefit Helen Winters. Thus, even if the Court were to determine that it is Carol Winters who has brought the lawsuit, and not Helen Winters (a proposition Plaintiff does not see as very likely) Carol Winters has the authority to bring the lawsuit concerning those contracts to this Court because she

signed contracts on behalf of Helen Winters. Fed. R. Civil Proc. Rule 17(a). So either by amendment or the explicit authority to contract, the case survives dismissal.

Finally, even if the Court were to determine that the caption is somehow so deficient as a result of the Maryland POA, the Court must allow an amendment to cure it. Rule 17(a) allows ratification, joinder or substitution as necessary and in that event, the action must be viewed as having been commenced in the name of the real party in interest from the beginning. Freedom to amend, if necessary, must be freely given in this instance. It is clear that in the Ninth Circuit, pursuant to Rule 15, an amendment relating back would be permitted so long as there is no prejudice to the opposing party, and no bad faith or undue delay. The Court has expressed a strong public policy in permitting amendments and relation back of those amendments. *Bowles v. Reade*, 198 F. 3d 752 (9th Cir. 1999) (reversing district court for failure to permit amendment regarding plaintiff parties); *Raynor Bros. v. American Cyanimid Co.*, 695 F. 2d 382 (9th Cir. 1982) holding that the circumstances giving rise to the claim remained the same as under the original complaint and opposing party not prejudiced by the amendment); *Sherwin Manor Nursing Center v. McAuliffe*, 1997 U.S. Dist. Lexis 9255 (D. Ill. 1997) (adding new plaintiff not prejudicial as facts related to same transactions or occurrences). The substitution or clarification as to parties in a lawsuit is not significant when the change is "merely formal and in no way alters the known facts and issues on which the action is based." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F. 3d 11, 16 (2d Cir. 1997). The facts and circumstances after any amendment, if ordered, will be the same as the case now for it would involve the same facts and circumstances related to Helen Winters and her treatment by CSC as it has from the inception.

II.     **The Effect of the Scope of the POA of the Disability Provisions in the POA**

The Court has inquired about the effect of two provisions in the POA as to the scope of the POA. The provisions, on p. 3, read:

> This general power of attorney becomes effective immediately and shall not be affected by my disability; or any uncertainty as to whether I am alive or dead.
> In the event that I shall hereafter become disabled and a petition shall be filed for the appointment of a guardian of my property, I hereby nominate and designate my attorney-in-fact as such guardian of my property and request that she be excused from the necessity of furnishing bond if appointed as such guardian.

The short answer to the Court's question is that it is clear that Helen Winters recognized her needs and wanted the POA to become effective immediately. She also noted that should she become so disabled as to necessitate appointment of a guardian, that she preferred her daughter Carol Winters be appointed as guardian. There is no direct impact on this case as the result of these provisions except to recognize what the parties have already practically accepted – that Helen Winters is prosecuting this lawsuit with and through the assistance of her Power of Attorney, Carol Winters.

To understand why the two provisions do not impact the lawsuit in any meaningful way a brief review of the history of a power of attorney is helpful. At common law, a power of attorney was revoked by the incompetency or incapacity of the principal. Thus, prior to 1991, courts had grave concerns as to the durability of a Power of Attorney in the event of a principal's disability or incompetency. Carolyn L. Dessin, *Acting as Agent under a Financial Durable Power of Attorney: An Unscripted Role*, 75 Neb. L. Rev. 574 (1996). However, by the early nineties, all fifty states adopted provisions as to durability that were essentially based upon the Uniform Durable Power of Attorney Act (U.D.P.A.A.). Michael N. Schmitt & Steven A. Hatfield, *The Durable*

*Power of Attorney: Applications and Limitations*, 132 Mil. L. Rev. 203, 205 (1991)

Thus, as to the durability provisions, the state laws are nearly identical and the Maryland POA can be read consistent with Alaska law, so no choice of law issue arises on this point.

Md. Estates and Trusts Code Ann. 13-601 provides:

    (a)    Durable power of attorney means a power of attorney by which a principal designates another as an attorney in fact or agent and the <u>authority is exercisable notwithstanding the principal's subsequent disability or incapacity</u>.

    (b)    Except as provided in subsection (e) of this section[3], when a principal designates another as an attorney in fact or agent by a power of attorney in writing, it is a durable power of attorney unless otherwise provided by its terms and

    (c)    <u>Any act done by the attorney in fact or agent pursuant to the power during any period of disability or incompetence or uncertainty as to whether the principal is dead or alive has the same effect</u> and inures to the benefit of and binds the principal as if the principal were alive, competent, and not disabled

Alaska St. 13.26.350 (Supp. 1995) reads:

    (a)    The subsequent disability or incompetence of a principal does not revoke or terminate the authority of an attorney-in-fact who acts under a power of attorney in a writing executed by a principal if the writing containing the words "This power of attorney shall become effective upon the disability of the principal or contains the words "This power of attorney shall not be affected by the subsequent disability of the principal" <u>or words substantially similar showing the intent of the principal that the authority conferred shall be exercisable notwithstanding the principal's subsequent disability, incompetence or uncertainty as to whether the principal is dead or alive.</u>

    (b)    An act done by an attorney-in-fact under a power granted in a power of attorney under AS 13.26.332 – 13.26.344 during a period of disability, incompetence or uncertainty as to whether the principal is dead or alive has the same effect and enures to the benefit of and binds a principal and the principal's distributes, devisees, legatees and personal representatives

---

[3]    Subsection (e) relates to an advanced health care directive.

> as if the principal were competent and not disabled. If a conservator is later appointed for the principal, during the continuance of the appointment the attorney-in-fact shall account to the conservator rather than to the principal.

The two provisions in Ex. 1, while modeled after the Maryland language, are not substantially different from Alaska statutes on the same topic.

As to the impact of Helen Winters' complaint alleging disability, the POA by its very language was effective immediately. And the POA was also unaffected by any subsequent disability or incompetence of Helen Winters. AS 13.26.332 allows drafters to choose whether the document would be effective upon signature or upon disability. Helen Winters' Power of Attorney clearly indicates the POA is to be effective immediately. Moreover, AS 13.26.335 permits drafters of a POA to include a preference provision, allowing a principal to indicate in writing their preference if health or abilities further decline and a guardian is necessary. AS 13.26.335. The durability provisions simply mean that the POA was already in effect at the time that Helen Winters moved to CSC and it continues. In addition, given that the POA was effective immediately, the second provision merely indicates Helen's choice of Carol Winters as guardian if a guardian[4] was necessary due to further deterioration or incompetence. *Miller v. Jackson Hospital*, 776 So. 2d 122 (Alabama 2000). Thus, Helen Winters' disabilities today or even when she entered CSC do not alter Carol Winters' role as POA as Helen desires.

## CONCLUSION

---

[4] Most states adopted this type of provision for those situations where one individual was acting as a POA but the principal's needs increased or health declined and a guardian was proposed by someone other than the POA.

Helen Winters is the real party in interest in this lawsuit as indicated by the caption throughout, including her participation in the Rule 35 examination. Dismissal is not warranted for lack of standing. If any amendment is deemed necessary, the Court must give Plaintiffs' leave to file same and the amendment relates back.

DATED: March 30, 2007       ALASKA LEGAL SERVICES CORPORATION
                            Attorneys for Plaintiff Helen Winters
                            through her power of attorney Carol Winters


                            s/Sonja Kerr_____
                            ALASKA LEGAL SERVICES
                            1016 West 6th Avenue, Suite 200
                            Anchorage, Alaska 99501
                            PHONE: (907) 274-9431
                            FAX: (907) 279-7417
                            E-mail: skerr@alsc-law.org
                            Alaska Bar No. 0409051


**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th of March, 2007, a copy of this document was served electronically on:

Donna M. Meyers
Delaney, Wiles
1007 W. Third Avenue, Suite 400
Anchorage, AK 99501.

S/Sonja D. Kerr (0409051)