IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HELEN WINTERS, through her Power of Attorney Carol Winters,<br><br>        Plaintiff,<br><br>    vs.<br><br>CHUGIAK SENIOR CITIZENS, INC.<br><br>        Defendant. | Case No. 3:06-cv-00083 TMB<br><br><br>ORDER |

## I.  MOTION PRESENTED

Plaintiff Helen Winters is a resident of the Chugiak Senior Center, managed by Defendant Chugiak Senior Citizens, Inc. ("CSC").  Through her power of attorney, her daughter Carol Winters, Plaintiff brings this lawsuit against CSC.  The remaining claims in Plaintiff's complaint are alleged violations of the Alaska Assisted Living Homes Act (AS 47.33.005-AS 47.33.990); the Alaska Uniform Residential Landlord Tenant Act (AS 34.03.010 *et. seq.*); the Americans with Disabilities Act (42 U.S.C. §§ 12101 *et. seq.*); § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); and the Fair Housing Act of 1988 (42 U.S.C. § 3601).

At Docket No. 121, Defendant moves for summary judgment on Count I, Violation of the Alaska Assisted Living Homes Act.  At Docket No. 128, Plaintiff moves for summary judgment on Counts II, V, VI, and VII, Plaintiff's claims under the Alaska Human Right Act, the Americans With Disabilities Act, § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); and the Fair Housing Act of 1988 (42 U.S.C. §§ 3601).  At Docket No. 134, Defendant moves for summary judgment on Count IV of the Complaint, breach of contract.

At Docket No. 125, Plaintiff also moves for partial summary judgment, arguing that she is entitled to summary judgment on Count I of the Complaint, violation of the Alaska Assisted Living Home Act, and on Count IV, breach of contract.

## II.  BACKGROUND

CSC operates an assisted living program.  According to the affidavit of the Executive Director of CSC, Linda Hendrickson, the assisted living program is "designed for persons wanting residential living, but requiring support with some activities of daily living, such as medication reminders, bathing, dressing and dining."  Ms. Hendrickson explains that the assisted living program at CSC is designed "to allow residents to maximize their independence with the support of staff when needed."  CSC does not provide full-time nursing care, and a nurse is only on site from 9 a.m. until 5 p.m. during the week.  AS 47.33.020 outlines the range of services that Assisted Living Homes are authorized to provide.

Ms. Winters entered into a lease agreement on September 20, 2004.  Section 12 of the Lease provides in relevant part that:

> The Management will not terminate a Resident's Residential Services Contract against the Resident's will except:
>
> - For medical reasons.
> - The level of care needed is no longer available at this facility.
> - For engaging in a documented pattern of conduct that is harmful to the resident, other residents, or staff of the home.
> - For violation of the Residential Services Contract, including failure to pay costs incurred under the Contract.
> - When the Facility can no longer provide or arrange for services in accordance with Resident's needs and the Resident's assisted living plan.
> - A Resident's behavior is a threat to the peace and safety of other Residents or Self.
> - For cause, by either party, when the other party fails in any material way to perform its obligations under this Lease.

Ms. Winters also signed a Residential Services Contract.  The Residential Services Contract is governed by the Landlord and Tenant Law of the State of Alaska, and also by Alaska Statutes 47.33.005-990 and the regulations found at 7 AAC 75.010.990.  The Residential Services Contract contemplates the creation of a Residential Services Plan before the resident moves in.  It states that 24 hour nursing services are not provided, but program assistants are available 24 hours a day to assist with the activities of daily living.

Section 9 of the Agreement sets forth the criteria for admission into the assisted living program, stating in relevant part that it can:

> - Accept only residents whose needs we can meet.  This includes assessing resident needs, abilities and preferences, staffing ratios, physical spaces, etc.
> - Admit and retain individuals whose medication service we can serve.

- Admit and retain individuals with minimal confusion or forgetfulness; or, have the type and level of dementia, which allows staff to help and direct, and the person is cooperative in receiving the necessary help.
- Admit and retain individuals whose on-going needs do not exceed medical or Nursing services allowed by AS 47.33.020.
- Admit and retain individuals who do not have a tendency to wander, fall, act verbally or physically abusive or socially inappropriate.
- Admit and retain individuals whose behavior places little or no stress on self, other individuals or staff.
- Must be physically stable, with inactive chronic diseases or transient, acute illness which requires continuing medical attention or it is determined that staff and staffing levels can meet the individuals needs.

The Residential Services Contract states that the manager shall not retain a resident who:

- Desires/requires specialized medical care that is not available at the Facility
- Requires continuous skilled nursing care
- Is believed to require special intervention, beyond the capacity of the Manager's staff to provide, to prevent active harm to self and others.

Since shortly after Plaintiff moved into CSC, Plaintiff and her daughter had numerous discussions with staff and administrators, and a number of care conferences to discuss Plaintiff's needs. There is evidence in the record that as early as October 2004, the staff at CSC suggested that Plaintiff might be better served by a facility that offers more one on one care. Plaintiff received a Notice of Termination on January 5, 2006 terminating her tenancy effective February 3, 2006. The affidavit of the Executive Director of CSC, Linda Hendrickson, explains that Plaintiff's agreement was terminated because Plaintiff's "needs continue to exceed the limits of services CSC can offer residents" and Plaintiff:

> [H]as also continuously engaged in a pattern of behavior and conduct consisting of unnecessary yelling and verbal abuse of staff and other residents. Her pattern of unacceptable behavior has been discussed with her, and CSC has participated in several care conferences to discuss this behavior and the appropriateness of terminating the Resident Services Contract. Despite these efforts, Helen's pattern of unacceptable behavior has not abated, and is in violation of the Resident Services Contract, and Lease Agreement. Helen's anger has become so intense that she actually struck a staff member in December 2005, which was one of the more recent events resulting in the decision to terminate the Residential Service Contract and Lease Agreement. Her continuous unacceptable behavior has also disrupted the peaceful and enjoyable atmosphere for both other residents and staff. Staff members have expressed such extreme frustration with Helen's outbursts, insults and extreme demands that some staff members have either quit or threatened to quit.

As the bases for termination, the notice of termination cited AS 47.33.360(a)(2), (3) and (6), as well as the Residential Services Contract, the Lease Agreement, and a Resident Policy providing that "physical, verbal or mental abuse or aggression by residents is...unacceptable" and that any infraction of this policy...may result in eviction." Plaintiff alleges that CSC's attempt to evict her

3

violates the Alaska Assisted Living Homes Act, the Alaska Uniform Residential Landlord Tenant Act, the Americans with Disabilities Act, § 504 of the Rehabilitation Act of 1973; and the Fair Housing Act of 1988.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law.[1] The moving party has the burden of showing that there is no genuine issue of material fact.[2] If the moving party meets that burden, then it falls upon the non-moving party to refute with facts which would indicate a genuine issue of fact for trial.[3] Summary judgment is appropriate if the facts and allegations presented by a party are merely colorable, or are not significantly probative.[4]

### IV. DISCUSSION

**1.  Counts II, V, VI, and VII, Plaintiff's claims under the Alaska Human Right Act, the Americans With Disabilities Act, § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); and the Fair Housing Act of 1988 (42 U.S.C. §§ 3601).**

Since the Court concludes that Plaintiff's discrimination claims are dispositive, they are addressed first. In Counts II, V, VI, and VII of the Complaint, Plaintiff alleges that the attempt to evict her is a form of discrimination on the basis of disability in violation of the Alaska Human Right Act, the Americans With Disabilities Act, the Rehabilitation Act of 1973 and the Fair Housing Act of 1988. At Docket No. 130, CSC moves for summary judgment, claiming that there is no evidence that Plaintiff has a disability, and there is no evidence that Plaintiff was denied the opportunity to benefit from services on the basis of her disability. Plaintiff opposes, arguing that

---

[1]   FED R. CIV. P. 56(c); *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000).

[2]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

[3]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[4]   *Id., See also, In re Lewis*, 97 F.3d 1182, 1187 (9th Cir. 1996); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1995).

4

Plaintiff has multiple disabilities, and her requests for reasonable accommodation have been ignored.

Under the Americans with Disabilities Act ("ADA"), "no qualified individual with a disability shall, <u>by reason of such disability</u>, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[5] And under the Rehabilitation Act of 1973 ("RA"):

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, <u>solely by reason of her or his disability</u>, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.[6]

The ADA and the RA contain essentially the same elements, and therefore the Court addresses them together. The Ninth Circuit uses the following factors in assessing claims under both the ADA and the RA. The Plaintiff:

> must demonstrate that he (1) is a handicapped person; (2) that he is otherwise qualified; and that the [defendant's] actions either (3) excluded his participation in or denied him the benefits of a service, program, or activity; or (4) otherwise subjected him to discrimination on the basis of his physical handicap.[7]

Under the ADA, the term disability means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.[8] And under the Rehabilitation Act, the term "individual with a disability" is defined as any person who: (I) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment.[9]

The Court concludes that there is, at minimum, a genuine issue of material fact on the question whether Plaintiff suffers from a disability as defined under the relevant acts. There is

---

[5]  42 U.S.C.A. § 12132 (emphasis added).

[6]  29 U.S.C.A. § 794(a) (emphasis added).

[7]  *Duffy v. Riveland,* 98 F.3d 447, 455 (9th Cir. 1996).

[8]  42 U.S.C.A. § 12102(2).

[9]  29 U.S.C.A. § 705.

5

evidence in the record that Plaintiff is hard of hearing, has orthopedic impairments, has a heart condition and has a generalized anxiety disorder. There is also evidence that these conditions impact major life activities, both individually, and when considered in the aggregate. To establish a disability under the ADA, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term."[10] Functional assessments of Plaintiff at approximately the time she entered CSC establish that Plaintiff cannot cook and requires "maximum assistance" while bathing, using the toilet, dressing, grooming, taking medications, with laundry, mobility, and socialization, all activities that are of central importance to most people's daily lives. The Court is therefore unconvinced by CSC's argument that Plaintiff has no disabilities. But after viewing Plaintiff's ADA and RA claims against the backdrop of the Alaska Assisted Living Homes Act and the contractual relationship between the parties, the Court concludes that Plaintiff's claims for discrimination fail under the ADA and the RA because Plaintiff has failed to establish that CSC attempted to evict her on the basis of her disability.[11]

The Alaska Assisted Living Homes Act was enacted for the purpose of providing "adults with a physical or mental disability who need assistance with the activities of daily living" with a specified level of care in order to improve the quality of their lives.[12] AS 47.33.020 clearly distinguishes between the services offered in assisted living homes and skilled nursing facilities. Continuous skilled nursing care in an assisted living facility is available only under limited circumstances with the consent of the facility. AS 47.33.020(f) states that "[a] resident who needs skilled nursing care may, with the consent of the assisted living home, arrange for that care to be provided in the home by a nurse licensed under AS 08.68, <u>if that arrangement does not interfere with the services provided to other residents</u>." (emphasis added) As explained by the Executive

---

[10] *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002).

[11] *See, e.g., Weinrech v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976, 978-979 (9th Cir. 1997) (holding that plaintiff failed to show that his exclusion from a reduced fare program was because of his disability and the MTA was therefore not required to make reasonable modifications to its eligibility requirements under the ADA or the Rehabilitation Act.)

[12] AS 47.33.005 (emphasis added)

Director of CSC, Linda Erickson, CSC is an assisted living facility and as such does not offer full-time nursing care. While there are no allegations that Ms. Winters is in need of full-time nursing care, the distinction the statute draws illustrates that there are external constraints placed on the level of care assisted living facilities can provide.

Not only do Alaska statutes limit the type and degree of care assisted living homes are authorized to provide, but the services provided by CSC to Plaintiff are further limited by the parties' contractual relationship. The Residential Services Contract outlines the nature of the services that CSC undertook to provide to Plaintiff. Section 9 of the Residential Services Contract sets forth the criteria for admission into the assisted living program, stating in relevant part that CSC can:

- Accept only residents whose needs we can meet. This includes assessing resident needs, abilities and preferences, staffing ratios, physical spaces, etc.
- Admit and retain individuals whose medication service we can serve.
- Admit and retain individuals whose on-going needs do not exceed medical or Nursing services allowed by AS 47.33.020.
- Admit and retain individuals who do not have a tendency to wander, fall, act verbally or physically abusive or socially inappropriate.
- Admit and retain individuals whose behavior places little or no stress on self, other individuals or staff.
- Must be physically stable, with inactive chronic diseases or transient, acute illness which requires continuing medical attention or it is determined that staff and staffing levels can meet the individuals needs.

The phrase "admit and retain" contemplates a continuing assessment of whether a resident is properly placed with CSC. The Residential Services Contract states that the manager shall not retain a resident who:

- Desires/requires specialized medical care that is not available at the Facility
- Requires continuous skilled nursing care
- Is believed to require special intervention, beyond the capacity of the Manager's staff to provide, to prevent active harm to self and others.

As Plaintiff emphasized at oral argument, functional assessments were conducted by CSC when Plaintiff moved into the facility. The facility was aware of Plaintiff's disabilities and accepted her into the assisted living facility with the understanding that she would be cared for at the facility. But it is undisputed that problems between CSC and Plaintiff arose shortly after Plaintiff arrived at CSC. Plaintiff's behavior, which Plaintiff attributes to her physical disabilities and generalized anxiety disorder, instantly generated controversy between Plaintiff and the staff at CSC. As

Plaintiff acknowledges, the consistent staff response to complaints raised by Plaintiff was that she should be moved to a facility with more one on one care because CSC was unable to meet her needs.

Plaintiff argues that CSC was required to accommodate her needs as a disabled person under the ADA and RA. While Plaintiff's arguments have some emotional appeal, they fail to account for the fact that acceptance into an assisted living facility presupposes that a resident has a physical or mental disability and needs assistance with daily activities of living. But there is a statutory ceiling on the level of care that assisted living facilities are both authorized and required to provide.[13] Therefore, CSC is entitled to assess whether Plaintiff's disabilities match the level of care CSC is authorized to provide. And CSC only contracted to provided a limited level of care as an assisted living facility. The parties' agreement expressly permits CSC to assess whether Plaintiff's needs and CSC's resources are compatible.

The Court acknowledges that there are disputed issues of fact about the nature and degree of care required by Plaintiff. But it is undisputed that a disagreement about whether Plaintiff's needs exceed the level of care CSC is authorized, able and contractually obligated to provide has persisted since the inception of Plaintiff's tenancy with CSC. The care conference summaries Plaintiff included in opposition to CSC's motion for summary judgment show that on November 12, 2004, CSC considered Ms. Winters to be "at a much higher care level than [they were led] to believe when she was admitted on 9/20/04" and that "it was taking staff up to an hour to help her mother at bedtime and that with 20 other residents that much time was not something" CSC could do. Because CSC felt that Ms. Winters needed more care than other residents, they advised her daughter that she might need to be moved to a different facility. Mr. Isaacs, upon whose testimony Plaintiff heavily relies, also acknowledges that Ms. Winters is "a heavier load. She takes more time and some of that is - - I think a lot of that is because of her anxiety disorder."

---

[13] The Court acknowledges that there may be some circumstances in which a plaintiff can establish that an assisted living facility has engaged in discriminatory practices "based on disability," but concludes that plaintiff has failed to establish a causal connection between her disability and CSC's grounds for terminating her residency.

There have also been disagreements between the parties about whether Plaintiff's behavior constitutes physical or verbal abuse. For example, Plaintiff denies slapping a staff member and claims she only reached out to the staff member to stabilize herself. Since this is a motion for summary judgment, the Court must construe this incident in the light most favorable to Plaintiff. But even assuming that Plaintiff's contact with the staff member was not intended as a slap, Plaintiff has not established that CSC did not view her actions as aggressive. Even if the Court were to disregard this incident of alleged physical abuse, there is abundant evidence in the record that CSC staff members viewed Plaintiff's behavior as verbally abusive. Under AS 47.33.060, assisted living facilities are authorized to make rules regarding physical, verbal, or other abuse of other residents or staff. While Plaintiff disputes the fact that her behavior actually qualifies as physical or verbal abuse, she has failed to establish that CSC's decision to terminate her tenancy was based on her disabilities and was not based on CSC's perception that she was verbally and/or physically abusive.

Plaintiff disagrees with CSC's assessment of the amount of additional care she needs and whether or not her behavior constitutes physical or verbal abuse. But these disputed issues of fact center on whether Plaintiff belongs in this particular assisted living facility given the requirements of the Alaska Assisted Living Homes Act and the contractual relationship between the parties. The Court concludes that Plaintiff has not established that CSC's efforts to evict Plaintiff were because of her disabilities.

The Court concludes that Plaintiff's claims under the Alaska Human Rights and the Fair Housing Act of 1988 fail for the same reasons. Under the Alaska Human Right Act, "[i]t is unlawful for the owner, lessee, manager, or other person having the right to sell, lease, or rent real property" "to discriminate against a person <u>because of</u> . . . <u>physical or mental disability</u> . . . in a term, condition, or privilege relating to the use, sale, lease, or rental of real property."[14] And the Fair Housing Act states it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, <u>because of a handicap.</u>"[15] (emphasis added).

---

[14] AS 18.80.240(2).

[15] 42 U.S.C. § 3604(f)(2).

**II.     The Remaining Claims**

Having resolved the Plaintiff's federal claims in favor of CSC, the Court next considers whether it is appropriate to hear Plaintiff's remaining claims, which all arise under state law.  This Court previously denied a motion for remand by order dated June 30, 2006.  Plaintiff argued that this case should be remanded to state court because state law issues predominate, and because the question whether forcible entry and detainer ("FED") statutes can be used in the context of assisted living facilities raises novel issues of state law.  The Court retained jurisdiction because the Court concluded that state claims did not predominate over federal claims, and because the parties entered into a stipulation agreeing that Defendant would forego filing an FED action until this Court entered summary judgment on Plaintiff's discrimination claims.  Since the Court has entered summary judgment in favor of CSC on all federal discrimination claims, the Court now revisits the issue of remand.[16]

>  Under 28 U.S.C.A. § 1367(c):
>
>  The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
>  (1) the claim raises a novel or complex issue of State law,
>
>  (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
>  (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
>  (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

---

[16]     *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997) ("Depending on a host of factors, then-including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims-district courts may decline to exercise jurisdiction over supplemental state law claims. The statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and <u>at every stage of the litigation</u>, the values of judicial economy, convenience, fairness, and comity.") (emphasis added) (internal citation and quotation marks omitted).

The Supreme Court has advised that:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.[17]

Under 28 U.S.C.A. §§ 1367(c)(1), (2) and (3) the Court hereby remands this case back to state court for resolution of the remaining issues of state law.

In addition to the issues of state law that will be raised regarding the interplay of the Alaska Assisted Living Homes Act and the FED statutes if CSC plans to file an FED action in state court, the Court notes that other complex issues of state law are raised by Plaintiff's claims. Plaintiff's claims under the Alaska Assisted Living Homes Act implicate issues beyond whether Plaintiff's contract was properly terminated under the statute. The Complaint alleges that Plaintiff has the right to be treated with consideration and respect for personal dignity, individuality and privacy under AS 47.33.360(a), and that the attempted eviction violates the purposes of the Act. In its motion for partial summary judgment, Plaintiff also raises the question whether CSC had an adequate grievance procedure in place. It is unclear what relief Plaintiff is seeking based on these allegations or whether Plaintiff has a private right of action to bring such claims independent from the claim of retaliation. Even if there is a private right of action under state law, the Court also questions whether Plaintiff is required to exhaust administrative remedies under state law before bringing before filing suit.[18] Since there are no federal claims remaining, the Court hereby remands

---

[17] *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966).

[18] *See, e.g.*, AS 47.32.090.

this case to Alaska state court for resolution of these remaining complicated issues of state law.[19]

### III.  CONCLUSION

CSC's motion for summary judgment at Docket No. **128** is hereby GRANTED.  Since the Court hereby REMANDS the remaining state law issues back to state court for resolution, the motions for summary judgment pending at Docket Nos. **121, 125 and 134** are hereby DENIED without prejudice.  The remaining motion to strike at Docket No. **115**, motions in limine at Docket Nos. **124, 126, 131, 141, 142, 143, 144, 145, 146, 147, 148, 154, and 157**, and the cross-motion to modify the pre-trial order to allow expert disclosures at Docket No. **230** are also hereby DENIED without prejudice.

Dated at Anchorage, Alaska, this 26th day of September, 2007.

/s/ Timothy Burgess
Timothy M. Burgess
United States District Judge

---

[19]The Court will not individually address the issues of economy, convenience fairness, and comity, given that the Court has dismissed all federal claims and is left with only complex and novel state law claims. *See San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998) (finding that district courts are only required to explicitly address these factors when refusing to exercise supplemental jurisdiction under the "exceptional circumstances" provision of 28 U.S.C. § 1367(c)).  The Court concludes that the interest in having a state court decide these difficult issues outweighs the countervailing interests.